Marcus A. Helt (TX 24052187)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
tscannell@foley.com

**PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** § | | **Chapter 11** |
| §| | |
| **SPHERATURE INVESTMENTS LLC,** § | | **Case No.: 20-42492** |
| *et al.* § | | |
| §| | |
| **Debtors.**[1] § | | **Joint Administration Requested** |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS GRANTING USE OF
CASH COLLATERAL AND SCHEDULING FINAL HEARING**

Spherature Investments LLC ("**Spherature**"), together with its affiliates identified herein, as debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby respectfully request that this Court enter interim and final orders pursuant to 11 U.S.C. §§ 105, 361, and 363 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the use of Montgomery Capital Advisers, LLC's (in its capacity as collateral agent on behalf of the secured parties listed on the schedule attached hereto as **Exhibit "D"**, collectively herein the

---

[1] The "**Debtors**" in the above-captioned jointly administered chapter 11 bankruptcy cases ("**Cases**") are: Spherature Investments LLC ("**Spherature**") EIN#5471; Rovia, LLC ("**Rovia**") EIN#7705; WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846; WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264; WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255; WorldVentures Services, LLC ("**WV Services**") EIN#2220. The Debtors' corporate headquarters and service address in this district is 5100 Tennyson Parkway, Plano, TX 75024.

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS GRANTING
USE OF CASH COLLATERAL AND SCHEDULING FINAL HEARING** PAGE 1

"**Lender**") "**Cash Collateral**" (as that term is defined in the Bankruptcy Code), and scheduling a final hearing (the "**Motion**"). In support of the Motion, the Debtors respectfully state the following:

## I.
## EXECUTIVE SUMMARY

1. The Debtors are requesting the Court to authorize use of Cash Collateral on an interim and final basis.[2] The Debtors anticipate the need to use Cash Collateral pursuant to the budget attached as **Exhibit A**[3] (the "**Budget**"). Without the immediate use of Cash Collateral, the Debtors would likely have to cease operations, which would result in a loss of jobs for the Debtors' employees, and would greatly reduce the value of the Debtors' business as it would no longer be an ongoing enterprise. The requested relief is necessary for the Debtors to: (a) continue the operation of their businesses as debtors-in-possession; (b) preserve the going-concern value of their businesses; (c) save the jobs of their employees; and (d) minimize the disruption to, if not cessation, of operations. Unless the Debtors are immediately authorized to use Cash Collateral in the amounts identified in the Budget, the Debtors will suffer immediate and irreparable harm.

2. The Lender asserts liens in substantially all the Debtors' assets existing as of the Petition Date.[4] To the extent the Lender's liens are valid and perfected, the Lender is adequately protected in connection with the Debtors' use of Cash Collateral and the continued operations of the Debtors' business by a robust equity cushion. The Debtors propose additional adequate protection, only and strictly limited to the extent of the diminution of value of the Lender's

---

[2] The Debtors reserve the right to request an extension of the use of Cash Collateral.

[3] This Motion incorporates by reference all information contained in the Budget attached hereto as **Exhibit A**.

[4] At this time, the Debtors are not prepared to stipulate, and do not stipulate, as to the validity or perfection of the Lender's alleged liens for the purposes of an interim order.

collateral position as of the Petition Date (if any, as and to be determined at a later date in these Cases, as measured from the Petition Date to the termination of the Debtors' use of the Lender's Cash Collateral), by providing the Lender with replacement liens on the same categories of collateral perfected by Lender as of the Petition Date that the Debtors acquire after the Petition Date, specifically including any cash proceeds arising from such collateral acquired by the Debtors after the Petition Date. Such replacement liens will be in the same nature, extent, priority, and validity that the Lender's liens, if any, existed on the Petition Date. In addition to such replacement liens, Lender shall be entitled to a super-priority administrative expense claim under Sections 503 and 507 of the Bankruptcy Code to the extent that the adequate protection provided therein proves inadequate to cover any diminution in value beyond the equity cushion.

3. The Debtors' use of the Cash Collateral will generate additional revenues that will allow the Debtors to continue to operate, while working to restructure their indebtedness and rehabilitate and improve on their relationships with customers, vendors, service providers, sales representatives, independent contractors and related parties in interest to the Debtors' ordinary course of business operations. The Debtors respectfully seek to use Cash Collateral to fund working capital, operating expenses, capital expenditures, fixed charges, payroll, and all other general corporate purposes arising in the Debtors' ordinary course of business, consistent with and in compliance with the Budget, and to pay the costs and expenses related to the administration of the Debtors' Cases, including reasonable, actual and necessary professional fees and certain other administrative expenses as contemplated in the Budget, and as set forth in the applicable Interim and/or Final Orders.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C.

§§ 1334 and 157(b).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

**A. General**

6. On December 21, 2020 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby initiating the above-captioned cases (the "**Cases**").

7. Contemporaneously with the filing of this Motion, the Debtors filed declaration testimony by the Debtors' proposed Chief Restructuring Offer, Erik Toth (the "**Toth Declaration**"), which contains additional background information on the Debtors and their operations. The contents of the Toth Declaration are incorporated by reference, as if set forth herein verbatim, pursuant to Federal Rule of Civil Procedure 10(c).

8. The Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. To date, no trustee, examiner, or committee of creditors has been appointed in the Chapter 11 Cases, and the meeting of creditors required pursuant to section 341 of the Bankruptcy Code has not yet been set.

**B. Pre-Petition Date Credit Facility**

10. As of December 31, 2019, Spherature (f/k/a WorldVentures Holdings, LLC) entered into that certain *Amended and Restated Security Agreement* (together with any amendments, extensions, and/or modifications, the "**Security Agreement**") with the Lender, as

"Collateral Agent" (as defined in the Security Agreement) for the "Secured Parties" (as defined in the Security Agreement).

11. The Lender asserts that the Security Agreement grants liens and security interests to the Lender, in its capacity as Collateral Agent to the Secured Parties, to secure the obligations allegedly owing by Spherature to the Secured Parties under the terms of 17 separate Secured Promissory Notes, each dated effective as of December 31, 2019, and each executed by Spherature and made payable to each of the 17 Secured Parties (together with any amendments, extensions, and/or modifications, collectively, the "**Notes**").

12. The Lender asserts that under the terms of the Security Agreement, Spherature granted the Lender, in its capacity as Collateral Agent to the Secured Parties, liens and security interests in certain of Spherature's personal property, as specifically described and set forth in Exhibit "B" to the Security Agreement.

13. Pursuant to the Security Agreement, the Lender asserts liens and security interests on substantially all of Spherature's assets existing as of the Petition Date and cash proceeds arising therefrom acquired by Spherature after the Petition Date.

## IV.
## RELIEF REQUESTED

14. By this Motion, pursuant to 11 U.S.C. §§ 105, 361, and 363, and Bankruptcy Rules 2002, 4001, and 6004, the Debtors seek, among other things, the following:

   a. authorization for the Debtors to use the Lender's Cash Collateral and the granting of adequate protection to the Lender for, among other things, such use of Cash Collateral and all use and diminution in value of the Lender's pre-Petition Date collateral;

   b. pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of the proposed Interim Order attached hereto as **Exhibit B**; and

      c.      that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a Final Order authorizing the use of the Lender's Cash Collateral.

## V.
## BASIS FOR EMERGENCY RELIEF

15. The Debtors bring this Motion on an emergency basis given the immediate and irreparable harm that the Debtors will potentially suffer if they are denied the ability to use Cash Collateral, which is necessary to sustain their ongoing business operations and achieve their future business objectives. The use of Cash Collateral will permit the Debtors to, among other things, preserve the value of their bankruptcy estates ("**Estates**"), continue operations, maintain jobs for their employees, service ongoing disbursements, and satisfy other working-capital and needs of their day-to-day functions.

16. Absent immediate use of Cash Collateral, the Debtors would likely have to cease business operations to the material detriment of creditors, vendors, suppliers, independent contractors, sale representatives, employees, stakeholders and other parties in interest. Therefore, the Debtors need to ensure the availability of such working capital now. This liquidity is necessary for the Debtors to reorganize and demonstrate to their customers, suppliers, sales representatives, vendors, and stakeholders that the Debtors have sufficient capital to ensure ongoing operations without disruption.

## VI.
## APPLICABLE AUTHORITY

**A.    Adequate Protection and Cash Collateral**

17. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that

has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. § 363(e).

18. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009), *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D. N.Y. 1996); *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D. N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D. N.Y. 1986). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D. N.Y. 1992); *In re Beker*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D. N.Y. 1996).

19. The Lender asserts senior liens and security interests, respectively, on Cash Collateral. As adequate protection for the Debtors' use of the Lender's Cash Collateral, the Debtors are proposing to provide the Lender with the following three (3) forms of adequate protection ("**Adequate Protection**") strictly limited to only the extent of any diminution in value of the Lender's pre-Petition Date security interests in the Lender's pre-Petition Date collateral, if any, to be measured from the Petition Date until the termination of the Debtors' use of Lender's Cash Collateral.

- <u>Equity Cushion</u>. The Debtors assert that the Lender is over-secured by an amount sufficient to constitute adequate protection, because that cushion exceeds the amount, if any, of diminution in value during the Budget period.

- <u>Replacement liens</u>. The Lender will be granted, from and after the Petition Date, valid and automatically perfected (without necessity of the execution by the Debtors of additional mortgages, security agreements, pledge agreements, financing statements, or other documents) replacement liens and security interests in all collateral

of the same nature in existence and perfected by Lender as of the Petition Date that the Debtors acquire after the Petition Date, specifically including all cash proceeds arising from such pre-Petition Date perfected collateral acquired by the Debtor after the Petition Date, in the same nature, extent, priority, and validity that such liens, if any, existed on the Petition Date. The post-petition cash proceeds would not otherwise be subject to the Lender's liens post-petition. *See In re Cafeteria Operators, L.P.,* 299 B.R. 400, 409 (Bankr. N.D. Tex. 2003); *In re Skagit Pacific Corp.,* 316 B.R. 336-37 (9th Cir. BAP 2004) (holding that "a creditor's security interest only encompasses the cash collected on existing pre-petition accounts" and that receivables from post-petition accounts were not "proceeds" under section 552(b)).

- <u>Super-Priority Administrative Expense Claim</u>. Lender shall be entitled to a super-priority administrative expense claim under Sections 503 and 507 of the Bankruptcy Code to the extent that the replacement liens prove inadequate to cover any diminution in value beyond the equity cushion.

20. Here, the proposed Adequate Protection, outlined hereinabove and set forth in the Interim Order, is sufficient to secure the Debtors' projected use of Cash Collateral, as set forth in the Budget, because the projected diminution in value, if any, from the use of Cash Collateral is less than the value of the Adequate Protection proposed to the Lender. In fact, the use of Cash Collateral, is itself a form of Adequate Protection by preserving the value of the Debtors' operations and assets as a going concern, rather than liquidating value.

**B.     The Use of Cash Collateral is Necessary to Preserve Assets of the Estate.**

21. It is essential that the Debtors immediately instill their sales representatives, employees, independent contractors, vendors, suppliers, service providers, and customers with confidence in their ability to transition their business operations smoothly and in the ordinary course without disruption through the chapter 11 process and to operate normally in that environment. The use of Cash Collateral is necessary to continue, among other things, the orderly operation of the Debtors' businesses, the maintenance of continued relationships with the Debtors' sales representatives, employees, independent contractors, vendors, suppliers, service

providers, and customers, and also to satisfy actual or procedurally necessary working capital requirements for the Debtors' business operations in the ordinary course.

22. The initial success of this chapter 11 case and the stabilization of the Debtors' operations at the outset thereof depend on the confidence of the Debtors' sales representatives, employees, independent contractors, vendors, suppliers, service providers, and customers, which in turn depends on the Debtors' ability to minimize the disruption to their business operations due to the bankruptcy filings. If the relief sought in this Motion is delayed or denied, the necessary parties' confidence may be shattered, consequently damaging the Debtors' ability to preserve value for the Estates. In contrast, once the use of Cash Collateral is approved and implemented, the Debtors' ability to continue functioning normally will be reasonably assured. Thus, the Debtors submit that their need for authorization to use Cash Collateral is immediate and necessary to avoid imminent, irreparable harm to the value of the Debtors' going concern enterprise value.

23. As mentioned above, the Debtors have attached a proposed budget as **<u>Exhibit A</u>** to this Motion. Debtors hereby propose to use Lender's Cash Collateral in accordance with that budget up to (i) a variance of 10% of any line item in the Budget, subject to (ii) an aggregate variance of 10% of total disbursements on a cumulative basis. If the use of Cash Collateral is not authorized, the Debtors will suffer immediate and irreparable harm.

**C.    Interim Approval Should Be Granted**

24. Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before 14 days after service of that motion. Fed. R. Bankr. P. 4001. This Court may, however, conduct a preliminary hearing before the expiration of that fourteen-day period and likewise authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to the Debtors' Estates.

25. In examining requests under this Bankruptcy Rule, courts apply the same business-judgment standard as is applicable to other business decisions. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). The Debtors submit that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtors' business operations, their creditors, their parties in interest to these Cases, and their Estates.

26. The Debtors request that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtors, from and after the entry of the Interim Order until a Final Hearing on the relief requested herein, to use Cash Collateral, as necessary, pursuant to and in compliance with the Interim Order and Budget. Such authorization will ensure that the Debtors maintain ongoing operations and avoid immediate and irreparable harm and prejudice to their Estates and all parties in interest pending the Final Hearing.

**D. Request for Final Hearing**

27. As noted above, pursuant to Bankruptcy Rules 4001(b)(2), the Debtors respectfully request that the Court set a date for the Final Hearing at the earliest date and time of the Court's convenience that will ensure adequate notice and due process to all parties-in-interest to this bankruptcy case.

28. The Debtors respectfully request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the holders of the forty (40) largest unsecured claims against each of the Debtors (on a consolidated basis and as applicable); (c) counsel for any committees appointed under section 1102 of the Bankruptcy Code; (d) counsel for the Debtors' Secured Lenders; (e) counsel for the Lender and Collateral Agent for the Debtors' Secured Lenders; (f) the holders of claims or interests who

both file with the Court and serve on counsel for the Debtors, at the above address, a request for special notice; (g) any party that files a Notice of Appearance and request for service in the Cases; and (h) the U.S. Internal Revenue Service. The Debtors respectfully request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## VII.
## CASH COLLATERAL CHECKLIST

29. The *Attorney Checklist Concerning Motions and Orders Pertaining to Use of Cash Collateral and Post-Petition Financing* in a format conforming to Exhibit J of TEXB Appendix 9007 of the Bankruptcy Local Rules is attached hereto as **Exhibit "C"**.

## VIII.
## NOTICE

30. No trustee, examiner, or committee has been appointed in these Cases. This Motion has been transmitted to: (i) the Office of the United States Trustee in compliance with Rule 9034; (ii) counsel to the Collateral Agent for the Secured Lenders; (iii) the forty (40) largest unsecured creditors of each the Debtors, as applicable; (iv) the Internal Revenue Service; and (v) all parties in interest who have formally appeared and requested notice. The Debtors respectfully submit that no further notice of this Motion is required.

31. The pleadings in these Chapter 11 Cases and supporting papers are available on the Bankruptcy Court's website at https://ecf.txeb.uscourts.gov/. You can request any pleading you need from counsel for the Debtor at: Foley & Lardner LLP, c/o Thomas C. Scannell, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (tscannell@foley.com).

## IX.
## NO PRIOR REQUEST

32. No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request the entry of an order granting the relief requested herein (substantially in the form of the proposed first interim order attached hereto as **Exhibit "B"**), and granting such other and further relief as is just and proper.

DATED: December 22, 2020                Respectfully submitted by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
tscannell@foley.com

**PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2020, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Thomas C. Scannell*
Thomas C. Scannell

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing this Motion, counsel for the Debtors conferred with counsel to the Lenders concerning the relief requested in this Motion. Despite good faith negotiations, the parties have not yet reached an agreement on the relief requested in this motion.

*/s/ Thomas C. Scannell*
Thomas C. Scannell