Marcus A. Helt (TX 24052187)
Thomas C. Scannell (TX 24070559)
Stephen A. Jones (TX 24101270)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
tscannell@foley.com
sajones@foley.com

**PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | **Case No.: 20-42492** |
| *et. al.* | § | |
| | § | |
| **Debtors.[1]** | § | **Jointly Administered** |

**MOTION FOR RULE 2004 EXAMINATION OF GROUPLY VENTURES, LLC, TOP
TIER TRAVEL, INC., AND VIRGINIA TRASK,
<u>AND FOR PRODUCTION OF DOCUMENTS</u>**

      **Your rights may be affected by the relief sought in this pleading. You should
read this pleading carefully and discuss it with your attorney, if you have one
in this bankruptcy case. If you oppose the relief sought by this pleading, you
<u>must</u> file a written objections, explaining the factual and/or legal basis for
opposing the relief.**

      **No hearing will be conducted on this Motion unless a written objection is filed
with the Clerk of the United States Bankruptcy Court and served upon the
party filing this pleading *WITHIN FOURTEEN (14) DAYS FROM THE DATE***

---

[1] The "**Debtors**" in the above-captioned jointly administered chapter 11 bankruptcy cases ("**Cases**") are: Spherature Investments LLC ("**Spherature**") EIN#5471; Rovia, LLC ("**Rovia**") EIN#7705; WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846; WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264; WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255; WorldVentures Services, LLC ("**WV Services**") EIN#2220. The Debtors' corporate headquarters and service address in this district is 5100 Tennyson Parkway, Plano, TX 75024.

**_OF SERVICE_ shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at a hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

Spherature Investments, LLC d/b/a WorldVentures Holdings, LLC ("_WorldVentures_"), together with its affiliates identified herein, as debtors and debtors-in-possession (collectively, the "_Debtors_"), hereby file this Motion for Order Under Bankruptcy Rule 2004 Compelling the (I) Examination of Grouply Ventures, LLC ("_Grouply_"), Top Tier Travel, Inc. ("_Top Tier_"), and Virginia (Gini) Trask ("_Trask_"), and (II) Production of Documents (the "_Motion_"). In support of the Motion, the Debtors respectfully state as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The legal bases for the relief requested herein are section 105(a) of 11 U.S.C. §§ 101, _et seq_. (the "_Bankruptcy Code_"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "_Bankruptcy Rules_"), and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Texas (the "_Local Rules_").

## II.
## SUMMARY

4.      WorldVentures is a multilevel marketing company that sells "lifestyle membership products and services." WorldVentures' business model centers on a membership-based travel sales network of independent sales representatives (the "_Sales Representatives_"). It derives its

revenue from these Sales Representatives and the membership and travel-related sales that they generate—thus, the "going-concern" assets of WorldVentures is mostly comprised of the Sales Representatives themselves and the sales platform through which they operate. Debtors offer specifically tailored travel products and services under the DreamTrips trademark on a stand-alone and package basis primarily through a merchant or agent. The majority of Debtors' travel sales are transacted via credit card on Debtors' online travel platform operated under the affiliate, Rovia, and available at www.dreamtrips.com.[2]

5.      Top Tier is a travel services supplier currently contracted with Rovia, to offer World Ventures' travel services exclusively. A true and correct copy of the Master Agreement of Terms and Conditions of Service between Top Tier and Rovia (the "*Rovia Agreement*") is attached hereto as **Exhibit A**. Specifically, Top Tier agreed to refrain from offering trips directly to other multi-level marketing organizations, travel companies and/or "Travel Services participants who were Rovia clients" during the term of the Rovia Agreement (which remains in effect) and for a year thereafter.[3] *See* **Exhibit A**, at ¶¶ 21, 25. Trask, Top Tier's President, signed the Rovia Agreement on its behalf.

6.      More recently, Trask caused to be incorporated, and serves as a manager and registered agent of, Grouply. Not only does Grouply share a common address and overlapping owner (i.e., Trask) with Top Tier, but Grouply appears to provide travel opportunities to Seacret Direct, LLC ("*Seacret*")—a bidder in these bankruptcy proceedings and Debtors' direct

---

[2] Rovia is a wholly owned subsidiary of WorldVentures and an affiliated Debtor party to these Cases.

[3] Pursuant to the Rovia Agreement, "Travel Services" incudes "accommodation, transfers, excursions, tickets, group special offers, food and beverage, guides, care rental and other destination services. *See id.*, at ¶ (C).

competitor—for trips that Trask curated for DreamTrips. Grouply also offers membership-based travel services through its recently launched website, which is similar to the DreamTrips website.

7.    Grouply's recent incorporation, common business locations, overlapping websites, and similar product offerings and services with Top Tier does not appear random. Rather, it corresponds with the recent promotion and anticipated launch of Seacret's "lifestyle" membership-based travel platform—a business model that is strikingly similar to WorldVentures' travel program. Unlike WorldVentures, Seacret historically did not market or sell any membership-based travel services and products. Now, Seacret is engaged in a systematic campaign to recruit and solicit WorldVentures' Sales Representatives, key executives and, upon information and belief, its customers and vendors to use WorldVentures' confidential and proprietary information to unlawfully compete in the multi-level marketing travel space.

8.    Thus, Grouply, Top Tier, and Trask likely have relevant information that affect Debtors' assets and the integrity of the bankruptcy process, as well as Debtors' financial affairs and the dividend to be returned to creditors. As a result, an investigation into these matters and actions is necessary.

### III.
### RELIEF REQUESTED

9.    By this Motion, the Debtors respectfully seek entry of an order authorizing the Debtors to examine a representative of Grouply, a representative of Top Tier, and Ms. Trask, individually, regarding the examination topics listed in the attached **Exhibit C** (Grouply Topics of Examination), **Exhibit D** (Top Tier Topics of Examination), and **Exhibit E** (Trask Topics of Examination), respectively. The Debtors further request that the Court compel Grouply, Top Tier, and Ms. Trask to produce all of the documents listed in **Exhibit F**. The examination topics and the production of documents are subject to the definitions provided in the attached **Exhibit B**.

10.     The Debtors request that the documents be produced to Debtors' counsel seven (7) days before a scheduled deposition, which will take place at such date, time, and place as is mutually agreeable to the Debtors and the examinees.

## IV.
## BACKGROUND

### A.     General Background

11.     On December 21, 2020 (the "*Petition Date*"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code thereby initiating the above-captioned cases (the "*Cases*").

12.     Contemporaneously with the filing of their first-day motions, the Debtors filed declaration testimony by the Debtors' proposed Chief Restructuring Offer, Erik Toth (the "*Toth Declaration*"),[4] which contains additional background information on the Debtors and their operations. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the contents and statements in the Toth Declaration are incorporated herein by reference.

13.     Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14.     Pursuant to the Court's order entered at Docket 47, each of the Debtors filed separate Schedules and Statements on January 22, 2021.

15.     On January 22, 2021, the United States Trustee appointed an official committee of unsecured creditors [*see* Docket No. 93] (the "*Committee*").

16.     The meeting of creditors required pursuant to section 341 of the Bankruptcy Code took place on January 29, 2021 and continued on February 5, 2021.

---

[4] The Toth Declaration is filed in the lead case of Spherature Investments LLC, pending before the Bankruptcy Court.

**B.**      **Background Pertaining to Top Tier, Grouply, and Ms. Trask**

17.      Top Tier was established in late-December 2015. Top Tier provides travel services and accommodations, including booking, transportation, airfare, and lodging arrangements, for corporate and group travel customers. Ms. Trask is the owner and president of Top Tier.

18.      WorldVentures is a membership-based travel company. Travel sales are booked through an online travel platform operated by Rovia at www.dreamtrips.com.  On January 4, 2018, Top Tier and Rovia entered into the Rovia Agreement; wherein Trask signed on behalf of Top Tier as its President. Notably, Top Tier's address in the Rovia Agreement is 8505 Cambridge Street, Houston, Texas. Trask registered Top Tier's website under this address; it is also the same address designated for Top Tier's data controller.

19.      Under the Rovia Agreement, Top Tier, "for the benefit of Rovia, its' members, and commonly owned affiliates" agreed to provide exclusive travel services. *See* **Exhibit A**, at ¶ (D). Top Tier agreed to refrain from offering trips directly to (a) other multi-level marketing organizations that specialize in travel, (b) travel companies that offer business opportunities, and (c) and/or "Travel Services participants who were Rovia clients" during the term of the Rovia Agreement (which remains in effect) and for a year thereafter. *See id.*, at ¶ 21. Both the letter and intent of the Rovia Agreement prohibit Top Tier from offering travel services to Rovia's and its affiliates' (including WorldVentures) customers and members.

20.      Top Tier also expressly agreed that the "representatives, customers, business, products, technology, business connections, representative and customer lists, procedures, operations, techniques and other aspects of the business of Rovia are established at great expense and protected as confidential information and trade secrets." *Id.* at ¶ 9. Importantly, Top Tier agreed to preserve, maintain and refrain from, "directly or indirectly, either individually or as an

employee, agent, partner, shareholder, or in any other capacity," the improper use and/or disclosure of Rovia and its affiliates' trade secrets and confidential and proprietary information within the territory of Rovia's business during the term of the Rovia Agreement, and for a year thereafter. *Id.*

21. On January 22, 2021, Trask formed Grouply, which provides travel services and related accommodations. As set forth in its governing and formation documents, Trask serves as Grouply's manager and registered agent. The business address for Grouply is 1304 S. Loop W., Houston, Texas 77054, which is the same business address listed for Top Tier according to the Harris County Appraisal public records.

22. Around this time, Grouply launched its website at https://grouply.com/ that offers membership-based travel services. Many of these travel packages are nearly identical or substantially similar to travel opportunities offered by Top Tier for DreamTrips. Indeed, certain hotels offered by Grouply are the same hotels utilized by Top Tier for DreamTrips. Further, the Grouply website—which is similar in content and appearance to the DreamTrips website in material respects—lists the exact same address (i.e., 8505 Cambridge Street, Houston, Texas) that Top Tier provided in the Rovia Agreement, as well as the address Top Tier designated for its data controller. *See* https://grouply.com/privacy-policy/. Particularly revealing, Grouply provides Top Tier's email address as the contact information for Grouply's web administrator. *Id.*

23. The timing of Grouply's incorporation, launch of its website, and its new foray into the travel industry parallels with the recent promotion and launch of Seacret's new membership-based travel program. Indeed, a week after Grouply filed its certificate of formation, Seacret's founder posted a promotional campaign video where he announced that Seacret is "tak[ing] one of the unique travel experiences in the world [i.e., WorldVentures' travel experience] and

implement[ing] the program over here at Seacret."[5] In the same video, former President and Chief Strategy Officer for WorldVentures, Kenneth E. Head, is declared Seacret's new President and Chief Development Officer.[6] Other key executives of WorldVentures have also recently left for Seacret.

24.     That Grouply—commonly controlled with Top Tier by Trask—contemporaneously incorporated and began offering the same and/or substantially similar travel experiences to those of WorldVentures appears directly related to the above-described events and Seacret's new "lifestyle" travel business. In fact, Seacret recently announced that it would celebrate its new travel membership program with a trip to Mexico and directed its agents to book through Grouply. The circumstances suggest that Grouply, Top Tier, and Trask have knowledge of actions or wrongdoing that has diminished the value of WorldVentures' assets, including the Rovia Agreement exclusivity provisions.

25.     As such, the Debtors seek to examine Grouply, Top Tier, and Trask, and to compel the production of documents pursuant to Bankruptcy Rules 2004 and 9016.

## V.
## ARGUMENTS AND AUTHORITIES

26.     Bankruptcy Rule 2004 provides the Court authority to order an examination of any entity or person if such examination relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtors' estate … [and to] any other matter relevant to the case or to the formulation of a plan." FED. R. BANKR. P. 2004(b).

---

[5] *See Izhak 2021* Update, VIMEO (Jan. 29, 2021) https://vimeo.com/506374313 (announcing launch of Seacret's new travel platform).
[6] *Id.*

27.     "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993). The scope of a Rule 2004 examination is broad. *See, e.g.*, *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988); *In re Enron Corp. Sec. Litig.*, 2004 WL 613091 at *3 (S.D. Tex. March 16, 2004); *In re Edic*, 2005 WL 6443541 at *1 (Bankr. N.D. Tex. Oct. 7, 2005) ("Rule 2004 is very broad in scope"). Indeed, any third party that has a relationship with a debtor may be subject to examination. *See, e.g., In re Ionosphere Clubs*, 156 B.R. at 432; *In re Recoton Corp.*, 307 B.R. at 755; *In re Cousins Barricades & Metal Prods.*, 2000 WL 245860 at *3 (E.D. La., March 2, 2000).

28.     As discussed above, the Debtors are investigating any and all violations by Seacret, WorldVentures' former employees, agents, and/or vendors, and any and all potential causes of action related thereto. The Debtors' investigations include: (1) use and disclosure of the Debtors' trade secrets and confidential and proprietary information, including any and all information related to the Debtors' trademarks and copyrighted material, along with Debtors' network of Sales Representatives; (2) any and all actions taken to recruit or solicit the Debtors' employees, customers, Sales Representatives, and vendors; (3) Seacret's recent decision to launch a new travel-membership and services platform in direct competition with the Debtors; and (4) Seacret's recent hiring of former WorldVentures' key executives, employees, and Sales Representatives.

29.     As a part of the investigation, the Debtors need access to documents and communications to determine if any such causes of action exist. The testimony and documents sought from Grouply, Top Tier, and Trask may be (and likely will be) integral for the Debtors to ascertain the scope and extent of any claims or causes of action the Debtors may have. Moreover,

the information sought via this Motion is targeted, specific, and focused, and will not present a burden or intrusion on Grouply, Top Tier, and Trask. As a result, the Debtors submit that good cause exists for the Court to grant this Motion.

## VI.
## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, granting the relief requested herein, directing Grouply, Top Tier, and Trask to appear for examination and produce the documents requested by this Motion, in accordance with the timeline described herein, and granting such other and further relief as the Court deems just and proper.

DATED: March 5, 2021

Respectfully submitted by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Thomas C. Scannell (TX 24070559)
Stephen A. Jones (TX 24101270)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue
Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
tscannell@foley.com
sajones@foley.com

**PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 2004-1(a)(2), on March 5, 2021, I attempted to confer with Virginia "Gini" Trask regarding the Debtors' relief requested herein via phone call, and I was unable to reach anyone regarding the relief requested herein.

*/s/ Emily F. Shanks*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 5, 2021, a true and correct copy of the foregoing document was served on all parties in interest electronically by the Court's ECF system, and was served on Grouply Ventures, LLC, Top Tier Travel, Inc., and Virginia Trask via first class mail.

*/s/ Emily F. Shanks*

# EXHIBIT B

## INSTRUCTIONS AND DEFINITIONS

These Instructions and Definitions shall apply to the examination topics in **Exhibit C** (Topics of Examination for Grouply), **Exhibit D** (Topics of Examination for Top Tier), **Exhibit E** (Topics of Examination for Trask), and the requests for production in **Exhibit F**. For purposes of interpreting or construing the scope of the following topics for examination and requests for production, all terms are given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual topic or request. Moreover, for the purposes of these topics and requests, the following terms are given the following meanings:

1. The "**Relevant Time Period**" for such topics of examination and requests for production will be January 1, 2018 through the present date.

2. The connectives "**and**" and "**or**" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3. "**Including**" means "including, without limitation.

4. "**Communication**" or "**Communications**" means, without limitation, any oral or written utterance, notation, inquiry, discussion, statement, conversation, correspondence, negotiation, meeting, remark, question, answer, dialog, agreement, consultation, interview, telephone conversation, letter, note, telegram, telex, electronic memorandum, e-mail, text message, advertisement, and/or any other form of act or process by which information or knowledge is transmitted or conveyed.

5. "**Concern**" or "**concerning**" means supporting, negating, refuting, memorializing, analyzing, constituting, describing, referencing, discussing, connected with, or otherwise pertaining in any way, in whole or in part, to the subject matter referred to in each request.

6. "**WorldVentures' Confidential Information**" means all information of a confidential or proprietary nature with regard to WorldVentures and its affiliate, Rovia, including, but not limited to, information concerning their representatives, customers, business, trade secrets, products, technology, business connections, representative and customer lists, procedures, operations, techniques, and/or any other aspects of their business operations.

7. "**Debtors' Bankruptcy Cases**" means the above-captioned jointly administered Chapter 11 bankruptcy cases, filed by the Debtors on December 21, 2020.

8. "**Document**" or "**Documents**" is synonymous and equal in scope to the use of this term in Federal Rule of Civil Procedure 34(a). Specifically, "Document" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes, but is not

limited to, electronically stored information ("*ESI*"), Communications, and any written, printed, typed, electronically recorded, handwritten or graphic matter of any kind, including, agreements, contracts, emails, correspondence, memoranda, notes, press releases, letters, diaries, facsimiles, reports, records, minutes, statements, receipts, summaries, purchase orders, work orders, invoices, pamphlets, books, photographs, charts, graphs, recordings, and drafts, originals, copies, nonconforming copies which contain deletions, insertions, transcriptions, handwritten notes or comments, however produced or reproduced, and to any other means of retention of information or otherwise recorded matter.

9. "**WorldVentures**" means, either collectively or individually, Spherature Investments LLC ("**Spherature**"); Rovia, LLC ("**Rovia**"); WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**"); WorldVentures Marketplace, LLC ("**WV Marketplace**"); WorldVentures Marketing, LLC ("**WV Marketing**"); and WorldVentures Services, LLC ("**WV Services**") and each of their agents, officers, directors, lawyers, professionals, employees, and representatives, and any other parent companies, subsidiary companies or affiliates.

10. "**WorldVentures' Agents**" means any and all of its current or former executives, officers, sales representatives, employees, independent contractors, and/or agents, including current and former vendors, suppliers, customers and/or members.

11. "**Grouply**" means Grouply Ventures, LLC, and its owners, partners, affiliates, agents, officers, directors, members, managers, employees, representatives, contractors, lawyers, professionals, and/or any other parent companies, subsidiary companies or affiliates.

12. "**Top Tier**" means Top Tier Travel, Inc., and its owners, partners, affiliates, agents, officers, directors, employees, representatives, contractors, lawyers, professionals, and/or any other parent companies, subsidiary companies or affiliates.

13. "**Seacret**" means Seacret Direct, LLC and its owners, partners, affiliates, agents, officers, directors, members, managers, employees, representatives, contractors, lawyers, professionals, and any other parent companies, subsidiary companies or affiliates.

14. "**Seacret's Travel Business**" refers to Seacret's travel platform, "lifestyle" company, as referenced in the following January 2021 videos:

    a. https://vacationleader.wistia.com/medias/ztuypgg23g?wtime=0

    b. https://www.youtube.com/watch?app=desktop&v=HLcXFdFkEjc

    c. https://vimeo.com/506374313

    d. https://grouply.com/trips/

15. "**Trask**" means Virginia (Gini) Trask, and each of her agents, representatives, and affiliates.

16. "**Head**" means Kenneth E. Head and each of his, agents, representatives, and affiliates.

17. "**Rovia Agreement**" means the Master Agreement of Terms and Conditions of Service by and between Top Tier Travel and Rovia, LLC, dated January 4, 2018.

18. "**DreamTrips**" means the WorldVentures' brand, website, and travel booking service and/or product through which WorldVentures' Agents and its customers manages and offers its travel-based products and services.

19. "**DreamBreaks**" means the WorldVentures' brand, website, and travel booking service and/or product through which WorldVentures' Agents and its customers manages and offers its travel-based products and services.

20. "**Anytime Escapes Travel**" means WorldVentures' brand, website, and travel booking service and/or product through which WorldVentures' Agents and its customers manages and offers its travel-based products and services.

## EXHIBIT C

### TOPICS FOR EXAMINATION OF GROUPLY VENTURES, LLC

1. Grouply's owners, members, managers, directors, officers, employees, partners, agents, representatives, contractors, affiliates, subsidiaries, parents, and other insider persons, individuals or entities;

2. Grouply's operations, including the creation, formation, and launch of its travel company;

3. Grouply's assets, liabilities, cash flow, sources of revenue, and sources of financing;

4. The relationship between Grouply and Top Tier;

5. The relationship between Grouply and Seacret;

6. The relationship between Grouply and Trask;

7. The relationship between and/or among Grouply, WorldVentures and WorldVentures' Agents;

8. Grouply's knowledge of WorldVentures' travel business, including the travel programs known as DreamTrips, DreamBreaks, and Anytime Escapes Travel;

9. Grouply's access to WorldVentures' Confidential Information;

10. The relationship between and/or among Seacret, WorldVentures, and WorldVentures' Agents;

11. Seacret's creation, launch, marketing and/or sale of Seacret's Travel Business, as well as Grouply's involvement with the same;

12. Seacret's access to WorldVentures' Confidential Information, as well as Grouply's involvement with the same;

13. Debtors' Bankruptcy Cases; and

14. Any other matter relating to the acts, conduct, or property or to the liabilities and financial condition of the Debtors, or to any matter which may affect the administration of the Debtors' estates, or to the Debtors' right to a discharge.

# EXHIBIT D

## TOPICS FOR EXAMINATION OF TOP TIER TRAVEL, INC.

1. Top Tier's owners, partners, officers, directors, employees, principals, representatives, contractors, agents, affiliates, subsidiaries, parents, and other insider persons, individuals or entities;

2. Top Tier's travel business;

3. Top Tier's assets, liabilities, cash flow, sources of revenue, and sources of financing;

4. The relationship between and/or among Top Tier, WorldVentures, and WorldVentures' Agents;

5. The negotiation, execution and performance of the Rovia Agreement;

6. WorldVentures' travel business, including the travel programs known as DreamTrips, DreamBreaks, and Anytime Escapes Travel;

7. Top Tier's access to WorldVentures' Confidential Information;

8. The relationship between Top Tier and Seacret;

9. The relationship between Top Tier and Grouply;

10. The relationship between Top Tier and Trask;

11. The relationship between and/or among Seacret, WorldVentures, and WorldVentures' Agents;

12. Seacret's creation, launch, marketing and/or sale of Seacret's Travel Business, as well as Top Tier's involvement with the same;

13. Seacret's access to WorldVentures' Confidential Information, as well as Top Tier's involvement with the same;

14. Debtors' Bankruptcy Cases; and

15. Any other matter relating to the acts, conduct, or property or to the liabilities and financial condition of the Debtors, or to any matter which may affect the administration of the Debtors' estates, or to the Debtors' right to a discharge.

# EXHIBIT E

## TOPICS FOR EXAMINATION OF VIRGINIA (GINI) TRASK

1. Trask's involvement with the creation, formation, and launch of Grouply's travel business;

2. Trask's ownership, financial interest, employment and/or affiliation with Grouply, Top Tier, and/or Seacret;

3. Trask's involvement with the negotiation, execution and performance of the Rovia Agreement;

4. The relationship between and/or among Trask, WorldVentures, and WorldVentures' Agents;

5. WorldVentures' travel business, including the travel programs known as DreamTrips, DreamBreaks, and Anytime Escapes Travel;

6. Trask's access to WorldVentures' Confidential Information;

7. The relationship between Trask and Grouply;

8. The relationship between Trask and Top Tier;

9. The relationship between Trask and Seacret;

10. The relationship between and/or among Seacret, WorldVentures, and WorldVentures' Agents;

11. Trask's involvement with the creation, launch, marketing and/or sale of Seacret's Travel Business;

12. Trask's involvement with Seacret's access to WorldVentures' Confidential Information;

13. Trask's involvement with Top Tier's access to WorldVentures' Confidential Information;

14. Trask's involvement with Grouply's access to WorldVentures' Confidential Information;

15. Debtors' Bankruptcy Cases; and

16. Any other matter relating to the acts, conduct, or property or to the liabilities and financial condition of the Debtors, or to any matter which may affect the administration of the Debtors' estates, or to the Debtors' right to a discharge.

# EXHIBIT F[7]

## INSTRUCTIONS

1.     Respond to each request for production separately by listing the materials and by describing them as defined above. If the material is numbered or labeled for production, in each response provide both the information that identifies the material and the material's number or label.

2.     Produce documents and tangible things in the format as they are kept in the ordinary course of business, or organize and number or label them to correspond with the categories in the discovery request.

3.     All documents requested shall be produced in the same file or other organizational environment in which they are kept in the usual course of business. For example, a document that is part of a file, docket, or other grouping (including electronic files or groupings) should be physically produced together with all other documents from said file, docket, or grouping responsive to said request, in the same order or manner of arrangement as the original. Alternatively, the produced documents shall be organized and labeled to correspond with the categories of these requests, and any sub-parts.

4.     Unless otherwise indicated, documents to be produced include those in your possession, custody and control. If any document was, but is no longer, in your possession, custody or control, or in existence, state whether it is/was (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others (including the identity of those person(s), or (d) otherwise disposed of; in each such instance, explain the circumstances surrounding and authorization for such disposition of the document, and state the date or approximate date of the disposition.

5.     If any document requested herein has been destroyed, identify each such document, state its author and addressee, each person to whom the document was furnished, directed, delivered, sent or otherwise conveyed or to whom the contents thereof were communicated, a summary of the substance of the document, the date upon which it was destroyed, and the reason it was destroyed.

6.     The singular form of a word includes the plural form of that word and the plural form of a word includes the singular form.

7.     **Electronic Production Instructions:**

    a.     <u>Single-Page Tiffs</u>: For all electronically stored documents that can be rendered to images (such as email, PDFs, word processing documents, and slide presentations), please produce in the form of bates-numbered Group IV Single Page TIFFs of at least 300 dpi, with appropriate document breaks. Place tiff images in a separate folder named IMAGES and name the images according to Bates number.

---

[7] *See* the Motion and **<u>Exhibit "B"</u>** for applicable definitions.

4833-2750-8959.1

b.     <u>Native Files</u>: For electronic documents which cannot reasonably be rendered to tiff (e.g., spreadsheets, video/audio files, exported data, proprietary software data, code, web data, or other documents which require a specific software), please produce in native format. Place native files in a separate folder named NATIVES and name the files by Bates number. Provide a single-page tiff image slip sheet indicating the Bates number, any confidentiality designation, the native file name, and the note "Document Provided in Native Format." Include a link to the relative path of the natively produced document in the load file (Field no. 19 in list below). All embedded content shall be provided (i.e., tracked changes, hidden comments, notes, etc.).

c.     <u>Load File</u>: Please include with this electronic production a generic delimited text load file that reflects beginning and end bates numbers, parent-child relationships, includes paths to images and text and natives, and includes the metadata or fielded information listed below, to the extent that data exists for a produced electronic document.

d.     <u>OCR and Extracted Text</u>: Multipage OCR or extracted text (i.e., TXT files) will be named to the corresponding TIFF images and placed in a separate folder named TEXT. The searchable content of electronically-stored documents will be extracted from the source documents, e.g., emails and their attachments, and will not be generated through optical character recognition (OCR) of the corresponding TIFF images, with the exception of redacted documents, which may be OCR-ed. Redacted documents will contain the searchable endorsement "Redacted."

e.     <u>Fielded Information and Metadata</u>: Please include the following metadata or fielded information, to the extent it exists for a produced electronic document, in the load file:

1.     Prod Beg (beginning production number)
2.     Prod End (ending production number)
3.     Prod Beg Attach (first bates number in family group)
4.     Prod End Attach (last bates number in family group)
5.     File Type (e.g., Word, Excel, email, etc.)
6.     Date Last Modified (the date the file was last modified)
7.     Time Last Modified Time (the time the file was last modified)
8.     Date Sent (the date the email was sent)
9.     Time Sent (the time the email was sent)
10.    Date Received (the date the email was received)
11.    Time Received (the time the email was received)
12.    Email From (originator of email)
13.    Email To (recipient of email)

14.     Email CC (recipients carbon copied)
15.     Email BCC (recipients blind carbon copied)
16.     Email Subject (the subject of the email)
17.     Custodian (owner of the email container)
18.     Source File (original path including filename to original loose e-mail message)
19.     Native File Link (the relative path to the native file)
20.     Author (author of files)
21.     Date Created (date email or file was created)
22.     Time Created (time email or file was created)
23.     Date Last Modified (date file was last modified)
24.     Time Last Modified (time file was last modified)
25.     DocExt (extension of the file)
26.     File Name (original name of file)
27.     Folderpath (Full path to source files)
28.     Redacted (A yes or no field to indicate if a record has been redacted)
29.     Confidentiality (a field to indicate the type of confidentiality designation)

8.     Unless specified otherwise, the "**Relevant Time Period**" for each request for production will be January 1, 2018 through the present date.

## REQUESTS FOR PRODUCTION TO GROUPLY VENTURES, LLC

1. Documents and Communications concerning Grouply's Topics for Examination in **Exhibit C**, including the Documents and Communications more specifically described below.

2. Documents and Communications between Grouply, on the one hand, and Seacret, on the other hand, concerning the following topics:

    a. WorldVentures travel business, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier;

    f. The Rovia Agreement; and/or

    g. Trask.

3. Documents and Communications between Grouply, on the one hand, and WorldVentures' Agents, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier;

    f. The Rovia Agreement; and/or

    g. Trask.

4. Documents and Communications between Grouply, on the one hand, and Top Tier, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier's travel business;

    f. The Rovia Agreement; and/or

    g. Trask.

5. Documents and Communications between Grouply, on the one hand, and any third party, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier's travel business;

    f. The Rovia Agreement; and/or

g. Trask.

6. All internal Grouply Documents and Communications concerning Grouply's marketing and sale of travel products and/or services.

7. Documents and Communications concerning the relationship between Grouply and Seacret, including all Documents and Communications concerning Seacret's Travel Business and Grouply's involvement with the creation, launch, marketing and/or sale of Seacret's Travel Business.

8. Documents and Communications concerning WorldVentures travel business, WorldVentures' Agents, DreamTrips, DreamBreaks, and/or Anytime Escapes Travel.

9. Documents and Communications concerning Grouply's access to WorldVentures' Confidential Information, including all WorldVentures' Confidential Information currently in Grouply's possession.

10. Documents and Communications concerning Grouply's involvement with Seacret's access to WorldVentures' Confidential Information.

11. Documents and Communications concerning the Rovia Agreement.

12. Documents and Communications concerning the creation, formation, and launch of Grouply's travel company, including Grouply's bylaws, company agreements, and other corporate governance documents.

13. Documents and Communications concerning Grouply's efforts to provide, promote, market and/or sell travel services to any multi-level marketing company, including Seacret.

14. Documents and Communications concerning Grouply's efforts to provide, promote, market and/or sell travel services to WorldVentures' Agents.

15. Documents and Communications concerning Grouply's efforts to provide, promote, market and/or sell travel services for Seacret's Travel Business.

16. All contracts and agreements (verbal or written) Grouply has executed and/or entered into with any person concerning Seacret's Travel Business.

### REQUESTS FOR PRODUCTION TO TOP TIER TRAVEL, INC.

1. Documents and Communications concerning Top Tier's Topics for Examination in **Exhibit D**, including Documents and Communications more specifically described below.

2. Documents and Communications between Top Tier, on the one hand, and Seacret, on the other hand, concerning the following topics:

a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

b. Debtors' Bankruptcy Cases;

c. Seacret's Travel Business;

d. Grouply's travel business;

e. Top Tier's travel business;

f. The Rovia Agreement; and/or

g. Trask.

3. Documents and Communications between Top Tier, on the one hand, and WorldVentures' Agents, on the other hand, concerning the following topics:

a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

b. Debtors' Bankruptcy Cases;

c. Seacret's Travel Business;

d. Grouply's travel business;

e. Top Tier's travel business;

f. The Rovia Agreement; and/or

g. Trask.

4. Documents and Communications between Top Tier, on the one hand, and Trask, on the other hand, concerning the following topics:

a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

b. Debtors' Bankruptcy Cases;

c. Seacret's Travel Business;

d. Grouply's travel business; and/or

e. The Rovia Agreement.

5. Documents and Communications between Top Tier, on the one hand, and any other third party, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier's travel business;

    f. The Rovia Agreement; and/or

    g. Trask.

6. Documents and Communications concerning the relationship between Top Tier and Seacret, including all Documents and Communications concerning Seacret's Travel Business and Top Tier's involvement with the creation, launch, marketing and/or sale of Seacret's Travel Business.

7. Documents and Communications concerning the relationship between Top Tier and Grouply, including all Documents and Communications concerning Top Tier's involvement with the creation, formation, and launch of Grouply's travel business.

8. Documents and Communications concerning Top Tier's access to WorldVentures' Confidential Information, including all WorldVentures' Confidential Information currently in Top Tier's possession.

9. Documents and Communications concerning Top Tier's involvement with Seacret's access to WorldVentures' Confidential Information.

10. Documents and Communications concerning Top Tier's involvement with Grouply's access to WorldVentures' Confidential Information.

11. Documents and Communications concerning Top Tier's efforts to provide, promote, market and/or sell travel services to any multi-level marketing company (other than WorldVentures), including Seacret.

12. Documents and Communications concerning Top Tier's efforts to provide, promote, market and/or sell travel services for Seacret's Travel Business.

13. All contracts and agreements (verbal or written) Top Tier has executed and/or entered into concerning Seacret's Travel Business.

14. All contracts and agreements (verbal or written) Top Tier has executed and/or entered into with Seacret.

15. Top Tier's bylaws, company agreements, and other corporate governance documents.

## REQUESTS FOR PRODUCTION TO VIRGINIA (GINI) TRASK

1. Documents and Communications concerning Trask's Topics for Examination in **Exhibit E**, including the Documents and Communications more specifically described below.

2. Documents and Communications between Trask, on the one hand, and Seacret, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business;

    e. Top Tier's travel business; and/or

    f. The Rovia Agreement.

3. Documents and Communications between Trask, on the one hand, and WorldVentures' Agents, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c. Seacret's Travel Business;

    d. Grouply's travel business; and/or

    e. The Rovia Agreement.

4. Documents and Communications between Trask, on the one hand, and Top Tier, on the other hand, concerning the following topics:

    a. WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b. Debtors' Bankruptcy Cases;

    c.   Seacret's Travel Business;

    d.   Grouply's travel business; and/or

    e.   The Rovia Agreement.

5.   Documents and Communications between Trask, on the one hand, and Grouply, on the other hand, concerning the following topics:

    a.   WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b.   Debtors' Bankruptcy Cases;

    c.   Seacret's Travel Business;

    d.   Grouply's travel business; and/or

    e.   The Rovia Agreement.

6.   Documents and Communications between Trask, on the one hand, and any other third party, on the other hand, concerning the following topics:

    a.   WorldVentures, WorldVentures' Agents, DreamTrips, DreamBreaks, and Anytime Escapes Travel;

    b.   Debtors' Bankruptcy Cases;

    c.   Seacret's Travel Business;

    d.   Grouply's travel business; and/or

    e.   The Rovia Agreement.

7.   Documents and Communications concerning Trask's involvement with the negotiation, execution and performance of the Rovia Agreement.

8.   Documents and Communications concerning the relationship between Trask and Seacret, including all Documents and Communications concerning Trask's involvement with the creation, launch, marketing and/or sale of Seacret's Travel Business.

9.   Documents and Communications concerning Trask's involvement with the creation, formation, and launch of Grouply's travel business.

10.  Documents and Communications concerning Trask's involvement with the creation, formation, and launch of Top Tier's travel business.

4833-2750-8959.1

11. Documents and Communications concerning Trask's ownership, financial interest, employment and/or affiliation with Grouply, Top Tier, and/or Seacret.

12. Documents and Communications concerning WorldVentures, WorldVentures' Agents, DreamTrips, including all WorldVentures' Confidential Information currently in Trask's possession.

13. Documents and Communications concerning Trask's involvement with Seacret's access to WorldVentures' Confidential Information.

14. Documents and Communications concerning Trask's involvement with Grouply's access to WorldVentures' Confidential Information.

15. Documents and Communications concerning Trask's involvement with Top Tier's access to WorldVentures' Confidential Information.

16. Documents and Communications concerning Trask's efforts to provide, promote, market and/or sell travel services to any multi-level marketing company (other than WorldVentures), including Seacret.

17. Documents and Communications concerning Trask's efforts to provide, promote, market and/or sell travel services for Seacret's Travel Business.

18. All contracts and agreements (verbal or written) Trask has executed and/or entered into concerning Seacret's Travel Business.

19. All contracts and agreements (verbal or written) Trask has executed and/or entered into with Seacret.