Sheldon E. Richie
State Bar No. 16877000
srichie@rg-austin.com
Matthew M. Cowart
State Bar No. 24007044
mcowart@rg-sanantonio.com
100 Congress Avenue, Suite 1750
Austin, Texas  78701
512-236-9220 telephone
512-236-9230 fax
**COUNSEL FOR RAYMOND BRAUN, JANIE BRAUN, BRAUN MARKETING COMPANY, MATT MORRIS, RHONDA MORRIS, DR. TROY BROWN, KATHY BROWN, KARI SCHNEIDER,  LISHA SCHNEIDER, BYRON SCHRAG, AND MARTIN RUOF**

**IN THE UNITED STATES BANKRUPT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| SPHERATURE INVESTMENTS LLC, | § | |
| *et al.*, | § | **Case No. 20-42492** |
| | § | |
| DEBTORS | § | **Jointly Administered** |

**JOINDER OF JANIE BRAUN, BRAUN MARKETING COMPANY, MATT MORRIS, RHONDA MORRIS, DR. TROY BROWN, KATHY BROWN, KARI SCHNEIDER, LISHA SCHNEIDER, BYRON SCHRAG,  AND MARTIN RUOF TO SEACRET DIRECT, LLC'S LIMITED OBJECTION TO MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING: (A) BID PROCEDURES; (B) STALKING HORSE BIDDER AND BID PROTECTIONS; AND (C) FORM AND MANNER OF NOTICES; (II) SCHEDULING AN AUCTION AND SALE HEARING; (III) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF AND BRAUN ET AL.'S ADDITIONAL OBJECTIONS ON OTHER GROUNDS**

JANIE BRAUN, BRAUN MARKETING COMPANY, MATT MORRIS, RHONDA MORRIS, DR. TROY BROWN, KATHY BROWN, KARI SCHNEIDER, LISHA SCHNEIDER, BYRON SCHRAG, AND MARTIN RUOF ("**Braun, et al.**") file this Joinder to Seacret Direct, LLC's *Limited Objection to Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (the "Objection") to the *Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Dkt # 92] (the "Bid Procedures"), filed by the Debtors and Debtors-in-Possession on January 21, 2021.

## I.    FACTUAL BACKGROUND

1.    Braun et al. former business representatives and creditors of WorldVentures Holdings, LLC. Braun et al. are entitled to compensation from Debtors for earned commissions, travel credits, and reimbursements.

2.    On December 21, 2020 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. No trustee or examiner has been appointed in these cases, and the Debtors remain in control of their assets and estate as debtors-in-possession.

3. On January 22, 2021, an Official Committee of Unsecured Creditors was appointed in these cases.

4. On January 21, 2021, Debtors filed their *Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief (the "Objection") to the Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Dkt 92] ("**Motion**").

5. The Motion identified WV Holdings Co., LLC ("**Stalking Horse**") as the stalking-horse bidder that would purchase the Debtors' assets pursuant to terms and conditions contained in a Non-Binding Term Sheet for the Acquisition of Assets ("**LOI**") that was attached to the Motion [Dkt 92-5]. The Motion further provided February 9, 2021, as the deadline for the Stalking Horse to make its good-faith deposit and for the Debtors to file a proposed Asset Purchase Agreement ("**APA**").

6. The February 9, 2021 deadline came and went, but no good-faith deposit was made nor was the APA filed with the court.

7. On February 22, 2021, Seacret Direct, LLC ("**Seacret**") filed its *Limited Objection to Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (the "Objection") to the Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Bid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Assets of the Debtors, Free and Clear of All Liens, Claims, Encumbrances and Interests; (IV) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* ("**Seacret's Limited Objection**") [Dkt 142].

8. On February 24, 2021, the Court continued the March 2, 2021 hearing on the Motion to March 16, 2021 [Dkt 147] and set a March 9, 2021 to object to the Bid Procedures.

## II. JOINDER IN SEACRET'S LIMITED OBJECTION

9. Braun et al. join in, adopt, and incorporate paragraphs 4, 5, 6, 7, 8, 9, 10, 11, and 12 of Seacret's Limited Objection [Dkt 142, pages 3 – 7 of 8].

## III. ADDITIONAL OBJECTIONS OF BRAUN ET AL. TO THE MOTION

10. In addition to those arguments and objections contained in Seacret's Limited Objection, Braun et al. have additional objections to the Motion. Those objections and the specific grounds for each are more fully set forth as follows:

**A.** **Debtors' Cash Collateral Budget and Monthly Operating Reports Do Not Support a $6.0 million monthly revenue stream.**

11. Under the terms of the current Stalking Horse bid, Debtors propose to pay a 1% royalty to someone, presumably creditors and one or more additional parties, for each month that minimum monthly revenue is $6 million related to "historical" product lines. [Dkt. # 92-5, page 2 of 8]. However, the Debtors' cash collateral budget shows that the Debtors will not once meet the $6 million monthly threshold during the bankruptcy case [Dkt. # 97, page 11 of 11], and there is no indication that the Stalking Horse will do so either once it acquires the assets. Not only do the Debtor' revenues not meet the $6 million threshold, the Debtors' revenue continues to decline. Accordingly, due to the speculative nature of the $12.5 million royalty, that amount should not be included in the calculation of the Stalking Horse's bid.

B. **The $36 million "Earn Back" Provision is Impractical and Unworkable.**

12. The LOI's $36 million "earn back" provision proposed is impractical for many reasons, the foremost of which is that it requires the sales representatives, the majority of whom (or, more accurately described, the largest producers of whom) already have moved over to Seacret - having taken with them their established, existing networks and, now, are producing at that company - to return to WorldVentures (or the new and unproven Stalking Horse) and work even more in order to receive the compensation they already have earned and are owed.[1] Similarly, the LOI further provides no details regarding how those sales representatives are to be compensated, only vaguely referencing terms "TBD" based on "future sales targets under an agreed upon timeframe" [Dkt 92-5, page 2 of 8]. Not only would the sales representatives be required to put in additional work to get what they are already owed under terms and conditions that have not been disclosed nor even hinted at, but any payment they might receive is fully conditioned on their execution of a waiver of claims against the Debtors' estates [Dkt 92-5, page 2 of 8]. Similarly, the

---

[1] Sales representatives were transferred by WorldVentures Holdings, LLC to Seacret pursuant to the Limited Solicitation Agreement referenced in Seacret's Limited Objection [Dkt 142, page 2 of 8].

LOI proposes that the Stalking Horse will assume the "Representative Agreements" – under the Stalking Horse's undisclosed terms and conditions – but provides no guaranty that they ever will be paid. One wonders if any of the sales representatives will take such a deal or whether they would prefer to remain at an established, viable entity (i.e. Seacret) that currently compensates them or pursue their fortunes elsewhere. Regardless of the ultimate decisions of the sales representatives which, again, constitute the Debtors' largest group of creditors, stricter scrutiny reveals the $36 million "earn back" provision to be vague, ambiguous, and without substance, even ephemeral, and that amount should not be included in the calculation of the Stalking Horse's bid.

**C.    The LOI Does Not Provide Details Regarding the $10 Million Cash Portion of the Purchase Price.**

13.    The LOI does not provide any details regarding the $10 million "Cash Component" of the purchase price [Dkt 92-5, page 1 of 8]. Specifically, the LOI fails to identify the source of the funds and how those funds will be distributed. The Bid Procedures should disclose the parties who will be paid from the Cash Component, the amounts that will be paid to each party, and when those parties can expect to receive their payments.

**D.    The LOI Provides No Details Regarding the $11 Million of Existing Rewards Program Obligations to Be Assumed by the Stalking Horse.**

14.    The LOI is silent on the terms and conditions under which the Stalking Horse allegedly will assume rewards program benefits owed to members and representatives. We are only told that they are "to be determined with the Purchaser." As with the Cash Component of the purchase price, the Debtors should be required to identify those categories or classes of members and representatives that can expect to have their benefits honored, the methods by which the Stalking Horse will make the determination of what rewards the creditors will receive, and the value the recipients can expect to receive.

**E.      Debtors' Schedules Fail to Identify and Properly Classify Certain Creditors.**

15.     Before the Court can approve the Bid Procedures, it should require the Debtors to properly identify all creditors. For example, Matthew Morris is the only member of Braun et al. and party to this Objection that is listed on Debtors' schedules [Dkt 95, page 61 of 64]. The remaining parties to this Objection are not listed anywhere in the schedules.

**F.      The Debtors Have Failed to File the Asset Purchase Agreement.**

16.     As of the date of the filing of this Objection, four (4) weeks have passed since the Debtors' self-imposed deadline to file the Stalking Horse Asset Purchase Agreement ("**APA**"). Debtors reiterated this promise at the meeting of creditors. However, the Debtors have yet to file the APA with the Court or disclose its terms to the creditors. The Bid Procedures provide for a March 26, 2021 auction of the Debtors' assets, yet we still have no APA providing the terms and conditions upon which those assets purportedly will be sold. Without an APA, the creditors and the Court cannot properly evaluate the Stalking Horse bid, or any other matter related to the sale of the Debtors' Assets.

**G.      Lack of Transparency Regarding Stalking Horse Bidder.**

17.     The Debtors have failed to identify the Stalking Horse. While there may have been some legitimate concerns regarding the confidentiality of the stalking horse bid at the initial stages of this process, there is no justification as to why, a month after the APA was to be filed with the court, no one outside of the Debtors knows anything about the Stalking Horse other than the name of the shell company that will be signing the APA. This lack of transparency on the part of the Debtors means that the parties in interest are unable to determine if the Stalking Horse is even in the same industry as the Debtors and has the expertise and personnel to effectively continue the Debtors' operations and return the Debtors to profitability. The parties, including Braun et al., do

not have any financial information about the Stalking Horse nor its viability. This lack of financial information is critical because the Debtors' financials, as per their December 2020 and January 2021 Monthly Operations Reports [Dkt #143, page 3 of 8 and Dkt #144, page 3 of 8] , indicate the Debtors are losing money monthly and there is no evidence – nor do the creditors have any ability to assess whether - the Stalking Horse is capable of being profitable, so as to make good on any portion of its stated purchase price, thereby leaving the unsecured creditors with little to no hope of recovering any of the moneys owed to them.

18. The Court can contrast the Stalking Horse bid with that of the initial bid for the Debtors' assets that was submitted pre-petition by Seacret. Putting aside, for a moment, the fact that the Seacret bid is for a higher amount and more concrete in terms of real dollars to be paid than what has been submitted by the Stalking Horse, Seacret's bid also offered additional value such as a continuity of operations because most of the former largest producers at WorldVentures moved to Seacret under the provisions of the Limited Solicitation Agreement. In short, the transparency of the Seacret bid allows the creditors and the Court to accurately and fully evaluate its bid. Such transparency is completely lacking in the Stalking Horse bid.

19. Braun et al. reserve all rights to supplement or amend this Joinder and Objection, including to incorporate terms from the APA and related documents once they are filed, and to file additional objections or reservations of rights.

### III.    PRAYER

JANIE BRAUN, BRAUN MARKETING COMPANY, MATT MORRIS, RHONDA MORRIS, DR. TROY BROWN, KATHY BROWN, KARI SCHNEIDER, LISHA SCHNEIDER, BYRON SCHRAG,  AND MARTIN RUOF respectfully request that this Court grant this Objection and deny the Bid Procedures, or only allow the Bid Procedures consistent with this

Case 20-42492    Doc 169    Filed 03/10/21    Entered 03/10/21 14:26:44    Desc Main
Document    Page 9 of 9

Objection. Braun et al. also request such other and further relief in connection with the Bid Procedures to which they may show themselves to be justly entitled.

DATED: March 9, 2021.

> Respectfully submitted,
>
> */s/ Matthew M. Cowart*
> Sheldon E. Richie
> State Bar No. 16877000
> srichie@rg-austin.com
> Matthew M. Cowart
> State Bar No. 24007044
> mcowart@rg-sanantonio.com
> 100 Congress Avenue, Suite 1750
> Austin, Texas 78701
> 512-236-9220 telephone
> 512-236-9230 fax
> **COUNSEL FOR RAYMOND BRAUN, JANIE BRAUN, BRAUN MARKETING COMPANY, MATT MORRIS, RHONDA MORRIS, DR. TROY BROWN, KATHY BROWN, KARI SCHNEIDER, LISHA SCHNEIDER, BYRON SCHRAG, AND MARTIN RUOF**

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

> */s/ Matthew M. Cowart*
> Matthew M. Cowart