**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS,** | § | **Case No.: 20-42492** |
| **LLC,** *et al.* | § | |
| | § | **Joint Administration Requested** |
| **Debtors.**[1] | § | |

**MOTION OF MELODY YIRU FOR LIMITED RELIEF FROM THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. § 362(d) TO FILE HER MOTION FOR CLASS
CERTIFICATION IN THE DISTRICT COURT AND TO CONFIRM NO AUTOMATIC
STAY APPLIES TO THE NON-DEBTOR PARTIES, OR IN THE ALTERNATIVE, FOR
AN ORDER APPLYING FED. R. BANKR. PROC. 7023, PURSUANT TO FED. R.
BANKR. PROC. 9014(c) TO PERMIT THE FILING OF A MOTION FOR CLASS
CERTIFICATION IN THIS COURT AND RELATED RELIEF**

---

**14-DAY NEGATIVE NOTICE – LBR 4001:**

**YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN
THIS PLEADING. YOU SHOULD READ THIS PLEADING
CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF
YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE
THE RELIEF SOUGHT BY THIS PLEADING, YOU MUST FILE A
WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR
LEGAL BASIS FOR OPPOSING THE RELIEF.**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS
A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE
UNITED STATES BANKRUPTCY COURT AND SERVED UPON
THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14)**

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases
("Cases") have listed their identification and EIN numbers as: Spherature Investments LLC
("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings,
LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV
Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255;
WorldVentures Services, LLC ("WV Services") EIN #2220. The Debtors list their corporate
headquarters in some pleadings, but not others, as 5100 Tennyson Parkway, Plano, TX 75024.

**DAYS FROM THE DATE OF SERVICE** SHOWN IN THE
CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS
OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO
OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING
SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT
MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF
AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER,
THE COURT WILL THEREAFTER SET A HEARING WITH
APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE
HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT
RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.

Unsecured Creditor Melody Yiru, on behalf of herself and those similarly situated persons, by and through counsel, hereby moves, pursuant to 11 U.S.C. §§ 362(d), 362(c), 362(j) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Texas (the "**Local Rules**"), for limited relief from the automatic stay against all the above-captioned Debtors and Debtors in possession (the "**Debtors**") for the purpose of filing her motion for class certification in the United States District Court for the Northern District of Texas and to confirm the Stay does not apply to non-debtors, or, in the alternative, for an order applying Fed. R. Bankr. P. 7023, pursuant to Fed. R. Bankr. Proc. 9014(c), to permit the filing of a motion for class certification in this Court or proceedings to file a class proof of claim, and for related relief, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 362(d), 362(c), and 362(j) of the Bankruptcy Code, Bankruptcy Rules, 4001, 9014(c), 7023, and Local Rule

4001.

## **BACKGROUND**

3.        Ms. Yiru is the sole named plaintiff and proposed class representative in *Yiru v. WorldVentures Marketing, LLC et al.*, Case No. 3:17-cv-02155-S N.D. Tex.).  That case, filed in 2017, alleges that certain of the Debtors and other non-debtor parties engaged in unfair business practices and have operated a pyramid scheme, and that they continue to operate a pyramid scheme.  Yiru alleges among other things, that the revenues of the defendants' enterprise were primarily based on recruiting and involved other illicit business practices including bribery and foreign corrupt practices.  She alleges that each representative of the Debtor from 2013 and going forward, is entitled to rescind their contract and recover all restitution paid into the enterprise, less what has been paid out in commissions.  She also alleges that this differential can be established by common evidence for all class members, and that this Case is exactly the type of the case that the 5th Circuit Court of Appeals has held is appropriate for class certification and class-wide treatment.  *See Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629, 638-39 (5th Cir. 2016) (en banc), *cert denied*, 138 S. Ct. 76 (2017).  A true and correct copy of Yiru's operative Second Amended Complaint is attached as **Exhibit 1** to the Declaration of Blake J. Lindemann ("**Lindemann Decl.**") filed herewith.

4.        In her lawsuit, Yiru seeks to represent a class of all persons who joined WorldVentures, with certain exceptions.[2]  Yiru has preliminary estimated that the class is owed at minimum $400 million (assuming even a modest estimate of $2,000 owed to each class member),

---

[2] "Excluded from the class are the Defendants, family members, this Court, and any "Director" of World Ventures, including without limitation the positions listed as "Director," "Marketing Director," "Regional Marketing Director," "National Marketing Director," "International Marketing Director." (FAC, ¶ 74).

as a result of the Defendants' business operations. This does not include potential trebling of damages under the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), and other amounts owed. The proposed class of representatives comprises tens of thousands of persons and is therefore the largest group of unsecured creditors.  This claim in aggregate also is likely to the largest unsecured claim in this case.

4.      On December 21, 2020 (the "**Petition Date**"), each of the Debtors filed its voluntary petition (collectively, the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in this Court.  The Debtors are authorized to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

5.      After presenting these facts to the U.S. Trustee, Yiru was appointed as a member of the Unsecured Creditors' Committee [Docket No. 93].  Ms. Yiru withdrew her consideration for the Committee.  Yiru has yet to file a proof of claim on behalf of proposed class members, but intends to do so before the April 20, 2021, or as such date may be extended.  Of note, the Debtors have indicated they will finally give notice to more than 30,000 distributors who were under contract with the Debtors, but who have not received notice of these proceedings to date.

6.      Prior to the filing of its petition for relief under Chapter 11, Yiru and Defendants had been litigating their claims in three different courts and before an arbitrator for over three years.  On December 1, 2020, the Hon. Karen Gren Scholer, Northern District of Texas District Court Judge, entered a scheduling Order, and set June 1, 2021 as the last date for Ms. Yiru to file a motion for class certification.  A true and correct copy of the Scheduling Order is attached hereto as **Exhibit 2**.

7.      Ms. Yiru was not given notice of the bankruptcy cases.  Ms. Yiru has continued to

confer with the Debtors and is now informed that more than 30,000 distributors (members of her Class) will be given notice of the Bankruptcy Cases next week.

8.    Ms. Yiru now asks this Court for limited relief from the automatic stay, to complete the class certification process in the district court.  In light of the district court's familiarity with the applicable facts and law, it will be more efficient for that court to resolve the remaining issues as to whether the class should be certified.

9.    Ms. Yiru also requests confirmation that claims against non-debtor parties, who are conspirators as to the tort claims at issue in her lawsuit, are not impacted by the automatic stay and that litigation may proceed against any party that has not filed for bankruptcy (including additional parties Ms. Yiru will be adding to the Northern District of Texas action) based on what she has further learned through investigation and these Bankruptcy Cases.

10.    The fact that litigation will necessarily go forward against several third parties in District Court irrespective of these Cases, including the Debtors' founder and shareholder Wayne Nugent, further supports the request for limited relief from stay.  Having merits-issues decided in two forums as to non-debtor parties and debtor parties, could lead to duplication of efforts, inefficiencies, and potential inconsistency of rulings.

11.    Importantly, proceeding on the litigation does not appear to impact the Estates from a cost standpoint.  Counsel for the Debtors in the litigation, Phelps and Dunbar, LLP to have been paid by the insurance carrier(s) who has picked up coverage on the Class Claims.[3]  Also, the merits of the allegations would have to be heard in context of a claims allowance proceeding or in District Court.  Third, since the companies are being operated by a CRO, there is no argument that asking the founders Nugent and Stammen to answer for their conduct will distract from any matter at

---

[3] Phelps Dunbar is listed in one of the Debtor's schedules, Case No. 20-42492, p. 61 of 64.

hand pertaining to the estate.  Finally, a motion for class certification does not involve significant briefing at this point.  Ms. Yiru expects a motion, opposition, and reply.  Thus, there can be no complaint as to estate resources even if the Debtors now take the position that Phelps Dunbar will not be paid.

12.    Yiru now asks this Court for limited relief from the automatic stay, to complete the class certification process in the district court.

13.    Should this Court not grant limited relief from the automatic stay, then Yiru requests permission and leave to file her motion for class certification in this Court.

## **RELIEF REQUESTED**

14.    By this Motion, Yiru respectfully requests that the Court enter an Order, substantially in the form annexed hereto, pursuant to section 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001, confirming that the automatic stay does not apply to non-debtor parties, and granting limited relief from stay so that Ms. Yiru may file a motion for Class Certification in Federal District Court against the Debtors, and then returning to Bankruptcy Court, after the Order is amended for further proceedings related to the Debtors.

15.    Alternatively, Ms. Yiru requests the Court enter a Scheduling Order and authorize the filing of an adversary case and a Motion for Class Certification, or a motion for class certification in the main case.

## **ARGUMENT**

### **A. This Court Should Confirm that the Automatic Stay Does Not Apply to Non-Debtor Parties**

16.    "A comfort order is a bankruptcy term of art for an order confirming an undisputed legal result and often is entered to confirm that the automatic stay has terminated." *In re Ross*,

Case No. 18-11356 (Bankr. N.D. Miss. Feb. 6, 2019) *citing In re Hill*, 364 B.R. 826, 827 (Bankr. M.D. Fla. 2007). "Comfort orders are a mechanism by which a creditor seeks to protect itself from the potential ramifications of acting in violation of the automatic stay by obtaining a cloak of cover from the court." *In re Ermi*, 2006 WL 2457144, at *2 (Bankr. N.D. Ohio Aug. 3, 2006). The Court's authority to grant comfort orders such as this one generally derives from the fact that comfort orders often challenge the applicability of the automatic stay, a matter which solely concerns federal bankruptcy law. *See In re Williams*, 545 B.R. 917, 923 (Bankr. S.D. Tex. 2016).

17.     11 U.S.C. § 362(j) of the Bankruptcy Code provides, "[o]n request of a party in interest, the court *shall* issue an order under subsection (c) confirming that the automatic stay has been terminated." 11 U.S.C. § 362(j) (emphasis added). Motions for comfort orders brought under the auspices of § 362(c) are thus mandatory when sought by any party. *Hill*, 364 at 829. *See also In re Murphy*, 346 B.R. 79, 80 (Bankr. S.D.N.Y. 2006).

18.     Ms. Yiru seeks an Order providing that the automatic stay never came into effect concerning her claims against non-debtor parties, including defendants Wayne Nugent, Daniel Stammen, Michael Azcue, and other third-party conspirators and operators of the pyramid schemes who are not debtors in these cases. It is axiomatic under § 362, that the automatic stay does not apply to actions against a non-debtor. *See In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007). Moreover, no motion to extend the stay has been filed during this case to which the Debtors had a burden to do and an evidentiary burden to sustain, nor would such grounds exist to extend a stay as to non-debtor parties even if the Debtors had filed such a Motion. *See In re Divine Ripe, L.L.C.*, 538 B.R. 300, 302 (Bankr. S.D. Tex. 2015). Thus, the Court should enter an Order pursuant to 11 U.S.C. § 362(j) and 11 U.S.C. § 362(c) confirming the automatic stay does not apply to non-debtor parties.

**B. This Court Should Exercise Its Discretion to Lift the Automatic Stay for Limited Proceedings in the District Court as to the Debtors to allow the Filing of a Class Certification Motion**

19.     Section 362(d)(1) of the Bankruptcy Code provides that, upon a request from a party in interest, the court shall grant relief from the automatic stay "for cause." The term "cause" is not defined in the Bankruptcy Code, but rather must be determined on a case-by-case basis based on an examination of the totality of the circumstances. *Reitnauer v. Texas Exotic Feline Found.* (*In re Reitnauer*), 152 F.3d 341, 343 n. 4 (5th Cir. 1998). "There is no mandatory standard for finding 'cause' in the Fifth Circuit." *In re Choice ATM Enters.*, Case No. 14-44982-DML, 2015 Bankr. LEXIS 689 at *12 (Bankr. N.D. Tex. Mar. 4, 2015) (*citing Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*), 440 F.3d 238, 253 (5th Cir. 2006)).

20.     Courts in this jurisdiction have identified various factors to consider in determining whether or not cause exists to lift the automatic stay. Though not all of the factors will be relevant in every case, these factors include: good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay:

1) whether the relief will result in a partial or complete resolution of the issues;
2) lack of any connection with or interference with the bankruptcy case;
3) whether the other proceeding involves Debtor as a fiduciary;
4) whether a specialized tribunal has been established to hear the particular cause of action;
5) whether the debtor's insurer has assumed full responsibility;
6) whether the action primarily involves third parties;
7) whether litigation in the other forum would prejudice the interests of other creditors;
8) whether the judgment claim arising from the other action is subject to equitable subordination;
9) whether movant's success would result in a judicial lien avoidable by the debtor;
10) interests of judicial economy and the expeditious and economical resolution of litigation;
11) whether the proceedings have progressed to the point that parties are ready for trial;
12) impact of the stay on the parties and the balance of harm.

*In re Mosher*, 578 B.R. 765, 772-73 (Bankr. S.D. Tex. 2017) (*quoting In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013); *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)).   Court have also noted the legislative history of Section 362(d)(1), which suggests that "cause" may include "a desire to permit an action to proceed to completion in another tribunal." *Choice ATM Enters.*, 2015 Bankr. LEXIS 689 at *6-7 (quoting H.R. Rep. No. 95-595, 343-44 (1977)); *Pursue Energy Corp. v. Miss. State Tax. Comm'n*, 338 B.R. 283, 291 (S.D. Miss. 2005) (same).

21.    Congress noted that "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Santa Clara County Fair Ass'n., Inc.*, 180 B.R. 564 566 (9th Cir. 1995) (*citing* S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5785, 5836); *accord In re F-Squared Inv. Mgmt. LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016).

22.    All twelve prongs when balanced, weigh in favor of lifting the automatic stay on a limited basis, and allowing the district court to consider the motion for class certification.

23.    *First*, relief from stay will result in complete resolution of the *class* issues.   Upon district court resolution of the class certification issue which would be comprised of one motion, an opposition, and a reply, the claim then proceeds as a certified class in these Cases, or Ms. Yiru proceeds as a group claim with other representatives.

24.    *Second*, a ruling on the Motion will not interfere with how the bankruptcy case proceeds.   Ultimately, the Debtors continue to operate a pyramid scheme and ponzi scheme and are otherwise not proceeding in good faith.   At the original meeting of creditors they failed to

disclose the identity of the principals proposed to be buying the assets, and at the continued meeting of creditors they could not even confirm that they were no longer engaged in their illicit pre-petition recruiting practices.

25.     *Third*, Ms. Yiru's proceeding does not involve debtor as a fiduciary.

26.     *Fourth*, the United States District Courts are tribunals that regularly hear motions for class certification pursuant to Fed. R. Civ. Proc. 23, although they are not specialized in any one area.  On balance, this factor favors granting limited relief from stay.

27.     *Fifth*, the Debtors' insurers appear to have picked up the defense of this case, and may provide indemnity on a portion of the claims, if allowed.  Of note, even though the total claim is more significant than the insurance coverage, Ms. Yiru does not seek to "liquidate" the claim as *against the Debtors* in the District Court, but rather seeks to determine class certification only.  Thus, this factor favors granting limited relief from stay.

28.     *Sixth*, the action involves more than four non-debtor parties; Wayne Nugent, Daniel Stammen, Michael Azcue, and WorldVentures Foundation.  The action also involves other non-debtor conspirators.  Thus, this factor militates in favor of granting the Motion on a limited basis.

29.     *Seventh*, Debtors will not be prejudiced by lifting the stay for the district court to finalize the work in the class certification Motion it has scheduled. Debtors will also benefit from the efficiency of proceeding in a Court that is familiar with the issues.

30.     Class certification will create a valuable economy of scale and therefore benefit the estates. Allowing a single class proof of claim will eliminate the filing, review and management of thousands, if not hundreds of thousands, of claims. Additionally, the single class proof of claim will be resolved through one analysis that would otherwise have to be repeated time and time again. Without class certification, there also is a substantial likelihood that many creditors with

valid claims against the estate will lose their ability to make those claims and will obtain no relief. To date, the Debtors have not notified the distributors of the right to make a claim. The Debtors also have not informed distributors of the bar date for filing claims. Thus, the only way many members of the proposed class are likely to obtain relief for their pre-petition injuries is if Ms. Yiru is permitted to file a claim on their behalf.

31.     *Eighth* and *Ninth*, any judgment to be obtained is not subject to equitable subordination, and success would not result in a judicial lien avoidable by the debtor. *Tenth*, judicial economy would be advanced by having one Court preside over the class certification issues, and having the same Judge do so would advance the economic resolution of litigation. This is particularly the case here, since the Debtors have their own counsel provided by the insurance carrier. Thus, these factors support lifting of the stay on a limited basis.

32.     *Eleventh*, the proceedings have not progressed to the point that the parties are ready for trial, but the parties are ready for Class Certification, which is the only limited stay relief as against the debtors.

33.     *Finally*, the stay will adversely impact Ms. Yiru, and the balance of the harms support a lifting of the automatic stay. For all of these reasons, the Motion for relief from stay should be granted.

### C. In the Alternative, this Court Should Permit Ms. Yiru Leave to File Her Motion for Class Certification in This Court or File a Class Proof of Claim

34.     Bankruptcy Rule 9014(c) provides, in pertinent part that: "[t]he court may at any stage in a particular matter direct that one or more of the rules in Part VII shall apply." One of those Part VII rules is Bankruptcy Rule 7023, which provides that "Rule 23 F. R. Civ. P. applies in adversary proceedings." Bankruptcy Courts have recognized that pursuant to Bankruptcy Rule

9014(c) they have the discretion to apply Bankruptcy Rule 7023 in a contested matter to adjudicate class certification under the standards set forth in Rule 23 of the Federal Rules of Civil Procedure. *See*, *e.g.*, *In re Kaiser Group Int'l. Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002).

35.    Other courts have followed this ruling. *See*, *e.g.*, *In re MF Global Inc.*, 512 B.R. 757 (Bankr. S.D.N.Y. 2014). If this Court declines to lift the automatic stay to permit renewal of the class certification motion in the district court, then application of Bankruptcy Rule 7023, and by extension, Federal Rule 23, will represent the only effective and efficient remedy available for the millions of putative class members. Certification of the class will permit the resolution of all their claims through the claim filed by the class representative(s), in a more expeditious and efficient manner than if the Court and Debtors had to address the claim of each class member individually. It will also ensure that all class members are afforded equal treatment.

36.    Other Bankruptcy Courts in Texas have approved the certification of classes within bankruptcy case process pursuant to Federal Bankruptcy Rule 7023.  *See e.g. In re Think Finance, LLC*, Case No. 17-33964, Dkt. 6/12/2019, Dkt. No. 1412 (S.D. Bankr. Tex.); *In re Iheart Media, Inc.*, Case No. 18-31274, Dkt. No. 2213, 12/17/2018 (S.D. Bankr. Tex.). There is, at most, minimal burden on Debtors or these cases by application of Bankruptcy Rule 7023. Class certification can be expeditiously performed.  This is uniquely the type of case that the 5th Circuit Court of Appeals en banc (with cert. denied), has recognized as being amenable to class-wide treatment. *Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629, 638-39 (5th Cir. 2016) (en banc), *cert denied*, 138 S. Ct. 76 (2017).

37.    Resolving the motion for certification will not delay or complicate the administration of Debtors' Cases. To the contrary, permitting the class and allowing one class

proof of claim will streamline the claims process for Debtor and diminish the burdens to administer Debtors' estates.

38.     Ms. Yiru has not filed a claim to date.  The Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and applicable case law all support permitting a claim on behalf of the above-defined Class in this action. The decision of whether to permit the Class Claim brought herein lies within the discretion of this Court. Movants request that, on this record, the Court exercise its constitutional power to grant Ms. Yiru leave to file a Class Claim. This Court has authority to adjudicate class claims filed against a debtor. *In re Am. Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988); *Birting Fisheries, Inc. v. Lane (In re Birting Fisheries, Inc.*), 92 F.3d 939 (9th Cir. 1996); *In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989); *In re Craft*, 321 B.R. 189 (Bankr. N.D. Tex. 2005).

39.     Federal Rule of Bankruptcy Procedure 7023, which incorporates Rule 23 of the Federal Rules of Civil Procedure, similarly confirms that bankruptcy courts have authority over nationwide class actions. *In re Am. Reserve Corp.*, 840 F.2d at 492.  Many Courts have upheld the jurisdiction of bankruptcy courts over class actions when the criteria expressed in Rule 23 are satisfied. *See In re Charter Co.*, 876 F.2d at 871; Reid, 886 F.2d at 1469-70; *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn*), 404 B.R. 841, 848-49 (Bankr. S.D. Tex. 2009); *see also Davis v. Davis (In re Davis*), 194 F.3d 570, 572 (5th Cir. 1999) (citing cases standing for the proposition that class actions are available in adversary proceedings before bankruptcy court).

40.     Moreover, many of these cases have involved more than one debtor. *See In re Wilborn*, 404 B.R. at 869; *In re Montano*, 2007 Bankr. LEXIS 3125, 2007 WL 2688606, at *2 (Bankr. D.N.M. 2007); *Guetling v. Household Fin. Servs., Inc. (In re Guetling*), 312 B.R. 699, 704 (M.D. Fla. 2004); *Porter v. Nations Credit Consumer Discount Co. (In re Porter*), 295 B.R. 529,

539 (Bankr. E.D. Pa. 2003); *Beck v. Gold Key Lease, Inc. (In re Beck*), 283 B.R. 163, 173 (Bankr.

E.D. Pa. 2002); *Williams v. Sears, Roebuck & Co. (In re Williams*), 244 B.R. 858, 867 (S.D. Ga.

2000); *Nelson v. Providian Nat'l Bank (In re Nelson*), 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999)).

41.     Here, Ms. Yiru requests in the alternative, that this Court exercise its discretion to

authorize the filing of a motion for class certification or the filing of a class proof of claim since:

(i) the benefits derived from the filing of a class claim are consistent with the goals of bankruptcy

and/or superior to the typical claims procedure; and (ii) the proposed class complies with each of

the requirements of Federal Rule of Civil Procedure 23. *See, e.g.*, *Gentry v. Siegel*, 668 F.3d 83 at

92–94; *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011).

42.     That the benefits to be achieved from the allowance of a class claim are consistent

with the goals of bankruptcy is clear. For all practical purposes, this Court's decision will

determine whether any of the many thousands of claimants will have any meaningful opportunity

to present their claims and to participate in the Debtors' bankruptcy cases. *See In re Am. Reserve*

*Corp.,* 840 F.2d at 489. Absent prosecution of the Class Claim, this known class of creditors –

which are going to be recognized via notice due only to the effort of above-signed counsel – would

be barred from advancing their interests herein. *See In re Spring Ford Indus., Inc*., No. 02–15015

(DWS), 2003 WL 21785960 (Bankr. E.D. Pa. July 25, 2003) (uncertified class claimants were

known creditors where the debtor (1) listed litigation in its statement of financial affairs, (2) filed

a notice of automatic stay in the litigation, and (3) provided notices to class counsel); *In re DDI*

*Corp.*, 304 B.R. 626, 629 (Bankr. S.D.N.Y. 2004) (*citing Spring Ford* with approval and stating

that "if . . . the class action was commenced against the debtor prior to the petition date, the class

may be a 'known creditor.'"); *In re Amdura Corp.*, 170 B.R. 445, 450–52 (D. Col. 1994) (holding

that if Rule 7023 is not applied, actual notice of the bar date must be provided to all members of

the class); *In re Mortgage & Realty Trust*, 125 B.R. 575, 581 (Bankr. C.D. Cal. 1991) (observing that notice to potential class claimants was "not comprehensive enough to preserve the benefits of the class action device").

43.     The class proof of claim is a critical starting point to the establishment of a fair process to allow class members a meaningful opportunity to participate in this matter. Prosecution of a class claim also promotes two of the primary goals of the Bankruptcy Code: to ensure creditor compensation and to promote equality of distribution. *See, e.g., In re Charter Co.*, 876 F.2d at 871; *In re Am. Reserve Corp.*, 840 F.2d at 489. These goals can only be achieved if all of a debtor's claimants are given a meaningful opportunity to submit and present their claims. Here, the application of Bankruptcy Rule 7023 is the best method to achieve these critical bankruptcy goals. *See In re Am. Reserve Corp.*, 840 F.2d at 490; *In re BGI, Inc.*, 465 B.R. 365, 377 (Bankr. S.D.N.Y. 2012); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 67 (Bankr. D. Del. 2002); *In re Commonpoint Mortgage Co.*, 283 B.R. 469, 4890-81 (Bankr. W.D. Mich. 2002); *In re Zenith Labs, Inc.*, 104 B.R. 659, 662–63 (D.N.J. 1989).

44.     The treatment of the putative class for claims purposes herein will also serve to streamline the Debtors' noticing obligations and claims objection process. *See United Companies*, 276 B.R. at 376 (comparing class proof of claim to omnibus claims objection and noting both promote expediency); *In re Grocerland Coop, Inc.*, 32 B.R. 427, 435 (Bankr. N.D. Ill. 1983). Moreover, the proposed class certainly meets the requirements of Rule 23. In order to certify a class action, a claimant must satisfy the four elements of Rule 23(a), as well as the requirements of Rule 23(b). Once its requirements are met, Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to purchase his claim as a class action." *Shady Grove Orthopedic Assocs. P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010).

45.   Rule 23(a) states as follows: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The proposed class meets all requirements of Rule 23(a).

46.   First, the class is so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be "inefficient, costly, time- consuming, and probably confusing," and inquiry that a court may make based on "common sense assumptions." *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987) (*quoting Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D. Pa. 1979)); *Ardrey v. Federal Kemper Ins. Co.*, 142 F.R.D. 105, 111 (E.D. Pa. 1992). Numerosity generally is met if a proposed class has at least 40 members. *Perez v. Safety-Sys., Inc.*, 253 F.R.D. 508, 518 (N.D. Cal. 2008); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913–14 (9th Cir. 1964). Here the class is comprised of more than 40,000 persons. This requirement is thus, easily satisfied.

47.   Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "threshold of commonality is not high." *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). Indeed, to satisfy the commonality requirement under Rule 23(a)(2), class members need raise only one contention that is central to the validity of each class member's claims. *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014); see also Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) ("The commonality requirement

will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.").

48.    The Defendants' conduct presents several questions of law and fact common to Ms. Yiru and the Class including whether a) the person joined WorldVentures as a representative, and b) the entity was primarily engaged in recruiting when the member joined.  As held recently by the 5th Circuit Court of Appeal en banc, these are just the sorts of issues subject to common treatment.  *Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629, 638-39 (5th Cir. 2016) (en banc), *cert denied*, 138 S. Ct. 76 (2017).

49.    Rule 23(a)(3) requires that the claims of the proposed class representatives be typical of the claims of the proposed class as a whole. Fed. R. Civ. P. 23(a)(3). The most prominent consideration under this provision is that there is an absence of an adverse interest between the representative parties and other members of the class. *Tidwell v. Schweiker*, 677 F.2d 560, 566 (7th Cir. 1982), *cert. denied*, 461 U.S. 905 (1983); *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058-59 (5th Cir. 1979).

50.    Typicality does not mean that the claims of class members must be identical. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *Phillips v. Joint Legislative Committee on Performance and Expenditure Review (PEER) of the State of Mississippi*, 637 F.2d 1014, 1024 (5th Cir. 1981), *cert. denied*, 456 U.S. 960 (1982). Rather, a claim by a representative party may be deemed typical if it is one that should be reasonably expected to be raised by members of the proposed class. *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F. Supp. 714, 721 (N.D. Ill. 1968).

51.    Thus, in instances such as here where it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims

of the representative parties will be typical of the absent class members. *Eisenberg v. Gagnon*,766 F.2d 770, 786 (3d Cir. 1985); *Cumberland Farms Inc. v. Browning-Ferris Industries, Inc.*, 120 F.R.D. 642, 646 (E.D. Pa. 1988); *In re U.S. Financial Securities Litig.*, 69 F.R.D. 24, 35 n.12 (S.D. Cal. 1975); *Frankford Hospital v. Blue Cross of Greater Philadelphia*, 67 F.R.D. 643, 646 (E.D. Pa. 1975). The 5th Circuit affirmed the typicality requirement in *Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629, 638-39 (5th Cir. 2016) (en banc), *cert denied*, 138 S. Ct. 76 (2017), even though some of the terms and conditions between distributors varied. The typicality standard is clearly met here.

52.     Rule 23(a)(4) requires that "the representative party will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A class has adequate representation if (1) counsel for the named plaintiffs is qualified, experienced, and generally able to conduct the suit, and (2) the class representative's interests are not antagonistic to those of the unnamed members of the class. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982); *In re First Interregional Equity Corp.*, 227 B.R. 358, 368-69 (Bankr. D.N.J. 1998). "Absent contrary evidence from the party opposing class certification, adequacy of representation is generally presumed." *Madison Assocs. v. Baldante*, 183 B.R. 206, 217 (Bankr. C.D. Cal. 1995).

53.     Here, Ms. Yiru is an adequate class representative not only because she claims she was injured by the alleged misconduct, but also because she has an understanding of the suit and her role in it, and already has demonstrated a willingness to sacrifice the time and energy necessary to serve as class representative. Moreover, Ms. Yiru's counsel has significant experience in prosecuting class actions such as those alleged here.

54.     Finally, the Class meets the requirements of Rule 23(b)(3), which states that a class should be certified where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *See also Amchem Products*, 521 U.S. at 615 (Rule 23(b)(3) inquiry questions whether class treatment will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results"); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . [and] focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1988); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (the predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant" class treatment).

55.     The relevant inquiry under Rule 23(b)(3) is whether common issues will predominate, not whether plaintiffs will prevail on the merits. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009) (*quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008); Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131 (2009) (what "really matters" at class certification is "dissimilarity that has the capacity to undercut the prospects of joint resolution," while the "question of whether the class exhibits some fatal similarity—a failure of proof as to all class members on an element of their cause of action— is properly engaged as a matter of summary judgment").

56.     Here, the central, overriding, and predominant questions include whether the Debtor's practices constituted an unlawful pyramid scheme and endless chain so common question predominate.  Finally, employing a class procedure would be superior to other available methods for the fair and efficient adjudication of the controversy. Within this requirement a court should consider the difficulties likely to be encountered in managing a class action and whether the objective of the class action procedure will be achieved, and then compares alternative mechanisms for dispute resolution. *See* Fed. R. Civ. P. 23(b)(3)(D); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 194 (3d Cir. 2001); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

57.     A class action here is also the superior method of adjudicating this controversy because many class members may be unaware of a violation of their rights or may have individual claims for relatively small amounts that would make the likelihood of individual litigation unlikely. *See*, *e.g.*, *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV1754-L, 2003 U.S. Dist. LEXIS 22547, at *14 (N.D. Tex. Dec. 11, 2003) (granting class certification and finding class action to be appropriate where class members' individual claims would be for small amounts of money). Based on the foregoing, Ms. Yiru therefore request this Court grant Ms. Yiru leave to file an adversary case and a motion for class certification.

## **PRAYER**

58.     Ms. Yiru requests that the Court grant relief from stay on a limited basis to file a motion for class certification in the District Court to the Northern District of Texas, to confirm no automatic stay applies to non-debtor parties, or in the alternative, to grant Ms. Yiru leave to file an adversary proceeding and pursue her claim on a class-wide basis.

DATED: March 19, 2021                    Respectfully submitted by:

                                         /s/ *Blake J. Lindemann*
                                         Blake J. Lindemann
                                         California Bar No. 255747
                                         E-mail:  blake@lawbl.com
                                         **LINDEMANN LAW FIRM, APC**
                                         (*pro hac vice*)
                                         433 N. Camden Drive, 4th Floor
                                         Beverly Hills, CA 90210
                                         Telephone No: 310-279-5269
                                         Facsimile No: 310-300-0267

                                         -and-

                                         Rachel E. Montes
                                         Texas Bar No. 45005925
                                         Rachel@MontesLawGroup.com
                                         **MONTES LAW GROUP, PC**
                                         1121 Kinwest Parkway, Ste. 100
                                         Irving, TX 75063
                                         Telephone No: 214-522-9401
                                         Facsimile No: 214-522-9428


                                         COUNSEL FOR CREDITOR MELODY YIRU
                                         AND THOSE SIMILARLY SITUATED

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I have spoken with counsel for the Debtors regarding this Motion on two occasions.  The Debtors noted that they opposed the Motion.  The parties continue to explore and consider resolution of relief requested in the Motion.


/s/ *Blake J. Lindemann*
Blake J. Lindemann


## **CERTIFICATE OF SERVICE**

On March 19, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. Bankruptcy Court, Eastern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve the parties individually or through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.


/s/ *Blake J. Lindemann*
Blake J. Lindemann

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS,** | § | **Case No.: 20-42492** |
| **LLC,** *et al.* | § | |
| | § | **Joint Administration Requested** |
| **Debtors.**[1] | § | |

**ORDER GRANTINGMOTION OF MELODY YIRU FOR LIMITED RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) TO FILE HER MOTION
FOR CLASS CERTIFICATION IN THE DISTRICT COURT AND TO CONFIRM NO
AUTOMATIC STAY APPLIES TO THE NON-DEBTOR PARTIES, OR IN THE
ALTERNATIVE, FOR AN ORDER APPLYING FED. R. BANKR. PROC. 7023,
PURSUANT TO FED. R. BANKR. PROC. 9014(c) TO PERMIT THE FILING OF A
MOTION FOR CLASS CERTIFICATION IN THIS COURT AND RELATED RELIEF**

Upon the Motion of Melody Yiru, on behalf of herself and all other similarly situated

persons, for Order Lifting the Automatic Stay to file a Motion for Class Certification in the District

Court and to Confirm No Automatic Stay Applies to Non-Debtor Third Parties, Or, In The

Alternative, For An Order Applying Fed. R. Bankr. Proc. 7023, Pursuant To Fed. R. Bankr. Proc.

9014(c), To Permit The Filing Of A Renewed Motion For Class Certification of Class Claim In

This Court And Related Relief; and the Court finding that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding pursuant to 28

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") have listed their identification and EIN numbers as: Spherature Investments LLC ("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings, LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255; WorldVentures Services, LLC ("WV Services") EIN #2220. The Debtors list their corporate headquarters in some pleadings, but not others, as 5100 Tennyson Parkway, Plano, TX 75024.

U.S.C. §157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and

it appearing that the relief requested in the Motion is in the best interest of the bankruptcy estates

and creditors, and after due deliberation, and good and sufficient cause appearing therefore, it is

hereby:

ORDERED that the Motion is granted; it is further

ORDERED that the automatic stay is lifted as against the Debtors solely so Ms. Yiru may

pursue her motion for class certification in the case of *Yiru v. WorldVentures Marketing, LLC et

al.,* Case No. 3:17-cv-02155-S, in the United States District Court for the Northern District of

Texas [or, in the alternative, that pursuant to Rules 7023 and 9014(c) of the Federal Rules of

Bankruptcy Procedure, Yiru may file her motion for class certification or class proof of claim in

this Court]; and it is further

ORDERED that the automatic stay in these proceedings does not apply to any claims Ms.

Yiru has against non-debtor persons, and is lifted as to the claims Ms. Yiru has against non-debtor

third parties.

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation of this Order.


Dated: Plano, Texas _____, 2021




_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

Submitted and Prepared by:

/s/ *Blake J. Lindemann*
Blake J. Lindemann
California Bar No. 255747
E-mail:  blake@lawbl.com
**LINDEMANN LAW FIRM, APC**
(*pro hac vice*)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

COUNSEL FOR CREDITOR MELODY YIRU
AND THOSE SIMILARLY SITUATED

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| MELODY YIRU, aka SHI YIRU, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:17-CV-02155-S |
| | § | |
| WORLDVENTURES HOLDINGS, LLC, *et al.*, | § § | |
| | § | |
| Defendants. | § | |
| | § | |

<u>**PLAINTIFF'S RENEWED FIRST AMENDED COMPLAINT**</u>

I.    **INTRODUCTION TO THE CASE**

1.      As the Federal Trade Commission has again enunciated this year, evidence of a pyramid scheme comes in the form of both design as well as in practice.  *FTC v. James Noland et al.*, Case No. 2:20-cv-00047-DWL, transcript of proceedings, Dkt. No. 105 (D. Ariz. February 16, 2020).  The compensation plan, the commission documents, the supposed terms and conditions, and the marketing materials and website here reflect the *design* of a pyramid scheme.

2.      So too, is WorldVentures a pyramid scheme *in practice*.  Here, 100% of the purchases were by individuals who are affiliates within the program. Thus, the overwhelming volume of individuals are purchasing for the business opportunity and not strictly for the retail product.  Finally, the FTC speaks of the "loss position," i.e. whether a substantial number of those who have joined the organization, pay more than they receive back from the company.  Here, at minimum, 97% of the representatives of WorldVentures are in a "loss position."  *See also* Ginger Jin, former director of the FTC's Bureau of Economics; Andrew Stivers, FTC deputy director; and Douglas Smith, FTC economist, "The Alchemy of a Pyramid: Transmuting business opportunity into a negative sum wealth transfer." *SSRN* (Dec. 3, 2019), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3497682.  These are the sorts of fact questions that cannot be decided on a motion to dismiss.

3.      As stated last month by FTC Commissioner Noah Phillips in his individual capacity, former Chief Counsel to U.S. Sen. John Cornyn: "this past year has been an active one for the FTC on many fronts, but in particular with respect to activities involving illegal multi-level marketing. Sellers beware: we've been aggressive in the cases we've been pursuing, the remedies we're seeking, and our willingness to go to court. Some watching today may not like everything we've been doing, and I regret that my remarks are unlikely to put them at ease." *Keynote Remarks of Commission Phillips at the DSA Legal & Regulatory Summit* (October 15, 2020) (complete remarks at https://www.ftc.gov/public-statements/2020/10/keynote-remarks-commissioner-phillips-dsa-legal-regulatory-summit).

4.      WorldVentures' business practices is equally and in some respects, more egregious than the three exemplar cases Commissioner Phillips discussed in his remarks.  WorldVentures represented to Plaintiff Melody Yiru that she could "make a lot of money," "double your profits," and make an extra $20,000 by recruiting others to become WorldVentures "sales representatives." Plaintiff and members of the class all joined WorldVentures and became "sales representatives."

5.      However, Plaintiff did <u>not</u> make money as promised. Like the hundreds of thousands of WorldVentures representatives before and after her, Plaintiff failed. Plaintiff and the class failed even though they were committed and put in the time and effort. They failed because they were doomed from the start by a WorldVentures marketing plan that systematically rewards recruiting representatives over sales of travel packages, and WorldVentures is nothing more than a site that compiles travel package plans from the website (often at prices significantly in excess of what a consumer can obtain from Expedia). Only 3% of the members of WorldVentures will see a profit, according to WorldVentures own statistics.

6.      Defendants run an illegal pyramid scheme. Defendants have been banned from operating in Norway based on the Court system there finding that they were operating an illegal pyramid scheme.  Defendants take money in return for the right to sell travel membership services and the right rewards for recruiting other participants into the pyramid.

7.      Accordingly, Plaintiff, for herself, and all others similarly situated, and the general public, allege:

II.      **TYPE OF ACTION**

8.      Plaintiff sues for herself and for all persons who were WorldVentures representatives from May 1, 2013 until the present under California's Endless Chain Scheme Law (California's Penal Code § 327 and California Civil Code § 1689.2), California's Unfair Competition Law (Business and Professions Code §17200 *et seq.*), False Advertising Law (Business and Professions Code §17500), and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. against all defendants for the operation and promotion of an inherently fraudulent endless chain scheme.

9.     Plaintiff also brings a declaratory relief Count that the entire purported contract is illusory, and thus a purported "choice of law," and other provisions in the so-called "agreement," are not enforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Plaintiff files her renewed First Amended Complaint based on the challenges to the original First Amended Complaint that were ruled by this Court to be moot, and the subsequent Amended Final Award issued by AAA Arbitrator Hon. Carlos G. Lopez (ret.) on October 26, 2020.

III.     **PARTIES**

11.     Plaintiff Melody Yiru aka Shi Yiru is and at all relevant times was an individual who resided in Los Angeles County, California. Yiru became an WorldVentures representative in September of 2015. Plaintiff was deceived by WorldVentures' misleading opportunity believing the opportunity was a legitimate way to earn money (even though that was false), and Plaintiff Yiru did in fact lose money as a result of Defendants' unfair, unlawful, and fraudulent business practice. Yiru's injuries arise from the predicate acts themselves in that she provided a monthly payment to WorldVentures for over a year, she put significant effort into the opportunity, the WorldVentures entities were destined to fail as an illegal Ponzi scheme and pyramid scheme, and the money Yiru placed into the scheme was used by the Individual defendants as later defined, to live lavish life styles, and was reinvested in the business to create an air of propriety including office space, lavish trips, and conferences.  Since Yiru's money went into the use or investment by Defendants as racketeering income, Plaintiff was injured.

12.     Yiru paid WorldVentures a start-up amount of $510.92 on or about September of 2015, and then monthly amounts ranging between $110.98 and $114.98 per month from October 1, 2015 to April 4, 2017, totaling $2,675.00.  Yiru was recruited by WorldVentures, the defendants and her upline Meihong Liu.  She was told that the only way to earn money was to recruit others.

13.     WorldVentures and the Individual Defendants who created, countenanced, and pedaled the marketing program, represented to Yiru that WorldVentures was a "home-based business with low overhead and $150 million in revenue."  Further the presentation falsely stated that "for every $199 sale, you receive $20." This representation suggestively suggested and

implied that a "sale" was possible, when in reality the mentioning of "sale" meant in practice the recruitment of a new representative.

14.     WolrdVentures and the Individuals Defendants tout that an "average bonus" of $1,500 can be made, stating that 90 customers will be in the left line and 90 customers in the right line.   To effectuate these representations, WorldVentures presents a picture that demonstrates a recruiting endless chain.  The representation of customers with the chain is false because if a person is recruited within the network and signs up as a representative and below the participant in the chain, the person cannot be characterized as a "customer."

15.     WorldVentures Holdings, LLC, is a limited liability company under the laws of Nevada with its principal place of business in Nevada ("WV II").

16.     WorldVentures, LLC ("WV") is a Nevada limited liability company that is part of the corporate family of WorldVentures, and responsible for the acts alleged in this Complaint. WV, at all times relevant in this Complaint, did business in the State of California.

17.     WorldVentures Marketing, LLC ("WorldVentures") is another company that is part of the corporate family of WorldVentures, as is responsible for the acts alleged in this complaint. WorldVentures, at all times relevant in this Complaint, did business in the State of California.

18.     WorldVentures Foundation ("Foundation") is a Texas Corporation that is part of the corporate structure of WorldVentures, and responsible for the acts alleged in this Complaint. Foundation, at all times relevant in this Complaint, did business in the State of California. Foundation is registered to do business in the State of California with the California Secretary of State.

19.     Defendant Wayne Nugent ("Nugent") is a natural person and resident of the State of Texas.  He may be served with process at 1524 Van Winkle Drive, Plano, Texas, or wherever he may be found.  At all times relevant in this Complaint, Nugent reached the top one percent of distributors, has arranged for significant downlines and chains of recruited distributors, has unlawfully placed promoters and henchmen in higher positions of the chain, has maintained websites and training and recruitment videos, and is considered to be the spokesperson and leader

of the WorldVentures' entities.  The promotional and recruitment videos, seminar materials, and presentations were promoted and created by Nugent in the course of conducting the enterprises' affairs, and not conducting his own individual affairs.  Nugent was aware at all times as a promoter of the scheme that the revenues reaped in the business were primarily derived from recruitment of new representatives, as opposed to the sale of legitimate retail products.  On the WorldVentures' website, its co-founder Wayne Nugent's profile even proclaims that he is "the most passionate evangelist for Network Marketing as the premier distribution channel of leisure travel."  Nugent had meetings with secretly placed representatives in the organization that were not representatives as part of the field who were actually doing the work, Nugent improperly offered bonuses to certain individuals based on recruitment, he knew that the WorldVentures business could not engage in legitimate retail sales, knew that countless and nearly all representations failed financially, and that WorldVentures could not make its commission payment, and in fact faltered on commission payments because the enterprise is a pyramid scheme and Ponzi scheme.

20.     Nugent has acted and continues to act as managing-member of Defendant WorldVentures, Foundation, and Defendant WV.

21.     Defendant Michael Azcue ("Azcue") is a natural person and resident of the State of Texas. He may be served with process at 6400 Windcrest #1134, Plano TX 75024, or wherever he may be found.  From formation of WorldVentures until at least December 15, 2015 Azcue acted as one of the two controlling managing-members of WorldVentures in concert with Defendant Nugent.

22.     Defendant Daniel Stammen ("Stammen"), is a natural person and resident of the State of Texas or wherever he may found.  Defendant Stammen has acted and continues to act as managing-member of Defendant.

23.     Defendant Michael Azcue ("Azcue") is a natural person and resident of the State of Texas. He may be served with process at 6400 Windcrest #1134, Plano TX 75024, or wherever he may be found. From formation of WorldVentures until at least December 15, 2015, Azcue reached the top one percent of distributors, have arranged for significant downlines and chains,

have maintained websites and authorized training and recruitment videos, and are considered to be the spokesperson and leader of the entities. The promotional and recruitment videos, seminar materials, and presentations were promoted and created by Azcue in the course of conducting the enterprises' affairs, not conducting his own affairs. Azcue was aware at all times as a promoter of the scheme through December 15, 2015, that the revenues reaped in the business were primarily derived from recruitment as opposed to the sale of legitimate consumer products, meaning it was an illegal endless chain under California law. Azcue had meetings with secretly placed representatives in the organization that were not the field actually doing the work, improperly offered bonuses as to certain individuals based on recruitment, knew that the business could not engage in legitimate retail sales, knew that people failed, and that WorldVentures could not make its commission payments because the enterprise is a pyramid scheme and a Ponzi scheme.

24. Defendant Daniel Stammen ("Stammen"), is a natural person and resident of the State of Texas or wherever he may found. At all times relevant to this Complaint, Nugent reached the top one percent of distributors, have arranged for significant downlines and chains, have maintained websites and authorized training and recruitment videos, and are considered to be the spokesperson and leader of the entities. The promotional and recruitment videos, seminar materials, and presentations were promoted and created by Stammen in the course of conducting the enterprises' affairs, not conducting his own affairs. Stammen was aware at all times as a promoter of the scheme, that the revenues reaped in the business were primarily derived from recruitment as opposed to the sale of legitimate consumer products. Stammen had meetings with secretly placed representatives in the organization that were not the field actually doing the work, improperly offered bonuses as to certain individuals based on recruitment, knew that the business could not engage in legitimate retail sales, knew that people failed, and that WorldVentures could not make its commission payments because the enterprise is a pyramid scheme and a Ponzi scheme.

25. Nugent, Stammen, and Azcue are hereinafter referred to as the "Individual Defendants."

26.     A significant portion of World Ventures' sales occur in the State of California.

III.     **JURISDICTION AND VENUE**

27.     Jurisdiction is conferred upon this Court because Defendants do business in this judicial district, they hold themselves out and market to this jurisdiction, and they actually conduct significant transactions in this jurisdiction.  Under Plaintiff's state law claims, more than 75% of those affected in the class (and perhaps more persons) are residents of the State of California. Supplemental jurisdiction exists over the state causes of action.

28.     Venue is proper in this Court because Defendants are subject to personal jurisdiction, in this District.  WorldVentures has been engaged in continuous and systematic business in California.  In fact, most of WorldVentures' representative sales originate from California.

29.     WorldVentures has a designated agent for service of process in this State or has its principal place of business here and have committed tortious acts in this State.

30.     Each of the Defendants named herein acted as a co-conspirator, single enterprise, joint venture, co-conspirator, or alter ego of, or for, the other Defendants with respect to the acts, omissions, violations, representations, and common course of conduct alleged herein, and ratified said conduct, aided and abetted, or is other liable.  Defendants have agreements with each other, and other unnamed Diamond Director co-conspirators and have reached agreements to market and promote the WorldVentures Pyramid as alleged herein.

31.     Defendants, along with unnamed Diamond Director co-conspirators, were part of the leadership team that participated with WorldVentures, and made decisions regarding: products, services, marketing strategy, compensation plans (both public and secret), incentives, contests and other matters.  In addition, Defendants and unnamed co-conspirators were directly and actively involved in decisions to develop and amend the distributor agreements and compensation plans.

32.     Plaintiff is presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 1 through 100, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof.

On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

33.      Plaintiff is informed and believes, and thereon alleges that, at all times relevant hereto, all of the defendants together were members of a single association, with each member exercising control over the operations of the association.  Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to the above-referenced unincorporated association as a jural entity and each defendant herein is sued in its additional capacity as an active and participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiff and Class Members' legal rights.

34.      Plaintiff is further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

35.      Plaintiff is informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

36.      The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiff and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein.  Each of the defendants herein committed an act in furtherance of the agreement.  Injury was caused to the Plaintiff and Class Members by the defendants as a consequence.

IV.   **FACTS**

    A.   **WorldVentures Operates a Pyramid Scheme That Was Banned In Norway**

    37.    WorldVentures was founded in 2005 and purports to operate in 28 countries.  In 2015, WorldVentures had what it describes as 238,684 "sales representatives."   In 2015, WorldVentures claimed to have earned $650 million in revenue.   In 2017, WorldVentures estimated it would have $1 billion dollars in revenue, and claims it has 700,000 sales representatives.   WorldVentures operates in California, does business in California, and holds seminars in California to woo its latest victims. WorldVentures does not actually originate travel packages.   According to publicly available court filings, WorldVentures is generating positive operating net income cash flows well in excess of $20.0 million per year.

    38.    Former Advisors of WorldVentures have disclosed publicly that from 2013 to 2015, WorldVentures continued to experience a significant amount of negative publicity specifically as to whether the company was a pyramid scheme.  Former advisors were brought into assist with these issues, but the company remains a pyramid scheme.   There were further problems that the exponential growth of WorldVentures' business in certain countries in Asia was due to inadequate oversight of sales representatives conducting business without WorldVentures having first obtained the required business license in each respective country.

    39.    In May 2013, the Norwegian Gaming Board announced an investigation into WorldVentures' business activities.

    40.    In February of 2014, the Country of Norway banned WorldVentures from the Country of Norway and concluded that WorldVentures' business program constitutes an illegal pyramid scheme because revenue almost exclusively comes from recruiting members and not the sale of travel residence.  In other words, the proceeds of WorldVentures stem from recruiting new participants into the business.

    41.    WorldVentures appealed the Country of Norway's ruling, which WorldVentures' lost in November of 2014.  In February of 2016, WorldVentures sued the Norwegian Ministry of

Culture. On or about October of 2016, the lawsuit against the Norwegian Ministry was affirmed. The Norway Court most recently concluded that WorldVentures' revenue was generated from recruitment of affiliates and "not from the consumption of sale of goods, services or any other arrangement." The Norwegian Court concluded WorldVentures looked like a pyramid scheme that had been previously ruled on in 2014.

42.     Rewards paid in the form of cash bonuses, where primarily earned for recruiting, as opposed to merchandise sales to consumers, constitute a fraudulent business model. *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014).

B.     **How WorldVentures' Perpetuates Its Pyramid Scheme**

43.     WorldVentures purports to sell travel-related services based on club membership.

44.     A significant portion, and more than 80% of WorldVentures' travel plans, do not include air fare, but instead only include hotel and lodging accommodations. The packages contemplate a guarantee refund if travel is cheaper, but in practice, this never happens and refunds are not consummated.

45.     There are three "membership" packages for WorldVentures consumers: "DreamTrips," "DreamTrips GOLD," and "Dream Trips PLATINUM."

46.     For "Dreamtrips," there is a $24.99 monthly fee and initial membership signup fee of $99.99 for each consumer. A member receives an initial 100 points enrollment, and 300 points annually towards travel packages. The GOLD package requires a member to pay $199.99 initial membership fee and $49.99 per month. The gold member receives an initial 200 points, and 600 points annually toward travel packages. Finally, the PLATINUM membership requires a consumer to pay an initial membership fee of $299.99 and $99 per month. The platinum member receives 300 points, and 1200 points annually.

47.     The general counsel of WorldVentures, and WorldVentures in the arbitration proceeding have made an out-right denial that WorldVentures is operating a pyramid scheme.

48.     The promotional materials of WorldVentures suggest that success can be had in WorldVentures through hard work.

49.     According to recent income disclosures that are not made, 70% of representatives do not make income, despite allegedly providing "every effort to provide training, tools, and support."  Only 3% of all representatives will receive a profit.

### C.     Members Receive Benefits Only Through the Performance of Those Downline to Them

50.     If one person signs up underneath the participant through the "Platinum" membership, the upper line receives 200 points.

51.     If 4 people sign up as down lines in the Gold or Platinum membership, the monthly *membership is free* and the member receives $300.  In other words, the greater the pyramid is perpetuated by the consumer, membership becomes free.  Fees are deemed waived.

52.     If 6 people sign up as down lines in the Platinum membership, a $250 bonus is given in addition to the waiver of the membership fee.  If 12 people are signed up by a member, the consumer receives a free ipad3.  If 20 people sign up, the consumer receives a car bonus for a silver BMW in the amount of $600 per month. This is called the "wings and wheels" program. WorldVentures touts that its membership promises "fun, freedom, and fulfillment" through WorldVentures process.  A member "gets a percentage of everybody who pays through your referral network, it has opportunity to stretch around the world and create substantial income." WorldVentures further claims that representatives "make a lot of money," "double your profits," and make an extra $20,000 by recruiting others to become WorldVentures "sales representatives." WorldVentures represented to Plaintiff that the real money was in becoming an associate and recruiting others to join the program.

53.     Signifying how the travel package is of no value, the packages are overpriced, under-inclusive, and are significantly in excess of the price a consumer can obtain the equivalent travel packages from almost any online competitor - Cheap Tickets, Groupon, and Expedia.

54.     WorldVentures does not have its own travel deals.  It just scouts for deals and make a person pay to view them.  Turn over levels are high in each member's downline reflecting the nature of the scam.  That is, to make money, one has to constantly be recruiting new victims.

55.     Further, WorldVentures has at times given misleading information about their product to consumers prior to purchase, exaggerates the savings realized by their product, and fails to provide refunds for cancelled services.

56.     According to videos from David Pietsch of WorldVentures, with World Ventures "you are at the top of your company."  WorldVentures implicitly encourages its members to keep building the pyramid.

57.     A commission of $20 is received for each person a member signs up.  Every time the team sells membership, this is called a cycle and a member receives $200.  "3 sales right.  3 sales, left." According to WorldVentures, it does not matter how many travel packages are sold. All that matters is how many people are signed up in one's downline.   According to WorldVentures, the binary pays to infinity."  If a member has 60 persons in his/her downline (30 on the right, 30 on the left) that person obtains "senior membership" entitling them to $4,000-5,000 per month.  So in effect, if a person signs up 60 people, WorldVentures takes 15-20% of the profit, and the member receives other revenues for the downlines.

58.     Some of the top reps were paying the fees for some of their downline recruits themselves in order to maintain a high rank and appearance of success.  WorldVentures props up its prominent sales person by propping them up, and grandfathering them into the highest rank in the company even though they have not earned it.  Indeed, there is a secret compensation plan.

59.     This scheme is similar to *YTB*'s online Travel Pyramid Scheme that California State Attorney General Brown entered into a stipulated judgment to ban further operations. https://oag.ca.gov/news/press-releases/brown-ends-ytbs-online-travel-pyramid-scheme.

60.     During nearly the entire Class Period, WorldVentures did not make adequate income disclosure statement to its representatives or prospective representatives, particularly during nearly the entire time that Plaintiff Shi Yiru was a representative for WorldVentures, and

the four-year class period for participants of WorldVentures pre-dating the filing of this action, originally on May 1, 2017.

61.     These statements are deceptive income claims regarding the financial gains consumers will achieve by becoming representatives.  For example, WorldVentures advertises that those who sign-up for its business opportunity can make over $26,000 per week.  Its representatives also make unrealistic financial promises, such as being able to make millions of dollars per year.

62.     As explained herein, WorldVentures, through its actions and omissions, intended to, and did, conceal from Plaintiff and other representatives in the class during the Class Period material facts and information relating to WorldVentures' endless chain scheme and its deceptive earnings claims. Plaintiff did not discover, nor had they reason to discover, the information necessary for the causes of action set forth in this Complaint.

63.     WorldVentures' acts and omissions constitute a "continuing violation" such that any limitations period for Plaintiff' claims did not begin to accrue until the date of the last wrong or injury that is the subject of this action.

64.     During nearly the entire Class Period, WorldVentures did not make adequate income disclosure statement to its representatives or prospective representatives, particularly during nearly the entire time that Plaintiff Shi Yiru was a representative for WorldVentures.

65.     Instead WorldVentures made deceptive income claims regarding the financial gains consumers will achieve by becoming representatives.  Further, WorldVentures failed to account for the expenses one incurs in operating such a franchise.  For example, WorldVentures advertises that those who sign-up for its business opportunity can make over $26,000 per week.  Its representatives also make unrealistic financial promises, such as being able to make millions of dollars per year.

66.     WorldVentures makes false and misleading (affirmatively and by omission) in each of its Annual Income Disclosure Statement as follows:

a. World Ventures provides a chart that represents some level of success is
involved:



WorldVentures Marketing, LLC - USA

## 2015 Annual Income Disclosure Statement

WorldVentures has designed its compensation plan to reward Independent Sales Representatives ("IRs") for: (1) successfully making personal sales of WorldVentures' retail products (DreamTrips, DreamTrips Gold and DreamTrips Platinum memberships); and (2) successfully building sales organizations, and training and motivating other team members to do the same. Below is an income breakdown.

| Promotion Level | High Commissions & Overrides | Median Commissions & Overrides | Minimum Commissions & Overrides | Average Commissions & Overrides | Percentage of Total |
|---|---|---|---|---|---|
| Enrolled Representative | $ 35,824.52 | $ 100.00 | $ 43.35 | $ 252.04 | 6.651% |
| Active Representative | $ 235,420.32 | $ 150.00 | $ 12.00 | $ 285.42 | 11.316% |
| Qualified Representative | $ 17,559.56 | $ 860.02 | $ 12.00 | $ 1,299.69 | 3.455% |
| Senior Representative | $ 72,600.00 | $ 7,534.02 | $ 720.00 | $ 8,477.23 | 0.561% |
| Director | $ 114,675.00 | $ 22,646.21 | $ 6,615.88 | $ 25,312.83 | 0.159% |
| Marketing Director | $ 163,626.80 | $ 49,799.79 | $ 15,552.00 | $ 57,971.18 | 0.072% |
| Regional Marketing Director | $ 364,200.00 | $ 116,490.22 | $ 58,442.49 | $132,513.49 | 0.018% |
| National Marketing Director | $ 630,600.00 | $ 238,645.12 | $ 164,365.00 | $313,657.03 | 0.005% |
| International Marketing Director | $ 1,129,150.00 | $ 409,280.00 | $ 135,295.00 | $532,487.35 | 0.007% |

At the end of December 2015 there were 238,684 WorldVentures IRs in the United States. During the period January 2015 to December 2015 ("Fiscal Period"), 22.24% of all IRs earned a commission or override, while 77.76% did not. The average annual commission or override earnings of all IRs, including those who did not earn a commission or override, was $300.35. The average annual commission or override earnings of that group of IRs who earned a commission or override was $1,348.82 and the median was $150.00. The data presented in the table above is based only on those IRs who earned a commission or override within the time period of January 2015 to December 2015.

Notes:
1. All amounts are represented in U.S. dollars.
2. These figures do not represent profits, nor do they consider expenses incurred by IRs in the promotion of their business.
3. Promotional levels represented in the table are based on ranks achieved at the end of the last week of December 2015. Refer to the WorldVentures Compensation Plan for full definitions of the Promotional Levels listed in the table.

**There are *no guarantees* regarding income. The success or failure of each Independent Representative in WorldVentures, like any other business, depends on the Independent Representative's own skill, dedication, personal effort, leadership qualities, and market available.**

b. The chart is a demonstrative misleading and includes various
misrepresentations. The chart creates the affirmative representation and

representation by omission that all "representatives" make money.  The fine
print says that 77.76% of the persons who are representatives "did not" without
stating in fact those people did not make any money.  The first row is misleading
suggesting, implying and affirmatively representing that "enrolled
representative" comprise 6.651% of World Ventures representatives, when in
actually, all persons who sign up for World Ventures, are at minimum "enrolled
representatives."  Simply the first row should actually read:

| Promotion Level | High Comm. & Overrides | Median Comm. & Overrides | Minimum Comm. & Overrides | Average Comm. & Overrides | Percentage of Total |
|---|---|---|---|---|---|
| Enrolled Representative | Unknown | 0 | 0 | Unknown | 84.41% |

Instead, it reads as follows to create the belief that even those representatives
on the "first level" of the pyramid are earning some reasonable income when in actuality they are
not and 84.41% earn next to nothing, and the median of those 84.41% is zero revenues:

| Promotion Level | High Comm. Overrides | Median Comm. & Overrides | Minimum Comm. & Overrides | Average Comm. & Overrides | Percentage of Total |
|---|---|---|---|---|---|
| Enrolled Representative | $35,824.52 | 100 | 43.35 | 252.04 | 6.65% |

c.  Next, the "Active Representative" and "Qualified Representative" and
"Senior" Representative" rows are smoke and mirrors, deliberately and
explicitly misleading, and should be folded into the "Enrolled Representative"
line. These three categories are listed separately to create the appearance that
as a representative moves up the "pyramid" the median income increases and
the average income increases.  Particularly, the last category "senior

representative" has only ½ of 1% of all representatives solely to create the perception of an increase before "director."  So in actuality, all four categories of "representative" enrolled, active, qualified and senior should be folded together because there is no material difference as to these "levels" except to create a façade of success, and if one combines these four rows, the following results are achieved:

| Promotion Level | High Comm. Overrides | Median Comm. & Overrides | Minimum Comm. & Overrides | Average Comm. & Overrides | Percentage of Total |
|---|---|---|---|---|---|
| Representatives | Unknown | 0 | 0 | $140.59 | 99.743% |

So shockingly, the chart misleadingly fails to identify that the median for 99.743% of all representatives of WorldVentures is zero, and while the average *yearly gross* revenue is $140.59.

d.  Next, the Income statement is false and misleading because the "high Commissions & Overrides" column reflects false highs, and/or artificially inflated highs based on "overrides."  "Override" is an undefined term in the disclosures.  WorldVentures has chosen a select few persons to represent the "high" for each of the sales categories by paying them an "override" having nothing to do with performance other than being the crony in the pyramid scheme.  Because the "highs" in each row are outliers and false outliers at that through overrides, the column should be eliminated in its entirety.

e.  So in truth, less than 1/3 of 1% are directors and make any money of substance.  The perception based on the chart is that there are four rows and there is a lot of potential for income.  Percentages lined up also are misleading because when actual "numbers" of persons are disclosed things become a lot more apparent.  For instance, the far-right column should really read:

f.  Based on all of the misrepresentations and affirmative and misleading

representations, the chart should read as follows:

| Promotion Level | People | Median Comm. & Overrides | Average Comm. & Overrides | Minimum Comm. & Overrides | Percentage of Total People |
|---|---|---|---|---|---|
| Representatives | 238,063 | $0.00 | $140.59 | 0 | 99.74% |
| Directors | 621 | $55,000 | $55,961.19 | 6,615.88 | 0.26% |
| Individual Defendants | 3 | $6-8 million | $4.5 mil. | $1-2 mil. | N/A |

g.  Finally, the AIDS is misleading because it does not reflect "net earnings or

income" for representatives, but instead, reflects "gross" revenues.  In a

"note" buried towards the bottom of the AIDS page in smaller font than the

chart, WorldVentures provides "these figures do not represent profits, nor do

they consider expenses incurred by IRs in the promotion of their business."

So the statements are highly misleading in that the profit for 99.7% of all

members of WorldVentures (based on their requirement to pay monthly

commission fees totaling $99.99 per month, is as follows:

| Promotion Level | People | Median Comm. & Overrides | Net Profit after paying commissions | Minimum Comm. & Overrides | Percentage of Total People |
|---|---|---|---|---|---|
| Representatives | 238,063 | $0.00 | -$1,057.77 | 0 | 99.74% |

So in summary, the realistic fact is that 99.7% of WorldVentures enrollees average a *loss*

*of* **-$1057.77 per year**.

67.  As explained herein, WorldVentures, through its actions and omissions, intended

to, and did, conceal from Plaintiff and other representatives in the class during the relevant period

material facts and information relating to WorldVentures' endless chain scheme and its deceptive

earnings claims. Plaintiff did not discover, nor had they reason to discover, the information

necessary for the causes of action set forth in this Complaint.

68.     WorldVentures' acts and omissions constitute a "continuing violation" such that any limitations period for Plaintiff' claims did not begin to accrue until the date of the last wrong or injury that is the subject of this action.

69.     The pled facts and happenings in ¶¶ 37-68 herein were made by WorldVentures and approved, authorized, ratified, promoted, and countenanced by the Individual Defendants.

## V.     **CLASS ACTION ALLEGATIONS**

70.     Plaintiff brings this action as a class action under Fed. R. Civ. Procedure 23.

71.     Plaintiff seeks to certify a class pursuant to Fed. R. Civ. Proc. 23(a), 23(b), 23(c)(4), and 23(c)(5), if necessary.

72.     Plaintiff seeks to represent a nationwide class defined as follows: "All persons who were WorldVentures representatives who enrolled with an address in the United States from May 1, 2013 until the present." ("Class Period").

73.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff also seek to represent a sub-class in California, defined as follows:

"All persons who were WorldVentures representatives who enrolled with a California address from May 1, 2013 until the present."

74.     Excluded from the class are the Defendants, family members, this Court, and any "Director" of World Ventures, including without limitation the positions listed as "Director," "Marketing Director," "Regional Marketing Director," "National Marketing Director," "International Marketing Director."

75.     Plaintiff seeks relief for herself and all members of the class under California's Unfair and Deceptive Practices Acts, and California's Fraudulent Advertising Act.

76.     Plaintiff seeks to pursue a private attorney general action for injunctive relief for themselves and all members of the class who agreed to a choice of law, and they satisfy the standing and class action requirements.

77.     While the exact number of members in the Class and Subclass are unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the class and subclasses is ascertainable based upon the records maintained by Defendant. It is estimated that the members of the Class are greater than 250,000 nationwide.

78.     Therefore, the Class and Subclasses are so numerous that individual joinder of all Class and Subclass members is impracticable under Federal Rule of Civil Procedure 23.

79.     There are questions of law and/or fact common to the class and subclasses, including but not limited to:

a.  Whether WorldVentures is operating an endless chain;

b.  Whether representatives paid money to WorldVentures for (1) the right to sell a product and (2) the right to receive, in return for recruiting others, rewards which were unrelated to the sale of the product to retail consumers;

c.  Whether WorldVentures' rules apply to Section 327 claims;

d.  If the WorldVentures rules do apply, are WorldVentures' rules effective;

e.  If the WorldVentures rules do apply, and WorldVentures' rules are effective, did WorldVentures enforce those rules;

f.  Whether WorldVentures or the Directors omitted to inform the Plaintiff and the plaintiff class that they were entering into an illegal scheme where an overwhelming number of participants lose money;

g.  Whether WorldVentures' Statements of compensation during the Class Period were deceptive and misleading;

h.  Whether WorldVentures' conduct constitutes an unlawful, unfair and/or deceptive trade practice under California state law;

i.  Whether WorldVentures' conduct constitutes unfair competition under California state law; and

j.  Whether WorldVentures' conduct constitutes false advertising under California state law in that the representations concerning price and competition of the travel

packages, was false, and below industry standard given the contribution to the distributorships.

80.     These and other questions of law and/or fact are common to the class and subclass and predominate over any question affecting only individual class members.

81.     Plaintiff's claims are typical of the claims of the class and subclasses because Plaintiff was a representative for Defendant WorldVentures and lost money because of the illegal scheme.

82.     Plaintiff's class is ascertainable because each representative/distributor of WorldVentures can be identified with name, e-mail address, physical address, and other information, in the computer database that WorldVentures has housed online and in Texas, since at least 2013.

83.     Plaintiff has limited the class statute of limitation period to four years from the date of original filing, which is the statute of limitations for a claim under RICO, the Unfair Competition Law, and Plaintiff's California claims.

84.     Plaintiff has standing to challenge the improper corrective amendments made to the class wide representative agreement and will do so during the course of the case, or if necessary at the time of trial.

85.     Plaintiff will fairly and adequately represent the interests of the class and subclass. Plaintiff's claims are typical of those of the class and subclasses. Plaintiff's interests are fully aligned with those of the class and subclass. And Plaintiff has retained counsel experienced and skilled in complex class action litigation.

86.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

87.     Plaintiff knows of no difficulty likely to be encountered in the management that would precludes maintenance of this case as a class action.

88.     That WorldVentures may have made some changes in the form of its policies or terms of service does not alter the fact that *in practice*, the numbers will evidence WorldVentures was an illegal pyramid scheme and endless chain throughout the entire class period.

## COUNT I

### (ENDLESS CHAIN SCHEME; California Penal Code § 327 and California Civil Code § 1689.2)

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

89.     Plaintiff realleges all allegations, and incorporates previous allegations by reference.

90.     Section   1689.2   of   the   California   Civil   Code   provides: A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme.

91.     The Defendants are operating an endless chain scheme under Section 327 of the Penal Code because they have independently, and together, contrived, prepared, set up, and proposed an endless chain.

92.     The WorldVentures operation constitutes an endless chain scheme for the disposal or distribution of property because putative class members, including Plaintiff, paid valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant. Specifically, Plaintiff paid a monthly amount to WorldVentures for the chance to receive compensation for introducing one or more additional persons.

93.    The WorldVentures' operation constitutes an endless chain because 99% of new distributors fail, and WorldVentures has a high attrition rate.

94.    The WorldVentures' operation constitutes an endless chain because revenues are derived primarily from recruitment as opposed to the sale of legitimate travel packages to end consumers.

95.    Almost none of the revenues Defendants has received are derived from any sale of a travel package to an individual outside of the organization, i.e. to a legitimate retail customer.

96.    Plaintiff and the class have suffered an injury in fact and have lost money or property because of WorldVentures' operation of an endless chain, business acts, omissions, and practices.

97.    Plaintiff and the class are entitled to:

   a.   rescind the contract upon which the scheme is based and recover all consideration paid under the scheme, less any amounts paid or consideration provided to the participant under the scheme;

   b.   restitution, compensatory and consequential damages (where not inconsistent with their request for rescission or restitution); and

   c.   attorneys' fees, costs, pre- and post-judgment interest.

## COUNT II

**(Unfair and Deceptive Practices Claims Under Cal. Bus, & Prof. Code § 17200, *et seq.*)**

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

98.    Plaintiff realleges all allegations, and incorporates previous allegations by reference.

99.    Many of the claims brought under this Second Cause of action that refer or relate to the unlawful, fraudulent or unfair "endless chain" of Defendants, are brought on behalf of Plaintiff and the Class.

100.    All claims brought under this Second Count that refer or relate to the unlawful, fraudulent or unfair the statements, the touted WorldVentures "business opportunity" are brought on behalf of Plaintiff, the Class, and the Subclass.

101.    WorldVentures has engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq.* The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers.  The WorldVentures Sales and Marketing Plan Is Unlawful.

102.    WorldVentures (through its subsidiaries, related corporate entities, affiliates, and those entities in its corporation family) have violated the Foreign Corrupt Practices Act ("FCPA") by bribing officials in various countries (and agents of officials) using funds originating in United States bank accounts in various countries.  Such bribes are masked and fraudulently concealed as "legitimate" book entry business expenses or bonuses paid out to higher level members of the WorldVentures organization.  This conduct violates the FCPA, 15 U.S.C. §§ 78dd-1.

103.    WorldVentures makes these bribes for the purpose of influencing the acts or decisions of certain government agents in their official capacity to allow this illicit enterprise to operate internationally.

104.    WorldVentures further makes these bribes in violation of lawful duty and/or for the purpose of inducing the use of official influence to obtain or retain WorldVentures' pyramid business model and to make its business appear to be legitimate in the United States to class members and Plaintiff Yiru.  It is challenging enough for legitimate companies to operate in various foreign countries, let alone a Ponzi scheme/pyramid scheme like WorldVentures.

105.    It is established law by the California Supreme Court, that a litigant asserting n unfair competition claim may borrow the FCPA and derivatively challenge such violations.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).

106.    Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

107.    WorldVentures' business practices are unlawful under § 17200 because they constitute an illegal "endless chain" as defined under, and prohibited by, California Penal Code § 327.

108.    WorldVentures utilizes its illegal "endless chain" with the intent, directly or indirectly, to dispose of property in WorldVentures products and to convince representatives to recruit others to do the same.

109.    WorldVentures' business practices are unlawful § 17200 because they violate §17500 *et seq.*, as alleged in the Third Cause of Action.

110.    Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

111.    WorldVentures' business practices are fraudulent in four separately actionable ways: (1) WorldVentures' illegal and deceptive "endless chain"; (2) the touted, yet non-existent, WorldVentures "business opportunity" for everyone, including but not limited to WorldVentures' massive advertising campaign and the misleading statements of compensation.

112.    First, as detailed herein, Defendants promoted participation in the WorldVentures endless chain, which has a compensation program based on payments to participants for the purchase of product by participants, not the retail sale of products or services.

113.    WorldVentures has made numerous misleading representations about the business opportunity of WorldVentures and the income that a recruit or a distributor can realize by becoming a distributor and participating in the scheme.

114.    WorldVentures knew, or should have known, that the representations about the business opportunity of WorldVentures were misleading in nature.

115.    As a direct result of WorldVentures' fraudulent representations and omissions regarding the WorldVentures endless chain described herein, WorldVentures wrongly acquired money from Plaintiff and the members of the classes.

116.     Second, WorldVentures touted, in numerous different ways as part of a massive advertising campaign, a "business opportunity," which WorldVentures also repeatedly and in many ways represented, among other things, as being "for everyone" and allowing "full time" or "part time" opportunities.

117.     The massive advertising campaign included among other things, the website, emails, websites, presentations by WorldVentures, training, word of mouth among representatives, and events.

118.     As part of this campaign and a further inducement to potential representatives, WorldVentures made and disseminated Statements of compensation that further misled the public, among other things: (1) by using cryptic and technical terms known to WorldVentures but not to the general public or to those exploring the claimed "business opportunity," (2) by highlighting the "winners," *i.e.*, those that received compensation from WorldVentures, and the average gross compensation paid by WorldVentures to those winners, (3) by failing to disclose the actual number of "winners" as compared to the number of representatives who received no compensation from WorldVentures (i.e., the "losers"); and (4) by downplaying and omitting the risks and costs involved in starting an WorldVentures distributor relationship, and succeeding in such a representative role.

119.     In reality, the touted "business opportunity" was only for a select few, and those that were recruited specially. And these numbers did not include expenses incurred by representatives in the operation or promotion of their businesses, meaning there were likely more net losers who made no profit at all.

120.     WorldVentures knew, or should have known, that the selective information presented to representatives in the Compensation and its massive adverting campaign during that time frame touting its purported "business opportunity" was likely to mislead the public and did in fact mislead the public into believing there was a legitimate "business opportunity" in which representatives, or a large portion of them, could make money in either a full or part time capacity. In fact, however, there was no such "business opportunity," except for a very select few.

121.    As a direct result of WorldVentures' fraudulent representations and omissions regarding the Statement and the massive adverting campaign during that time frame and thereafter touting WorldVentures' purported "business opportunity" described herein, WorldVentures wrongly acquired money from Plaintiff and the members of the classes.

122.    The named Plaintiff has standing to bring these Section 17200 claims under the fraudulent prong and can demonstrate actual reliance on the alleged fraudulent conduct.

123.    For instance, Plaintiff has been in receipt of misleading and false financial statements, which promoted the WorldVentures' scheme and claimed "business opportunity" and contained material false representations regarding the success representatives could achieve through WorldVentures by purchasing products and recruiting others to do the same.

124.    There were other representations made to representatives as part of the massive advertising campaign regarding the claimed "business opportunity," on which Plaintiff or some of the Class Members, reasonably believed the representations they could succeed in the "business opportunity," did not return the refund, purchased WorldVentures products and did not immediately return them, signed up as WorldVentures representatives, and attempted to and recruited others to do the same. These other representations include, but are not limited to the following:

> a. Emails from WorldVentures that promoted WorldVentures and contained materially false representations regarding the success that a distributor could achieve through WorldVentures by purchasing products and recruiting others to do the same.
>
> b. Websites, such as www.WorldVentures.com, which promoted the fraudulent scheme through videos of Directors containing material false representations regarding the "business opportunity" available to representatives and the wealth that a distributor could get by agreeing to become an WorldVentures distributor.

c. Presentations by WorldVentures representatives which contained material false representations regarding the "business opportunity" and the success that a distributor could get through WorldVentures by purchasing products and recruiting others to do the same.

d. Presentations by WorldVentures, including the presentations described in this complaint, which contained material false representations regarding the "business opportunity" and the success that a distributor could get through WorldVentures by purchasing products and recruiting others to do the same.

e. Training and events where WorldVentures representatives made material false representations regarding the "business opportunity" and the success that a distributor could get through WorldVentures by purchasing products and recruiting others to do the same.

125.    To the extent proof of reliance is required of Plaintiff, WorldVentures, the Individual Defendants, and the Directors knew that Plaintiff and the class would reasonably rely on their representations and omissions, which would cause the Plaintiff and the class joining the fraudulent endless chain scheme and purchasing the products, and Plaintiff did in fact reasonably rely upon such representations and omissions.

126.    Indeed, had Plaintiff and the class known that WorldVentures and its Individual Defendants were promoting an endless chain, they would not have become WorldVentures representatives in the first place and, if learned after becoming a distributor, they would not have purchased WorldVentures products thereafter.

127.    Had Plaintiff and the class known that WorldVentures was promoting a "business opportunity" that did not exist except for a select few, they would not have become WorldVentures representatives in the first place and, if learned after becoming a distributor, they would not have purchased WorldVentures products thereafter.

128.    Finally, the fraudulent acts, representations and omissions described herein were material not only to Plaintiff and the class (as described in this complaint), but also to reasonable

persons. For instance, regarding the alleged "business opportunity" and representations in, and omissions from, the Statement, and on information and belief, a large percentage of individuals who signed up as WorldVentures representatives during this time frame expected that they could and would receive annual compensation at the approximate level of the "average earnings compensation," in total, disclosed in the Statements of Average Gross Compensation. Unfortunately, no such large percentage actually could or did earn such an amount.

129.   Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

130.   For the reasons set forth herein and above, WorldVentures' promotion and operation of an unlawful and fraudulent endless chain, and its fraudulent representations and omissions regarding its purported "business opportunity," "Packaging and Handling" fees, and FedEx freight fees are also unethical, oppressive, and unscrupulous in that WorldVentures is and has been duping Plaintiff and the class out of billions, or at least hundreds of millions, of dollars.

131.   WorldVentures' actions have few, if any, benefits. Thus, the injury caused to Plaintiff and the class easily and dramatically outweighs the benefits, if any.

132.   Defendants should be made to disgorge all ill-gotten gains and return to Plaintiff and the class all wrongfully taken amounts.

133.   Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code section 17203, Plaintiff and the class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

## COUNT III

**(False Advertising - California Business and Professions Code § 17500, *et seq.*)**

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

134.    Plaintiff realleged all allegations, and incorporates previous allegations by reference.

135.    All claims brought under this Third Claim for Relief that refer or relate to the false, untrue, fraudulent or misleading endless chain of Defendants are brought on behalf of Plaintiff and the Class.

136.    All claims brought under this Third Cause of Action that refer or relate to the false, untrue, fraudulent or misleading compensation and the touted WorldVentures "business opportunity" are brought on behalf of Plaintiff and the Class.  Further, WorldVentures alleges it has superior travel packages and price of travel better than the competition and other well-known websites, when these representations are in fact affirmatively false, or in the alternative false by omission.

137.    All claims brought under this Third Claim for Relief that refer or relate to the false, untrue, fraudulent or misleading are brought on behalf of Plaintiff and the Class.

138.    Defendants' business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq*.

139.    Defendants engaged in false, unfair and misleading business practices, consisting of false advertising and materially misleading omissions regarding the purported "business opportunity," likely to deceive the public and include, but are not limited to, the items set forth above. WorldVentures knew, or should have known, that the representations about the business opportunity of WorldVentures were misleading in nature.

140.    Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which it was not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other WorldVentures representatives in the class who signed a Distributor Agreement with WorldVentures governed by California law their profits and compensation and/or make restitution to Plaintiff and the class.

141.    Under California Business and Professions Code Section 17535, Plaintiff and the class seek a judicial order directing Defendants to cease and desist from all false advertising related

to the Defendants' illegal scheme, and such other injunctive relief as the Court finds just and appropriate.

142.    Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other WorldVentures representatives in the class who enrolled as Representatives and/or make restitution to Plaintiff and the class.

143.    Under California Business and Professions Code Section 17535, Plaintiff and the class seek a judicial order directing Defendants to cease and desist from all false advertising related to the Defendants' illegal scheme, and such other injunctive relief as the Court finds just and appropriate.

## COUNT IV

## (RICO 18 U.S.C. § 1962(a))

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

144.    Plaintiff realleges all allegations as if fully set forth herein, and incorporates previous allegations by reference.

145.    WorldVentures, Defendants, and others willfully and intentionally violated and continue to violate RICO and California law with the goal of obtaining money, directly and indirectly, through a pattern of racketeering activities in violation of the mail and wire fraud statutes,18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § 1962(a), California Penal Code § 327, California Civil Code § 1689.2.

146.    WorldVentures has attempted to distinguish its business model from that of a pyramid scheme.

147.    WorldVentures has never systematically audited any income forms to ensure accuracy, and to ensure the business has legitimate retail sales.

148.    WorldVentures is aware that purchases of travel plans are done through its website and those internally in its organization almost completely, and thus its knowledge of the lack of

legitimate retail sales revenue suggests its intent to continue operating a pyramid scheme.

149.   WorldVentures has no control in place to certify that at least 70 percent of travel packages purchased were either sold or consumed by a legitimate retail customer, and not by somebody who is a representative or distributor.

150.   WorldVentures does not track retail sales.

151.   WorldVentures could determine whether travel packages were purchased with end consumers, but does not do so.

152.   The refund policies are insufficient and do nothing to negate the fact that WorldVentures requires a monthly fee to paid to continue participation, which Plaintiff Yiru paid in this instance for several months.

153.   Individual Defendant Nugent characterizes himself as Co-Founder and CVO of WorldVentures on his social media page. Nugent had the power to direct the enterprises affairs at all times and had supervisory involvement.

154.   In 2018, Defendant Wayne Nugent was the keynote speaker encouraging individuals to sign up, all the while having knowledge that revenues are derived primarily from recruitment. https://www.youtube.com/watch?v=gHBn0OH3TEw.

155.   Individual Defendant Stammen has characterized himself as the CEO, the head position of the enterprise, and at other times Chief of Business Development. In 2018, Stammen was one of the keynote speakers for WorldVentures.
https://www.youtube.com/watch?v=LX61SAgfqkg.

156.   WorldVentures is an enterprise on the brink of collapse in that it has failed to pay its distributors commissions that are owed.
https://www.iol.co.za/sundaytribune/news/worldventures-sued-for-millions-by-reps-16636860.

157.   The Chinese Government cracked down on WorldVentures for illegally operating in   the   China,   and   sending   international   wires   to   the   United   States.
https://www.mlmnewsreport.com/worldventures-bankrupt-distributors-resign-overunpaid-commissions/.

158.    Ultimately the illicitly obtained funds were siphoned to each of the Individual Defendants, except Azcue.

159.    In 2018, Government of Rwanda cautioned the public about Defendant WorldVentures operating illegally. https://www.newtimes.co.rw/news/governmentcautions-public-world-ventures.

160.    WorldVentures was told to cease operating in China, Malaysia, and Taiwan. http://amlmskeptic.blogspot.com/2015/04/old-news-world-ventures-busted-in-china.html.

161.    On or about January of 2018, the following report of an employee of Defendants was made at https://www.glassdoor.com/Reviews/WorldVentures-Holdingsbankruptcy-Reviews-EI_IE284228.0,22_KH23,33.htm:

1. COO resigned in less than 1 year, due to company planning for bankruptcy and financial trouble.

2. President of Sales and International Marketing, resigned, due to company's financial trouble and planning for bankruptcy.

3. Chief Security Officer resigned due to legal problems.

4. Smartcard have 15 developers from Flye CEO friend's organization without delivering anything but jobs of Full time employees in CIO and CTO is in trouble.

5. HR asked every employee to sign "Conflict of Interest" document, where CEO of Flye (Old CTO of WV) have conflict of interest with 3 companies, not sure if they will request him to step down.

6. New CTO have 2 jobs. Not sure, where his loyalty lies.

162.    The named individual defendants, as promoters of the scheme, did not retain immediate control over the essential managerial conduct of the WorldVentures enterprise.

163.    Even if the Individual Defendants are no longer the CEO of WorldVentures, or head officers, the Individual Defendants functionally operate as lower rung participants or silent equity partners reaping a majority of the scheme's spoils, and receiving an infinite level deep, nearly all revenues from lower level person's recruitments.

164.    Plaintiff's realization of profits was not inexplicably tied to the success of the promotional scheme.

165.    The distribution and sale of travel packages is not something the SEC has found amenable to regulation under the federal securities laws.

166.    The marketing and recruitment aspects of WorldVentures' enterprise are not within the definition of a security.

167.    In the WorldVentures scheme, distributors themselves must recruit new participants.

168.    In the WorldVentures scheme, distributors themselves must recruit new participants in the travel package endless chain, primarily through their own recruiting and marketing activities.

169.    WorldVentures tells its distributors and the Plaintiff that they will have spent significant time, effort and work to earn money, WorldVentures attempts emphasize the retail aspects of the business, the promise of significant profits linked to becoming a distributor.

170.    WorldVentures characterizes its distributors as "independent contractors" in the purported distribution agreement it maintains on its website, negating the notion that the distributors are passive participants in the endless chain.  Plaintiff and the class of distributors, as reasonable consumers, were expected to contribute more than nominal and menial effort.

171.    Each of the Defendants are engaged in activities federal interstate and foreign commerce and are entities capable of holding a legal or beneficial interest in property. All Defendant "persons," as that term is defined by 18 U.S.C. §1961(3).

172.    The Defendants, including the Individual Defendants, together make up the "WorldVentures Enterprise" as an association of entities and individuals associated in fact to operate an illegal pyramid scheme. The WorldVentures Enterprise is not a legal entity within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4). The Defendants have been members of the WorldVentures Enterprise from at least April 2009 and continuing until the present (except for Mr. Azcue who asserts he is no longer involved after some specified date, but whom was part

of the enterprise through most of the Class Period). WorldVentures and each of the Individual Defendants are separate entities from the WorldVentures Enterprise and play separate and distinct roles in the operation of the WorldVentures Enterprise.

    a.   WorldVentures is the founder, architect, and beneficiary of the WorldVentures Pyramid. Through interstate wire and mails, WorldVentures coordinates the WorldVentures Enterprise, a worldwide scheme. It also pays and awards the commissions, bonuses, and other incentives to the Defendants and others.

    b.   WorldVentures employs the Defendant to coordinate operations of the WorldVentures Pyramid in the countries in which WorldVentures operates, including determining and coordinating points, bonuses, and other incentives.

    c.   WorldVentures employs the other defendants as its operational arm of the WorldVentures Enterprise in the U.S. WorldVentures employs the other defendants to conduct racketeering activities in the U.S.

    d.   WorldVentures employs the remainder of the Defendants to induce new recruits into the WorldVentures Pyramid, to induce representatives to purchase WorldVentures product, and to induce representatives to recruit additional representatives into the WorldVentures Pyramid. The Remaining Defendants also have an agreement with WorldVentures mandating that WorldVentures will not reform its fraudulent marketing plan without their consent.

173.    From at least April 2009 and continuing until the present, within the County of Los Angeles, and elsewhere, WorldVentures in association with the other defendants, did knowingly, willfully and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of the WorldVentures Enterprise through a pattern of racketeering activity.

174.    The WorldVentures Enterprise functioned as a continuing unit over time through a hierarchical or consensual decision-making structure in that directives are issued by Stamen and Nugent, and at times Azcue.

175.    The alleged association exists for purposes other than simply to commit the

predicate acts as defined in Plaintiff's RICO counts. Specifically, the Defendants formed the various entities and acted as separate individuals to earn money through selling legitimate travel packages. Thus, the association exists for purposes other than to commit the predicate acts.

176.    From at least April 2009 and continuing until the present, WorldVentures with each other and the remaining defendants, executed a per se scheme to defraud through a pattern of racketeering made up of distinct acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. The WorldVentures Enterprise engaged in and affected interstate and foreign trade. The WorldVentures Enterprise transacts business through the instrumentalities of interstate commerce such as telephones, facsimile machines, the internet, email, and the United States mail and interstate commercial carrier to communicate in furtherance of the activities of the WorldVentures Enterprise.

177.    The WorldVentures Enterprise advertises, markets, and sells products and services throughout the United States. The operation of the enterprise continued over several years, including activities in every state, and has affected and damaged, and continues to affect and damage, commercial activity.

178.    To further the goals of the WorldVentures Enterprise, which were to (1) earn money through fraudulent means, (2) entice individuals to become WorldVentures representatives, (3) entice individuals to purchase products from WorldVentures; (4) entice individuals to recruit others to become WorldVentures representatives and profit off those recruits' purchases of WorldVentures products, and (5) reap large profits for themselves based on false representations, WorldVentures and the remaining defendants engaged in various forms of illegal activity, including (a) mail fraud, (b) wire fraud, and (c) conspiracy.

179.    The pattern of racketeering activity alleged is distinct from the WorldVentures Enterprise. Each act of racketeering activity is distinct from the WorldVentures Enterprise in that each is a separate offense committed by an entity or individual while the WorldVentures Enterprise is an association of entities and individuals. The WorldVentures Enterprise has an ongoing structure and/or organization supported by personnel and/or associates with continuing functions

or duties.

180.    The racketeering acts set out above and below, and others, all had the same pattern and similar purpose of defrauding Plaintiff and the class for the benefit of the WorldVentures Enterprise and its members. Each racketeering act was related, had a similar purpose, involved the same or similar participants and methods of commission and had similar results affecting Plaintiff and the class. The racketeering acts of mail and wire fraud were also related to each other in that they were part of the WorldVentures Enterprise's goal to fraudulently induce Plaintiff and the class to join the illegal scheme, purchase products, and recruit others to join the scheme.

181.    WorldVentures' and other Defendants' wrongful conduct has been and remains part of WorldVentures Enterprise's ongoing way of doing business and constitutes a continuing threat to the property of Plaintiff and the class. Without the repeated acts of mail and wire fraud, the WorldVentures Enterprise's fraudulent scheme would not have succeeded.

182.    Revenue gained from the pattern of racketeering activity, which constitutes a significant portion of the total income of WorldVentures and the Individual Defendants, was reinvested in the operations of the WorldVentures Enterprise for the following purposes: (a) to expand the operations of the WorldVentures Enterprise through additional false and misleading advertising and promotional materials aimed at recruiting new representatives; (b) to facilitate the execution of the illegal scheme; and (c) to convince current representatives to recruit new representatives, and purchase WorldVentures products.

183.    Yiru and the class were injured by the reinvestment of the racketeering income into the WorldVentures Enterprise because they invested billions of dollars of their own money through their purchasing of products, promotional materials, and WorldVentures products, all of which were packaged and shipped at inflated charges.

184.    In connection with promoting and executing their illegal scheme, members of the WorldVentures Enterprise knowingly and recklessly placed and caused to be placed in the United States mail or by interstate commercial carrier, or took or received therefrom, matters or things to be sent to or delivered by the United States mail or by interstate commercial carrier comprising,

among other things product, invoices, letters, promotional materials, brochures, products and checks to Plaintiff and the class and received communications between and among themselves through the United States mail, in all fifty states and the District of Columbia. It was reasonably foreseeable that these mailings or receipts would take place in furtherance of the fraudulent scheme.

185.    In connection with promoting and executing their illegal scheme, members of the WorldVentures Enterprise engaged in wire fraud, in violation of 18 U.S.C. § 1343, by among other things, knowingly and recklessly transmitting or causing to be transmitted with wire communications, in interstate and foreign trade, materials promoting the illegal WorldVentures Pyramid on internet web sites, radio, satellite radio, television, email, facsimile, telephone, and text messages, including promotional materials, registration information, product information, and invoices. WorldVentures and the Directors maintain websites on the internet where the enterprise was perpetrated.

186.    WorldVentures' representatives can and do buy products and are given inducements to continue working as representatives within the WorldVentures Pyramid. WorldVentures maintains various websites hosting promotional videos featuring the Individual Defendants promoting the unlawful scheme and other marketing materials featuring the Individual Defendants promoting the illegal scheme. WorldVentures sent and received these interstate wire communications to and from all fifty states and the District of Columbia.

187.    Each Defendant has promoted the WorldVentures Pyramid and WorldVentures Enterprise. Each use of the mail or wire by Defendants and the Individual Defendants done in furtherance of the WorldVentures Pyramid is an act of racketeering.

188.    The pattern of racketeering activity through which the affairs of the WorldVentures Enterprise were conducted and in which WorldVentures and the Individual Defendants participated consisted of the following:

### Racketeering Act Number One

189.    In 2015, plaintiff Yiru received, through private commercial interstate carrier and

the internet portal maintained by WorldVentures, certain application materials, which promoted the WorldVentures Enterprise and contained material false representations regarding the success representatives could achieve through WorldVentures by purchasing travel packages and recruiting others to do the same.

190.   Because of her receipt of these materials, Plaintiff Yiru signed up with WorldVentures purchased WorldVentures travel packages, and recruited others to do the same. The materials and package items were sent to Plaintiff Yiru with the purpose and intent of promoting the WorldVentures Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

### Racketeering Act Number Two

191.   In 2015, Plaintiff Yiru received, through private commercial interstate carrier, and the internet portal maintained by the Defendants, a 2015 Annual Income Disclosure Statement, which promoted the WorldVentures Enterprise and the WorldVentures pyramid through the sales and marketing plan, and which contained material false representations regarding the success that representatives could achieve through WorldVentures by purchasing travel packages and recruiting others to do the same.

192.   Because of her receipt of the representations, Plaintiff Yiru signed up with WorldVentures, purchased WorldVentures travel package, and recruited others to do the same. The Income Disclosure Statement with the purpose and intent of promoting the WorldVentures Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

### Racketeering Act Number Three

193.   In 2015 through 2016, Plaintiff Yiru ordered, through interstate wire transmissions over the internet travel packages, which were promoted by the WorldVentures Enterprise as the means by which representatives such as Yiru could "pay for their position" and get greater retail profits. WorldVentures hosted these websites. Yiru paid WorldVentures for these services using an electronic transfer of funds. WorldVentures shipped Yiru these products through private commercial interstate carrier. WorldVentures coordinated through interstate wires on at least a monthly basis following the order the collection and accruing of the rewards associated with those

purchases. Because of the promised "rewards," "profits," and opportunity to advance up the WorldVentures Pyramid, Plaintiff Yiru purchased WorldVentures travel packages, paid for those WorldVentures travel packages, and received those products, using instrumentalities of interstate commerce. Defendants' actions violated 18 U.S.C. §§ 1341 and 1343.

### Racketeering Act Number Four

194.    Throughout April of 2009 and continuing to present date, WorldVentures distributed information by interstate wire transmissions over the internet, such as www.WorldVentures.com, worldventuresfoundation.org. Yiru reviewed the website. The WorldVentures websites promoted the fraudulent scheme through videos of Directors containing material false representations regarding the business opportunity available to representatives, and the wealth that a distributor could get by agreeing to become an WorldVentures distributor. Because of the representations on WorldVentures' websites, Yiru became an WorldVentures distributor and maintained his position as an WorldVentures distributor and continued to order WorldVentures' products and recruit others to do the same. This violated 18 U.S.C. § 1343.

### Racketeering Act Number Five

195.    Throughout 2016 and continuing to present date, the those acting on behalf of WorldVentures distributed information by interstate wire transmissions over the internet promoting WorldVentures as described in this Complaint. These videos promoted the fraudulent pyramid scheme and contained material false representations regarding the wealth that a recruit or WorldVentures distributor could achieve if that recruit became an WorldVentures distributor and if a distributor purchased WorldVentures products.  This violated 18 U.S.C. § 1343.

### Racketeering Act Number Six

188.    Throughout 2016 and continuing to present date, the those acting on behalf of WorldVentures distributed information by interstate wire transmissions over the internet in WorldVentures back office database, including its SQL database to other countries, to upper level managers in other countries, and in-house counsel for WorldVentures that evidence sales receipts almost exclusively from recruiting, and none from the sale of any product or service to customers.

These videos promoted the fraudulent pyramid scheme and contained material false representations regarding the wealth that a recruit or WorldVentures distributor could achieve if that recruit became an WorldVentures distributor and if a distributor purchased WorldVentures products.  This violated 18 U.S.C. § 1343.

189.    WorldVentures' and the Directors' representations and omissions were the proximate cause of Yiru and the class joining the fraudulent scheme and purchasing the products.

190.    To the extent proof of reliance is legally required, in engaging in the aforementioned wire and mail fraud, WorldVentures and the Directors knew that Yiru and the class would reasonably rely on their representations and omissions which would cause the Plaintiff and the class joining the fraudulent pyramid scheme and purchasing the products.

191.    Defendants and the Directors knew that the misrepresentations and omissions described above in promoting and executing the fraudulent scheme were material because they caused Yiru and the class to join and participate in the illegal scheme.

192.    Had Yiru and the class known that WorldVentures and the Directors were promoting an illegal scheme, they would not have joined the WorldVentures Pyramid scheme.

193.    WorldVentures' and the Directors' acts of mail and wire fraud were a proximate cause of the injuries that Yiru and the class suffered. Because of WorldVentures' and the Directors' pattern of unlawful conduct, Yiru and the class lost millions of dollars, if not billions of dollars.

194.    Under 18 U.S.C. § 1964, Yiru and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

## COUNT V

### (RICO 18 U.S.C. § 1962(c))

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

195.    Plaintiff realleges all allegations as if fully set forth herein, and incorporates previous allegations by reference.

196.    WorldVentures, its promoters, the Directors, and the Individual Defendants are associated with the WorldVentures Enterprise. In violation of 18 U.S.C. § 1962(c), WorldVentures

and the Individual Defendants conducted and/or participated in the conduct of the affairs of the WorldVentures Enterprise, including participation in activities in furtherance of the WorldVentures Defendants' fraudulent scheme, through the pattern of racketeering activity earlier alleged.

197.   As a direct and proximate result of WorldVentures' and the promoters', Directors' Individual Defendants' violation of 18 U.S.C. § 1962(c), Yiru and the class were induced to, and did, become representatives in the WorldVentures Pyramid scheme and purchased billions of dollars of the WorldVentures products/services and recruited others to do the same. Yiru and the class were injured by WorldVentures' and the promoters, Directors, and Individual Defendants' unlawful conduct. The funds used to buy WorldVentures products constitute property of Yiru and the class within the meaning of 18 U.S.C. § 1964(c).

198.   WorldVentures knew of and agreed to the overall objective of the RICO offense because it knew the bonuses it toted were not possible, it knew the commission were not achievable, it knew that as much as 96% of distributors failed, and that income was derived not from customers, but from recruitments.

199.   Each of the Individual Defendants had a written and/or oral agreement with WorldVentures to commit each of the above predicate acts, in that there was an actual agreement between WorldVentures and each of the Individual Defendants that defined how each of the Individual Defendants would be making money from the scheme, that such money would be based on the number of persons recruited into the scheme, and that salaries and bonuses would be tied to how many people were recruited into the network, as opposed to legitimately branching out into retail.

200.   Under 18 U.S.C. § 1964(c), Yiru and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

## COUNT VI

### (RICO 18 U.S.C. § 1962(d))

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

201. Plaintiff realleges all allegations as if fully set forth herein, and incorporates previous allegations by reference.

195. Each of the Defendants was separate and distinct from the enterprise and they each carried out functions independently, attempting to create an air of propriety and success. WorldVentures and the Individual Defendants agreed to work together in a symbiotic relationship to carry on the illegal scheme. Under that agreement, WorldVentures, WorldVentures Holdings, WorldVentures Foundation, the Individual Defendants, and others conspired to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

196. As a direct and proximate result of WorldVentures' and the Individual Defendants' violation of 18 U.S.C. § 1962(d), Yiru and the class were injured by WorldVentures', the Individual Defendants' and the promoters' unlawful conduct. The funds used to buy WorldVentures products constitute property of Yiru and the class under 18 U.S.C. § 1964(c).

197. Under 18 U.S.C. § 1964(c), Yiru and the class are entitled to treble their damages, plus interest, costs and attorney's fees

## COUNT VII

### (DECLARATORY RELIEF 28 U.S.C. §§ 2201 *et seq*.)

(On behalf of the Class and the Subclass against all Defendants, including DOES 1-100)

198. Plaintiff incorporates herein by reference the paragraphs above as if they were set forth fully herein.

199. This is a Count for declaratory relief brought pursuant to 28 U.S.C. §§ 2201 and 2202.

200. 28 U.S.C. §§ 2201 *et seq.* authorizes relief for any person who desires a declaration of rights or duties with respect to one another. In cases of actual controversy relating to the legal rights and duties of respective parties, such a person may seek a judicial declaration of his or her rights and duties relative to an instrument or contract, or alleged contract, including a determination of any question of construction or validity arising under the instrument or contract, or alleged contract.

201.     On October 10, 2019, the Hon. Carlos G. Lopez (ret.) issued a Final Award (the "Final Award") in arbitration case number 01-18-0004-3400, finding that the Representative Agreement, the Policies and Procedures Manual, and the Compensation Guide were illusory, and thus, entirely unenforceable.

202.     On September 21, 2020, this Court *sua sponte* determined that there was an "ambiguity" in the Final Award, and remanded proceedings to Judge Lopez on a limited basis. ECF No. 172.

203.     On October 26, 2020, Judge Lopez issued an Amended Final Award in the arbitration proceeding (the "Amended Final Award"). No party disputes the Amended Final Award, and Plaintiff is moving to confirm the Amended Final Award.

204.     The Amended Final Award clarified (1) that typically arbitration agreements are standalone from policies manuals, whereas WorldVentures did implement such separate agreement here, (2) that the Representative Agreement, the Policies and Procedures Manual, and the Compensation Guide comprised the entirety of the ("Agreement"), and (3) that the Final Award meant to apply the finding only that the "arbitration provision" in the entire Agreement was illusory, and other findings.

205.     Plaintiff's Demand in the arbitration action requested only one Count for Declaratory relief.

206.     Even though the Arbitrator clarified his ruling was not made as to other provisions of the Agreement, the illusory ruling is subject to collateral estoppel because each and every provision of the Agreement must be necessarily bound up in such a determination that one provision is illusory, and WorldVentures is collaterally estopped and precluded from arguing that the choice of law provision is enforceable based on the illusory finding related to the arbitration provision.

207.     Alternatively, the Final Award and Amended Final Award are subject to "law of the case doctrine," because a finding that one provision is illusory cannot be divorced from the same necessary finding that the balance of the Agreement's provisions are too, illusory.

208.    Even if the Defendants are not estopped or precluded based on law of the case or estoppel, Plaintiff seeks a declaratory judgment that the Agreement (which would include each and every provision, the choice of law provision, the so-called confidentiality provision) are unenforceable because the Agreement is illusory.

209.    Judge Lopez's ruling is at minimum, persuasive as to such a determination.

210.    The entire Agreement is illusory because the unilateral amendment clauses are impermissible under law.

211.    The effect of a finding that an agreement is illusory under law, is that the entire contract is unenforceable.

212.    If the entire contract is unenforceable, the "choice of law" provision is unenforceable and the "confidentiality" provision is unenforceable.

213.    The Individual Defendants are not parties to the Agreement.

214.    The Individuals Defendants may not assert estoppel based on the terms of the purported Agreement, their conduct, the claims at issue in this case, and the operation of WorldVentures' business in practice.

215.    The choice of law provision is a narrow one under 5th Circuit Authority, and thus does not reasonably include the Counts at issue in this dispute that are claims sounding in tort.

216.    A review of the choice of law provision of legitimate companies in Texas reflects as a matter of custom, practice, and performance, that the choice of law provision here is narrow.

217.    A review of the Restatement 2nd analysis adopted by the Fifth Circuit independently prohibits a dispute like this from being reviewed on the merits.

218.    An actual controversy exists between Plaintiff and Defendants as to their rights and duties to each other.  Specifically, the Defendants are now contending that one provision of the Agreement is not "illusory" even though another provision was found to be illusory, that the choice of law provision is broad even though it is indisputably narrow, and that apparently, the Individual Defendants can assert the choice of law. Plaintiffs contend that the choice of law provision is narrow, that illusory to one clause means illusory to all, and that the Individual Defendants have no basis to assert choice of law, as to a contract which does not refer to them.  Independently, an

analysis of the Restatement factors precludes the "enforcement" of any choice of law provision. Accordingly, a declaration is necessary and proper at this time.

219.    Plaintiff requests declaratory relief and a determination that the entire Agreement is illusory.

## PRAYER FOR RELIEF

The named Plaintiff and the Plaintiff class and subclass request the following relief:

a.    Certification of the class and subclasses;

b.    A jury trial and judgment against Defendants;

c.    Rescission of the agreements upon which the scheme is based, and recovery of all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme;

d.    Damages for the financial losses incurred by Plaintiff and by the class and subclasses because of the WorldVentures Defendants' conduct and for injury to their business and property;

e.    Restitution and disgorgement of monies;

f.    A judicial declaration that the entire Agreement is illusory, and thus unenforceable;

g.    Temporary and permanent injunctive relief enjoining WorldVentures from paying its Representatives recruiting rewards that are unrelated to retail sales to ultimate users and from further unfair, unlawful, fraudulent and/or deceptive acts;

h.    The cost of suit including reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, Civil Code §1689.2, and otherwise by law;

i.    Trebling of damages;

j.    Punitive damages;

k.    For damages in an amount yet to be ascertained as allowed by law; and

l.    For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper.

Dated: November 9, 2020                          Respectfully submitted,


*/s/ Blake J. Lindemann*                          */s/ Rachel E. Montes*
BLAKE J. LINDEMANN                               RACHEL E. MONTES
California Bar No. 255747                         Rachel@MontesLawGroup.com
E-mail:  blake@lawbl.com                          Texas Bar No. 45005925
**LINDEMANN LAW FIRM, APC**                       **MONTES LAW GROUP, PC**
(*pro hac vice*)                                  1121 Kinwest Parkway, Ste. 100
433 N. Camden Drive, 4th Floor                   Irving, TX 75063
Beverly Hills, CA 90210                           Telephone No: 214-522-9401
Telephone No: 310-279-5269                        Facsimile No: 214-522-9428
Facsimile No: 310-300-0267


                                                 ATTORNEYS FOR PLAINTIFF SHI YIRU
                                                 AND THOSE SIMILARLY SITUATED

### DEMAND FOR JURY TRIAL

Plaintiff Melody Yiru, on behalf of herself and those similarly situated, hereby requests a jury trial on all matters so triable.

Dated: November 9, 2020                                    Respectfully submitted,


*/s/ Blake J. Lindemann*                                    */s/ Rachel E. Montes*
BLAKE J. LINDEMANN                              RACHEL E. MONTES
California Bar No. 255747                          Rachel@MontesLawGroup.com
E-mail:  blake@lawbl.com                          Texas Bar No. 45005925
**LINDEMANN LAW FIRM, APC**               **MONTES LAW GROUP, PC**
(*pro hac vice*)                                        1121 Kinwest Parkway, Ste. 100
433 N. Camden Drive, 4th Floor                  Irving, TX 75063
Beverly Hills, CA 90210                            Telephone No: 214-522-9401
Telephone No: 310-279-5269                       Facsimile No: 214-522-9428
Facsimile No: 310-300-0267

                                                            ATTORNEYS FOR PLAINTIFF SHI YIRU
                                                            AND THOSE SIMILARLY SITUATED

## <u>CERTIFICATE OF SERVICE</u>

On November 9, 2020, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve the parties individually or through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.

*/s/ Blake J. Lindemann*
Blake J. Lindemann

**DEMAND FOR JURY TRIAL AND CERTIFICATE OF SERVICE**

# Exhibit 2

# United States District Court

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MELODY YIRU, et al. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2155-S |
| | § | |
| WORLDVENTURES HOLDINGS, LLC, et al. | § | |
| | § | |

## AMENDED SCHEDULING ORDER

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure ("FRCP"), the Local Civil Rules of the United States District Court for the Northern District of Texas ("LR"), and the Civil Justice Expense and Delay Reduction Plan of the United States District Court for the Northern District of Texas (the "Plan"), the Court ORDERS as follows:

1.     This case is set for **jury** trial on the Court's three-week docket beginning **March 7, 2022** (the "Trial Setting"). Trial may commence any time during this three-week docket. If the case is not reached at this setting, it will be reset after considering input from the parties. Reset or continuance of the Trial Setting does not alter the deadlines in this Order unless expressly provided by court order.

2.     The parties shall mediate this case before **Christopher Nolland** (the "Mediator") at least 90 days before the Trial Setting. The parties may not eliminate this requirement or substitute the Mediator except by leave of court. All parties must attend the mediation in person or by videoconference, as directed by the mediator. Legal entities must provide a representative with full authority. If there is insurance involved, a representative with full authority must attend. The Mediator shall contact the Court directly if this deadline needs to be extended or if other requirements need to be altered.

3.     The parties shall conduct bifurcated discovery on the issue of class certification. Prior to the earlier of a ruling on class certification by the Court or August 1, 2021, discovery shall be limited to matters bearing on that issue.

4.     Unless otherwise indicated, the parties may by written agreement alter the deadlines in this paragraph without the need for court order.  **No continuance of the Trial Setting, motion for class certification deadline, general motion cutoff deadline, or the final pretrial conference will be granted due to agreed extensions of these deadlines.**  Motions may become moot due to trial if filed after the deadlines in this Order.  Deadlines are as follows:

a. February 1, 2021    –   Motions for leave to join additional parties;

b. April 2, 2021    –   Motions for leave to amend pleadings;

c. June 1, 2021    –   Deadline for completion of class discovery;

d. June 1, 2021    –   Motions for class certification.  Parties may not alter this deadline by agreement;

e. August 1, 2021    –   Disclosure of experts for the party with burden of proof;

f. September 1, 2021    –   Disclosure of opposing experts;

g. September 15, 2021    –   Disclosure of rebuttal experts;

h. November 5, 2021    –   Discovery closes; discovery requests must be commenced in time to permit response by this date;

i. November 5, 2021    –   All motions, including any objections to expert testimony.  This deadline must be at least 120 days before trial.  Parties may not alter this deadline for dispositive motions or objections to/motions to strike expert testimony.

5.     To facilitate orderly preparation for trial, the Court conducts an expedited discovery hearing docket on Friday afternoons.  Any party may request expedited hearing of a discovery

dispute. Requests must be made by motion and may be made concurrently with filing the discovery motion. If the matter is accepted for setting on the discovery docket, the Court will advise the parties of applicable procedures by separate order. Seeking relief from the Court on discovery disputes prior to conducting a meaningful, substantive conference with the opposing party is strongly discouraged.

6.    A motion or objection to the taking of a deposition that is filed within five business days of the notice has the effect of staying the deposition pending court order on the motion or objection; otherwise the deposition will not be stayed except by court order.

7.    The parties shall file all pretrial materials 21 days before the Trial Setting. Failure to timely file pretrial materials may result in dismissal for want of prosecution. Pretrial materials shall include the following:

    a.    Pretrial order pursuant to LR 16.4;

    b.    Exhibit lists, witness lists, and deposition designations pursuant to LR 26.2 and FRCP 26(a)(3). Witness lists should include a brief summary of the substance of anticipated testimony (not just a designation of subject area) and the likelihood of testimony at trial. Exhibit lists must include any materials to be shown to the jury, including demonstrative aids;

    c.    Proposed jury charge or proposed findings of fact and conclusions of law. Such documents shall be both e-filed and emailed in "Word" format to Scholer_Orders@txnd.uscourts.gov. Any objections to the proposed jury charge shall be filed no later than 5 days before the final pretrial conference. Objections not so disclosed are waived unless excused by the Court for good cause;

    d.    Motions in limine;

    e.    Requested voir dire questions.

8.    The pretrial conference shall be held on **February 24, 2022, at 1:30 p.m.** Lead counsel must attend. The parties shall be prepared to address all exhibits, witnesses, deposition

excerpts, motions in limine, trial briefs, requested voir dire questions, and any objections to such filings.  The Court expects the parties to have conferred and reach agreement where possible prior to the final trial conference.  The parties shall bring their proposed exhibits labeled as required by LR 26.2(a).

**SO ORDERED.**

SIGNED December 1, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**