## CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** (this "*Agreement*") is made and entered into as of the 1st day of November, 2017 by and between **WORLD VENTURES HOLDINGS, LLC.** ("*Company*") with a business address of 5100 Tennyson Parkway, Plano, Texas 75024 and **MONTGOMERY CAPITAL ADVISERS, LLC** ("*Consultant*") with a business address at 2500 Dallas Parkway, Suite 300, Plano, Texas 75093.

1. **Consulting Relationship.** During the Term of this Agreement, as hereinafter defined, the Consultant will make itself reasonably available to and provide the following services (collectively, the "*Services*") to the Company: (i) advise the Company in connection with sourcing equity for Company projects, The Consultant shall use the Consultant's best efforts to perform the Services. Consultant represents, and the Company acknowledges, that Consultant has the skills and experience and authority required to perform the Services. Consultant agrees to devote the requisite amount of time needed to perform such Services.

2. **Fees.** As consideration for the Services to be provided by the Consultant and other obligations, the Company shall compensate the Consultant the amount of $10,000 per month, payable in arrears. Such payment to be paid no later than the tenth of the following month. The Company shall provide a Form 1099 to the last known address of Consultant for any amounts paid to Consultant during a calendar year.

3. **Expenses.** Unless pre-approved in writing by the Company, the Company shall not be responsible for any expenses incurred by Consultant.

4. **Term and Termination.** The Consultant shall serve as a consultant to the Company for a period commencing on date of this Agreement and continuing on a month to month basis (the "*Term*") until terminated pursuant to the terms of this Agreement. Either party may terminate this Agreement, with or without cause, at any time by written notice to the other, and following such termination, the Company will pay to the Consultant any prorata fees earned for the portion of the then existing month prior to the effective date of termination and the Consultant will not be entitled to any fees following the effective date of termination.

5. **Independent Contractor.** The Consultant is engaged solely as an independent contractor and not as an employee, partner, or otherwise of the Company, and no employer/employee, partnership, or other relationship is created or inferred by this Agreement. The Consultant will be an independent contractor within the meaning of the law, the parties' mutual understanding and intent, and this Agreement. The Consultant has no authority, actual, apparent, or implied, to act on behalf of the Company or to bind the Company in any contract, in any manner, without the express written approval of the Company. The Consultant shall have sole control over the manner and means of performing Consultant's obligations under this Agreement. The Consultant shall retain the discretion to work or provide services for any other entity or person. The Consultant will work only on specific projects for the Company, as requested by it and agreed to from time to time during the term of this Agreement, and the Consultant will only render the services reasonably necessary to accomplish the needed tasks for each project.

   (a) **No Benefits.** The Consultant acknowledges and agrees that the Consultant will not be eligible for any Company employee benefits and, to the extent the Consultant otherwise would be

eligible for any Company employee benefits, but for the express terms of this Agreement, the Consultant hereby expressly declines to participate in such Company employee benefits.

(b) **Withholding.** The Consultant shall have full responsibility for applicable self-employment taxes for all compensation paid to the Consultant pursuant to this Agreement and for compliance with all applicable labor and employment requirements, including, without limitation, state worker's compensation insurance coverage requirements. Consultant shall file all tax returns and other filings as may be required for payment of any income taxes owed in connection with Consultant's provision of services under this Agreement.

(c) **Ownership of the Work**. Consultant acknowledges and agrees that all rights in and to all writings, inventions, improvements, processes, information and other materials that may be furnished to Consultant by Company or that Consultant may create, conceive, or develop, either solely or jointly with any other person, during the course of performing the Services (collectively, "***Developed Intellectual Property***") are and shall remain the sole property of Company, whether under patent, copyright, trademark or other applicable laws. Notwithstanding anything to the contrary herein, Consultant shall be free to use and employ its general skills, know-how and expertise, and to use, disclose, and employ any generalized ideas, concepts, know-how, methods, techniques or skills that were previously known or that were developed in connection with the performance of the Services.

(d) **Confidentiality**. Except as required in the performance of its obligations under this Agreement or with the prior written authorization of Company, Consultant (including for purposes hereof, its employees, agents, representatives, consultants and contractors) shall not directly or indirectly use, disclose, disseminate or otherwise reveal any confidential information, including but not limited to information regarding Company personnel, and shall maintain confidential information in confidence. The Consultant shall not at any time after the term of this Agreement disclose such confidential information to any party not associated with the Company for any reason or purpose whatsoever, except after being authorized to do so in writing by the Company. Upon termination or expiration of this Agreement for any reason whatsoever, Company and Consultant shall leave with or return to the other all documents, records, notebooks, computer files, and similar repositories or materials containing confidential information of the other party and such other party's affiliates, including any and all copies thereof. Consultant may retain one (1) copy thereof, to the extent that the Consultant requires such Confidential Information for the purpose of performing any obligations or exercising any rights under this Agreement that may survive such expiration or termination, or for archival purposes, provided, however, that reasonable measures shall be taken to assure confidential treatment of such information. Notwithstanding the foregoing, the Consultant shall be permitted to retain such additional copies of, or any computer records or files containing, the Confidential Information of the Disclosing Party that have been created solely by the Receiving Party's automatic electronic archiving and back-up procedures, to the extent created and retained in a manner consistent with the Consultant's standard archiving and back-up procedures. Company employees, contractors, and consultants may disclose such confidential information in confidence, either directly or indirectly, to a Federal, State, or local government official, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law, or in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, Company employees, contractors, and consultants who file retaliation lawsuits for reporting a suspected violation of law may disclose related confidential information to their attorney and use them in related court proceedings, as long as the individual files documents containing such confidential information under seal and does not otherwise disclose the confidential information except pursuant to court order. Consultant will be governed by the policies and procedures on investor

information confidentiality and investor documentation as outlined in the Company's policies and procedures, and, if informed of, will comply with all statutory and regulatory requirements. As a condition of engagement, Consultant must review and sign the attached **Exhibit A**, Confidentiality, Non-Solicitation, and Work Product Agreement.

6. **Warranties.** All Services performed and provided under this Agreement will be of a professional quality and will be performed in a professional, workmanlike and ethical manner.

7. **Conflicts with this Agreement.** The Consultant represents and warrants that the Consultant is not subject to any pre-existing obligation in conflict with or in any way inconsistent with the provisions of this Agreement. The Consultant warrants that it is not a party to any restrictive agreement, including but not limited to non-disclosure, non-competition, and non-solicitation agreements, limiting the Consultant's ability to provide Services hereunder. The Consultant further warrants that at the time of the signing of this Agreement, that Consultant knows of no written or oral contract or any other impediment that would inhibit or prohibit the Consultant's said ability, and that the Consultant will not knowingly use any trade secret, confidential information, or other intellectual property right of any other party in the performance of the Consultant's provision of Services hereunder. Moreover, the Company specifically instructs the Consultant not to use any trade secret, confidential information, or other intellectual property right of any other party in the performance of the Consultant's provisions of Services. The Consultant agrees that Consultant shall notify the Company immediately if the Consultant becomes aware of any such impediment or intellectual property right of any other party that may be affected by the Consultant's work with the Company. The Consultant agrees that Consultant shall indemnify and hold the Company harmless from any and all suits, demands, judgments, claims, and disputes arising out of any alleged breach of such restrictive agreement, contract, or legal duty

8. **Miscellaneous.**

    (a) **Sole Agreement.** This Agreement, including the exhibits hereto, constitutes the sole agreement of the parties with respect to the subject matter hereof and supersedes all prior oral negotiations and writings with respect to the subject matter hereof.

    (b) **Choice of Law; Venue; Remedies.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Texas, without giving effect to the rules or principles of conflict of laws. The exclusive venue for any disputes shall be in the state or federal courts Dallas, Dallas County, Texas, and Consultant consents to jurisdiction in those courts. The Consultant expressly agrees that, because of the nature of the agreement in Section 5 to protect and not disclose confidential information, the remedy at law for the breach of Section 5 is inadequate and that injunctive relief (in addition to damages) will be available to the Company to prevent the breach or threatened breach thereof.

    (c) **Severability.** If any provision of this Agreement is held to be unenforceable under applicable law, this Agreement shall continue in full force and shall be construed to the fullest extent possible so as to give effect to the intentions of the provision(s) found to be unenforceable.

    (d) **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument. Facsimile or PDF (by email transmission) signatures shall be deemed to be original signatures.

(e) **Sections and Other Headings.** The section and other headings contained in this Agreement are for convenience of reference only and shall not be deemed to modify or affect the interpretation of this Agreement.

(f) **Advice of Counsel.** Each party acknowledges that, in executing this agreement, such party has had the opportunity to seek the advice of independent legal counsel, and has read and understood all of the terms and provisions of this agreement. This Agreement shall not be construed against any party by reason of the drafting or preparation hereof. This Agreement was mutually prepared and shall not be construed against any party by reason of her role in such preparation.

(g) **Modification.** Neither this Agreement nor any provision hereof shall be amended, modified, changed, discharged, or terminated except by an instrument in writing signed by the party against whom the enforcement of any modification, change, discharge or termination is sought.

(h) **Waiver.** No delay or omission on the part of either party in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any right on any future occasion.

(i) **Assignment.** The Company may assign this Agreement to any affiliate or other entity. The Consultant may not assign this Agreement nor any of the Consultant's rights or obligations to any person, firm, or entity without the express written consent of the Company.

(j) **Binding Effect.** The Agreement shall be binding upon, and inure to the benefit of, (i) Consultant and the legal representatives and permitted assigns of Consultant and (ii) the Company and its successors and assigns.

(k) **Survival.** Paragraphs 5, 6 and 8 shall survive the expiration or earlier termination of this Agreement.

(l) **Indemnification**. The Contractor shall indemnify, defend, and hold harmless he Company, its agents, trustees, and employees, from any and all claims, demands, judgments, losses, liabilities, and costs, including reasonable attorneys' fees, arising from or in connection with any acts or omissions of the Consultant or the Consultant's employees, agents, or customers, or from any breach of this Agreement by the Consultant. The Company shall indemnify, defend, and hold harmless he Consultant, its agents, trustees, and employees, from any and all claims, demands, judgments, losses, liabilities, and costs, including reasonable attorneys' fees, arising from or in connection with any acts or omissions of the Company or the Company's employees, agents, or customers, or from any breach of this Agreement by the Company.

(m) **Notices**. Any notices or other communications between the parties hereto shall be in writing and shall be deemed effective upon receipt and to have been properly given if delivered by hand or sent by United States registered or certified mail, postage prepaid, or sent by recognized overnight delivery service, addressed to the party for whom intended as set forth below. Notwithstanding the above, notice by email transmission shall be effective upon receipt if transmitted prior to 5:00 PM CST, provided a hard copy is also sent either by registered, certified mail, or recognized overnight delivery service for next day delivery. All notices shall be addressed as follows:

If to Consultant:
Montgomery Capital Advisers, LLC
2500 Dallas Parkway, Suite 300
Plano, Texas 75093
Attn: Tom Montgomery
Phone: 972-748-0300_____
Email: tmontgomery@mca-texas.com_____

If to Company:
WORLD VENTURES
5100 Tennyson Parkway
Plano, Texas 75024
Attn: Wayne Nugent
Phone: (972) 805-9600
Email: _____

**[SIGNATURE PAGE FOLLOWS]**

MCA 002131

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date first set forth above.

**COMPANY:**

**WORLD VENTURES**

By: _____
     Name: _____
     Title: _____

**CONSULTANT:**

**MONTGOMERY CAPITAL ADVISERS, LLC**

By: _____
     Name: _____
     Title: _____

# EXHIBIT A

## CONFIDENTIALITY, NON-SOLICITATION,
## AND WORK PRODUCT ASSIGNMENT AGREEMENT

This CONFIDENTIALITY, NON-SOLICITATION, AND WORK PRODUCT ASSIGNMENT AGREEMENT is being signed by the undersigned (the "**Consultant**") for the benefit of WORLD VENTURES , a Texas corporation ("**World Ventures**").

### RECITALS

World Ventures has developed and will develop valuable proprietary information, including, without limitation, intellectual property, trade secrets and know-how relating to World Ventures' business, financial and underwriting models, deal structure, equity and debt sources, research, marketing plans, business strategies and other business records.

The giving of the covenants contained herein is a condition of the engagement of the Consultant by World Ventures and the payment of any fees incident to such engagement and the Consultant acknowledges that the execution of this Agreement and the entering into of these covenants is an express condition of the Consultant's engagement and the receipt of fees in connection therewith.

### AGREEMENT

In consideration of the Consultant's engagement, the receipt of Confidential Information (as hereinafter defined) while associated with World Ventures, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**Section 1.** **Term of Agreement.** This Agreement shall continue in full force and effect for the duration of the Consultant's engagement by World Ventures and shall survive the termination of the Consultant's engagement to the extent provided herein.

**Section 2.** **Engagement at Will.** This Agreement is not an employment agreement. The Consultant understands that World Ventures may terminate the Consultant's engagement at any time, with or without cause, for any reason or for no reason.

**Section 3.** **Confidentiality.**

3.1 Definition. The term "**Confidential Information**" means all information and any idea in whatever form, tangible or intangible, pertaining in any manner to the business of World Ventures, or any of its affiliates or subsidiaries, or its employees, clients, consultants or business associates, which was produced or received by any employee or consultant of World Ventures in the course of his or her employment or consulting relationship with World Ventures or otherwise produced or acquired by or on behalf of World Ventures, whether or not such information is identified as "confidential" by World Ventures, including, without limitation, financial and underwriting models, deal structure, equity and debt sources, marketing plans, business strategies, business plans, project investment materials, research and underwriting materials, policies and procedures, investor contacts, customer and prospect lists, vendor/supplier lists, performance data, financials, statistics, compilations, reports, forecasts, studies, personnel data and other documents or business records. Confidential Information is to be broadly defined, and shall include all information that has or could have commercial value or other utility in the business in which World Ventures is engaged or contemplates engaging, and all information which, if disclosed without authorization, could be detrimental to the interests

of World Ventures, whether or not such information is identified as Confidential Information by World Ventures. This Agreement imposes no obligation upon the Consultant with respect to Confidential Information that it can establish by legally sufficient evidence: (i) was in possession of, or was rightfully known by the Consultant without an obligation to maintain its confidentiality prior to receipt from World Ventures; (ii) is or becomes generally known to the public without violation of this Agreement; (iii) is obtained by the Consultant in good faith from a third party having the right to disclose it without an obligation of confidentiality; or (iv) is created independently by the Consultant, is not otherwise covered by this Agreement and is not created with the assistance of any Confidential Information. If the Consultant is required in writing by any governmental agency or pursuant to any law to disclose Confidential Information, the Consultant shall provide World Ventures with written notice of such request or requirement as soon as possible under the circumstances so that World Ventures may seek appropriate legal protection or waive the Consultant's compliance with the provisions of this Agreement. If, failing the entry of legal protection or the receipt of a waiver hereunder, the Consultant is, in the reasonable opinion of its legal counsel, compelled to disclose the Confidential Information, the Consultant may disclose pursuant to such legal requirement only that portion of the Confidential Information that it is compelled to disclose. In any event, the Consultant will not oppose action by World Ventures and will cooperate with World Ventures to obtain legal protection or other reasonable assurance that confidential treatment will be afforded the Confidential Information.

      3.2     <u>Existence of Confidential Information</u>. The Consultant acknowledges that World Ventures owns and has developed and compiled, and will develop and compile, trade secrets, proprietary techniques and other Confidential Information which have great value to its business. This Confidential Information includes not only information disclosed by World Ventures to the Consultant, but also information that may be developed or learned by the Consultant during the course of the Consultant's engagement.

      3.3     <u>Protection of Confidential Information</u>. The Consultant shall not, directly or indirectly, use, make available, sell, disclose or otherwise communicate to any third party, other than in connection with the Consultant's services and for the benefit of World Ventures, any of World Ventures' Confidential Information, either during or after the Consultant's engagement. The Consultant acknowledges that an unauthorized disclosure of Confidential Information may be highly prejudicial to World Ventures' interests, and may constitute an invasion of privacy and/or an improper disclosure of trade secrets.

      3.4     <u>Delivery of Confidential Information</u>. Upon request at any time, or when the Consultant's engagement terminates, the Consultant will immediately deliver to World Ventures all copies of any and all materials and writings received from, created for, or belonging to World Ventures including, but not limited to, those which relate to or contain Confidential Information.

      3.5     <u>Location and Reproduction</u>. The Consultant shall maintain only such Confidential Information as the Consultant has a current "need to know." Subject to the provisions of the Consulting Agreement, the Consultant shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists. The Consultant shall not make copies of or otherwise reproduce Confidential Information unless there is a legitimate business need of World Ventures that necessitates such reproduction.

      3.6     <u>Third-Party Information</u>. The Consultant acknowledges that World Ventures has received and in the future will receive from third parties their confidential information subject to a duty on World Ventures' part to maintain the confidentiality of such information and to use it only for certain limited purposes. The Consultant agrees that, during the term of this Agreement and thereafter, the Consultant

will hold all such confidential information in the strictest confidence and will not disclose or use it, except as may be necessary to perform the Consultant's obligations hereunder and as is consistent with World Ventures' agreement with such third parties.

3.7 <u>Information Belonging to Others</u>. The Consultant represents that the Consultant's engagement does not and will not breach any agreements with or duties to an employer, former employer, or any other third party. The Consultant will not disclose to World Ventures or use on its behalf any confidential information belonging to others and the Consultant will not bring onto the premises of World Ventures any confidential information belonging to any such party unless consented to in writing by such party.

3.8 <u>Legal Exceptions to Non-Disclosure Obligations</u>. The federal Defend Trade Secrets Act of 2016 (the "Act") provides immunity from liability in certain circumstances to World Ventures employees, contractors, and consultants for limited disclosures of World Ventures "trade secrets," as defined by the Act. Specifically, World Ventures employees, contractors, and consultants may disclose trade secrets: (1) in confidence, either directly or indirectly, to a federal, state, or local government official, or to an attorney, "solely for the purpose of reporting or investigating a suspected violation of law," or (2) "in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Additionally, World Ventures employees, contractors, and consultants who file lawsuits for retaliation by an employer for reporting a suspected violation of law may use and disclose related trade secrets in the following manner: (1) the individual may disclose the trade secret to his/her attorney, and (2) the individual may use the information in the court proceeding, as long as the individual files any document containing the trade secret under seal and does not otherwise disclose the trade secret "except pursuant to court order." Nothing contained in this paragraph or this Agreement is intended to preclude Consultant from truthfully responding to inquiries pursuant to a subpoena in connection with any lawsuit or administrative proceeding, or prohibit Consultant from initiating communications directly with, or responding to any inquiry from, or providing testimony before, any state or federal authority, or any other cooperation with any government agency. **Specifically, the non-disclosure requirements of this Section do not prohibit or restrict Consultant from reporting possible violations of federal, state, or local law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency, Inspector General, or making other disclosures that are protected under the whistleblower provisions of federal law, regulation, or other applicable law. Consultant does not need the prior authorization of World Ventures to make any reports or disclosures, and Consultant is not required to notify World Ventures that Consultant has made any such reports or disclosures.**

**Section 4.** <u>**Work Product.**</u>

4.1 <u>Definition</u>. The term "**Work Product**" includes any and all research, original works of authorship (including, without limitation, books, periodicals and other forms of literature), presentations, marketing materials, financial and underwriting models, forms or templates for contracts, letters of intent, term sheets or other documents, processes, technologies, discoveries, trademarks, service marks, copyrights, copyrightable works, products, marketing and business ideas, and all ideas, improvements, know-how, data, rights and claims related to the foregoing that, whether or not patentable or copyrightable, are conceived, developed or created and which relate to World Ventures' current or contemplated business or activities.

    4.2    <u>Ownership of Work Product</u>. All Work Product, including the Work Product itself, all media onto which the Work Product is rendered or embodied for delivery to World Ventures, and all proprietary rights therein, including but not limited to all copyrights, created by or arising in the Consultant shall belong exclusively to World Ventures. The Consultant hereby transfers all of its right, title and interest to such Work Product to World Ventures in consideration for his continued engagement by World Ventures. For clarification purposes, Work Product shall not include similar work product brought with the Consultant to World Ventures from the Consultant's employers, former employers, or third party engagements, and the Consultant may take such work product with the Consultant if the Consultant's engagement is terminated; provided, however, World Ventures shall have the continuing right to use (on a non-exclusive basis) such work product, regardless of whether or not Consultant remains engaged by World Ventures, provided the same is not prohibited by any written agreement between Consultant and Consultant's employers, former employers, or third parties owning the rights thereto.

    4.3    <u>Work Made for Hire</u>. The Consultant agrees that, to the extent possible, the Work Product is a "work made for hire" for World Ventures, as such term is defined in 17 U.S.C. § 101, and that all copyrights in such Work Product shall be, and are, owned solely, completely, and exclusively by World Ventures. If for any reason the Work Product does not constitute a "work made for hire," the Consultant hereby assigns to World Ventures, its successors and assigns, all of the Consultant's right, title, and interest in and to the Work Product. The Consultant agrees to execute all documents reasonably requested by World Ventures to further evidence the foregoing assignment and to provide all reasonable assistance to World Ventures in perfecting or protecting World Ventures' rights in such Work Product.

**Section 5.**    **<u>Covenant Not to Solicit.</u>**

    5.1    The Consultant covenants and agrees that the Consultant will not, at any time during the Consultant's engagement and for two years following any termination of such engagement (for any reason and no matter at whose request such engagement is terminated), directly or indirectly, individually or as an owner, agent, employee, consultant or otherwise, induce or attempt to induce any employee of World Ventures to terminate such employee's employment.

    5.2    The Consultant further covenants and agrees that the Consultant will not, at any time during the Consultant's engagement and for two years (provided, if a term of two years is not permitted under applicable law, then the maximum period of time permitted under applicable law shall apply) following any termination of such engagement (for any reason and no matter at whose request such engagement is terminated), directly or indirectly, individually or as an owner, agent, employee, consultant or otherwise, utilize or attempt to utilize any Confidential Information or Work Product to solicit, induce, take away, or attempt to so solicit, induce or take away any vendor, investor (including, without limitation, any institutional investor, accredited investor or EB-5 investor), client, potential or actual business partner or joint venture, or customer of World Ventures, or prospective vendor, investor (including, without limitation, any institutional investor, accredited investor or EB-5 investor), client or customer of World Ventures with which World Ventures has engaged in active discussions about its business and services or investment opportunities.

**Section 6.**    **<u>Consultant Representations and Warranties.</u>** The Consultant represents and warrants (a) that the Consultant has no obligations, legal or otherwise, inconsistent with the terms of this Agreement or with the Consultant's engagement by World Ventures; (b) that the performance of the services called for by this Agreement do not and will not violate any applicable law, rule or regulation or any proprietary or other right of any third party; (c) that the Consultant will not use in the performance

of the Consultant's responsibilities for World Ventures any materials or documents of an employer, former employer, or third party without such employer's, former employer's, or third party's authorization; and (d) that the Consultant has not entered into and will not enter into any agreement (whether oral or written) in conflict with this Agreement.

Section 7.    **Termination Obligations.**

7.1    Upon termination of the Consultant's engagement or promptly upon World Ventures' request, the Consultant shall surrender to World Ventures all tangible Confidential Information, including, without limitation, all documents, books, notebooks, records, reports, notes, memoranda, drawings, sketches, models, maps, contracts, term sheets, letters of intent, lists, computer disks (and other computer-generated files and data), any other data and records of any kind, and all copies thereof, created on any medium and furnished to, obtained by, or prepared by the Consultant in the course of or incident to the Consultant's engagement, that are in the Consultant's possession or under the Consultant's control.

7.2    Following termination of the Consultant's engagement, the Consultant will fully cooperate with World Ventures in all matters relating to the Consultant's continuing obligations under this Agreement. The Consultant shall notify any future employers, customers and clients of the Consultant about the existence of this Agreement, and Consultant's rights and obligations hereunder, so that such employers, customers and clients fully understand the associated risks. In addition, the Consultant hereby grants his or her consent to allow World Ventures to notify any future employers, customers or clients of the Consultant about the Consultant's rights and obligations under this Agreement. Upon termination of the Consultant's engagement, the Consultant will, if requested by World Ventures, execute a certificate acknowledging compliance with this Agreement in such form as is reasonably satisfactory to World Ventures.

Section 8.    **Equitable Remedies.** The Consultant acknowledges that the Consultant's failure to carry out any obligation under this Agreement, or a breach by the Consultant of any provision contained herein, will constitute immediate and irreparable damage to World Ventures, which cannot be fully and adequately compensated in money damages and which will warrant preliminary and other injunctive relief, an order for specific performance and other equitable relief. The Consultant further agrees that no bond or other security shall be required in obtaining such equitable relief and the Consultant hereby consents to the issuance of such injunction and to the ordering of specific performance. The Consultant also understands that other action may be taken and remedies enforced against him or her.

Section 9.    **Miscellaneous.**

9.1    Notices. Any notice required or permitted to be given under this Agreement or pursuant to law shall be validly given, made or served if in writing and delivered in person, or three days after being sent by first class certified or registered mail, postage prepaid, or one day after being sent by nationally recognized overnight delivery service to the Consultant's personal address (as reflected in the records of World Ventures on the date of the notice), or to World Ventures' principal office, as the case may be.

9.2    Assignment. The Consultant's rights and obligations under this Agreement shall not be transferable by assignment or otherwise, and any purported assignment, transfer or delegation thereof shall be

void.  This Agreement shall inure to the benefit of, and be enforceable by, any purchaser of substantially all of World Ventures' assets, any corporate successor to World Ventures or any assignee thereof.

9.3     Necessary Action. Each party hereby agrees to perform any further acts and to execute and deliver any documents which may be reasonably necessary to carry out the provisions of this Agreement.

9.4     Governing Law, Venue, and Jurisdiction. This Agreement shall be interpreted, construed and enforced according to the laws of the State of Texas applicable to contracts made and to be performed entirely within such state.  The exclusive venue for any disputes shall be in the state or federal courts Dallas, Dallas County, Texas, and Consultant consents to jurisdiction in those courts.

9.5     Interpretation. The captions or headings in this Agreement are made for convenience and general reference only and shall not be construed to describe, define or limit the scope or intent of the provisions of this Agreement. No provision of this document is to be interpreted for or against any party by reason of the fact that such party or its legal counsel drafted it.

9.6     Severability. The provisions of this Agreement are severable, and if a court of competent jurisdiction determines that any provision hereof is invalid or void or unenforceable in whole or in part for any reason, such provision shall be enforced to the maximum extent allowed by such court, and all remaining provisions shall remain in full force and effect.

9.7     Entire Agreement. This Agreement contains the entire agreement and understanding between the parties hereto with respect to the matters contained herein and supersedes any prior or contemporaneous written or oral agreements between them respecting the subject matter hereof.  This Agreement does not supersede the Consulting Agreement signed by World Ventures and the Consultant on April 1, 2017.

9.8     Counterparts. This Agreement may be executed in several counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall, together, constitute and be one and the same instrument.

9.9     Benefit and Binding Effect. This Agreement shall be binding on, and shall inure to the benefit of, the parties hereto, their heirs, legatees, executors, administrators, successors and assigns.

9.10    Amendment. This Agreement may be amended only by a writing signed by the parties hereto.

9.11    Survival. Sections 3 through 9 of this Agreement shall survive the termination of this Agreement to the extent provided therein.

[signatures on following page]

IN WITNESS WHEREOF, the undersigned Consultant is signing this Agreement as of the date set forth below.

**CONSULTANT**

**MONTGOMERY CAPITAL ADVISERS, LLC**

_____

Signature

_____

Print Name

_____

Date

_____

Address for Notice

**ACKNOWLEDGED:**

**WORLD VENTURES**

_____

MCA 002139