Marcus A. Helt (Texas Bar No. 24052187)
Jack Haake *(Admitted Pro Hac Vice)*
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:  214.210.2821
Fax: 972.528.5765
mhelt@mwe.com
jhaake@mwe.com

*PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **SPHERATURE INVESTMENTS LLC,** *et* | § | |
| *al.* | § | **Case No.: 20-42492** |
| | § | |
| Debtors.[1] | § | |
| | § | **Jointly Administered** |
| _____ | § | |

**DEBTOR'S OBJECTION TO THE MOTION OF MELODY YIRU FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 USC § 362(d) TO FILE HER MOTION FOR CLASS CERTIFICATION IN THE DISTRICT COURT AND TO CONFIRM NO AUTOMATIC STAY APPLIES TO THE NON-DEBTOR PARTIES, OR IN THE ALTERNATIVE, FOR AN ORDER APPLYING FED. R. BANKR. PROC. 7023, PURSUANT TO FED. R. BANKR. PROC. 9014(c) TO PERMIT THE FILING OF A MOTION FOR CLASS CERTIFICATION IN THIS COURT AND RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Spherature Investments LLC ("**Spherature**"), together with the related parties identified

herein, as debtors and debtors-in-possession (collectively, the "**Debtors**"), files this objection (the

"**Objection**") to the *Motion of Melody Yiru for Limited Relief from the Automatic Stay Pursuant*

*to 11 USC § 362(d) to File Her Motion for Class Certification in the District Court and to Confirm*

---

[1] The "**Debtors**" in the above-captioned jointly administered chapter 11 cases ("**Cases**") are: Spherature Investments LLC EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220.

*No Automatic Stay Applies to the Non-Debtor Parties, or in the Alterative, for an Order Applying*

*Fed. R. Bankr. Proc. 7023, Pursuant to Fed. R. Bankr. Proc. 9014(c) to Permit the Filing of a*

*Motion for Class Certification in this Court and Related Relief* [Docket No. 189] (the "**Motion**")

of Melody Yiru ("**Yiru**").  In support of this Objection, the Debtors respectfully represent as

follows:

## PRELIMINARY STATEMENT

1.     At its essence, through the Motion, Yiru seeks to add an additional layer of

administration and expense to the reorganization by certifying a class action of virtually all of the

Debtors' sales representatives.

2.     This Court is tasked with exercising its discretion to determine whether a class

action device is more efficient and desirable than the bankruptcy claims process.  The class action

device is not efficient or desirable in these bankruptcy cases where (i) the putative class is finite,

known to the Debtors, and easily served with notice of their rights; (indeed the Debtors have filed

a motion seeking to serve these potential claimants);[2] (ii) all of the disputes are already

concentrated in the bankruptcy forum; and (iii) the proof of claim process provides an efficient

avenue for the submission and resolution of such claims without an added layer of expense.

3.     Additionally, the putative classes do not satisfy Rule 23 of the Federal Rules of

Civil Procedure ("**Rule 23**").  Specifically, the Representative Putative Class Claims do not satisfy

Rule 23 because the Plaintiff's claims are neither typical of the putative classes nor is she an

adequate class representative, and because numerous issues of fact would predominate over any

---

[2]  A true and correct copy of the proposed notice to those potential claimants, which was filed as Exhibit "B" to
Debtor's *Motion for Order (I) Authorizing the Debtors to Keep Certain Information in Schedules of Assets and
Liabilities Confidential; (II) Approving Form and Manner of Notice to Certain Potential Claimants; and (III)
Establishing Supplemental Deadline to File Proofs of Claim for Certain Potential Claimants* [Dkt. No. 196] is attached
hereto as Exhibit "A."

common questions. Even if the putative class did satisfy Rule 23, the benefits that generally support class certification in civil litigation are not realizable in these chapter 11 cases. If Yiru were allowed to pursue class certification, the Debtors' reorganization would be interrupted and its resources and attention would be diverted from maximizing recoveries for the Debtors' creditors to litigating class certification to avoid a large and amorphous claim that potentially would dilute creditor recovery and whose benefits would largely be realized by the professionals involved in the litigation.

4.      Moreover, lifting the stay would not provide any efficiencies where the underlying litigation has been litigated in three courts, had two judges, been in arbitration, and discovery had not even begun prior to the initiation of these cases. For all of these reasons, the Court should deny the relief requested in the Motion.

## **BACKGROUND**

5.      Yiru was only enrolled as a Sales Rep from September 2015 through April 2017.

6.      On June 1, 2017, Yiru filed a complaint in the United States District Court for the District of California, initiating *Melody Yiru v. Worldventures Holdings, LLC*, et al. Case No. 17-04357. On June 12, 2017, a notice of removal was filed in the United States District Court for the Northern District of Texas (the "**District Court**") initiating *Melody Yiru v. Worldventures Holdings, LLC*, et al. Case No. 17-02155 (together with Case No. 17-04357, the "**Class Action Litigation**"), and on August 14, 2017, the matter was transferred to the Northern District of Texas pursuant to a joint stipulation.

7.      Yiru's complaint was styled as a purported class action and asserted claims arising under: (i) California's endless chain scheme statute (Cal. Penal Code § 327 and Cal. Civ. Code § 1689.2); (ii) unfair and deceptive practices (Cal. Bus. & Prof. Code § 17200, et seq.); (iii) false

advertising (Cal. Bus. & Prof. Code § 17500, et seq.) and (iv-vi) Racketeer Influenced and Corrupt

Organizations Act ("RICO") (18 U.S.C. § 1962 (a), (c), (d)).

8.      In the four years since the Class Action Litigation was initiated, the parties have

litigated in three courts and participated in arbitration outside of the District Court.  Yiru also filed

a first amended complaint on November 19, 2019, and a renewed first amended complaint on

November 9, 2020.

9.      The renewed amended complaint seeks to certify a nationwide class defined as

"[a]ll persons who were WorldVentures representatives who enrolled with an address in the United

States from May 1, 2013 until the present."  *See* Case No. 17-02155, Docket No. 180 at 72.  The

renewed amended complaint also seeks to represent a sub-class in California defined as "[a]ll

persons who were WorldVentures representatives who enrolled with a California address from

May 1, 2013 until the present."  *Id*. At 73.  These proposed classes are focused on the Debtors

approximately 60,000 independent sale representatives (the "**Sales Reps**") who are in a contractual

relationship with the Debtors and whose commissions are calculated based on a published

commissions plan and terms of their subcontract agreement as outlined in their Independent Sales

Representatives Contracts.[3]

10.      On December 1, 2020, three weeks before the initiation of these Cases (as defined

below), the District Court entered an amended scheduling order that set June 1, 2021, as the

deadline for completion of class discovery and the filing of a motion for class certification.  The

scheduling order specifically provides that the parties may not alter the deadline by agreement.

---

[3] The Motion, however, references only a single purported class, defined as "all persons who joined WorldVentures, with certain exceptions."  Motion at 3 n.2; *see also, e.g.,* Motion at 12-13 ("allowing one class proof of claim will streamline the claims process")

Yiru noted in a pleading in the District Court that the parties had not engaged in discovery as of December 14, 2020. *See* Case No. 17-02155, Docket No. 200 at pg. 21.

11.     On December 21, 2020 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, initiating the above captioned cases (collectively, the "**Cases**" or the "**Chapter 11 Cases**") and creating the bankruptcy estates for each Debtor (individually, an "**Estate**" and, collectively, the "**Estates**"), in the United States Bankruptcy Court for the Eastern District of Texas (the "**Court**").

12.     A full description of the Debtors' business operations and reasons for commencing the Cases are set forth in the declaration submitted by the Debtors' Chief Restructuring Offer, Erik Toth (the "**First Day Declaration**"). The contents of the First Day Declaration are incorporated by reference, as if set forth herein verbatim, pursuant to Federal Rule of Civil Procedure 10(c).

13.     On January 22, 2021, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") [Docket Nos. 93 and 116]. Yiru was initially a member of the Committee, but later withdrew.

14.     On March 19, 2021, Yiru filed the Motion seeking to lift the stay to return to the District Court to seek certification of a class.

15.     On March 23, 2021, the Debtors filed a motion proposing procedures to serve notice of the Cases and provide an extended claims deadline to all Worldventure representatives [Docket No. 196].

## **ARGUMENT**

### **I.     Denying Class Certification in These Cases Would Be an Appropriate Exercise of This Court's Discretion.**

16.     At its heart, Yiru's Motion asks this Court to allow her to apply the class certification process to these Cases, either by lifting the stay to allow Yiru to pursue class

certification in the District Court or to have this Court consider class certification under Bankruptcy Rule 7023, which applies Federal Rule of Civil Procedure 23. The Court should deny this request in both its forms because class certification would add a layer of cost, delay, and complexity to these Cases without providing benefits to potential creditors beyond those provided through the bankruptcy process.

17.     Because Bankruptcy Rule 9014, which governs contested matters, does not provide that Rule 7023 automatically applies to contested matters, but only that "[t]he court *may* at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply," the decision to extend Rule 23 to a bankruptcy contested matter is committed to the Court's discretion.[4] *In re TWL Corp.*, 712 F.3d 886, 892 (5th Cir. 2013); *see also In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y. 2009). And given such discretion, "Rule 23's operation in contested matters involves a two-step process." *In re TWL Corp.*, 712 F.3d at 892. "First, the court must exercise its discretion under Rule 9014 as to whether to apply Rule 23 to the contested proceeding. Second, if the court decides to apply Rule 23, it then must determine whether the Rule's requirements for class certification have been satisfied." *Id.* at 892-93.

18.     Bankruptcy courts seldom resolve this two-step process in favor of granting class certification. As the court in *In re Ephedra Products Liability Litigation*, 329 B.R. 1, 5 (S.D.N.Y. 2005) noted, "bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and … class certification may be 'less desirable in bankruptcy than in ordinary litigation.'" That is because:

---

[4] Regardless of whether Rule 23 requirements are met, this Court has discretion to not extend Rule 23 in a bankruptcy case according to the considerations discussed herein. Accordingly, Yirus' citation to *Shady Grove Orthopedic Associates P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010), is inapposite and distinguishable as it was not decided in the context of a bankruptcy.

Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice. Furthermore, claims are "deemed allowed" under § 502(a) in the absence of an objection, in which case discovery and fact-finding are avoided altogether. Finally, where the debtor is liquidating and its managers have moved on to other jobs, the class action does not serve a deterrent effect.

*In re Musicland Holding Corp.* 362 B.R. at 650 n.8 (internal citations omitted); *see also In re Bally Total Fitness*, 402 B.R. at 619 ("it bears emphasizing that where, as here, a bankruptcy proceeding 'consolidates all claims in one forum and allows claimants to file proofs of claim without counsel at virtually no cost' many of the perceived advantages of class treatment drop away") (internal citations omitted).

19.    Particularly where the class certification has not taken place prior to the bankruptcy and the class members are known and can receive notice through the bankruptcy process, bankruptcy courts have declined to grant class certification. *See, e.g.*, *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 (finding that potential interference with timely distribution of the estate provided sufficient grounds to expunge the class claims); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa.1995) (cautioning that class claims should be used sparingly in bankruptcy).

20.    The exercise of the Court's discretion is informed by special considerations applicable in bankruptcy cases. These considerations include: (i) prejudice to the debtor or its other creditors, (ii) prejudice to putative class members, (iii) efficient estate administration, (iv) the conduct in the bankruptcy case of the putative class representatives, and (v) the status of proceedings in other courts. *In re Craft*, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005); see also *In re Motors Liquidation Co.*, 447 B.R. 150, 166 (Bankr. S.D.N.Y. 2011) (listing factors); *Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 (noting that a pervasive consideration is avoiding undue delay in

the administration of the case); *In re Nw. Airlines Corp.*, No. 05–17930, 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007) (denying class certification because of effect on other creditors).

21.     Here, (i) allowing Yiru to pursue class certification will prejudice the Debtors and other creditors, (ii) there is little, if any, prejudice to putative class members where they will receive notice of the bar date and be given a fulsome opportunity to assert any claims that they may have, and (iii) class certification will adversely affect the administration of these Cases, (iv) Yiru has sought to exert an outsized influence on these Cases, and (v) the proceedings in the District Court are still in their early stages, despite the passage of four years.

***Allowing Yiru to Pursue Class Certification Will Prejudice the Debtors and Their Creditors***

22.     The Debtors have focused on maintaining value for the Debtors' Estates and all of their stakeholders through the efficient use of the bankruptcy process.  Allowing class certification litigation to proceed would divert the attention of the Debtors' management and would also divert the Debtors' resources.

23.     Yiru alleges that the Debtors' entire company is illegal and should not be allowed to operate.  *See* Docket No. 189, ¶23.  If successful, Yiru would foreclose a restructuring or reorganization and would eviscerate the recovery of any of the Debtors' creditors.

24.     Thus, the Debtors would be required to turn their complete attention and resources to litigating the class action issue instead of focusing on the sale process that the Debtors have initiated to preserve value.  Accordingly, the Debtors and their creditors are harmed by allowing Yiru to pursue class certification.  *See In re Bally Total Fitness*, 411 BR. at 146 (denying class certification where certifying a class would cause "the Debtors to focus their energies on litigation . . . rather than emergence from Chapter 11").

### The Purported Class Is Not Prejudiced if a Class Is Not Certified

25.     The purported class of Sales Reps will not be prejudiced if a class is not certified. The Debtors have proposed to provide notice to the entire universe of the purported class with sufficient time to assert any claims that they may have against the Debtors or their Estates. Accordingly, there is no prejudice to the purported class if a class is not certified.  *See In re Motors Liquidation*, 447 B.R. at 165 (holding that class certification was not appropriate where class claim allowance, or even estimation, could not be achieved without materially delaying distributions to other creditors and materially increasing administrative costs substantially); *In re Vanguard Natural Res., LLC*, No. 17-30560, 2017 WL 5573967, at *5 (Bankr. S.D. Tex. Nov. 20, 2017) (finding that fact that debtor provided notice to every putative class member of the effective date of the Debtor's plan and of the applicable bar date weighed against the court exercising its discretion under Bankruptcy Rule 9014 to certify a class).

### Class Certification Delays Administration

26.     A court sitting in bankruptcy may decline to apply Rule 23 if doing so would "gum up the works" by forcing the reorganization to be put on hold for a determination of class certification and its size, which may have an outsized impact on a debtor's reorganization.  *See Woodward,* 205 B.R. at 376. ("On the other hand, a bankruptcy case can proceed no faster than its slowest matter, and a class action may "gum up the works" because until complete, the bankruptcy court cannot determine the entitlement of the other creditors").

27.     Courts have acknowledged that "class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters" and, therefore, "class litigation would have to be commenced at the earliest possible time to have a chance of being

completed in the same time frame as the other matters that must be resolved before distributing the estate." *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005).

28.     The relief that Yiru seeks will "gum up the works" for these Cases.  The four years of litigation and amended scheduling order entered shortly before the initiation of these Cases belie any assertions of a quick resolution and minimal costs to the estate for a class certification determination.  The Debtors disagree that the District Court is familiar with the applicable facts and law and could resolve the class certification issues more efficiently than this Court.  The Class Certification Litigation has been litigated in three different courts and before an arbitrator and has been reassigned to a different judge.  *See* Motion ¶6.  Additionally, the District Court required mediation as part of the scheduling order.  Accordingly, the District Court does not have any particular knowledge of the facts or law that would create efficiencies.

29.     If class certification were to proceed, either the District Court or this Court to oversee (a) discovery regarding class certification, (b) litigation over class certification, (c) discovery relating to class membership, (d) a trial on the claims in the class action, and (e) the process of notifying class members.  The Debtors would be required to participate in each phase of this time-consuming and expensive process or risk negative determinations that would have a res judicata effect on the Debtors and their Estates.

30.     The Debtors disagree that estate assets would not be impacted by the class certification process.  Even if counsel for the Class Action Litigation is paid by insurance, which the Debtors do not concede, the litigation process would require the Debtors to have their already thinly stretched employees focus on the needs of the litigation and discovery process.  Counsel to Yiru has already suggested that a deposition of the Debtors' chief restructuring officer may be necessary and she would likely also seek to depose other key employees that would disrupt the

Debtors' reorganization efforts.  Moreover, Yiru's suggestion that there would be little burden because she expects only a motion, opposition, and reply is poorly founded given the history of the Class Action Litigation to this point.

31.     Additionally, given the uncertainty in the class size and the imprecise manner in determining a class, the litigation may result in an outsized claim that makes any proposed plan unworkable.  Accordingly, the entire case would be put on hold to await the outcome of this process.  The Debtors respectfully submit that this "gums up the works" of the Debtors bankruptcy process and prejudices the Debtors and their creditors, which weighs in favor of denial of the Motion.

### There Are No Benefits to Certifying a Class

32.     The benefits of a class in civil litigation are to confer the benefits of increased efficiency, compensation to injured parties, and deterrence of future wrongdoing.  However, Courts have recognized that:

> A bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum. Further, while the class action ordinarily provides compensation that cannot otherwise be achieved by aggregating small claims, the bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions. In addition, there may be little economic justification to object to a modest claim, even where grounds exist. Hence, a creditor holding such a claim may not have to do anything more to prove his case or vindicate his rights. *See* Federal Bankruptcy Rule 3001(f) (proof of claim, properly executed and filed, is prima facie evidence of validity and amount of claim).

*In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) (internal citations and quotation marks omitted).  Additionally, Courts have been wary of the class device as a "lawyer's vehicle" where the primary benefit is not realized by potential claim holders.  *See id* at 376-77.

33.     Here, the purported class is finite, known to the Debtors, and easily served with notice so that they can assert any claim that they believe they may have.  Additionally, the Debtors believe that their Sales Reps are invested in the future of the company and that the majority would disagree with Yiru's allegations.  Yiru's purported class is any Sales Rep, including successful and happy Sales Reps.  For this reason, the Debtors respectfully submit that the bankruptcy process is better situated to address Sales Reps claims by providing an inexpensive method for Sales Reps to participate in distributions for only those Sales Reps that have claims.  Proceeding with the bankruptcy process also does not prejudice a class claim once all Sales Reps claims have been filed, since the Court, the Debtors, and Yiru will then have the ability to weigh whether there is any additional benefit to be had through a class claim.

## II.     Even If This Court Were Inclined to Exercise Its Discretion to Apply Rule 7023, Class Certification Would Not Be Warranted.

34.     The party requesting class certification bears the strict burden of proving that it has satisfied the requirements of Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' . . . [a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 348-50.  The court must do more than accept a putative class representative's allegations.  *Id.* at 350-51.  Rather, the court must engage in a "rigorous analysis" and only certify a class if such rigorous analysis shows that the prerequisites of Rule 23 have been satisfied.  *Id.* at 161.

35.     Here, the class certification process should not move forward at this time because Yiru cannot satisfy the requirements of Rule 23.

12

36.     As a preliminary matter, Yiru's class allegations fail because she cannot satisfy the elements of Rule 23(a), because she has not pled which section of Rule 23(b) she seeks to invoke, because she is neither an adequate class representative nor is her counsel adequate class counsel, and because the class she seeks to represent is not ascertainable.  Additionally, Yiru's claims under California state law must be dismissed pursuant to Rule 12(b)(6) because Texas law governs this dispute pursuant to the choice-of-law provision to which Yiru agreed. Further, Yiru failed to allege facts necessary to establish RICO claims against the Debtors.

37.     Rule 23(a) provides that: One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

38.     *First*, it is unclear whether the class is so numerous that joinder of all members is impracticable, even assuming that Yiru's overly broad purported classes are accepted.   The Debtors have the ability to serve all purported class members and there is a single forum for all claims.  Furthermore, cases in bankruptcy routinely deal with thousands of claims, including those of low dollar amounts. Accordingly, the Debtors respectfully submit that Yiru fails to fulfill this element of Rule 23.

39.     *Second*, Each of Yiru's proposed "class questions," contain legal conclusions and subjective terms that render them inappropriate for resolution on a class basis. *See Melody Yiru v. Worldventures Holdings, LLC, et al*. Case No. 17-02155 at 180 ¶ 79.  For example, Yiru proposes

the following "common" class question: "Whether WorldVentures' Statements of compensation during the Class Period were deceptive and misleading." *Id.* at ¶ 79(g). This question is flawed because it requires the Court to conduct individualized inquiries rather than answer the question "commonly" as to all proposed class members. Importantly, Yiru does not identify which statements she's referring, to whom the statements were made or who relied on or heard them, or describe how these purported statements are allegedly common to all class members.

40.    The foregoing proposed class question is illustrative of the larger problem with Yiru's class questions—namely, that they cannot be resolved on a class basis because the Court must conduct too many individualized analyses related to each proposed class member, in order to determine whether or not they are in the same position as Yiru. The need for such inquiries forecloses Yiru's contention that her claims should be resolved on a class-wide basis.

41.    In the Motion, Yiru argues that her purported class encompasses almost every Sales Rep with the only common element being that they were a Sales Rep.  However, this, standing alone, cannot serve as a common element since the claims that Yiru raises in the Class Action Litigation are not based on being a Sales Rep, but rather on a myriad of other claims.  Principal among the allegations in the Class Action Litigation are that certain advertised representations were made to Yiru regarding her ability to make profits that she did not realize. *See id.* ¶4.  Thus, as in *Woodward*, the gravamen of Yiru's claim is misrepresentation and fraud, which require reliance to be proven.  *See Woodward*, 205 B.R. at 371.

42.    Class actions based on fraud and negligent misrepresentation do not lend themselves to class action treatment because, built into each is the conclusory assumption that everyone who joined did so in reliance on the false representations.  *Id*. at 372; *McManus v. Fleetwood Enters*., 320 F.3d 545, 550 (5th Cir. 2003) ("Claims for money damages in which

individual reliance is an element are poor candidates for class treatment, at best.") (internal citations and quotations omitted); *In re Worldcom, Inc*., 343 B.R. 412, 422 (Bankr. S.D.N.Y. 2006) (denying class certification where the Court would be required to examine every individual class member's state of mind to establish class membership).

43.    For example, Yiru's allegations assume that each Sales Rep joined the company based on advertised sales income.  However, a Sales Rep may have joined the company for access to travel discounts or a community of like-minded people.  These facts are not common to the class and would require an individualized review of each Sales Rep.  Accordingly, Yiru fails to fulfill this element of Rule 23.

44.    *Third*, because of the individualized analysis required by Yiru's purported class, there are potentially different claims and defenses across the class. For example, Yiru's purported class stretches from May 2013 to the present.  The Debtors have revised the terms of their agreements and advertising over time such that a Sales Rep claimant from 2013 would have a different claim and the Debtors would have a different defense from a Sales Rep in 2019.  Thus, Yiru fails to fulfill this element of Rule 23.

45.    *Finally*, Yiru has not shown that she is an appropriate representative party.  In order to determine whether Yiru is an adequate class representative, the Court must inquire as to "(1) the zeal and competence of the representative's counsel and … (2) the willingness and ability of the representative to take an active role in and control the litigation to protect the interests of the absentees." *Berger v. Compaq Comp. Corp*., 257 F.3d 475, 479 (5th Cir. 2001). "[T]he adequacy inquiry also serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* at 479-80 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "A class representative must be part of the class and possess the same interest and suffer

the same injury as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted).

46. Yiru cannot adequately represent the class she has proposed. Indeed, Plaintiff's sole allegation concerning her adequacy as a class representative is contained in Paragraph 85 of the Renewed First Amended Complaint, which contains no factual allegations and merely parrots the language of Rule 23. *See Melody Yiru v. Worldventures Holdings, LLC*, et al. Case No. 17-02155 at 180 ¶85. As outlined above, Representatives are subject to different terms and conditions in their governing agreements depending on when they enrolled. Yiru was only enrolled as a Sales Rep from September 2015 through April 2017, and thus, she cannot represent adequately any Sales Rep whose relationship to the Debtors was governed by an agreement in place prior to September 2015 or after April 2017. Therefore, Yiru fails to fulfill this element of Rule 23.

**III.     The Motion to Lift Stay Should Be Denied.**

47. Yiru bears the burden to show "cause" in the first instance. *See In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002) (noting that the burden is on the moving party to make an initial showing of cause to lift the stay and, absent such a showing, that relief should be denied).

48. The automatic stay is one of the most fundamental protections granted the debtor under the Bankruptcy Code. *Midatlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) reh'g denied 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736. Its purpose is three-fold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc*., 946 F.2d 1031, 1036 (3d Cir.1991) (quoting *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir.1982)).

49.     "While the Bankruptcy Code does not define 'cause,' not every possible detriment to the creditor or estate independently justifies lifting the stay. Recognized causes generally take into account relevance, significant prejudice, or improper activity within the bankruptcy proceeding." *In re Omni Lion's Run, L.P.*, 578 B.R. 394, 399 (Bankr. W.D. Tex. 2017).

50.     In determining whether to lift the automatic stay to allow litigation against a debtor to proceed in another forum, bankruptcy courts have considered the following factors: 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.  *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

51.     Not all factors may be relevant to each case. Further, the decision to lift the stay may be upheld on judicial economy grounds alone. *See In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994), citing *In re Kemble*, 776 F.2d 802, 907 (9th Cir.1985).  Here, the relevant factors weigh against lifting the stay.

52.     *First*, the relief that Yiru seeks will not result in complete resolution of the issues. Class certification is only the first step in a lengthy process.  Even if a class is certified, the Debtors

believe it would not be defined as broadly as Yiru seeks certified and would require some factual determination as to who fit into the class. The Court would be tasked with overseeing disagreements regarding which Sales Reps were in the defined class based on the varied and wide assortment of facts for each Sales Rep. Accordingly, it is more efficient and there will be judicial economy for the Court to use its discretion to deny the Motion and class certification to allow the claims process to proceed.

53.     *Second*, the Debtors are in a bankruptcy process and all claims should be channeled through that process. Accordingly, the purported class action and claim are connected with the bankruptcy and, for all the reasons discussed above, would interfere with the administration of these Cases and prejudice the Debtors' creditors.

54.     *Third*, the claims do not involve the Debtors as a fiduciary.

55.     *Fourth*, the District Court is not a specialized tribunal and this Court is better suited to determine this issue in the context of a bankruptcy proceeding.

56.     *Fifth*, Yiru acknowledges that the purported claim would exceed insurance coverage, which would impact the Debtors' reorganization and delay administration of these Cases.

57.     *Sixth*, the parties involved in the Class Action Litigation are current or former directors or officers who the Debtors are required contractually to indemnify. Accordingly, litigation against any party would be an action against the Debtors. Additionally, Yiru's position is that the Debtors entire business is illegal. Accordingly, the class certification process directly impacts the Debtors and the bankruptcy process.

58.     *Seventh*, for all the reasons set forth above, the Debtors' creditors will be prejudiced by lifting the stay. Neither Yiru nor the Debtors know if an economy of scale would be achieved

because Yiru is the only known party seeking to assert the purported claim at this point. After the Sales Reps have been served with notice and been provided an opportunity to assert a claim the Court will be in a better position to determine whether there will be any economy of scale.

59.     The *eighth* and *ninth* factors do not weigh in favor or against lifting the stay.

60.     *Tenth*, for the reasons discussed above, allowing the class certification process will decrease judicial economy by requiring the District Court to preside over one part of the class certification process while this Court presides over the claims process that ultimately will be implicated with or without the class being certified. The Court will be better able to determine whether there is any judicial economy under a class structure after all claims have been filed and the universe of claimants is known. Likewise, the most expeditious and economical way to provide distributions to Sales Reps with claims is through the bankruptcy claims process.

61.     *Eleventh*, the Class Action Litigation, despite four years of proceedings, are still in their initial stages and is not at a point where it is ready for trial.

62.     *Twelfth*, the impact of the stay on the purported class is minimal and they will suffer no harm since they will have access to the bankruptcy claims process.

63.     Accordingly, the Debtors respectfully submit that the factors weigh against lifting the stay. To the extent that a class determination needs to be made, this Court is in the best position to weigh the benefits of a class claim in the context of a bankruptcy.

## IV.    The Automatic Stay Should Apply to Non-Debtors Where There is Indemnity and Res Judicata Issues.

64.     In general, only a debtor is included within the protective umbrella afforded by the automatic stay that arises pursuant to § 362(a)(1) and third-party defendants or co-defendants are typically not provided such protection if there are independent grounds for a claim against them.

65.     Nevertheless, courts may extend the automatic stay to non-debtor third-parties if "unusual circumstances" are present. *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3d Cir.1997). The Court of Appeals for the Fourth Circuit, in the seminal case on the issue, explained:

> This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

66.     The standard for the grant of a stay is generally whether the litigation could interfere with the reorganization of the debtor.  *First Cent. Fin.*, 238 B.R. at 19. S*ee also Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 570 (3d Cir. 2004); *see also Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999) (*quoting CAE Indus. v. Aerospace Holdings Co*., 116 B.R. 31, 34 (S.D.N.Y. 1990)) ("The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtor needs the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a 'material effect upon ... reorganization effort[s],' that debtor protection requires an exception to the usual limited scope of the stay.").

67.     Where the threatened litigation of non-debtors would interfere with the bankruptcy process, Courts have held that such litigation was stayed.  *See, e.g., Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 21 B.R. 777 (Bankr. D.N.M. 1982), *aff'd*, 25 B.R. 1018 (D.N.M. 1982) (enjoining indefinitely a creditor's actions against the debtor's president and shareholder who guaranteed the debtor's obligation); *In re Arrow Huss, Inc.*, 51 B.R. 853 (Bankr. D. Utah 1985) (granting the debtor's unopposed request for a 45-day stay preventing credit card companies from pursuing several of the debtor's officers and employees to collect debts incurred

by said officers and employees on behalf of the debtor and discussing prior cases on this issue);

*A.H. Robins Co., Inc. v. Piccinin* (*In re A.H. Robins Co., Inc.*), 788 F.2d 994 (4th Cir. 1986)

(affirming a district court order enjoining indefinitely product liability litigation against the debtor

and co-defendants), *cert. denied*, 479 U.S. 876, 107 S. Ct. 251, 93 L.Ed.2d 177 (1986); *In re United*

*Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997) (declining to grant an exemption to its previously

issued preliminary injunction against prosecution of claims against third parties where such

prosecution would foreclose a source of funding for the debtor).

68.     Yiru should not be allowed to pursue non-debtors where there is an identity between

the non-debtors and debtors such that any adjudication of the non-debtors would implicate the

Debtors.  Specifically, for Yiru to be successful in her claims against the non-debtors, it will be

necessary for Yiru to litigate matters regarding the Debtors' business since the basis for the claim

is that the Debtors are operating illegally.  Accordingly, any claim against the non-debtors would

have a direct impact on the Debtors and would require the Debtors to participate in the matters.

Therefore, the Court should deny Yiru's request for an order finding that the automatic stay does

not apply to actions against the non-debtors and should enter an order staying all such actions

pending the outcome of these Cases.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this

Court enter an order (a) denying the Motion and (b) granting such other and further relief as this

Court may deem just and proper.

Dated:  June 26, 2021

Respectfully submitted,

*/s/ Marcus A. Helt*

Marcus A. Helt, Esq. (Texas Bar #24052187)
Jack G. Haake, Esq. (Admitted *Pro Hac Vice*)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:  214.210.2821
Fax:  972.528.5765
mhelt@mwe.com
jhaake@mwe.com

*PROPOSED COUNSEL FOR THE DEBTORS*
*AND DEBTORS-IN-POSSESSION*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed and served via the Court's

CM/ECF filing and noticing system this 26th day of June 2021, to all parties registered to receive

electronic notices in this case.

*/s/ Marcus A. Helt*

Marcus A. Helt

DM_US 180462543-2.114823.0011