Phillip Lamberson – State Bar No. 00794134
Rakhee V. Patel – State Bar No. 00797213
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:  (214) 745-5390

**COUNSEL FOR SEACRET DIRECT, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **SPHERATURE INVESTMENTS LLC,** | § | |
| *et al.,* | § | **Case No. 20-42492** |
| | § | |
| DEBTORS.[1] | § | **Jointly Administered** |

## MOTION TO COMPEL ASSUMPTION OR REJECTION OF LIMITED SOLICITATION AGREEMENT

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion/Objection/Application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN TWENTYONE (21) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") are:  Spherature Investments LLC ("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings, LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255; WorldVentures Services, LLC ("WV Services") EIN#2220.

---

**MOTION TO COMPEL ASSUMPTION OR REJECTION OF LIMITED SOLICITATION AGREEMENT - Page 1 of 10**

**TO THE HONORABLE BRENDA T. RHOADES, CHIEF U.S. BANKRUPTCY JUDGE:**

Seacret Direct, LLC ("Seacret") hereby files this *Motion to Compel Assumption or Rejection of Limited Solicitation Agreement* (the "Motion"), pursuant to 11 U.S.C. § 365(d), and respectfully states the following:

### Summary of Motion

1. The Limited Solicitation Agreement is an executory contract. The Debtors should be compelled to do what the Bankruptcy Code requires, which is to assume or reject the Limited Solicitation Agreement before the plan is confirmed. Although the Debtors may not like the legal result of assumption or rejection and would prefer that this Court craft a novel (and legally unsupported) solution for them, assumption or rejection are clearly the only options they have related the Limited Solicitation Agreement.

### Jurisdiction and Venue

2. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. The subject matter of this Motion pertains to the administration of the estate and use of property by the Debtors and, therefore, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief are 11 U.S.C. § 365(d)(2) and (d)(3).

### Factual and Procedural Background

3. On December 21, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases; the Debtors remain in control of their assets and estates as debtors-in-possession.

4. On January 22, 2021, an Official Committee of Unsecured Creditors (the "Committee") was appointed in these cases.

5. Before the Petition Date, Seacret and WV Marketing entered into a Limited Solicitation Agreement (the "<u>Limited Solicitation Agreement</u>"). [2] As noted in WV Marketing's Schedule G, the purpose of the Limited Solicitation Agreement was "to assist in protecting and maintaining [the Debtors'] sales force." [Case 20-42494; Docket No. 22]. [3] The Court is familiar with the Limited Solicitation Agreement and all the disputes surrounding the agreement.

6. The Limited Solicitation Agreement is clearly an executory contract.[4] There are numerous performance and other ongoing obligations due from both Seacret and WV Marketing under the Limited Solicitation Agreement. Below are the relevant sections of the Limited Solicitation Agreement regarding some of the ongoing performance due:

*1.1 – Solicitation, waiver and agreement not to enforce*
1.1     Seacret is immediately allowed to solicit any WVM Sales Representatives and enlist such WVM Sales Representatives to join Seacret's downline organization and otherwise be associated with Seacret, as independent contractors, in order to sell current and future Seacret products and services and directly receive a commission or other compensation from Seacret for such sales. In connection therewith, WVM waives, and agrees not to enforce, any non-competition provisions or similar restrictions that might exist in any agreements between WVM and the WVM Sales Representatives. For the sake of clarity, WVM Sales Representatives may continue to sell WVM products and services while also selling Seacret products and services.

---

[2] Before the Limited Solicitation Agreement, Seacret and WV Marketing entered a Co-Marketing Agreement; however, this agreement was largely replaced by the Limited Solicitation Agreement. Further, although WV Marketing was the signatory to the Limited Solicitation Agreement, the agreement was binding on the other Debtors by the express terms of the Limited Solicitation Agreement.

[3] Seacret reserves all rights related to the Limited Solicitation Agreement, the Co-Marketing Agreement or otherwise, including the right to compel arbitration or demand a jury trial related to any disputes. This Motion is not intended to be, and should not be interpreted as, an informal proof of claim or any other demand for payment. This Motion is not a consent to or an acceptance of jurisdiction or venue by Seacret in connection with this bankruptcy case.

[4] Although the Bankruptcy Code does not define "executory contract," the Fifth Circuit follows the "Countryman" definition, in which "a contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" *RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) (quoting *Phx. Expl. v. Yaquinto (In re Murexco Petroleum)*, 15 F.3d 60, 62-63 (5th Cir. 1994); *accord Frontage Props. v. Chow (In re S & A Rest. Corp.)*, Nos. 08-41898, 09-4039, 2010 Bankr. LEXIS 3223, at *10 (Bankr. E.D. Tex. Sep. 10, 2010) (Rhoades, J.).

*1.3 – Access to database*
1.3     WVM agrees that Seacret shall have unfettered access to WVM's database (or other electronic materials and information) related to WVM's downline structure for the WVM Sales Representatives. Seacret agrees that such information is confidential and will treat it as such pursuant to the terms of this Agreement.

*5.1 and 5.2 – Indemnification*
5.1     Seacret shall defend, indemnify and hold harmless WVM, its officers, directors, officers, agents and employees from and against any and all damages, losses, liabilities, claims, suits, costs and expenses (including reasonable attorney fees) (collectively, "Claims") resulting from or relating to any breach by Seacret of any provision, warranty or covenant, under this Agreement.

5.2     WVM agrees to defend, indemnify and hold harmless Seacret, its directors, officers, agents and employees from and against any and all damages, losses, liabilities, claims, suits, costs and expenses (including attorney fees) (collectively, "Claims") resulting from or relating to any breach by WVM of any provision, warranty or covenant, WVM under this Agreement.

*7.2 – Confidentiality*
7.2     Each Party agrees to maintain the other Party's Confidential Information in strict confidence and, except to the extent expressly permitted in this Agreement or otherwise consented to in writing by the other Party, that the Confidential Information will not be disclosed by it or its "Representatives" (defined to include affiliates, directors, shareholders, officers, employees, agents, subcontractors, consultants, members, managers, advisors, or other representatives including legal counsel, and accountants) or any "Person" (defined to include individuals, partnerships, companies, limited liability companies, entities, corporations, or agents thereof) except with the specific prior written consent of the other.

*8.1 – Insurance*
8.1     During the Term of this Agreement, each Party shall maintain (i) Workers' Compensation and Employees' Liability Insurance (as required by law); and (ii) Public Liability Insurance including Contractual Liability and Products Liability Coverage with a combined single limit of not less than Five Million Dollars ($5,000,000). The insurance policies shall be claims based and name the other Party as an additional insured party and provide that at least thirty (30) days prior written notice of cancellation, amendment, or lapse of coverage shall be given to said additional insured by the insurer. Each Party will submit policies and/or certificates of insurance evidencing the above coverage to the other Party upon the other Party's reasonable written request.

*8.2 – Payment of Commissions*
8.2  During the Term of this Agreement, each Party shall timely pay any commissions due from such Party to the WVM Sales Representatives for products or services sold during the Term of this Agreement. Nothing in this section obligates Seacret to pay commissions due from WVM to the WVM Sales Representatives, and nothing in this section obligates WVM to pay commissions due from Seacret to the WVM Sales Representatives

*11.1 – Trademark License*
11.1   The Parties recognize that the corporate name and respective trademarks or tradenames of the other are valuable and that all goodwill associated with use of such names and marks shall inure to the benefit of the other. Either Party shall have the right to terminate this Agreement immediately in the event that the other Party acts in a manner which would negatively impact the reputation of such Party and/or of its name or marks and/or would infringe or dilute the value of the other Party's name or marks or which is not in compliance with applicable law in the United States or any other country in which either Party conducts business as the case may be. Each Party shall be solely responsible for the registration and maintenance of its trademarks and tradenames in the Territory. During the Term of this Agreement, each Party shall grant the other Party a revocable, limited, non-assignable license to use its corporate name, trademarks or tradenames in connection with its promotion or operation of the program described hereunder.

*13.13 – Press Releases*
13.13   Neither Party shall publish any press release, make any other public announcement or otherwise communicate with any news media concerning this Agreement or the transactions contemplated hereby without the prior written consent of the other Party; provided, however, that nothing contained herein shall prevent either Party from promptly making all filings with governmental authorities as may, in its judgment be required or advisable in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby.

7.   On or about September 23, 2021, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan for Spherature Investments LLC and its Debtor Affiliates* [Docket No. 459] (the "Plan"). The hearing to consider confirmation of the Plan is currently set for **October 21, 2021**.

### Relief Requested

8.   Section 365(d)(2) of the Bankruptcy Code provides that:

> [T]he trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time ***before the confirmation of a plan*** but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2) (2006) (emphasis added).

9.   In any normal case, this Motion would be unnecessary. Section 365(d)(2) clearly says that the Debtors must decide whether they intend to assume or reject a contract "before the

---
**MOTION TO COMPEL ASSUMPTION OR REJECTION OF LIMITED SOLICITATION AGREEMENT**
Page 5 of 10

confirmation of the plan." The Bankruptcy Code and interpreting case law outline the impact of each decision (assumption[5] or rejection[6]) on the parties' legal rights going forward. Thus, the

---

[5] The decision to assume a contract merely allows the contract to continue to operate and does not change the obligations of the parties, except as provided explicitly in the Code, i.e., permit the debtor to cure defaults, ignore ipso facto clauses, and resume its contractual obligations if the statutory tests are met. *See In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 706 (Bankr. S.D.N.Y. 1992); *In re Allen*, 135 B.R. 856, 864 (Bankr. N.D. Iowa 1992) (assuming a contract under § 365 only allows the debtor to carry on with the contract according to its terms); *In re LeRoux*, 167 B.R. 318, 320-321 (Bankr. D. Mass. 1994), *aff'd*, No. 94-11251, 1995 WL 447800 (D. Mass. Oct. 20, 1995), *aff'd sub nom. Summit Inv. and Dev. Corp. v. LeRoux*, 69 F.3d 608 (1st Cir. 1995) (statute and contract clause which otherwise would convert a general partner's interest into a limited partnership interest upon the filing of a bankruptcy petition unenforceable); Jay Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 231 (1989) ("'Assume' and 'reject' are merely bankruptcy terms for the decision to perform or to breach, an election open to any party to a contract outside of bankruptcy."); Michael T. Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection", 59 Colo. L. Rev. 845, 847 (1988) ("Assumption permits the estate to obtain the benefits of continued performance by the nondebtor party to the contract, as would assumption by an ordinary contract assignee.").

A party who assumes an executory contract must assume it in its entirety; it may not be assumed in part and rejected in part. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *Department of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 (4th Cir. 1990); *In re Chicago, R.I. & Pac. R.R.*, 860 F.2d 267, 272 (7th Cir. 1988); *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1987); *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir. 1984); *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *In re Village Rathskeller,* 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992). In other words, a debtor cannot assume the benefits of an executory contract without assuming its burdens as well. *See, e.g., Covington v. Covington Land L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("When a debtor assumes the lease or contract under § 365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Pacific Exp. Inc.*, 780 F.2d 1482, 1486 (9th Cir. 1986); *In re Godwin Bevers Co., Inc.*, 575 F.2d 805, 807 (10th Cir. 1978) (trustee who accepts executory contract takes burdens with benefits); *In re Fitch*, 174 B.R. 96, 101 (Bankr. S.D. Ill. 1994) ("debtor cannot change the nature of a contract merely by ... assum[ing] it ... debtor may not 'conditionally' assume such a contract, and ... must assume its burdens as well as its benefits"); *In re Monroeville Dodge, Ltd.*, 166 B.R. 264, 267 (E.D. Pa. 1994) (debtor-in-possession takes contract cum onere); *In re MacDaniel*, 89 B.R. 861, 863 (Bankr. E.D. Wash. 1988); *In re Maine*, 32 B.R. 452, 455 (Bankr. W.D.N.Y. 1983); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982). The debtor must perform "in full, just as if the bankruptcy had not intervened." *In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Airlift Int'l*, 761 F.2d 1503, 1508 (11th Cir. 1985); *In re Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978).

The assumption of an executory contract results in an administrative expense status for all obligations under the contract, regardless of whether the expenses arose pre- or postpetition. *In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993). This includes liabilities flowing from the rejection of a previously assumed executory contract. *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992).

[6] "[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease … if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition." 11 U.S.C. § 365(g).

Rejection does not extinguish or rescind the contract. It merely constitutes a breach of the contract, and the terms of the contract and non-bankruptcy law still control the relationship of the parties and the effect of such

---

**MOTION TO COMPEL ASSUMPTION OR REJECTION OF LIMITED SOLICITATION AGREEMENT**

Debtors here must simply decide whether they will assume or reject the Limited Solicitation Agreement on or about October 21, 2021, the confirmation date.

10.    But this is not a normal case. Here, the Debtors have decided to ignore the strictures of § 365(d)(2). Rather than assuming or rejecting the Limited Solicitation Agreement (with the effect of each decision being as outlined in the Bankruptcy Code and interpreting case law), the Plan requires that the Court make these extraordinary findings:

> The Confirmation Order shall contain a finding that if the Seacret Trademark License has not been revoked, the Seacret Trademark License is revoked as of the Effective Date, and Seacret shall have no future right to use the corporate name, trademarks and tradenames of Debtors.

> The Confirmation Order shall contain a finding that nothing in the Plan, including the revocation of the Seacret Trademark License, constitutes a termination of or assumption and assignment of the Limited Solicitation Agreement by the Debtors,

---

breach. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S.Ct. 1652, 1661-62 (2019); *In re Austin Development Co.*, 19 F.3d 1077, 1082 (5th Cir. 1994) (rejection breaches rather than terminates the contract); *In re Continental Airlines*, 981 F.2d 1450, 1459-61 (5th Cir. 1993) (rejection does not invalidate or extinguish contract); *In re Printronics,* Inc., 189 B.R. 995, 1000 (Bankr. N.D. Fla. 1995) (Rejection of an executory contract does not terminate the contract, it merely breaches the contract.); *In re Yasin*, 179 B.R. 43, 49-50 (Bankr. S.D.N.Y. 1995) (after rejection parties must resort to state law to determine their rights as a result of the breach.); *In re Independent American Real Estate, Inc.*, 146 B.R. 546, 553 (Bankr. N.D. Tex. 1992) (state law specifies the remedies of a non-breaching party to a contract); *In re Audra-John Corp.*, 140 B.R. 752, 757 (Bankr. D. Minn. 1992) (state law, not federal bankruptcy law, controls remedies available to non-rejecting party upon a breach); *In re Fitch*, 174 B.R. 96, 100 (Bankr. S.D. Ill. 1994) ("rejection ... neither adds to nor detracts from a claim for payment under the contract or the estate's liability for such payment"); *In re Old Electralloy Corp.*, 167 B.R. 786, 791 (Bankr. W.D. Pa. 1994) ("The Trustee's rejection of the contract ... does not render the contract non-existent. ... [nor does] the Trustee's rejection extinguish the Debtor's obligations under the ... provisions of the contract or render the [contract's] provisions inapplicable as of the date of rejection. ... [Finally], the rejection does not relieve the Trustee of his obligations which arise from the period of time during which the Trustee operated the business [postpetition but prior to rejection]."); *In re South Motor Co. of Dade County*, 161 B.R. 532, 545-46 (Bankr. S.D. Fla. 1993) ("rejection has no effect on a contract's continued existence ... Accordingly, rejection of an executory contract does not ipso facto terminate rights and obligations that arise from rejected contracts."); *In re Walnut Assocs.*, 145 B.R. 489, 494 (Bankr. E.D. Pa. 1992) (rejection of contract does not "invalidate, rejudicate, repeal, or avoid" an executory contract; it merely means that contract is not assumed and nondebtor party cannot make an administrative claim against debtor's estate if debtor fails to perform).

and all rights of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the Limited Solicitation Agreement are hereby *unaffected by the Plan* and preserved for the benefit of the Liquidating Trust and the beneficiaries thereof.

Plan VI. C. 7 & 8 (emphasis added). *See also* Plan VI. F.

11. In other words, the Debtors are neither assuming nor rejecting the Limited Solicitation Agreement, but rather asking the Court make findings that the Plan somehow nullifies the trademark license in the Limited Solicitation Agreement (regardless of what the Limited Solicitation Agreement and underlying law say) and that the Plan somehow preserves "all rights of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the Limited Solicitation Agreement … unaffected by the Plan" (regardless of what the Limited Solicitation Agreement and underlying law say).

12. Nothing in the Bankruptcy Code allows the Court to perform this magic trick. To the contrary, the Supreme Court recently addressed this exact issue, and a debtor's attempt to stretch the Bankruptcy Code into something it is not, in connection with rejection of a contract. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S.Ct. 1652 (2019). In *Tempnology*, the Supreme Court held that rejection is just a breach and that the effect of that breach is determined by "non-bankruptcy contract law." *Id*. at 1661-62. The fact that the Debtors do not like this result and want extra-contractual and extra-legal relief instead is irrelevant and, in fact, has been rejected by the Supreme Court.

13. The Debtors should be compelled to do what the Bankruptcy Code says – assume or reject the Limited Solicitation Agreement before confirmation – with the chips from such decision falling where they may.[7]

### Prayer

**WHEREFORE, PREMISES CONSIDERED**, Seacret requests that the Court enter an order compelling the Debtors to assume or reject the Limited Solicitation Agreement before confirmation of the Plan. Seacret also requests such further and other relief to which it may be justly entitled, both at law and in equity.

**DATED: October 6, 2021.**

Respectfully submitted,

By: */s/ Phillip Lamberson*
Phillip Lamberson
State Bar No. 00794134
Rakhee V. Patel
State Bar No. 00797213
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
plamberson@winstead.com
rpatel@winstead.com
achiarello@winstead.com

**COUNSEL FOR SEACRET DIRECT, LLC**

---

[7] Seacret reserves all rights in connection with the Debtors' assumption or rejection of the Limited Solicitation Agreement.

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2021, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. I further certify that notice of this document will be sent via First-Class U.S. Mail to the parties required to be served by Local Rule 9013(f) and the parties listed on the attached Complex Service List.

*/s/ Phillip Lamberson*
One of Counsel

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 5, 2021, counsel for movants conferred with counsel for the Debtors via electronic mail to discuss the relief requested in this Motion. Debtors' counsel did not respond before the Motion was filed, which I believe indicates that the Debtors oppose the relief requested in the Motion.

*/s/ Phillip Lamberson*
One of Counsel