Phillip Lamberson – State Bar No. 00794134
Rakhee V. Patel – State Bar No. 00797213
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
plamberson@winstead.com
rpatel@winstead.com
achiarello@winstead.com

**COUNSEL FOR SEACRET DIRECT, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **SPHERATURE INVESTMENTS LLC,** | § | |
| *et al.,* | § | **Case No. 20-42492** |
| | § | |
| **DEBTORS.**[1] | § | **Jointly Administered** |

## OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES

Seacret Direct, LLC ("Seacret"), a party-in-interest, files this *Objection* (the "Objection")

to the *Fourth Amended Joint Chapter 11 Plan  for Spherature Investments LLC and Its Debtor*

*Affiliates* [Docket No. 459] (the "Plan") and final approval of the *Disclosure Statement for the*

*Fourth Amended Joint Chapter 11 Plan of Spherature Investments LLC and its Debtor Affiliates*

[Docket No. 460] (the "Disclosure Statement") filed by the Debtors on September 23, 2021.

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") are:  Spherature Investments LLC ("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings, LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255; WorldVentures Services, LLC ("WV Services") EIN#2220.

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 1 of 46**

## I.   **INTRODUCTION**

1.      Seacret is sympathetic to the Debtors' desire to escape Chapter 11 and to do so quickly.  Further, Seacret is not against the sale to Verona, or closing the sale quickly.  As Seacret has noted many times before, the Limited Solicitation Agreement was structured for Seacret to co-exist with the Debtors, and Seacret's offers to the Debtors and others to resolve this case have largely been to accommodate such a relationship.  Seacret believes that a peaceful co-existence can not only be achieved, but would be the most beneficial result for all parties here.  However, in its desire and haste to close the sale and exit Chapter 11, the Debtors cannot run roughshod over the rights of others, including Seacret, or trample the very bankruptcy laws that created this case in the first place.  Nor can the Debtors use their need for an urgent sale as justification for confirming a Plan that only benefits a small handful of insiders and is value destructive to contract counterparties (like Seacret, whose income stream is intended to fund the plan) and creditors. That is what this Objection intends to address.

## II.   **FACTUAL BACKGROUND**

### A.   **Bankruptcy Factual Background**

2.      On December 21, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases, and the Debtors remain in control of their assets and estate as debtors-in-possession.

3.      On January 22, 2021, an Official Committee of Unsecured Creditors was appointed in these cases.

### B.   **The Plan and Disclosure Statement**

4.      On September 15, 2021, the Court entered the *Order:  (I) Conditionally Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes on*

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 2 of 46**

Plan; (III) Establishing Procedures for Submission of Topping Bids; (IV) Approving Certain Forms and Notices; (V) Scheduling a Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan; and (VI) Granting Related Relief [Docket No. 448] ("Solicitation Order"), which approved solicitation of the *Third Amended Joint Chapter 11 Plan of Spherature Investments LLC and its Debtor Affiliates* [Docket No. 445] (the "Prior Plan") and conditionally approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Spherature Investments LLC and its Debtor Affiliates* [Docket No. 446] (the "Prior Disclosure Statement").

5.      On September 23, 2021, the Debtors filed the Plan.  Capitalized terms not defined here have the meanings ascribed to such terms by the Plan.

6.      On September 23, 2021, the Debtors filed the Disclosure Statement and, even though it was not approved by this Court, began distributing it to parties in interest and using it to solicit votes for the Plan.

7.      This objection addresses the most recently filed plan, but at times addresses the changes made to the plan since solicitation on September 16, 2021.

**C.      The Limited Solicitation Agreement**

8.      Before the Petition Date, Seacret and WV Marketing entered into a Limited Solicitation Agreement (the "Limited Solicitation Agreement"). [2]  As noted in WV Marketing's Schedule G, the purpose of the Limited Solicitation Agreement with Seacret was "to assist in protecting and maintaining [the Debtors'] sales force."  [Case No. 20-42494; Docket No. 22].  At

---

[2] Before the Limited Solicitation Agreement, Seacret and WV Marketing entered a Co-Marketing Agreement; however, this agreement was largely replaced by the Limited Solicitation Agreement.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

its core, the Limited Solicitation Agreement allows the Debtors' agents to work with Seacret, and pays the Debtors a royalty for sales made by the Debtors' agents. The Limited Solicitation Agreement does not require exclusivity, but rather it expressly anticipated that the agents could work both for Seacret and the Debtors (ie. co-exist). The Limited Solicitation Agreement has neither been assumed nor rejected by the Debtors.

9.      As a contract counterparty, Seacret is clearly a party in interest under 11 U.S.C. §§ 1109(b) and 1128(b), and may object to confirmation of the Plan. *See In re Orchard at Hansen Park LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006); *So. Pac. Trans. Co. v. Voluntary Purchasing Group, Inc*., 227 B.R. 788 (E.D. Tex. 1998) (discussing Section 1109 generally). The Plan explicitly requires that the Court make specifics findings in the Confirmation Order about Seacret and the Limited Solicitation Agreement. In total, Seacret is addressed, by name, 40 times in the Plan, and the Limited Solicitation Agreement is addressed, by name, 14 times in the Plan. The Plan, if confirmed, would affect Seacret's rights in a myriad of ways, as addressed below.

## III.      DISCLOSURE STATEMENT OBJECTION[3]

10.      The Debtors' solicitation of multiple and/or unapproved Disclosure Statements fail to comply with Section 1125 of the Bankruptcy Code and therefore, the Disclosure Statement should not be finally approved.

11.      Pursuant to Section 1125 of the Bankruptcy Code, the Debtors may solicit acceptances of a plan of reorganization only after a written disclosure statement that has been approved by the Court as containing adequate information is transmitted to creditors. *See*

---

[3] As Section 1129(a)(1)-(3) requires a plan and the Debtors to comply with the Bankruptcy Code and applicable law, the following is also an objection to the Plan.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 4 of 46**

11 U.S.C. § 1125(b) (providing that a debtor may not solicit the acceptance or rejection of a plan

of reorganization unless it has provided its creditors with a disclosure statement containing

adequate information).  For purposes of Section 1125, the term "adequate information" is defined

as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's books
> and records . . . that would enable such a hypothetical investor of the relevant class
> to make an informed judgment about the plan . . . and in determining whether a
> disclosure statement provides adequate information, the court shall consider the
> complexity of the case, the benefit of additional information to creditors and other
> parties in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1).

Courts have generally held that adequate information includes a description of the plan and the

risks posed to creditor recovery under the plan.  *See*, *e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420,

425-426 (Bankr. E.D. Tex. 1996); *see also In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567,

567-68 (Bankr. N.D. Ga. 1984).

At a basic level, Section 1125(c) requires "The same disclosure statement shall be

transmitted to each holder of a claim or interest of a particular class."

**A.    The Debtors, as Plan Proponents, Violated Section 1125(b) and (c) in their
Solicitation of the Plan and Misled the Court About it**

12.    As detailed in the *Objection to the Debtors' Motion to Approve Immaterial*

*Modifications to the Debtors' Third Amended Chapter 11 Plan of Reorganization* [Docket

No. 513] (the "Modification Objection") filed by Seacret, the Debtors used an unapproved

disclosure statements and two different disclosure statements to solicit their plan(s).  The

Modification Objection is expressly incorporated by reference into this Objection.  The differences

between the two Disclosure Statements are enormous, including changing the estimated recovery

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 5 of 46**

for one class (changed from 65% to $0), significantly different Plan and post-confirmation treatment of the Debtors' largest secured creditors, changing a class from non-voting to voting, adding qualification and non-reliance language, and numerous material and Bankruptcy Code-required disclosures regarding tax treatment – ***many of which were not identified because the Debtors filed a false and misleading redline*** with the *Debtors' Motion to Approve Immaterial Modifications to the Debtors' Third Amended Chapter 11 Plan of Reorganization*. The Debtors' characterization of these changes as "immaterial" coupled with the misleading pleadings and statements to this Court are obvious attempts to whitewash their illegal solicitation.

## 1. The Debtors' Comments to Agents Were in Bad Faith and in Violation of Applicable Law

13.     This was not the Debtors' only violation of Section 1125. On or about October 2, 2021, "WorldVentures corporate" sent out an extremely misleading communication to the Debtors' sales agents (the "Agent Solicitation").

14.     The Agent Solicitation states:

(i) "[T]he new owner of WorldVentures will be Verona International Holdings, Inc.", without reference to the Plan, any required Bankruptcy Court approval or the risks associated with such approval;

(ii) "[N]o other topping bid was received," which is untrue as noted above;

(iii) "No other mlm company can say they are partnering with WorldVentures - any prior agreement or plan has been discontinued," which is a clear reference to the Limited Solicitation Agreement with Seacret and is inconsistent with the Plan and its condition to confirmation that this Court find that the LSA is unaffected by the Plan and continues after confirmation;

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 6 of 46**

(iv) "[W]e are paying commissions in full and on time," which is inconsistent with the Plan under which many agents' commissions (including post-petition commissions) will be substantially waived and paid over years, if paid at all; and

(v) "After the final order is signed, we will have more details on how unpaid commissions will be paid out," when the Plan itself actually details the treatment of agents' unpaid commissions and requires swift action by the agents to avoid having 65% or more of their claims waived, third-party releases forced on them and a host of other rights lost.  This statement also fails to note that the agents were entitled to vote on and make elections under the Plan ***before the final order is signed***, which directly impact how unpaid commissions will be paid out.

15.     The Agent Solicitation is a material misstatement with the clear intent of soliciting votes for the Plan and agent elections under the Plan by misrepresenting the Plan and other facts in this case.  The Agent Solicitation presupposes that the Plan will be confirmed without noting any risks or requirements of confirmation, relegates this Court's role to that of a rubber-stamp, and misrepresents creditors' plan treatment – all during the solicitation period.[4]  Further, the Agent Solicitation purports to be an official bankruptcy communication from Stretto, the Debtors' docket and claim agent, with links to the pleadings filed in this case.  Obviously, the Agent Solicitation is not any type of official bankruptcy communication, has not been approved by the Court and, in fact, constitutes an improper solicitation under sections 1125 and 1126.

---

[4] The voting deadline for the Plan was October 8, 2021.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

16.     The Disclosure Statements each also fail to include adequate information and even include false information, contain contradictory information between them and otherwise fail to comply with § 1125.

17.     For the reasons set forth herein and in the Modification Objection, the Disclosure Statement should not be approved on a final basis.  At this juncture, it is not clear which version of the plan was solicited and which disclosure statement was sent to creditors.  The Prior Plan and Plan contain different classification for the Opt-Out Sales Representatives.  This discrepancy means the Disclosure Statement fails to contain adequate information.

**B.      The Court Should Designate Impermissibly-Solicited Votes**

18.     As the Debtors used multiple, and at times, unapproved Disclosure Statements, the Court should designate all votes and elections that were solicited in violation of Section 1125.

19.     11 U.S.C. § 1126(e), provides:  "On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or *was not solicited or procured in good faith or in accordance with the provisions of this title*."  11 U.S.C. § 1126(e) (emphasis added).   "The consequence of such designation is that the vote is disregarded in the counting of votes to determine whether a class has accepted or rejected the Plan." *In re Save Our Springs (S.O.S.) All., Inc*., 388 B.R. 202, 230 (Bankr. W.D. Tex. 2008).  Seacret requests that all votes and elections impermissibly solicited (which are all votes and elections made in connection with the Plan) be designated and disregarded pursuant to Section 1126(e).

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 8 of 46**

## IV.    PLAN OBJECTION

20.    The Debtors, as proponents of the Plan, bear the burden of proving that the Plan satisfies each subsection of section 1129(a) of the Bankruptcy Code. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.),* 994 F.2d 1160, 1165 (5th Cir. 1993). Here, the Plan fails to comply with Sections 1129(a)(1), (2), (3), (7), (9), and (b) of the Bankruptcy Code and the Debtors cannot meet their burden. Therefore, this Court must deny confirmation of the Plan.

**A.    The Plan Does not, and the Debtors, as Plan Proponents, Did Not, Comply with the Bankruptcy Code and Applicable Law**

21.    In order for the Court to confirm the Plan, the Plan and Debtors must, *inter alia,* comply with "the applicable provisions of [the Bankruptcy Code]," and the Plan must be not be proposed "by any means forbidden by law." *See* 11 U.S.C. § 1129(a)(1)–(a)(3). The Plan violates applicable law and the Bankruptcy Code, and therefore, cannot be confirmed. The Plan proponents, the Debtors, must also comply with the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). As discussed throughout this Objection, the Plan, the Disclosure Statement(s), the solicitation, the sale process, and the Plan violate the Bankruptcy Code and other applicable law. The various sections of the Bankruptcy Code and other applicable law that the Plan or the Debtors have failed to comply with are detailed below.

**B.    The Plan Illegally Grants the Debtors a Discharge**

22.    The Plan violates Section 1141(d)(3) of the Bankruptcy Code, which expressly prohibits discharges in liquidating plans. Article IX.B. of the Plan purports to be a discharge of all claims and causes of action against the Debtors, except as otherwise provide by the Plan. However, Section 1141(d)(3) expressly prohibits a discharge if "(A) the plan provides for the

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 9 of 46**

liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan" and the debtor is not entitled to a discharge under Section 727(a), as it is not an individual. 11 U.S.C. § 1141(d)(3); *see Star Phx. Mining Co. v. W. One Bank*, 147 F.3d 1145, 1148, n. 2 (9th Cir. 1998). Here, there is no question that the Plan is a liquidating plan, the Debtors will not engage in business after consummation of the Plan, and the Debtors are business entities (not individuals). Therefore, the Debtors are not entitled to a discharge.

23.     The Debtors seek to use the releases, exculpations, and injunction contained in Article IX. E-G to impermissibly obtain a discharge. The overly-broad releases, exculpations, and injunction (discussed below) violate Section 1141 of the Bankruptcy Code.

24.     As the discharge is expressly prohibited by the Bankruptcy Code, the discharge should be struck.

**C.     The Plan Consolidates All the Debtors in Violation of Applicable Law**

25.     The Plan violates applicable substantive consolidation law. The Plan provides for substantive consolidation of the Debtors, for Plan (voting and distribution) purposes only. *See* Plan Section I.G. The Plan seeks to limit creditors to a single recovery, even if they have claims against multiple Debtors. The Plan asks the Court to totally disregard the corporate separateness of the Debtors, at the creditors' expense. Judge Stacey Jernigan referred to substantive consolidation for only plan and distribution purposes as substantive consolidation "light." *In re ADPT DFW Holdings, LLC*, 574 B.R. 87, 91 (Bankr. N.D. Tex. 2017). However, even in the context of substantive consolidation "light," Judge Jernigan required the debtors to meet the various substantive consolidation tests set forth by the Second and Third Circuits, as the Fifth

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 10 of 46**

Circuit has not adopted a standard.  *Id*.  The Fifth Circuit, without deciding whether bankruptcy

courts *even have the power* to order substitutive consolidation, described the same as "rough

justice" to be used "sparingly."  *Wells Fargo Bank of Tex. N.A. v. Sommers (In re Amco Ins.),* 444

F.3d 690, 696 n. 5 (5th Cir. 2006).  So, either the Debtors are substantially consolidated for all

purposes or none.

26.    The Debtors have wholly failed to assert that the Debtors' corporate separateness

should be disregarded.  It is not clear that, in the Fifth Circuit, bankruptcy courts even have the

power to administer this "rough justice."  Regardless, the Debtors have not met their burden with

respect to substantive consolidation, and the Plan fails to comply with applicable law.[5]

Alternatively, if the Debtors are subject to substantive consolidation, they should be substantively

consolidated for all purposes.

**D.    The Retention of Jurisdiction Violates Applicable Law**

**1.    A Plan Cannot Create Jurisdiction**

27.    The retention of jurisdiction in the Plan violates applicable law and should be

struck.  The retention of jurisdiction set forth in the Plan exceeds the jurisdiction and judicial power

of the Bankruptcy Court and is totally inappropriate.  Only provisions consistent with the Court's

post-confirmation jurisdiction should remain in the Plan, and the Court should strike all other

provisions.

28.    After a debtor's reorganization plan has been confirmed, the debtor's estate, and

thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the

---

[5] Absent such substantive consolidation the Debtors may have to solicit and tabulate votes on a per debtor, rather than a per plan basis, to comply with Section 1129(a)(10).

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 11 of 46**

implementation or execution of the plan." *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001).  Here, in contravention of applicable precedent, the Plan provides for post-confirmation jurisdiction that is far greater than pre-confirmation jurisdiction and statutory bankruptcy jurisdiction.

29.     It is black letter law that a plan or an agreement cannot create jurisdiction.  *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 161 (3d Cir. 2004) ("where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization").  28 U.S.C. § 1334 and the law interpreting the same create the outer limits of bankruptcy jurisdiction *before* confirmation.  The Debtors do not have the ability to manufacture post-confirmation jurisdiction that exceeds pre-confirmation bankruptcy jurisdiction and this Court's constitutional authority.

### 2.     The Plan Illegally Manufactures Jurisdiction

30.     Certain problematic parts of the retention of jurisdiction section of the Plan (Article XII) are set forth below.  These sections are problematic because they exceed the bankruptcy court's constitutional authority, Congress's grant of bankruptcy subject-matter jurisdiction and/or the Fifth Circuit law on narrowed post-confirmation jurisdiction.

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and whether the Chapter 11 Cases are closed for administrative purposes or not, the Bankruptcy Court shall retain exclusive jurisdiction, on or after the Effective Date, over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases, the Plan, and the Liquidating Trust Agreement, including jurisdiction to:
>
>> 3. Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 12 of 46**

Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to § 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors and the Purchaser, as applicable, amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed/Assigned Contracts and Leases List or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;…

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;…

6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;…

10. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;…

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;…

15. Determine any other matters that may arise in connection with or relate to the Plan, the Asset Purchase Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;…

20. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;…

23. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 13 of 46**

==any liability arising out of the termination of employment with the
Debtors, or the termination of any employee by the Debtors,
regardless of whether such termination occurred before or after the
Effective Date==

4.     The highlighted provisions emphasize the most egregious jurisdictional problems.

For example, paragraph 23 seems to try and create jurisdiction outside the Bankruptcy Court's

constitutional authority to provide that "all disputes… including any dispute relating to any

liability arising out of the termination of employment with the Debtors" are subject to this Courts

"exclusive jurisdiction."  It is not hard to imagine that such dispute involves *Stern* counterclaims,

or a jury demand, or is otherwise outside the bounds of this Court's statutory jurisdiction.

Therefore, the retention of jurisdiction section of the Plan should be struck, to the extent it is not

compatible with applicable law.

**E.     The Plan Violates Section 365 of the Bankruptcy Code**

31.     The Plan violates Section 365 of the Bankruptcy Code and cannot be confirmed

due to the same.

32.     Before the Petition Date, Seacret and WV Marketing entered into the Limited

Solicitation Agreement.[6]  As noted in WV Marketing's Schedule G, the purpose of the Limited

Solicitation Agreement was "to assist in protecting and maintaining [the Debtors'] sales force."

[Case 20-42494; Docket No. 22].[7]  The Court is familiar with the Limited Solicitation Agreement

and all the disputes surrounding the agreement.

---

[6] Before the Limited Solicitation Agreement, Seacret and WV Marketing entered a Co-Marketing Agreement;
however, this agreement was largely replaced by the Limited Solicitation Agreement. Further, although WV
Marketing was the signatory to the Limited Solicitation Agreement, the agreement was binding on the other Debtors
by the express terms of the Limited Solicitation Agreement.

[7] Seacret reserves all rights related to the Limited Solicitation Agreement, the Co-Marketing Agreement or otherwise,
including the right to compel arbitration or demand a jury trial related to any disputes. This Objection is not intended

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

33.     Seacret filed the Motion to Compel Assumption or Rejection of Limited Solicitation Agreement [Docket No. 494](the "Compel Motion").   The Compel Motion is expressly incorporated by reference into this Objection.

### 1.      The LSA is an Executory Contract

34.     The Limited Solicitation Agreement is clearly an executory contract.[8]   There are numerous performance and other ongoing obligations due from both Seacret and WV Marketing under the Limited Solicitation Agreement.   Below are the relevant sections of the Limited Solicitation Agreement regarding some of the ongoing performance due:

*1.1 – Solicitation, waiver and agreement not to enforce*

1.1     Seacret is immediately allowed to solicit any WVM Sales Representatives and enlist such WVM Sales Representatives to join Seacret's downline organization and other be associated with Seacret, as independent contractors, in order to sell current and future Seacret products and services and directly receive a commission or other compensation from Seacret for such sales. In connection therewith, WVM waives, and agrees not to enforce, any non-competition provisions or similar restrictions that might exist in any agreements between WVM and the WVM Sales Representatives. For the sake of clarity, WVM Sales Representatives may continue to sell WVM products and services while also selling Seacret products and services.

*1.3 – Access to database*

1.3     WVM agrees that Seacret shall have unfettered access to WVM's database (or other electronic materials and information) related to WVM's downline structure for the WVM Sales Representatives. Seacret agrees that such information is confidential and will treat it as such pursuant to the terms of this Agreement.

---

to be, and should not be interpreted as, an informal proof of claim or any other demand for payment. This Objection is not a consent to or an acceptance of jurisdiction or venue by Seacret in connection with this bankruptcy case.

[8] Although the Bankruptcy Code does not define "executory contract," the Fifth Circuit follows the "Countryman" definition, in which "a contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" *RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) (quoting *Phx. Expl. v. Yaquinto (In re Murexco Petroleum)*, 15 F.3d 60, 62-63 (5th Cir. 1994)); *accord Frontage Props. v. Chow (In re S & A Rest. Corp.)*, Nos. 08-41898, 09-4039, 2010 Bankr. LEXIS 3223, at *10 (Bankr. E.D. Tex. Sep. 10, 2010) (Rhoades, J.).

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 15 of 46**

*5.1 and 5.2* – Indemnification

5.1     Seacret shall defend, indemnify and hold harmless WVM, its officers, directors, officers, agents and employees from and against any and all damages, losses, liabilities, claims, suits, costs and expenses (including reasonable attorney fees) (collectively, "Claims") resulting from or relating to any breach by Seacret of any provision, warranty or covenant, under this Agreement.

5.2     WVM agrees to defend, indemnify and hold harmless Seacret, its directors, officers, agents and employees from and against any and all damages, losses, liabilities, claims, suits, costs and expenses (including attorney fees) (collectively, "Claims") resulting from or relating to any breach by WVM of any provision, warranty or covenant, WVM under this Agreement.

*7.2* – Confidentiality

7.2     Each Party agrees to maintain the other Party's Confidential Information in strict confidence and, except to the extent expressly permitted in this Agreement or otherwise consented to in writing by the other Party, that the Confidential Information will not be disclosed by it or its "Representatives" (defined to include affiliates, directors, shareholders, officers, employees, agents, subcontractors, consultants, members, managers, advisors, or other representatives including legal counsel, and accountants) or any "Person" (defined to include individuals, partnerships, companies, limited liability companies, entities, corporations, or agents thereof) except with the specific prior written consent of the other.

*8.1* – Insurance

8.1     During the Term of this Agreement, each Party shall maintain (i) Workers' Compensation and Employees' Liability Insurance (as required by law); and (ii) Public Liability Insurance including Contractual Liability and Products Liability Coverage with a combined single limit of not less than Five Million Dollars ($5,000,000). The insurance policies shall be claims based and name the other Party as an additional insured party and provide that at least thirty (30) days prior written notice of cancellation, amendment, or lapse of coverage shall be given to said additional insured by the insurer. Each Party will submit policies and/or certificates of insurance evidencing the above coverage to the other Party upon the other Party's reasonable written request.

*8.2* – *Payment of* Commissions

8.2 During the Term of this Agreement, each Party shall timely pay any commissions due from such Party to the WVM Sales Representatives for products or services sold during the Term of this Agreement. Nothing in this section obligates Seacret to pay commissions due from WVM to the WVM Sales Representatives, and nothing in this section obligates WVM to pay commissions due from Seacret to the WVM Sales Representatives.

*11.1* – *Trademark* License

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 16 of 46**

11.1    The Parties recognize that the corporate name and respective trademarks or tradenames of the other are valuable and that all goodwill associated with use of such names and marks shall inure to the benefit of the other. Either Party shall have the right to terminate this Agreement immediately in the event that the other Party acts in a manner which would negatively impact the reputation of such Party and/or of its name or marks and/or would infringe or dilute the value of the other Party's name or marks or which is not in compliance with applicable law in the United States or any other country in which either Party conducts business as the case may be. Each Party shall be solely responsible for the registration and maintenance of its trademarks and tradenames in the Territory. During the Term of this Agreement, each Party shall grant the other Party a revocable, limited, non-assignable license to use its corporate name, trademarks or tradenames in connection with its promotion or operation of the program described hereunder.

*13.13 – Press Releases*

13.13   Neither Party shall publish any press release, make any other public announcement or otherwise communicate with any news media concerning this Agreement or the transactions contemplated hereby without the prior written consent of the other Party; provided, however, that nothing contained herein shall prevent either Party from promptly making all filings with governmental authorities as may, in its judgment be required or advisable in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby.

35.    Section 365(d)(2) of the Bankruptcy Code provides that:

> [T]he trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time **before the confirmation of a plan** but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2)(emphasis added).

36.    Section 365(d)(2) clearly says that the Debtors must decide whether they intend to

assume or reject a contract "before the confirmation of the plan." The Bankruptcy Code and

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 17 of 46**

interpreting case law outline the impact of each decision (assumption[9] or rejection[10]) on the parties' legal rights going forward. Thus, the Debtors here must simply decide whether they will assume or reject the Limited Solicitation Agreement before confirmation of the Plan.

---

[9] The decision to assume a contract merely allows the contract to continue to operate and does not change the obligations of the parties, except as provided explicitly in the Code, i.e., permit the debtor to cure defaults, ignore ipso facto clauses, and resume its contractual obligations if the statutory tests are met. *See In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 706 (Bankr. S.D.N.Y. 1992); *In re Allen*, 135 B.R. 856, 864 (Bankr. N.D. Iowa 1992) (assuming a contract under § 365 only allows the debtor to carry on with the contract according to its terms); *In re LeRoux*, 167 B.R. 318, 320-321 (Bankr. D. Mass. 1994), *aff'd*, No. 94-11251, 1994 U.S. Dist. LEXIS 21733, at *24-27(D. Mass. Oct. 20, 1994), *aff'd sub nom. Summit Inv. and Dev. Corp. v. LeRoux*, 69 F.3d 608 (1st Cir. 1995) (statute and contract clause which otherwise would convert a general partner's interest into a limited partnership interest upon the filing of a bankruptcy petition unenforceable); Jay Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 231 (1989) ("'Assume' and 'reject' are merely bankruptcy terms for the decision to perform or to breach, an election open to any party to a contract outside of bankruptcy."); Michael T. Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection", 59 Colo. L. Rev. 845, 847 (1988) ("Assumption permits the estate to obtain the benefits of continued performance by the nondebtor party to the contract, as would assumption by an ordinary contract assignee.").

A party who assumes an executory contract must assume it in its entirety; it may not be assumed in part and rejected in part. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *Department of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 (4th Cir. 1990); *In re Chicago, R.I. & Pac. R.R.*, 860 F.2d 267, 272 (7th Cir. 1988); *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1987); *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir. 1984); *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *In re Village Rathskeller*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992). In other words, a debtor cannot assume the benefits of an executory contract without assuming its burdens as well. *See, e.g., Covington v. Covington Land L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("When a debtor assumes the lease or contract under § 365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Pacific Exp. Inc.*, 780 F.2d 1482, 1486 (9th Cir. 1986); *In re Godwin Bevers Co., Inc.*, 575 F.2d 805, 807 (10th Cir. 1978) (trustee who accepts executory contract takes burdens with benefits); *In re Fitch*, 174 B.R. 96, 101 (Bankr. S.D. Ill. 1994) ("debtor cannot change the nature of a contract merely by ... assum[ing] it ... debtor may not 'conditionally' assume such a contract, and ... must assume its burdens as well as its benefits"); *In re Monroeville Dodge, Ltd.*, 166 B.R. 264, 267 (E.D. Pa. 1994) (debtor-in-possession takes contract cum onere); *In re MacDaniel*, 89 B.R. 861, 863 (Bankr. E.D. Wash. 1988); *In re Maine*, 32 B.R. 452, 455 (Bankr. W.D.N.Y. 1983); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982). The debtor must perform "in full, just as if the bankruptcy had not intervened." *In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Airlift Int'l*, 761 F.2d 1503, 1508 (11th Cir. 1985); *In re Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978).

The assumption of an executory contract results in an administrative expense status for all obligations under the contract, regardless of whether the expenses arose pre- or postpetition. *In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993). This includes liabilities flowing from the rejection of a previously assumed executory contract. *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992).

---

[10] "[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease … if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition." 11 U.S.C. § 365(g).

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

## 2.      The Debtors Cannot Ignore Section 365(d)(2).

37.      The Debtors have decided to ignore the strictures of § 365(d)(2).  Rather than assuming or rejecting the Limited Solicitation Agreement (with the effect of each decision being as outlined in the Bankruptcy Code and interpreting case law), the Plan requires that the Court make these extraordinary findings:

> The Confirmation Order shall contain a finding that if the Seacret Trademark License has not been revoked, the Seacret Trademark License is revoked as of the Effective Date, and Seacret shall have no future right to use the corporate name, trademarks and tradenames of Debtors.
>
> The Confirmation Order shall contain a finding that nothing in the Plan, including the revocation of the Seacret Trademark License, constitutes a termination of or assumption and assignment of the Limited Solicitation Agreement by the Debtors, and all rights of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the Limited Solicitation Agreement are hereby *unaffected by the Plan* and preserved for the benefit of the Liquidating Trust and the beneficiaries thereof.
> Plan VI. C. 7 & 8 (emphasis added).  *See also* Plan VI. F.

---

Rejection does not extinguish or rescind the contract. It merely constitutes a breach of the contract, and the terms of the contract and non-bankruptcy law still control the relationship of the parties and the effect of such breach. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S.Ct. 1652, 1661-62 (2019); *In re Austin Development Co*., 19 F.3d 1077, 1082 (5th Cir. 1994) (rejection breaches rather than terminates the contract); *In re Continental Airlines*, 981 F.2d 1450, 1459-61 (5th Cir. 1993) (rejection does not invalidate or extinguish contract); *In re Printronics*, Inc., 189 B.R. 995, 1000 (Bankr. N.D. Fla. 1995) (Rejection of an executory contract does not terminate the contract, it merely breaches the contract.); *In re Yasin*, 179 B.R. 43, 49-50 (Bankr. S.D.N.Y. 1995) (after rejection parties must resort to state law to determine their rights as a result of the breach.); *In re Independent American Real Estate, Inc.*, 146 B.R. 546, 553 (Bankr. N.D. Tex. 1992) (state law specifies the remedies of a non-breaching party to a contract); *In re Audra-John Corp.*, 140 B.R. 752, 757 (Bankr. D. Minn. 1992) (state law, not federal bankruptcy law, controls remedies available to non-rejecting party upon a breach); *In re Fitch*, 174 B.R. 96, 100 (Bankr. S.D. Ill. 1994) ("rejection ... neither adds to nor detracts from a claim for payment under the contract or the estate's liability for such payment"); *In re Old Electralloy Corp*., 167 B.R. 786, 791 (Bankr. W.D. Pa. 1994) ("The Trustee's rejection of the contract ... does not render the contract non-existent. ... [nor does] the Trustee's rejection extinguish the Debtor's obligations under the ... provisions of the contract or render the [contract's] provisions inapplicable as of the date of rejection. ... [Finally], the rejection does not relieve the Trustee of his obligations which arise from the period of time during which the Trustee operated the business [postpetition but prior to rejection]."); *In re South Motor Co. of Dade County*, 161 B.R. 532, 545-46 (Bankr. S.D. Fla. 1993) ("rejection has no effect on a contract's continued existence ... Accordingly, rejection of an executory contract does not ipso facto terminate rights and obligations that arise from rejected contracts."); *In re Walnut Assocs*., 145 B.R. 489, 494 (Bankr. E.D. Pa. 1992) (rejection of contract does not "invalidate, rejudicate, repeal, or avoid" an executory contract; it merely means that contract is not assumed and nondebtor party cannot make an administrative claim against debtor's estate if debtor fails to perform).

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

38.     In other words, the Debtors are neither assuming nor rejecting the Limited
Solicitation Agreement, but rather asking the Court make findings that the Plan somehow nullifies
the trademark license in the Limited Solicitation Agreement (regardless of what the Limited
Solicitation Agreement and underlying law say) and that the Plan somehow preserves "all rights
of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the
Limited Solicitation Agreement … unaffected by the Plan" (regardless of what the Limited
Solicitation Agreement and underlying law say).

39.     Nothing in the Bankruptcy Code allows the Court to perform this magic trick.  To
the contrary, the Supreme Court recently addressed this exact issue, and a debtor's attempt to
stretch the Bankruptcy Code into something it is not, in connection with rejection of a contract.
*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S.Ct. 1652, 1661 (2019).  In
*Tempnology*, the Supreme Court held that rejection is just a breach and that the effect of that breach
is determined by "non-bankruptcy contract law."  *Id.* at 1663-65.  The fact that the Debtors do not
like this result and want extra-contractual and extra-legal relief instead is irrelevant and, in fact,
has been rejected by the Supreme Court.  The Debtors should be directed to do what the
Bankruptcy Code says and reject or assume the Limited Solicitation Agreement, with the result of
that decision being as directed by the Code and applicable law.

40.     The Plan, also impermissibly, seeks to revoke the Seacret Trademark License.  *See*
Plan V.C.7.  However, the Seacret Trademark License is only revocable to the extent the Debtors
may enforce the contract.  Here, the Seacret Trademark License is not revocable and the Limited
Solicitation Agreement is not enforceable by the Debtors because Debtors are in breach of the
Limited Solicitation Agreement.  17A *Am. Jur. 2d* Contracts § 589; *see Advanced Pers. Care, LLC*

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 20 of 46**

*v. Churchill*, 437 S.W.3d 41, 48 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Kammert Bros. Enters. v. Tanque Verde Plaza Co.*, 420 P.2d 592, 607 (Ariz. Ct. App. 1966) (vacated by *Kammert Bros. Enters. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 428 P.2d 678 (1967)).

41.     Article IV. L of the Plan provides "The Debtors and Liquidating Trust, as applicable, reserve and shall retain such Retained Causes of Action of the Debtors, **notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan**." Just as a breaching party cannot enforce a contract or claim rights under it, the Debtors cannot, after rejection, enforce a contract or claim rights under it. *See* 11 U.S.C. § 365(g) (rejection constitutes a material breach). This provision should be struck.

42.     Additionally, the Plan impermissibly requires continued payments or a declaratory judgment that payments are required under the Limited Solicitation Agreement. Unquestionably, this is a request to recover money. Pursuant to Federal Rule of Bankruptcy Procedures 7001(2) and (9), an adversary proceeding is required to make such determinations.

43.     The Plan clearly violates Section 365(d)(2) and cannot be confirmed.

**F.     The Common Interest Privilege Provision of the Plan Does Not Comply with Applicable Law**

44.     The Plan seeks to impermissible create a common interest privilege. Article IV.M.5. of the Plan provides "The Debtors and the Liquidating Trust shall be deemed to be working in **common interest** whereby the Debtors will be able to share documents, information, or communications (whether written or oral) relating to Claims, subject to a common interest privilege." This Court cannot create a common interest privilege where there is none.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 21 of 46**

45. Whether the common interest doctrine applies depends on the facts and circumstances of the litigation, the particular legal issue, the particular factual issue, and the parties shared interest related to the same. *See In re AGE Ref., Inc.*, 447 B.R. 786, 806 (Bankr. W.D. Tex. 2011). The Fifth Circuit and Texas courts narrowly construe this privilege and only enforce such privilege if there is a " palpable threat of litigation at the time of the communication." *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir. 2001); *see also In re XL Specialty Ins. Co*., 373 S.W.3d 46, 52 (Tex. 2012) (Texas more narrowly construes this privilege and limits it to actual litigants).[11] Given the fact specific nature of this privilege, the Court cannot make blanket determinations related to the same. Therefore, the Plan fails to comply with applicable law, and the Court should decline to include such provisions in the Plan.

**G.    The Plan's Third-Party Releases, Exculpation, and Injunction Provisions Should be Struck from the Plan**

**1.    Fifth Circuit Law Does Not Permit the Releases, Exculpation, and Injunction**

46. For the avoidance of doubt and to the extent applicable to it, Seacret does not agree to, and affirmatively opts-out of, the releases, exculpations, injunctions and any other restrictions on any causes of action contained in the Plan.

47. The Plan contains non-consensual third-party releases, an exculpation and an injunction that are the functional equivalent of the same. This Court cannot approve such plan provisions as they are contrary to the Bankruptcy Code and Fifth Circuit law.

48. Under Section 524(e) of the Bankruptcy Code, the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such

---

[11] Whether federal or Texas law applies to an asserted privilege depends on the claim at issue. Fed. R. Evid. 501.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 22 of 46**

debt."  "In general, section 524 protects a debtor from any subsequent action by a creditor whose claim has been discharged in a bankruptcy case. . . . A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt.  Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable." *Houston v. Edgeworth* (*In re Edgeworth*), 993 F.2d 51, 53 (5th Cir. 1993).  "Section 524 prohibits the discharge of debts of nondebtors."  *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995).

49.     The Fifth Circuit has held that non-consensual, non-debtor releases and injunctions are "generally not available under United States law.  Indeed, this court has explicitly prohibited such relief."  *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1059 (5th Cir. 2012); *see also In re Pac. Lumber Co.*, 584 F.3d 229, 251–52 (5th Cir. 2009) ("In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties.  These cases seem broadly to foreclose non-consensual nondebtor releases and permanent injunctions."); *In re Thru, Inc.*, No. 17-31034, 2018 U.S. Dist. LEXIS 179769, at *69 (N.D. Tex. Oct. 19, 2018) (concluding that Bankruptcy Court's approval of (i) injunctive relief that barred claims against insiders related to creditor claims; and (ii) exculpation in favor of such insiders, constituted clear error in each case); *In re Pilgrim's Pride Corp.*, No. 08-45664, 2010 Bankr. LEXIS 72, at *15-18 (Bankr. N.D. Tex. Jan. 14, 2010) (striking release, exculpation and injunctive provisions that prevented creditors from pursuing claims and causes of action against the debtor's directors and officers (among others)); *In re Bigler LP*, 442 B.R. 537, 544-547 (Bankr. S.D. Tex. 2010) (denying approval of plan injunction in favor of third parties not otherwise entitled to a discharge under section 524(e) of the Bankruptcy Code, and rejecting exculpation of released parties that included the debtor's insiders).

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 23 of 46**

50.     Further, the opt-out procedure in the Plan impermissibly binds and penalizes creditors who do nothing.  This type of agreement by non-action violates basic contract and due process principles.  *See In re SunEdison, Inc*., 576 B.R. 453, 458-459 (Bankr. S.D.N.Y. 2017). The Plan is silent as to how and why such comprehensive injunctive and exculpation provisions would be permissible in the Fifth Circuit.  The Debtors may not release (either through a release, injunction or exculpation) any of Seacret rights against non-debtors absent its consent, and the Debtors do not have Seacret's consent to release, enjoin, or exculpate any claims against such non-debtors.

51.     Setting aside for a moment the due process issues with opt-out third-party releases, the Released Parties have not contributed consideration or value under the Plan.  Particularly, "the Independent Directors; (b) the Employees; (c) Erik Toth, as Chief Restructuring Officer, and Larx Advisors Inc.;.(e) the Committee; (f) Committee Parties; and (g) the Professionals retained by the Debtors, Purchaser, and the Committee in the Chapter 11 Cases, and their respective employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such" cannot demonstrate that they contributed anything under the Plan.  These parties are entitled to  the compensation approved by this Court and/or their applicable agreements. Providing them with releases in addition to this compensation is unwarranted and gratuitous.  The release mechanism also appears to be an end-run around Sections 523(a) and 1141(d)(3) of the Bankruptcy Code, which limit third-party discharges and discharges for Debtors in a liquidating plan.

52.     The exculpation contained in Article IV. F is even more problematic.  This exculpation, like the release, is exceptionally broad and exculpates non-debtor third parties.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 24 of 46**

Unlike the release, there is not even an opt-out mechanism so they cannot even be described as consensual.  The exculpation provisions also clearly violate directly applicable Fifth Circuit law.  *See generally In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) ("these cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions… essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy.").  The exculpation renders even the opt-out meaningless.  The exculpation should be struck.

53.     The injunction contained in Article IV. G of the Plan is the functional equivalent of discharge for the Debtors (described above) and the third-party releases.  For the reasons set forth above, the injunction is impermissible and should be struck.

54.     The Plan, including the injunction, impermissibly limits Seacret's setoff and recoupment rights, in violation of Section 553 of the Bankruptcy Code (Article IX. G-H).

55.     The touchstone for bankruptcy jurisdiction is whether its outcome might have any "conceivable effect" on the bankruptcy estate.  *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987).  The party asserting that the Court has subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists.  *Vantage Trailers, Inc. v. Beall Corp.,* 567 F.3d 745, 748 (5th Cir. 2009).  Here, the Debtor has not, and cannot, assert that this Court has jurisdiction over the claims the Plan purports to release, exculpate, and enjoin.  Absent subject matter jurisdiction, this Court cannot approve the releases, exculpation, and injunction.  Regardless, the Bankruptcy Code and the Fifth Circuit foreclose this relief.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 25 of 46**

2. **The Releases, Exculpation, and Injunction are Not Warranted by the Facts of these Cases**

56.     The facts and circumstances of these cases are reason enough to strike the broad releases, exculpation, and injunction.  Certain potential bad-acts have occurred, which warrant investigation, rather than release.

57.     Under the Plan, the so-called Employees (who are really just four of the Debtors' pre-petition executives that still control the Debtors) receive broad releases from the Debtor and are the beneficiaries of broad third-party releases.  However, in reality, the Employees should be investigated, not released.

58.     The ring leader of the Employees is Michael Poates, the Debtors' COO.  Poates made his motivation clear early in this case when on or about January 22, 2021, Poates told Izhak Ben Shabat that "I'm in a situation now where … am I working for my future right now or am I just hoping to keep an estate afloat, until this gets settled in the court and then I'll just move on. So that's a real precarious spot to be in with a couple of kids in college."  In the same call, in which he was encouraging Ben Shabat to acquire the Debtors' assets for what he alleged was a sweetheart deal, Poates volunteered "I have access to some folks that have some public shells that are available right now that are already traded that he could buy the company through, own 100% of the stock in that company and then just not register it for a year.  And then when you register the stock and the travel business, the stock will sky rocket and then you have a liquidity valuation right then. And its clean and its separate."

59.     As to how the Employees would accomplish this in a Chapter 11 proceeding simple—on or about December 12, 2020, Poates assured Ben Shabat that "the second that we [the Debtors] file, ***I'll be running the show with Eric Toth as my cover as the CRO***."

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 26 of 46**

60.     Poates was not kidding.  Throughout, this case has been run with the primary focus on what benefits the so-called Employees.  On August 21 and November 6, 2020—when the Debtors had stopped paying their agents, literally the life blood of the company—three of the Employees paid themselves bonuses totaling about $500,000.  According to the time records available from counsel for the Debtors, not a minute has been spent investigating these transfers or any other claims against the Employees.

61.     Further, as currently presented, the Employees not only receive the releases, but will be employed by the Purchaser in unidentified roles for an ***undisclosed*** amount of compensation.  It has also just recently come to light that the Debtors actually had $22 million in taxable income in 2020, presumably through their invisible (at least to creditors) non-debtor subsidiaries, making the sale look like a sweetheart for the Purchaser.  The prior purchaser had also agreed to hire the Debtors' employees.

62.     This is curious because Poates, for example, only joined the Debtors in March of 2020, and does not appear to have had any prior travel or MLM experience.  He worked in the food service industry his entire career before joining the Debtors.[12]  How he made himself such an indispensable employee in such a short time and with no relevant background is unclear.

63.     According to publicly-available information, in March 2020, the Debtors obtained a total of roughly $6.5 million in PPP loans, and such loans were extended in order to preserve the jobs of 669 alleged employees of the Debtors.  Upon information and belief, the Debtors have never had 669 employees or anything close to that number.  For example, on the petition date

---

[12] True to his roots, Poates and Eric Haynes (the Debtors' Chief Legal Officer and another of the Employees) also moonlight as the CEO and CLO, respectively, of MAAC Investment Group, LLC.  Upon information and belief, MAAC runs a bar called Marlarkey's Tavern in North Dallas, and may own and manage other assets.

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 27 of 46**

(December 21, 2021 - roughly eight months after the loans were extended), the Debtors testified under oath that they had only 85 employees.  [Docket No. 16 ¶ 13; Docket No. ¶ 13].  What connection the so-called Employees had to the PPP loans is unknown.  Interestingly, Poates was also hired by the Debtors in March 2020, and the roughly $500,000 in bonuses to the Employees began a few months after that.

64.     It is likewise unclear what connection, if any, the Employees had in the false and misleading pleadings filed with this Court.  It is also unknown what participation the Employees may have had with the Agent Communication or other improper and illegal solicitation in this case.  It is clear that this was all done with the hope that the Plan could be confirmed quickly and without much investigation or scrutiny and thus, the Employees obtain the benefit of their releases and move on their new jobs with Verona.  So, at a minimum, they were highly motivated to look the other way -- if not more.

65.     Seacret believes no investigation has been made into any of the troubling facts outlined above, most of which the Committee was not even made aware of until recently.

**H.     The Classification of Claims and Claim Treatment is Not Equitable**

66.     The Debtor's classification is illegal gerrymandering, which violates Section 1122(a) and 1123(a)(4), and therefore, the Plan cannot be confirmed.

67.     The classification requirements under the Bankruptcy Code are designed to support the bankruptcy law's underlying purpose of equitable treatment of creditors.  "[O]rdinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class."  *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278 (5th Cir. 1991).  "In particular,

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 28 of 46**

debtors cannot place claims into separate classes to gerrymander the vote—that is, to create an impaired class that will approve the plan." *Save Our Springs All., Inc. v. WSI (II)-COS, L.L.C.*, 632 F.3d 168, 174 (5th Cir. 2011) (*In re Greystone III Joint Venture,* 995 F.2d at 1279).  At the same time, by its express terms, section 1122(a) requires that claims that are not "substantially similar" cannot be classified together.  *See, e.g., Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661 (6th Cir. 2002); *In re Pisces Energy, LLC*, Nos. 09-36591-H5-11, 09-36593-H5-11, 2009 Bankr. LEXIS 4709, at *24-25 (Bankr. S.D. Tex. Dec. 21, 2009).

68.     Here similar-situated creditors receive different treatment and classification based on their elections in order to manufacture an impaired accepting class.  Under the Plan, "Class 6(b) Claims are impaired by the Plan.  Therefore, each holder of a Class 6(b) Claim is entitled to vote to accept or reject the Plan and their vote will be tabulated in Class 5."  Plan § III.B.7.  This is problematic because the Plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4); *see also In re Cajun Elec. Power Coop.*, 230 B.R. 715, 732-33 (Bankr. M.D. La. 1999).

69.     Further, although all of the Debtors' agents start in Class 6, based on how they elect, they are moved into different classes for voting.  Class 6(a) is comprised of the Debtors' agents that want to work with Verona, and therefore, likely support the Plan; and Class 6(b) is comprised of the Debtors' agents that do not want to work with Verona, and therefore, likely do not support the Plan.  Thus, the Debtors have effectively, by the election mechanism, created a class of

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 29 of 46**

accepting creditors (Class 6(a)) while moving the otherwise non-accepting creditors (Class 6(b)) out of Class 6 and into Class 5 for tabulation purposes.  This is gerrymandering, plain and simple.

70.     This gerrymandering attempts to manufacture an impaired accepting class, which is impermissible under the Bankruptcy Code.  Therefore, the Plan cannot be confirmed.

### I.     The Plan was Not Proposed or Prosecuted in Good Faith

71.     As the Debtor has not proposed or prosecuted the Plan in good faith, it cannot be confirmed.  In order to confirm a plan under chapter 11 of the Bankruptcy Code, the plan must be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  "Good faith should be evaluated 'in light of the totality of the circumstances surrounding establishment of [the] plan,' mindful of the purposes underlying the Bankruptcy Code."  *W. Real Estate Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.),* 710 F.3d 239, 247 (5th Cir. 2013); *see In re T-H New Orleans P'ship*, 116 F.3d 790, 802 (5th Cir. 1997).

72.     It is the Debtors' burden to show, by a preponderance of the evidence, that they have satisfied the Bankruptcy Code's good faith requirement.  *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (holding that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown").

73.     As addressed in detail above, in soliciting the Plan, the Debtors utilized an unapproved Disclosure Statement and used two wildly different Disclosure Statements.  This is a clear violation of 11 U.S.C. § 1125(b) and (c).  Possibly proving the old adage that the cover up is worse than the crime, the Debtors ***then submitted a false and misleading redline in a pleading to the Court and all parties*** in an apparent attempt to minimize the changes between the two

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 30 of 46**

documents. The Debtors further trampled § 1125 by sending the highly misleading Agent Solicitation. Seacret submits that if all of this does not demonstrate bad faith in proposing and prosecuting the Plan, nothing does.

74.     Further, one of the primary purposes of the Bankruptcy Code "is to provide for equitable treatment of creditors in recovery of their claims." *Studensky v. Buttery Co. LLP (In re Argubright)*, 532 B.R. 888, 893 (Bankr. W.D. Tex. 2015) (citing *Burlingham v. Crouse*, 228 U.S. 459, 473 (1913)). The Plan cannot comply with the good-faith requirement of section 1129(a)(3) because it deprives certain creditors and parties-in-interest of their due value entitlements. *See, e.g., In re Quigley Co., Inc.,* 437 B.R. 102, 125-129 (Bankr. S.D.N.Y. 2010) (finding the plan process benefitting certain preferred creditors to the detriment of others not proposed in "good faith"); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 240 (Bankr. D. N.J. 2000) ("Of course, the classification and treatment of classes of claims is always subject to the good faith requirements under § 1129(a)(3).").

### 1.     The Auction Process was Not Conducted in Good Faith

75.     Here, the Plan was not proposed in good faith, as demonstrated by the Debtors' so-called auction process. This is detailed further below.

### J.     The Plan Does Not Result in Better Treatment than a Liquidation

76.     Section 1129(a)(7) of the Bankruptcy Code requires the Debtors to provide Plan distributions to creditors that are equal to or greater than distributions the creditors would receive in a Chapter 7. The Plan fails to demonstrate this is the case, and therefore, it cannot be confirmed. The liquidation analysis must be based on evidence, and not mere assumptions. *See, e.g.*, *In re Produce Hawaii, Inc.*, 41 BR 301, 303 (Bankr. D. Hawaii 1984).

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 31 of 46**

77.     The Court must find that each non-accepting impaired creditor will receive or retain on account of its claim value that is not less than the amount such creditor would receive if the debtor were liquidated under chapter 7.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N LaSalle St. P'ship,* 526 U.S. 434, 441 n.13 (1999); *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1159 n. 23 (5th Cir. 1988).

78.     With respect to the discharge, the releases, the exculpation, the waiver of certain claims, and other treatment described herein, creditors are not receiving better treatment than a liquidation.   For example, rejection damages creditors would be entitled to a recovery in a Chapter 7 and creditors' claims would not be discharged.  Additionally, Class 6(a) creditors would not be compelled (through their non-action) to waive 35% of their claim.  The Debtors cannot demonstrate they are treated better than in a Chapter 7 liquidation.  Therefore, the Plan cannot be approved.

### K.     The Plan Does Not Pay Priority Claims on the Effective Date

79.     The Plan does provide priority claimants their statutorily entitled claim treatment. Section 1129(a)(9)(A) of the Bankruptcy Code requires that priority wage claimants (under Section 507(a)(4)) and certain other priority claimants be paid in full on the effective date of the Plan.  11 U.S.C. § 1129(a).  The Plan fails to comply with Section 1129(a)(9) of the Bankruptcy Code, as holders of these claims were **not** solicited for their votes (and therefore cannot consent to plan treatment), and they will **not** be paid in full on the effective date of the Plan.

80.     Article III.B. of the Plan provides as follows:

Class 1—Allowed Priority Non-Tax Claims.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 32 of 46**

*Classification*: Class 1 consists of all Allowed Priority Claims that are not Priority Tax Claims.

*Treatment*: Each holder of a Class 1 Claim shall receive, at the election of the Debtors: (i) payment in full in Cash in an amount equal to the Allowed amount of such Class 1 Claim on the **later** of (a) the Effective Date and (b) when sufficient **Liquidating Trust Proceeds exist to pay such Claims in full in Cash**; or (ii) other treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code.

*Voting*: Class 1 Claims are Unimpaired by the Plan. Each holder of a Class 1 Claim is conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. **Therefore, each holder of a Class 1 Claim is not entitled to vote to accept or reject the Plan.**

Section III.B. of the Plan (emphasis added).

81.     The treatment of Class 1 Claims is completely inconsistent with the Bankruptcy Code.  Further, if you remove the Seacret Royalty Payment from the Debtors' liquidation analysis (which will be the result if the Limited Solicitation Agreement is rejected), the Debtors are projected to never have sufficient funds to pay the filed priority claims.  Therefore, the Plan cannot be confirmed.

**L.     The Plan Does not Comply with the Best Interest of Creditors Test**

82.     Section 1129(b)(1) of the Bankruptcy Code permits confirmation of a plan notwithstanding its rejection by an impaired class, also known as cramdown, only if, *inter alia*, "the plan does not discriminate unfairly and is fair and equitable."  11 U.S.C. § 1129(b)(1).  "A plan can be fair and equitable only if, at a minimum, it provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, or if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."  *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 460 (1999); *see also Fed. Sav. & Loan Ins. Corp. v. D & F*

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 33 of 46**

*Constr. Inc. (In re D & F Constr., Inc.),* 865 F.2d 673, 675 (5th Cir. 1989). For the reasons stated above, including the discharge, releases, exculpation, and injunction, the Plan is not fair and equitable. As such, absent compliance with 1129(a)(8), the Plan cannot be confirmed.

### M.   The Debtors are not Allowed to Sever Causes of Action Arising from a Contract from the Underlying Contract.

83.   Seacret objects to the extent that the Debtors attempt to separate the causes of action they assert related to the Limited Solicitation Agreement from the Limited Solicitation Agreement itself. In other words, the Debtors appear to be attempting to have the Limited Solicitation Agreement "ride through" bankruptcy and stay in the no-asset Debtors, while transferring the causes of action related to the Limited Solicitation Agreement to the asset-heavy Liquidating Trust. This is obviously inappropriate, as any claims travel with, or stay with, the agreement. It is just a transparent attempt to create litigation with no downside risk.

## V.   SALE OBJECTION[13]

84.   To the extent the Debtor seeks to approve the Sale Transaction either within the context of the Plan or otherwise, the sale cannot be approved, as it fails to comply with the Bankruptcy Code and related rules. Therefore, this Court should deny the Debtors' request (no matter the form) to approve the Sale Transaction.

### A.   The Sale Contemplated by the Plan Does Not Comply with Section 363 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure

85.   The Plan and the sale contemplated thereunder fail to comply with applicable law, including Section 363 of the Bankruptcy Code. A sale under section 363 "must be supported by

---

[13] As Section 1129(a)(1)-(3) requires a plan and the Debtors to comply with the Bankruptcy Code and applicable law, the following is also an objection to the Sale Transaction, as contained in the Plan.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 34 of 46**

an articulated business justification, good business judgment or sound business reasons." *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010). As the Fifth Circuit has further recognized, "the business judgment standard in section 363 is flexible and encourages discretion." *Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 601 (5th Cir. 2011). This Court should "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders alike." *Id.* at 601. The Debtors cannot meet the business judgment test for the Sale Transaction contemplated by the Plan, and it is the Debtors' burden to meet such standard. Therefore, the Sale Transaction should not be approved.

**B.       The Auction Did Not Comply with the Solicitation Order**

86.       The auction did not comply with the Solicitation Order, and the Debtors cannot establish that the Sale Transaction is the highest and best offer for the sale. The Debtors cannot prove that the Sale Transaction complies with the business judgment test because they did not allow Seacret, an interested third-party, to participate in the auction. Seacret would note that its offer, if accepted, would have allowed the Debtors to close their sale to Verona ***and*** resolve any and all issues with Seacret. The Debtors' refusal to consider it is dumb-founding.

**1.       The Court Established the Auction Rules**

87.       On September 15, 2021, this Court entered the *Solicitation Order.* The Solicitation Order set forth certain procedures for the Debtors to solicit bids for an Alternative Transaction (as defined by the Solicitation Order).

88.       In order to be a Qualified Bid (as defined by the Solicitation Order), a bid was required to, among other things, (i) identify the assets to be purchased and the party submitting the bid; (ii) be irrevocable; (iii) identity the consideration; (iv) identify the Debtors' liabilities that the

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 35 of 46**

bidder seeks to assume; (v) identify the executory contracts and unexpired leases the bidder seeks

to assume; (vi) include sufficient adequate assurance information; (vii) include and redlined

version of the Plan; (viii) include limited financial contingencies; (ix) must result in value to the

estates that, in the Debtors' reasonable business judgment, is more than the aggregate of the value

of the sum of the Sale Transaction (as defined by the Solicitation Order) proposed in the plan, plus

$600,000; (x) include sufficient information related to the potential purchaser's financial ability;

and (xi) include a deposit.

### 2.     Seacret's Bid Was Ignored by the Debtors

89.     The *Notice of No Auction with Respect to the Sale of Substantially All of the

Debtors' Assets* [Docket No. 485] (the "<u>Notice</u>") states that:  "Debtors did not receive a Qualified

Bid, as defined in the Topping Procedures Order.  Accordingly, the Debtors did not hold an

Auction, and Verona International Holdings, Inc. is therefore the successful bidder."  Notice p. 2.

90.     However, Seacret did submit a bid that complied in all ways with the Solicitation

Order ("<u>Seacret's Bid</u>").  As set forth below, Seacret's Bid was a Qualified Bid:

| **<u>Bid Requirements</u>** | **<u>Seacret's Compliance with the Same</u>** |
| --- | --- |
| Identification of Qualified Bidder | Yes |
| Identification of Assets | Yes |
| Irrevocability of Bid | Yes |
| Consideration | Yes |
| Assumed Liabilities | None. |
| Identification of Executory Contracts and Unexpired Leases and other Contracts | Not applicable as no contracts or leases are being assumed. |
| Adequate Assurance Information. | Not applicable as no contracts or leases are being assumed. |
| Purchase Agreement. | Attached to bid package. |
| Limited Contingencies. | Seacret's Bid is not contingent on obtaining financing or internal approvals, any |

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE
DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 36 of 46**

| | unperformed due diligence, or regulatory approval. |
|---|---|
| Minimum Reserve Price/Value to the Estate in Excess of the Plan. | Yes |
| Evidence of Financial Ability. | Willing to provide |
| Deposit. | Submitted even though not required |
| No Break-Up Fee. | None. |
| No Collusion. | None. |
| Due Diligence. | None. |
| Corporate Authority. | Yes. |
| Regulatory Approvals and Covenants. | None. |
| Consent to Jurisdiction and Authority to Enter Final Orders. | Yes, as further described by the attached. |

91.     As defined by the Solicitation Order, Seacret's Bid unquestionably constituted a Qualified Bid.  Thus, Seacret disputes that the Debtors did not receive an additional Qualified Bid. Seacret understands that the Committee disputes this as well.

92.     Further, the Debtors failed to engage with Seacret regarding its bid, either to negotiate the bid -- if the Debtors' believed it was inadequate -- or to identify why it was not a Qualified Bid and what would make Seacret's Bid a Qualified Bid.  Rather, the Debtors simply summarily rejected Seacret's Bid and declared Verona the winner.  This does not in any way comply with the sale procedures this Court approved.  As the Debtors did not comply with the Solicitation Order, they cannot establish the Sale Transaction complies with the business judgment test.  Therefore, the Court should deny the Sale Transaction.

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 37 of 46**

C.    **The Sale is a *Sub Rosa* Plan that Cannot Be Approved**

93.    To the extent the Debtors seek to have this Court approve the Sale Transaction outside the context of the Plan,[14] the Sale Transaction is obviously a *sub rosa* Plan – it literally was a Plan until its magical metamorphosis into a sale.  As the Fifth Circuit has recognized, attempts to achieve piecemeal plan relief in connection with a sale are inappropriate and should be denied.  *See In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) ("The Debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets."); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

94.    The Sale Transaction (embodied in the Plan) contemplates payment of some (but not other) pre-petition claims outside the construct of a Plan, including the payment of the Purchaser Note, the payment of the Sale Representative Commissions Claims, and the payment of the Virtual Currency Claims.  Absent the Plan and the correspondence treatment of claims, the Purchaser is **either** not providing similar consideration for the Sale Transaction, in which case parties-in-interest did not receive proper notice of the sale terms, **or** the Sale Transaction is a plan-sale that does not comply with the procedural safeguards of Section 1129 and the Bankruptcy Code.  The sale also relies on elections from the Debtors' agents that were made in connection with Plan voting (and based on a deficient, if not fraudulent, solicitation process).  To the extent the Debtors seek approval of the Sale Transaction outside the context of the Plan, the Sale Transaction must be denied as an illegal *sub rosa* plan.

---

[14] The Disclosure Statement provides " If the Plan is not confirmed, the Debtors reserve the right to request that the Bankruptcy Court approve the Sale Transaction as a §363 sale." Disclosure Statement p. 25.

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 38 of 46**

### D.   The Sale was Not Properly Noticed and Cannot Be Approved

95.   Notice of the Sale Transaction does not comply with the Bankruptcy Rules or Local Rules.  Therefore, the Court should decline to approve the Sale Transaction.

96.   Rule 6004(a) of the Federal Rules of Bankruptcy Procedure provides that "Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code."  Fed. R. Bankr. P. 6004(a).  Rule 2002(a)(2) the Federal Rules of Bankruptcy Procedure requires twenty-one (21) days' notice by _mail_ for a motion that seeks to use, sale or lease of property of the estate other than in the ordinary course of business. Fed. R. Bankr. P. 2002(a)(2) (emphasis added).

97.   Rule 2002(c)(1) the Federal Rules of Bankruptcy Procedure states "the notice of a proposed use, sale, or lease of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  Fed. R. Bankr. P. 2002(c)(1).  Local Bankruptcy Rule 6004-1 provides that "A notice or motion required by Fed. R. Bankr. P. 6004(a), (c), or (d), in addition to the requirements of Fed. R. Bankr. P. 2002(c)(1), must contain: …(2) a certificate of service reflecting service on the master mailing list (matrix) as constituted by the Court on the date of service; and, to the extent applicable: (3) the name and address of the proposed buyer (4) the proposed sale price, estimated costs of the sale or lease, including commissions, auctioneer's fees, costs of document preparation and recordation, etc.; (5) the names and addresses of all parties including judgment creditors who claim an interest in the property, the nature of the claimed interest, and the balance due."

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 39 of 46**

98.     The Debtors have the burden to prove they complied with the applicable notice provisions of the Federal Rule of Bankruptcy Procedure. *See W. Auto Supply Co. v. Savage Arms (In re Savage Indus.)*, 43 F.3d 714, 721 (1st Cir. 1994). The Debtors cannot prove they sufficiently apprised creditors of a stand-alone Sale Transaction. The notice provided by the Debtors related to a stand-alone Sale Transaction and does not comply with the above-referenced rules. In fact, absent the claim treatment aspect of the Plan, one cannot determine the terms of the so-called Sale Transaction or the price to be paid for the same, required by Local Bankruptcy Rule 6004-1(4). The plan-related notice mailed to creditors merely referenced the Claims Agent website that contained copies of the unapproved Disclosure Statement and Plan. On this basis alone, the Court should decline to approve the Sale Transaction.

**E.      The Terms of the Sale Have Not Been Provided to Parties-in-Interest**

99.     To the extent the Debtors seek to have the Court approve the Sale Transaction outside the context of the Plan, parties have not been adequately apprised of the terms of such a sale. The Plan does not contain an asset purchase agreement or other definitive sale documents with detailed terms. Rather, the Plan contains a term-sheet like section detailing the terms of the Sale Transaction, including claims treatment. Given the lack of notice regarding specific sale terms, Seacret reserves all right to object to any terms of such a sale.

100.    Seacret objects to the Sale Transaction to the extent it attempts to grant a release of any claims or causes of action Seacret may have against Verona or any other non-debtor. For example, as noted above, the Limited Solicitation Agreement has neither been assumed nor rejected under Section 365, and until and unless it is, it continues as a contractual obligation of the Debtors post-sale. This is apparently the exact position that the Debtors have taken on the Limited

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 40 of 46**

Solicitation Agreement.  [Dkt. No. 531]  Unquestionably, Verona is aware of the Limited Solicitation Agreement – it actually required impairing Seacret's rights in the Limited Solicitation Agreement as a condition to closing.  The Sale Transaction clearly permanently forecloses the Debtors' ability to perform under the Limited Solicitation Agreement and prompted the revocation of a contract right (the trademark license).  Therefore, Seacret may hold claims against the Purchaser for tortious interference with an existing contract[15] (among other claims) to the extent a sale is approved over Seacret's objection.  The Court has no authority to release these claims.

101.    Seacret's claims against the Purchaser or any other non-debtor are not "interests" or "claims" against the Debtors or the Debtors' assets that this Court can approve a sale free and clear of such liabilities.  *See Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 155-156 (2d Cir. 2016) ("a bankruptcy court may approve a § 363 sale "free and clear" of successor liability claims if those claims flow from the debtor's ownership of the sold assets.  Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim.").  Rather, these are totally independent claims caused by the Purchaser's or other parties' conduct, not the Debtors' conduct.  Likewise, this Court does not have jurisdiction to release, enjoin, or exculpate non-debtors from claims or causes of action Seacret may have against non-debtors.  *Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 251–52 (5th Cir. 2009).  Here, Seacret's

---

[15] Under Arizona law, which governs the Limited Solicitation Agreement, in order to state a claim for tortious interference with an existing contract the plaintiff must show  "[1] the existence of a valid contractual relationship or business expectancy; [2] knowledge of the relationship or expectancy on the part of the interferer; [3] intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [4] resultant damage to the party whose relationship or expectancy has been disrupted. *Wagenseller v. Scottsdale Mem'l Hosp*., 147 Ariz. 370, 386, 710 P.2d 1025 (1985); see *also DoPadre v. City of Sierra Vista*, No. 2 CA-CV 2018-0150, 2019 Ariz. App. Unpub. LEXIS 952, at *5 (Ct. App. Aug.  21, 2019).

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

claims may include potential post-sale claims against the Purchaser.  Therefore, this Court does not have the jurisdiction to issue a sale order releasing or otherwise limiting these claims.  To the extent the Court is asked to approve a sale containing such terms or any other terms not disclosed to parties, such relief should be denied.

## F.      The Debtors Are Attempting to Sell Personally Identifiable Information Without Following Bankruptcy Code Required Procedures

102.    Clearly, a big chunk of what is being sold in the Sale Transaction is what the Bankruptcy Code defines as  "personally identifiable information."  11 U.S.C. § 101 (41A).  It is the names, addresses and other personal information, as well as credit card data, for the Debtors' current and former agents and customers.  But the Debtors have utterly failed to provide parties required notice of this fact and comply with applicable law.

### 1.      The Bankruptcy Code Contains Strict Provisions Related to the Sale of Personally Identifiable Information, and the Debtor has Not Complied with Such Provisions

103.    Section 363(b)(1) of the Bankruptcy Code provides that the Debtor may sell assets outside the ordinary course of business "except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information[16] about individuals to persons that are not affiliated with the debtor and if

---

[16] Bankruptcy Code Section 101(41A) provides:

(41A) The term "personally identifiable information" means—

(A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes—

(i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;

(ii) the geographical address of a physical place of residence of such individual;

(iii) an electronic address (including an e-mail address) of such individual;

(iv) a telephone number dedicated to contacting such individual at such physical place of residence;

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 42 of 46**

such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

**(A) such sale or such lease is consistent with such policy; or**

**(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—**

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law."

11 U.S.C § 363(b)(1) (emphasis added).

104.    Section 332(a) of the Bankruptcy Code provides that "if a hearing is required under section 363(b)(1)(B), the court **shall** order the United States trustee to appoint, not later than seven (7) days before the commencement of the hearing, 1 disinterested person (other than the United States trustee) to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman."  11 U.S.C § 332 (emphasis added).

---

(v) a social security account number issued to such individual; or

(vi) the account number of a credit card issued to such individual; or

(B) if identified in connection with 1 or more of the items of information specified in subparagraph (A)—

(i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or

(ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically.

11 U.S.C. § 101(41A).

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 43 of 46**

105.    Federal Rule of Bankruptcy Procedure 6004(g) provides that "motion for authority to sell personally identifiable information **shall** include a request for an order directing the United States trustee to appoint a consumer privacy ombudsman" and such ombudsman must be appointed seven days before a hearing on a sale motion.  The Debtor did not request the appointment of an order directing the appointment of a consumer privacy ombudsman in connection with the request to approve the Sale Transaction in the Plan.

### 2.    The Debtor Has Not Complied with Section 363(b)(1)

106.    Since the Debtors have not requested the appointment of a consumer privacy ombudsman, any sale of personally identifiable information must comply with their privacy policy. The privacy policy[17] provides "Nevada law (SB 220) requires website operators to provide a **way for Nevada consumers to opt out of the sale of personal identifiable information that the website operator may collect about them**.  Please note we do not sell your personal information to third parties as defined in Nevada law, **and will not do so in the future without providing you with notice and an opportunity to opt-out of such sale as required by law.**" Similar obligations expressly apply to California residents pursuant to the California Consumer Privacy Act.

107.    The Debtors have clearly failed to provide the required notice and opt out options to California and Nevada residents, seek to appoint a consumer privacy ombudsman, or establish that their sale fits within their applicable policy and law.  Further, as Nevada chartered entities, the Debtors may be required to comply with Nevada privacy law as to **_all_** consumers for which they

---

[17]    WorldVentures Marketing, LLC *Privacy Policy* (Jan. 24, 2020), *available at* https://assets.wvholdings.com/1/loc/us/en/wvcom/privacypolicy_us_en.pdf (last visited Oct. 13, 2021).

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 44 of 46**

are attempting to sell their data.  As the Debtors have failed to comply with applicable law, the Sale Transaction cannot be approved.

## VI.    RESERVATION OF RIGHTS

108.    Seacret continues to analyze and review the Plan and reserves all rights in connection with confirmation of the Plan.  Seacret submits this Objection without prejudice to, and with a full reservation of, Seacret's right to supplement or amend this Objection in advance of, or in connection with, the hearing to confirm the Plan, including, without limitation, the right to conduct further discovery.  Nothing herein is intended to be a waiver by Seacret of any right, objection, argument, claim, or defense with respect to any matter, including matters involving the Plan, all of which are hereby expressly reserved.

## VII.    PRAYER

Seacret respectfully requests that this Court grant:  (i) this Objection, (ii) deny confirmation of the Plan, and (iii) deny final approval of the Disclosure Statement.  Seacret also requests such other and further relief in connection with the Plan to which it may show itself to be justly entitled.

**DATED:  October 14, 2021.**

Respectfully submitted,


By: */s/ Phillip Lamberson*
Phillip Lamberson
State Bar No. 00794134
Rakhee V. Patel
State Bar No. 00797213
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**

**Page 45 of 46**

Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
plamberson@winstead.com
rpatel@winstead.com
achiarello@winstead.com

**COUNSEL FOR SEACRET DIRECT,
LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2021, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.


*/s/ Phillip Lamberson*
One of Counsel

---

**OBJECTION OF SEACRET DIRECT, LLC TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES**