**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | **Case No.: 20-42492** |
| *et al.*[1] | § | |
| | § | **Joint Administration Requested** |
| Debtor. | § | |

**OBJECTION OF MELODY YIRU TO FOURTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBOTR AFFILIATES AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF SPHERATURE INVESTMENTS, LLC AND ITS DEBTOR AFFILIATES**

[*Relates to Dkt. No. 459, 460*]

Melody Yiru hereby submits this Opposition (the "Opposition") to the Debtor's *Fourth Amended Joint Chapter 11 Plan for Spherature Investments LLC and its Debtor Affiliates* [Dkt. No. 459] (the "Plan") and final approval of the Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Spherature Investments, LLC and its Debtor Affiliates [Docket No. 460] (the "Disclosure Statement") filed by the Debtors on September 23, 2021.[2]

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") are: Spherature Investments LLC ("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings, LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255; WorldVentures Services, LLC ("WV Services") EIN #2220.
[2] Capitalized terms not herein defined shall have the meanings ascribed to them in the Plan and the Disclosure Statement.

I.

**PRELIMINARY STATEMENT**

1. Ms. Yiru objects to the Disclosure Statement and Plan because (A) the Disclosure Statement and Plan fail to provide adequate information about her claim and fails to account for Ms. Yiru's claim in the event she objects to confirmation, (B) the Plan has impermissible release provisions and exculpatory provisions, (C) the Plan, as currently written, is not feasible, (D) the Disclosure Statement fails to make certain disclosures in compliance with 11 U.S.C. Section 1125, (E) the Debtors have not confirmed they will be able to pay all their tax obligations and thus the Plan does not comply with 1129, and (F) the Plan fails to preserve claims against the insiders of the Debtors. Mr. DeMarco respectfully requests that, unless and until the objections raised herein are adequately resolved, the Disclosure Statement should not be approved.

II.

**FACTUAL BACKGROUND**

2. On December 21, 2020, the Debtors commenced their voluntary petition (the "Bankruptcy Case") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). To date, no trustee has been appointed in the Debtor's case.

3. Ms. Yiru's claims are based on state law and Federal RICO claims. Melody Yiru is the lead plaintiff in a Class Action transferred to Texas in 2017 in the Northern District of Texas, Case No. 3:17-cv-02155-S. In the Class Action, the Plaintiffs assert direct claims that the Debtors are operating an illegal pyramid scheme and endless chain under Federal and California law, and are otherwise engaging in illegal business practices. Based on the filing of the Debtors' Bankruptcy Case, there are additional derivative claims belonging to the estate concerning the Debtors' operation of a ponzi scheme and a pyramid scheme that overlap with the remedies requested in Ms. Yiru's litigation. Total restitution due to the pyramid and ponzi scheme victims exceeds $1.2 billion dollars. The case is stayed as to the Debtors, but an Order confirming no stay as to the non-debtors was confirmed. The case has not been granted class status, and Ms. Yiru has not filed a motion for class certification.

4. Ms. Yiru has repeatedly requested information suggesting the Debtors are not operating an illegal scheme, but no documents were forthcoming. A determination was made that the Debtors and/or some of their predecessors, were operating a pyramid scheme.

5. Although there has been no finding *domestically* that the Debtors are operating a worldwide ponzi scheme and pyramid scheme, the trend in Texas has been to determine similar nation-wide schemes operating from Texas to be illegal pyramid models subject to a ban on operations and an Order to pay restitution to pyramid scheme victims.[3] After disclosures are made and discovery is had, the workings of this enterprise will show an even clearer picture of pyramid and ponzi misconduct because there are no legitimate consumers that can be masked through a self-manufactured product.[4] In addition, the appellate tested Norwegian ruling affirming the ban of the Debtors, encapsulates a foreign business model which was run domestically, and in a uniform fashion in the United States. As testified at the Debtors' meeting of creditors, it is apparent the Debtors have not turned the page. Debtors who derive income illegally may not reorganize or operate under the Bankruptcy Code. *Cf. Burton v. Maney* (*In re Burton*), 610 B.R. 633 (B.A.P. 9th Cir. 2020) (debtors may not operate a business that illegally derives income from marijuana); *In re Malul*, No. 11-21140 MER, 2020 WL 1486775 (D. Colo. March 24, 2020) (same); *In re Pharmagreen Biotech, Inc.*, No. 20-50780-BTB (Bankr. D. Nev. Oct. 7, 2020); *In re United Cannabis*, 20-12689-JGR (Bankr. Ct. D. Colo. Jan. 13, 2021) (same).

---

[3] In October of 2019, Plano based Advocare, was banned by the United States Federal Trade Commission (FTC) and required to pay $150 million.
https://starlocalmedia.com/planocourier/news/plano-based-advocare-fined-150m-for-ftc-pyramid-scheme-charges/article_5d47f558-e5e1-11e9-bb58-9f8aa7a358e5.html.

Another similar Dallas company, Neoria, LLC, was sued by the FTC in November of 2019 for operating a pyramid scheme.
https://www.ftc.gov/news-events/blogs/business-blog/2019/11/ftc-alleges-neora-formerly-known-nerium-operates-illegal.

[4] A similar "travel package" pyramid multi-level marketing company, YTB International, was banned in California.
https://oag.ca.gov/news/press-releases/brown-ends-ytbs-online-travel-pyramid-scheme.

6. Simply, the Debtors have not presented sufficient evidence that they have turned the page and that they have discontinued the operation of their pyramid scheme and ponzi scheme. The Bankruptcy Court in the case of *In re TelexFree, LLC*, Case No. 14-40987 (Bankr. D. Mass.) made such a determination to guide further proceedings. An evidentiary hearing should be conducted to determine whether the Debtors are operating a ponzi scheme and a pyramid scheme. The Debtors cannot confirm a Plan where they continue to operate a pyramid scheme.

III.

**OBJECTIONS**

**A. Standard for Determining Adequacy of Disclosure Statement**

7. Section 1125(b) of the Bankruptcy Code provides, in part:

> An acceptance or rejection of a plan may not be solicited … unless, at the time before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved … by the court as containing adequate information.

11 U.S.C. § 1125(b).

8. Section 1125(a) defines "adequate information" as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan … and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

11 U.S.C. § 1125(a)(1).

9. The purpose of the disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan. *In re County of Orange*, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997) (*quoting Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996)).

10. Although "'adequate information' for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, there nevertheless is an "irreducible minimum." *Official Committee of Unsecured Creditors v. Michelson*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992). That minimum generally includes "all pertinent information bearing on the success or failure of the proposals in the plan of reorganization [and] … all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990).

**B. The Disclosure Statement and Plan Fail to Provide Adequate Information About Ms. Yiru's Claim**

11. The Disclosure Statement does not provide adequate information pursuant to 11 U.S.C. Section 1125. The Disclosure Statement does not state whether the Debtors have claims against insiders of the Debtor, or even mention Ms. Yiru's claim. The Disclosure Statement should contain broader reservation clauses so that the trustee and creditors are ensured all the claims Debtor may have against third parties will be preserved. "The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan." *Duff v. U.S. Trustee* (*In re California Fid., Inc.*), 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996). Ms. Yiru's claim is not even mentioned. The Debtors have viscously unleashed a flurry of motions aimed to chill the pursuit of Ms. Yiru's claim. Ms. Yiru has stated a claim for total amount of dagamges were she to be granted class status at a later date. What is most shocking about the Debtors' litigation conduct is their duplicity. Reading the other objections to confirmation this seems to be the trend. Debtors' counsel and Committee

Counsel repeatedly promised and assured Counsel, that Ms. Yiru's class would be set forth in the plan (prior to their decision to do an about face), but of course that was deception.

12. In any event, it is apparent based on the current proposed buyer who has no ability to perform, that these Debtors are administratively insolvent, the cases are being run and operated for the benefit of professional fees. Therefore, short of a surprising occurrence, Ms. Yiru will not seek class status in these cases, as her only chance of recovery is from available insurance.

### C. The Plan, As Presently Written, May Be Patently Unconfirmable for Lack of Feasibility

13. "Where it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse the approval of the disclosure statement." *In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994). Here, both the Plan and Disclosure Statement should be denied because the purchase is infeasible. There was insufficient notice given for the most recent Plan and Disclosure Statement that contained material modifications, and the purported buyer Verona is conflicted, and appears to have no ability to perform.

### D. The Plan Must Properly Be Drafted to Reserve Claims Against Insiders

14. Post-confirmation bankruptcy jurisdiction relies on plan retention provisions. *See e.g. Smith v. John Peter Lee, Ltd. (In re Smith)*, unpublished opinion, 114 F.3d 1179, *3 (9th Cir. Mar. 20, 1998) (relying on plan jurisdiction retention provisions in finding that bankruptcy court had postconfirmation jurisdiction over debtor's assets); *Gallien v. Sanwa Leasing Corp. (In re Gallien)*, 214 B.R. 583, 585 (Bankr. E.D. Ark. 1997) ("[T]he [b]ankruptcy court lacks subject matter jurisdiction over adversary proceedings commenced post-confirmation unless the plan expressly provides for retention of such jurisdiction.").

15. Further, Section 1123(b)(3)(B) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), provides that a plan may provide for "the

retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest..." 11 U.S.C. § 1123(b)(3)(B). This provision is not jurisdictional in nature but rather provides authority for the post-confirmation pursuit of claims (*i.e.*, claims that are not properly retained under section 1123(b)(3)(B) are lost). The Plan should provide for types and categories of claims under Section 1123. *See, e.g., Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 564 (9th Cir. B.A.P. 2002).

16. While the Plan provides for a general retention of jurisdiction provision, the Plan is silent about claims against Insiders and Affiliates. At a very minimum, the Plan should provide for the retention and enforcement against all insiders, affiliates, and third parties they have transacted with Debtor. Given the Plan does not provide for proper retention provisions, in dereliction of Debtor's duties under the Bankruptcy Code, the request to approve the Disclosure Statement, and Plan should be denied.

### E. The Agreements with Representatives Are Not Assignable Under the Bankruptcy Code

17. It is unclear whether the Debtors intend to assume and assign the contracts with their Representatives. There are more than 100,000 representatives former and present. To the extent that this is the Debtors' intent to assume and assign such contracts, the Representative Agreement are not assignable. 11 U.S.C. § 365(c)(1) prohibits a debtor-in-possession from assuming or assigning any executory contract or unexpired lease if "applicable law excuses a party, other than the debtor, to such contract…, and such party does not consent to such assumption or assignment." The 5th Circuit Court of Appeals has defined the restriction of § 365(c)(1) to apply to "personal service contracts" and those contracts in violation of "applicable law." *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983).

18. <u>First</u>, "personal service contracts" are not assignable under the laws of California or Texas. "Rights arising out of contract cannot be transferred if they involve a relation of personal confidence, such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." *Moore v. Mohon*, 514 S.W.2d 508, 513 (Tex. Civ. App.–Waco 1974, no writ); *Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*, 823 S.W.2d 591, 596 (Tex. 1992) (Cornyn, J.). This was the law announced in *Hudson's Adm'rs v. Farris*, 30 Tex. 574 (1868) (Lindsay, J.), where the Court held that an agreement to convey part of a tract of land to a surveyor in exchange for his services was not assignable, since it was "based upon the skill, the intelligence, and the practical knowledge" of the surveyor. *Accord, Menger v. Ward*, 87 Tex. 622, 626, 30 S.W. 853, 855 (1895) (Brown, J.). It is beyond cavil that the contracts at issue here pertaining to providing distributorships and recruiting persons into the organization are "***personal services***." Thus, the Bankruptcy Code, Federal Law, Texas law, and California law plainly prohibits the assignment of the representative agreements.

19. Similarly, many Bankruptcy Courts have applied anti-assignment provisions to contracts for "personal services because it is a contract in which the parties rely on such qualities as "character, reputation, taste, skill or discretion of the party that is to render performance." *In re Planet Hollywood International, Inc.*, No. 99-3612, 2000 WL 36118317, at *4 (D. Del. Nov. 21, 2000) (*citing III E.A. Farnsworth*, Farnsworth on Contracts § 11.10 at 128 (2d ed. 1998); *In re Compass Van & Storage Corp.*, 65 B.R. 1007, 1011 (Bankr. E.D. N.Y. 1986) (*quoting* 6A C.J.S. Assignment § 32 (1975) for proposition that personal service contract requires special knowledge, unique skill or talent, singular judgment or taste)). These contracts fit snugly within this prohibition.

20. <u>Second</u>, and independently, franchise agreements such as the one entered into in California as it pertains to Ms. Yiru and her California sub-class, may not be assigned as a matter of law. *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2018 WL 6068817, at *4 (N.D. Tex. Nov. 19, 2018) (J. Boyle) ( "…the weight of authority suggests that prohibiting a franchisee from asserting claims under its state's franchise act that includes an antiwaiver provision is

contrary to the fundamental policies of those states [including California].") This is another reason to determine that the contracts at issue with representatives <u>cannot</u> be assigned.

21. <u>Third</u>, the provisions in each representative agreement provide for a covenant not to join other companies, or to compete. This feature of WorldVentures' contract further renders the contract unassignable. In *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011) (Wainwright, J.) ("We hold that provisions clearly intended to restrict the right to render personal services are in restraint of trade and must be analyzed for the same standards of reasonableness as covenants not to compete to be enforceable").

22. Finally, the Hon. Carlos G. Lopez (ret.) found that WorldVentures representative agreement was illusory, and thus found that the arbitration provision was unenforceable. *Yiru v. WorldVentures*; *see also WorldVentures Marketing, LLC v. Travel to Freedom, LLC*, 05020-000169-CV (Tex. App. Sep. 23, 2020) (finding contract was illusory and unenforceable).[5] Because the distributor agreement for almost all of the distributors is illusory, it is unenforceable and cannot be assumed and assigned. For all of these reasons, they "hypothetical" and "actual" tests are likewise not met such that the debtor-in-possession may not assign the representative agreements here.

23. To the extent Debtors attempt to sever portions of the representative contracts, such effort is not permissible under Bankruptcy Law. *Mirant Corp v. Potomac Elec. Power Co.* (*In re Mirant Corp.*) 197 Fed. Appx. 85, 288 (5th Cir. 2006) (it is well established that as a general proposition an executory contract must be assumed or rejected in its entirety."). Further, the Debtors cannot assume and assign any of the Representative Agreements until all defaults are cured (including payment of commissions to Representative victims). 11 U.S.C. § 365(b); *In re Liljeberg Eners., Inc.*, 304 F.3d 410 (5th Cir. 2002). All representatives are entitled to "adequate assurance of future performance" from the Buyer pursuant to 11 U.S.C. § 365. At present, no

---

[5] *See* Court Opinion at https://law.justia.com/cases/texas/fifth-court-of-appeals/2020/05-20-00169-cv.html.

showing has been made that the Buyer has the ability to perform under assigned contracts even if they can be assumed.

### F. No Limitation on Successor Liability Should Apply to the Representatives' Claims

24. The Buyer cannot be excused of successor liability claims. As stated by one Bankruptcy Judge recently:

> The Consumer Creditors Committee correctly notes that federal cases expressly acknowledge that there may be successor liability in a non-bankruptcy sale, including for claims brought under the RESPA, TILA, FCRA, and FDCPA. *See, e.g., F.T.C. v. Citigroup, Inc.*, 239 F. Supp. 2d 1302, 1307-08 (N.D. Ga. 2001) (denying motion to dismiss FCRA and TILA claims brought against putative successor of lender after a merger because successor liability is a fact specific inquiry); *Prince v. U.S. Bancorp*, No. 2:09-cv-01095-KJDPAL, 2010 WL 3385396, at *5 (D. Nev. Aug. 25, 2010) (stating "Defendant cites no authority for the proposition that it cannot be held liable as a successor-in-interest on a RESPA [or FDCPA] claim . . . . Indeed, federal courts appear to assume that a successor in interest can be held liable for RESPA [or FDCPA] claims under certain circumstances," and denying a motion to dismiss RESPA and FDCPA claims); *Abdollahi v. Washington Mut., FA*, No. C09-00743- HRL, 2009 WL 1689656, at *1 (N.D. Cal. June 15, 2009) (where defendant filed motion to dismiss complaint that asserted TILA and RESPA claims, declining to decide whether JPMorgan impliedly assumed Washington Mutual's liabilities "as it pertains to plaintiffs' mortgage" because that is a question of fact, and then analyzed whether plaintiffs had stated TILA and RESPA claims on the merits). And similar state laws also impose liability on successors and assigns. *See, e.g., Drakopoulos v. U.S Bank Nat'l Ass'n*, 991 N.E.2d 1086, 1092 (Mass. 2013) (assignee of loan may be liable for claims under consumer protection act and borrower's interest act under Massachusetts law). **The Court agrees with the Consumer Creditors Committee that whether such claims ride through is entirely dependent on the specific factual and legal details related to each claim.**

*In re Ditech Holdings Corporation, et al.*, 2019 WL 4073378, *90 (Bankr. S.D. N.Y. Aug. 28, 2019) (emphasis added).

25. Similarly here, Ms. Yiru may seek successor claims under RICO, RCPA, and her state law claims based on the anti-pyramid laws against succeeding third parties that cannot be derogated by any Confirmation Order entered. The release language impermissibly and exculpatory language impermissibly seeks to give releases to the Buyer.

G. **The Plan Provides For Reservation Regarding Insurance**

26. There was previous contemplation of assigning certain insurance rights or policies, but the latest Plan seems to suggest full reservation. Any Order on the sale should not conflict with the Plan which allows Ms. Yiru or any other beneficiary who made a claim during a time period in Court, to properly pursue rights under applicable insurance policies.

H. **The Debtors Have not Demonstrated that the Buyer Has the Ability to Pay the Cure Amounts on Any Assigned Contracts**

27. Section 365(b)(1) of the Bankruptcy Code provides: may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee–

> (A) cures or provides adequate assurance that the trustee will promptly cure, such default…;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

28. As one court has held, "[s]ection 365(b)(1) is intended to provide protection to the nondebtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); accord, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kansas 2001). For the reasons discussed in greater detail below, the Debtor's Motion clearly demonstrates that the Debtor cannot meet the requirements to assume the Lease.

29. The Buyer must compensate the contracting party for any actual pecuniary loss, including the payment of attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B); *LJC Corp. v. Boyle,* 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re BAB Enterprises, Inc.,* 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.,* 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.,* 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Bankruptcy Courts have held that attorneys' fees incurred in the

enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption of a lease if the underlying lease provides for them. *In re Entertainment, Inc.,* 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorney's fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In re Child World, Inc.,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's in connection with prepetition defaults and such claims in connection with post-petition defaults." *In re Entertainment, Inc.*, *supra*, 223 B.R. at 154.

30.    Accordingly, as part of its pecuniary loss, the Representatives are also entitled to attorneys' fees in connection with the Buyer's obligation to cure all monetary defaults under the consulting agreements.

31.    The Plan Proponent proposes to assume a number of contracts, without any assurances. While adequate assurance of future performance is not generally defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Industries, Inc.,* 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id*., at 441. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. See *In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

32.    It has been held that adequate assurance of future performance may include "sufficient financial backing, escrow deposits or other forms of security or guaranty", *In re Gold*

*Standard at Penn, Inc.,* 75 B.R. 669, 674 (Bankr. E.D. Pa. 1987), sound financial statements and a substantial net worth, *In re Taylor Manufacturing, Inc.,* 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980), projected sales proceeds sufficient for and earmarked for payment of rent, *Buchakian v. Musikahn Corp.,* 69 B.R. 55, 56 (E.D.N.Y. 1986), and a substantial cash reserve, a favorable market outlook and the history of prompt payment, *Seacoast Products, Inc. v. Spring Valley Farms, Inc.,* 34 B.R. 379, 381 (M.D.N.C. 1983). "At a minimum, the primary focus of adequate assurance concerns the ability to fulfill the financial obligations under the lease." *In re Martin Paint Stores,* 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996).

33. The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest, supra,* 868 F.2d at 1080; *see also In re Washington Capital Aviation & Leasing,* 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) (while an absolute guarantee is not required, more than speculative plans are needed). Indeed, courts have required a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

34. Here, there is no evidence of the Buyer's ability to fund cure amounts, or that the Buyer is even holding any cash domestically.

**I. The Plan Contains Improper Release Provisions and Exculpatory Provisions Under 5th Circuit Authority**

35. The Plan includes release provisions and exculpatory provisions that are far too broad as to third parties, and must be rejected.

**J. Ms. Yiru joins the Other Objections made to confirmation**

36. Ms. Yiru joins the other objections made to confirmation at Dkt. No. 535, 536, 537,

and all argument made therein.

## IV.

## CONCLUSION

WHEREFORE, Ms. Yiru respectfully requests that the Court deny the Disclosure Statement and Plan until, and unless, such objections contained herein are resolved.

DATED: October 14, 2021              Respectfully submitted by:

/s/ *Blake J. Lindemann*
Blake J. Lindemann
California Bar No. 255747
E-mail:  blake@lawbl.com
**LINDEMANN LAW FIRM, APC**
(*pro hac vice*)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

-and-

Rachel E. Montes
Texas Bar No. 45005925
Rachel@MontesLawGroup.com
**MONTES LAW GROUP, PC**
1121 Kinwest Parkway, Ste. 100
Irving, TX 75063
Telephone No: 214-522-9401
Facsimile No: 214-522-9428

COUNSEL FOR CREDITOR MELODY YIRU

**CERTIFICATE OF SERVICE**

On October 14, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. Bankruptcy Court, Eastern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve the parties individually or through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.

/s/ *Blake J. Lindemann*
Blake J. Lindemann