| | |
|---|---|
| **From:** | Lamberson, Phil |
| **To:** | Helt, Marcus; Haake, Jack; Erik Toth |
| **Cc:** | John Kelly; Izhak Ben Shabat; Michael D. Warner; Chiarello, Annmarie |
| **Subject:** | In re Spherature Investments, LLC -- Case No. 20-42492 |
| **Date:** | Monday, September 27, 2021 11:07:00 PM |
| **Attachments:** | Letter to Marcus Helt 4828-2875-4940 v.2.pdf |
| | Spherature - Plan for Seacret Bid-4814-3535-8716-v3.doc |
| | Change-Pro Redline Pages - Spherature - Plan for Seacret Bid-4814-3535-8716-v1 and Spherature - Plan for Seacret Bid-4814-3535-8716-v3.pdf |
| | WV Annex A to Plan 4820-9227-9036 v.8.pdf |
| | MyScan_20210927_164554714.PDF |

Gentlemen,

Please find attached the documents constituting the bid of Seacret Direct LLC in the above-referenced bankruptcy case.

I have also attached a wire transfer confirmation for Seacret's good faith deposit.

Schedule 2(g), referenced in Annex A, is being prepared by counsel for the creditors' committee and still must be agreed by Seacret, which we do not expect to be an issue.

Thank you.


Phillip Lamberson

Winstead PC

500 Winstead Building

2728 N. Harwood Street

Dallas, Texas  75201

Direct: 214.745.5180

Mobile: 214.418.5279

Email: plamberson@winstead.com



**WINSTEAD**

Austin | Charlotte | Dallas | Fort Worth | Houston | New York | San Antonio | The Woodlands

2728 N. Harwood Street
Suite 500
Dallas, TX 75201

214.745.5400 OFFICE
214.745.5390 FAX
winstead.com

Phillip Lamberson
direct dial: 214-745-5180
plamberson@winstead.com

September 27, 2021

***VIA EMAIL: mhelt@mwe.com***

Marcus Helt
MCDERMOTT WILL & EMERY
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664

      Re:    *In re Spherature Investments, LLC, et al.* – Case No. 20-42492 (the
            "Bankruptcy Case")

Marcus,

        This letter accompanies the bid made by Seacret Direct LLC ("Seacret") in
connection with the Order: (I) Conditionally Approving Disclosure Statement;
(II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan;
(III) Establishing Procedures for Submission of Topping Bids; (IV) Approving Certain
Forms and Notices; (V) Scheduling a Combined Hearing on Final Approval of Disclosure
Statement and Confirmation of Plan; and (VI) Granting Related Relief [Dkt. No. 448] (the
"Bid Procedures Order") and the Topping Bid Procedures approved by the Bid
Procedures Order [Dkt No. 435-2] (the "Topping Bid Procedures").[1]

        Attached to this letter is a clean and redlined copy marked to show changes to the
Fourth Amended Joint Chapter 11 Plan for Spherature Investments LLC and its Debtor
Affiliates [Dkt. No. 459] (the "Plan"). This reflects Seacret's duly-authorized bid (the
"Bid"), and the Bid is deemed to be a purchase agreement for the assets stated therein.

        Pursuant to the terms of the Topping Bid Procedures:

        1.      Seacret is submitting the Bid, and Izhak Benshabat and Phillip Lamberson
are authorized to appear and act on its behalf in connection with the Bid.

---

[1] Capitalized terms not defined herein have definition from the Topping Bid Procedures.

2.      Subject to 8. below, the Bid is irrevocable until closing of the Alternative Transaction if the Bid is the Successful Bidder, and Seacret agrees to serve as Backup Bidder if Seacret is selected as the Backup Bidder.

3.      The Bid is not contingent on obtaining financing or internal approvals, any unperformed due diligence, or regulatory approval.

4.      There is no cash purchase price to the Bid; therefore, no financial materials are included.  However, Seacret remains willing to allow Judge Nelms to review certain financial information, as originally proposed by Judge Nelms, but then later refused by the Debtors.

5.      Although no deposit is required by the terms of the Topping Bid Procedures, Seacret will make a $25,000 Good Faith Deposit in connection with the Bid.

6.      Seacret has not engaged in any collusion with respect to the Bid or its participation in the Auction.

7.      Seacret:

i.      has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable Assets deemed necessary by Seacret before making its Bid;

ii.      has relied solely on its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid; and

iii.      did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Topping Bid Procedures and disclaims reliance on any such written or oral statements, representations, promises, warranties, or guaranties.

8.      Seacret consents to the jurisdiction of the Court and to the entry of a final order solely with respect to the Bid and the Sale Transaction; Seacret does not consent to the jurisdiction of the Court for any other matter or purpose, including in connection with any litigation currently pending or that may be brought against Seacret, or any claims currently raised or that might be raised in *Spherature Investments, LLC, et al v. Seacret Direct LLC*, Adversary No. 21-04059.  To the extent that the Court attempts to exercise jurisdiction as to Seacret exceeding the Bid or the Sale Transaction based on the consent provided herein, Seacret's consent herein shall immediately be revoked and the Bid withdrawn.

September 27, 2021
Page 3

Let me know if you have any questions about the Bid, or would like to discuss.

Sincerely,

Phillip Lamberson

cc:    Erik Toth (erik@larxadvisors.com)
       Jack Haake (jhaake@mwe.com)
       Izhak Benshabat
       John Kelly

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** | | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | **Case No.: 20-42492** |
| *et al.* | § | |
| | § | |
| **Debtors.**[1] | § | **Jointly Administered** |
| | § | |

### FIFTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES

Marcus A. Helt (Texas Bar #24052187)
Jack G. Haake (Admitted *Pro Hac Vice*)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:     (214) 210-2821
Fax:     (972) 528-5765
Email:   mhelt@mwe.com
Email:   jhaake@mwe.com

***COUNSEL TO THE DEBTORS***
***AND DEBTORS-IN-POSSESSION***

---

[1] The "Debtors" in the above-captioned jointly-administered chapter 11 bankruptcy cases ("Cases") are: Spherature Investments LLC EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220.

# TABLE OF CONTENTS

## CONTENTS

**INTRODUCTION** ...........................................................................................................5

**SUMMARY OF THE PLAN** ........................................................................................5

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,**
     **COMPUTATION OF TIME, AND GOVERNING LAW** ....................................14
A.   Defined Terms. ........................................................................................14
B.   Rules of Interpretation. ...........................................................................43
C.   Computation of Time. .............................................................................43
D.   Governing Law. ......................................................................................43
E.   Reference to Monetary Figures. ..............................................................44
F.   Controlling Document. ...........................................................................44
G.   Deemed Consolidation. ...........................................................................44
     1.   Effect of Consolidation. .............................................................44
     2.   Limitations of Consolidation. .....................................................44

**ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,**
     **AND PRIORITY TAX CLAIMS** ....................................................................45
A.   Administrative Claims. ...........................................................................45
B.   Professional Compensation. ....................................................................46
     1.   Final Fee Applications and Payment of Professional Fee Claims. .......46
     2.   Estimation of Professional Fees and Expenses. ............................46
     3.   Post-Confirmation Date Fees and Expenses. ...............................46
     4.   Substantial Contribution. ...........................................................46
C.   Priority Tax Claims. ...............................................................................47
D.   U.S. Trustee. ..........................................................................................47

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND**
     **INTERESTS** ....................................................................................................47
A.   Summary of Classification. .....................................................................47
B.   Treatment of Claims and Interests. ..........................................................48
     1.   Class 1—Allowed Priority Non-Tax Claims. ...............................49
     2.   Class 2—MCA Claim. ...............................................................49
     3.   Class 3—Other Secured Claims. ................................................50
     4.   Class 4—Convenience Claims. ...................................................51
     5.   Class 5—General Unsecured Claims. .........................................52
     6.   Class 6(a)—Non-Opt-Out Sales Representatives Commission Claims. ...............52
     7.   Class 6(b)—Opt-Out Sales Representatives Commission Claims. ...............52
     8.   Class 7—Virtual Currency Claims ...............................................53
     9.   Class 8—Assumed Deferred Revenue Liability ...........................53
     10.  Class 9—Intercompany Claims. .................................................53
     11.  Class 10—Subordinated Unsecured Claims. ..............................54
     12.  Class 11—Interests in the Debtors. ............................................54
C.   Special Provision Governing Unimpaired Claims. ....................................54
D.   Elimination of Vacant Classes. ...............................................................55

| | | | |
|---|---|---|---|
| E. | | Voting Classes; Presumed Acceptance by Non-Voting Classes. | 55 |
| F. | | Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code. | 55 |
| G. | | Subordinated Claims. | 55 |
| H. | | Treatment of Intercompany Claims. | 55 |

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ............................................. 56**

| | | | |
|---|---|---|---|
| A. | | General Settlement of Claims. | 56 |
| B. | | Sources of Plan Consideration. | 56 |
| C. | | Sale Transaction. | 56 |
| | 1. | Sale Transaction. | 56 |
| | 2. | Effectuating the Sale Transaction. | 58 |
| | 3. | Payment of Cure Costs. | 59 |
| | 4. | Amendment of Terms and Conditions of Sale Transaction; Obligations. | 59 |
| | 5. | Good-Faith Purchaser Status. | 59 |
| | 6. | Sale Free and Clear. | 60 |
| | 7. | Seacret Trademark License Revocation. | 60 |
| | 8. | Effect of Revocation of Trademark License. | 60 |
| D. | | Vesting of Assets. | 61 |
| E. | | Liquidating Trustee. | 61 |
| | 1. | General | 61 |
| | 2. | Claims Reconciliation | 61 |
| F. | | Cancellation of Notes, Instruments, Certificates, and Other Documents. | 61 |
| G. | | Corporate Action. | 62 |
| H. | | Dissolution of the Boards of the Debtors. | 62 |
| I. | | Release of Liens. | 63 |
| J. | | Effectuating Documents; Further Transactions. | 63 |
| K. | | Exemption from Certain Taxes and Fees. | 64 |
| L. | | Preservation of Retained Causes of Action. | 64 |
| M. | | The Liquidating Trust. | 65 |
| N. | | Closing the Chapter 11 Cases. | **Error! Bookmark not defined.** |

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................. 68**

| | | | |
|---|---|---|---|
| A. | | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 68 |
| B. | | Rejection of Sales Representative Agreements. | 69 |
| C. | | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 69 |
| D. | | Cure of Defaults for Assumed/Assigned Executory Contracts and Unexpired Leases. | 70 |
| E. | | D&O Policies. | 71 |
| F. | | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 71 |
| G. | | Reservation of Rights. | 72 |
| H. | | Nonoccurrence of Effective Date. | 72 |

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 72**

| | | | |
|---|---|---|---|
| A. | | Timing and Calculation of Amounts to Be Distributed. | 72 |
| B. | | Rights and Powers of the Liquidating Trustee. | 73 |
| | 1. | Powers of the Debtors, the Liquidating Trustee. | 73 |
| | 2. | Fees of Liquidating Trustee and Expenses Incurred On or After the Effective Date. | 73 |
| C. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 73 |

|   | 1. | Record Date for Distribution. | 73 |
|   | 2. | Delivery of Distributions in General. | 73 |
|   | 3. | Minimum; *De Minimis* Distributions. | 74 |
|   | 4. | Undeliverable Distributions and Unclaimed Property. | 74 |
|   | 5. | Manner of Payment Pursuant to the Plan. | 75 |
| D. | | Compliance with Tax Requirements/Allocations. | 75 |
| E. | | Allocation of Plan Distributions Between Principal and Interest. | 75 |
| F. | | Setoffs and Recoupment. | 75 |
| G. | | Claims Paid or Payable by Third Parties. | 76 |
|   | 1. | Claims Paid by Third Parties. | 76 |
|   | 2. | Claims Payable by Insurance, Third Parties. | 76 |
|   | 3. | Applicability of Insurance Policies. | 76 |
| H. | | Indefeasible Distributions. | 77 |

**ARTICLE VII THE LIQUIDATING TRUSTEE** ......... **77**

| A. | | The Liquidating Trustee. | 77 |
|   | 1. | Liquidating Trustee's Rights and Powers. | 77 |
|   | 2. | Retention of Professionals. | 78 |
|   | 3. | Compensation of the Liquidating Trustee. | 78 |
|   | 4. | Liquidating Trustee Expenses. | 78 |
| B. | | Wind Down. | 78 |
| C. | | Exculpation; Indemnification; Insurance; Liability Limitation. | 79 |
| D. | | Tax Returns. | 79 |
| E. | | Dissolution of the Debtors. | 79 |

**ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS** ......... **80**

| A. | | Allowance of Claims and Interests. | 80 |
| B. | | Claims and Interests Administration Responsibilities. | 80 |
| C. | | Estimation of Claims and Interests. | 81 |
| D. | | Adjustment to Claims or Interests without Objection. | 81 |
| E. | | Time to File Objections to Claims. | 81 |
| F. | | Disallowance of Claims. | 81 |
| G. | | Amendments to Claims. | 82 |
| H. | | No Distributions Pending Allowance. | 82 |
| I. | | Distributions After Allowance. | 82 |
| J. | | Undeliverable Distribution Reserve. | 83 |
|   | 1. | Deposits. | 83 |
|   | 2. | Disclaimer. | 83 |
|   | 3. | Distribution from Reserve. | 83 |
| K. | | Single Satisfaction of Claims. | 83 |

**ARTICLE IX SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS** ......... **84**

| A. | | Settlement, Compromise, and Release of Claims and Interests. | 84 |
| B. | | Discharge of Claims and Termination of Interests. | 84 |
| C. | | Release of Liens. | 84 |
| D. | | Releases by the Debtors. | 85 |
| E. | | Releases by Holders of Claims and Interests. | 86 |

F.    Exculpation. ....................................................................................................89
G.    Injunction. .....................................................................................................89
H.    Recoupment....................................................................................................90
I.     Subordination Rights. ...................................................................................91
J.     Reimbursement or Contribution. ..................................................................91
**ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ..............................................................................................91**
A.    Conditions Precedent to Confirmation. .......................................................91
B.    Conditions Precedent to the Effective Date. ................................................91
C.    Waiver of Conditions.....................................................................................92
D.    Substantial Consummation. ..........................................................................92
E.    Effect of Non-Occurrence of Conditions to the Effective Date. ...................92
**ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..................................................................................................................92**
A.    Modification and Amendments.......................................................................92
B.    Effect of Confirmation on Modifications. .....................................................93
C.    Revocation or Withdrawal of the Plan..........................................................93
**ARTICLE XII RETENTION OF JURISDICTION ............................................93**
**ARTICLE XIII  . MISCELLANEOUS PROVISIONS .......................................97**
A.    Immediate Binding Effect..............................................................................97
B.    Additional Documents....................................................................................97
C.    Payment of Statutory Fees. ...........................................................................97
D.    Dissolution of Statutory Committees. ...........................................................97
E.    Reservation of Rights.....................................................................................98
F.    Successors and Assigns. ................................................................................98
G.    Service of Documents.....................................................................................98
      1.    The Debtors: .........................................................................................98
      2.    The Purchaser: ......................................................................................98
      3.    The Secured Parties:.............................................................................99
      4.    The Committee: .....................................................................................99
H.    Enforcement of Confirmation Order. ..........................................................100
I.     Term of Injunctions or Stays.......................................................................100
J.     Compensation and Benefits Programs.........................................................100
K.    Entire Agreement..........................................................................................100
L.    Exhibits. .......................................................................................................100
M.    Nonseverability of Plan Provisions. ............................................................101
N.    Votes Solicited in Good Faith. .....................................................................101
O.    Waiver............................................................................................................101

# INTRODUCTION

The Debtors[2] in the above-referenced, jointly-administered Chapter 11 bankruptcy cases (collectively, "Spherature" or the "Debtors") hereby propose this *Fifth Amended Joint Chapter 11 Plan for Spherature Investments LLC and Its Affiliated Debtors* (the "Plan") pursuant to §1121(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, the Sale Transaction, and certain related matters. Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.

## SUMMARY OF THE PLAN

1.     **Summary Only.** The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2.     **General Description of the Business.** The Debtors provide access to unique travel and lifestyle experiences through a membership-based direct sales business and later acquired a wholly-owned travel-product and fulfilment company. The Debtors provide their travel products and services to individual and group-leisure and corporate travellers in the United States and abroad. The Debtors wholly own ninety-four (94) legal entities operating as branches, offices, and subsidiaries across the world, and these separate entities are collectively managed as "WorldVentures." The Debtors market their products and services through a network of independent Sales Representatives that market and sell travel memberships and associated-travel packages across multiple subscription levels.

3.     **Plan and Treatment of Claims.** The Plan will effectuate the sale of substantially all of the Debtors' Assets under chapter 11 of the Bankruptcy Code as a "going concern" and appoint a Liquidating Trustee to administer the Liquidating Trust pursuant to the Liquidating Trust Agreement. Pursuant to the terms of the Plan:

> a) The Plan will effectuate the sale of the Acquired Assets to the Purchaser free and clear of all liens, claims, encumbrances, and interests (other than the Assumed Liabilities) pursuant to § 1123 of the Bankruptcy Code.

> b) (i) Verona International Holdings, Inc. and/or one or more of its subsidiaries or affiliates, or (ii) any party who submits a higher and/or better offer accepted by the Debtors and approved by the Bankruptcy Court shall be the Purchaser.

---

[2]     The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") are: Spherature Investments LLC EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220. The above-captioned Debtors' mailing address is 5100 Tennyson Parkway, Plano, TX 75024.

c) The Purchase Price for the Acquired Assets will be the sum of (i) Cure Costs and (ii) up to $82,500,000.00 of other consideration, which consists of:

(1) The "Cash Component;

(2) The Purchaser Note in the principal amount of $5,500,000.00, payments from which the Debtors will escrow in a segregated account, pending resolution of MCA's Claim, which is disputed by the Debtors. The Purchaser will issue the Purchaser Note to the Liquidating Trust and make payments under the note to a segregated account owned and controlled by the Liquidating Trustee. Any Allowed Class 2 Claim will be paid from the proceeds in this segregated account. The Liquidating Trustee will make no Distributions from that segregated account without further Order of the Bankruptcy Court. The amount, validity, extent, value, and priority of the Allowed Class 2 Claim under § 506(b) of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and MCA. Any Deficiency Claim or other General Unsecured Claim of a holder of a Class 2 Claim shall be treated in Class 5. MCA's Class 5 Claim is also disputed, and may be subject to disallowance, subordination or recharacterization. On the later of (a) the Effective Date and (b) the date of the Final Order allowing a Class 2 Claim, as full and final satisfaction, settlement, and release of, and in exchange for such Class 2 Claims, Holders of Allowed Class 2 Claims will be paid as follows: at the Liquidating Trustee's sole and absolute discretion, (i) negotiation of the Purchaser Note, (ii) delivery of the Collateral securing such Allowed Class 2 Claims that is not an Acquired Asset, (iii) payment of such Allowed Secured Claim in full in Cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code from the Sales Transaction Proceeds (other than Cure Costs), (iv) the legal, equitable, and contractual rights of each Holder of an Allowed Class 2 Claim; ***provided***, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based shall not be enforceable as to

any breach that occurred on or before the Effective Date or any breach determined by reference back to a date preceding the Effective Date, or (v) receive deferred Cash payments totaling the amount of such Allowed Class 2 Claim of a value, as of the Effective Date, of at least the value of such Holder's interest in the estate's interest in such property. This Plan is an objection to each Class 2 Claim. Until Class 2 Claims are Allowed by Order of the Bankruptcy Court, all payments to Holders of such Class 2 Claims will be paid into a segregated account owned by the Liquidating Trust and controlled by the Liquidating Trustee and subject to the jurisdiction and administration of the Bankruptcy Court. The amount, validity, extent, value, and priority of the Allowed Class 2 Claim under § 506(b) of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and MCA. Any Deficiency Claim or other General Unsecured Claim of a holder of a Class 2 Claim shall be treated in Class 5. MCA's Class 5 Claim is also disputed. If any part of MCA's alleged Class 2 Claim is allowed by the Bankruptcy Court, the Liquidating Trustee may, as full and final satisfaction, release, and discharge of such Allowed Class 2 Claim, (i) assign the Purchaser Note to MCA, (ii) continue to make payments to the Holders of Allowed Class 2 Claims, or (iii) issue a note to MCA for the amount of its Allowed Class 2 Claim with a security interest in the Purchaser Note. If the Allowed amount of the Class 2 Claim is less than the payments received from the Purchaser Note, the Liquidating Trustee may use this difference to pay the costs of administering the Liquidating Trust or to make distributions on account of other Claims under the Plan;

(3) Up to $16,000,000.00 in the Royalty Earn Out;

(4) To resolve Claims in the aggregate up to $45,000,000.00 by paying or satisfying (a) Sales Representatives Commission Claims by the payment of up to $22,250,000 on account of Sales Representative Commission Claims and (b) Virtual Currency Claims by the honoring of up to

$7,000,000 of such Claims held by active travel club members in good standing pursuant to the conditions set forth in the Plan; and

(5) The assumption of no more than $11,000,000.00 in Assumed Deferred Revenue Liability.

d) The Liquidating Trust will be established, and the Liquidating Trustee will be appointed upon the Effective Date.

e) All Excluded Assets, including all rights to challenge the amount, validity, extent, value, and priority of the alleged liens, claims, encumbrances, and interests in and on Collateral not surrendered under the terms of this Plan will be transferred to the Liquidating Trust and the Liquidating Trustee.

f) All Holders of Allowed Administrative Claims will be paid by the Liquidating Trustee from the Distributable Assets; provided that Cure Costs will be paid only to the non-debtor counterparties of Assumed/Assigned Contracts and Leases).

g) All Holders of Allowed General Unsecured Claims shall receive beneficial interests in the Liquidating Trust in the form of Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests equal to the Pro Rata Share of each Holder's Allowed General Unsecured Claim, and the Liquidating Trustee will make Distributions to all Allowed General Unsecured Claims in Class 5 pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement from the Net Distributable Proceeds. The Liquidating Trust Agreement will be in the Plan Supplement.

h) All Sales Representatives Commission Claims are segregated into two categories based on (i) whether a Sales Representative decides to serve as a sales representative for or with the Purchaser (Class 6(a) - Non-Opt-Out Sales Representatives Commission Claims) on the terms and conditions provided in this Plan and the Purchaser Sales Representatives Agreement or (ii) whether a Sales Representative decides not to serve as a sales representative for or with the Purchaser (Class 6(b) - Opt-Out Sales Representatives Commission Claims); in the latter case, all Allowed Claims of such Sales Representatives shall receive a Pro Rata Share of the Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests equal to the Pro Rata Share of each Holder's Allowed Claim. Sales Representatives who decide to serve as a sales representative for or with the Purchaser pursuant to the terms and conditions

in this Plan and a Purchaser Sales Representatives Agreement shall receive from the Purchaser (i) compensation for future services, and (ii) up to 65% of the amount owed by the Debtors in the ordinary course of business for past services provided to the Debtors, and, (iii) their Pro Rata Share of Tier II Liquidating Trust Interests equal to the Pro Rata Share of 35% of each Holder's Allowed Claim.

i) All Allowed Class 6(a) Claims of Sales Representatives who do NOT serve as a sales representative for or with the Purchaser for the time necessary to receive payment of 65% of such Claims shall not receive full payment of such Claim. As seen in the Plan, to earn repayment of up to 65% of its Claim, a Purchaser Sales Representative must remain a member of the Purchaser in good standing with Active Status.

j) All Claims of Sales Representatives that are NOT Sales Representatives Commission Claims shall be classified as Class 5 Claims.

k) Purchaser will honor up to $7,000,000.00 of Virtual Currency Claims. This means that the Purchaser will allow Holders of Virtual Currency Claims to use their Pro Rata Share of Purchaser Honored Virtual Currency Claims pursuant to the Virtual Currency Use Schedule provided in this Plan.

l) Purchaser will assume certain obligations related to the prepayment for services not yet delivered by the Debtors related to future travel, training, events, representative business-system fees, or membership-enrollment fees; *provided*, *however*, that the Assumed Deferred Revenue Liability shall not exceed $11,000,000. If Allowed Claims for Deferred Revenue Liability exceed $11,000,000, all such Allowed Claims shall receive their Pro Rata Share of $11,000,000.

m) The Liquidating Trust shall make Distributions to Holders of Allowed Class 5 General Unsecured Claims based on their Liquidating Trust Interests.

n) The Liquidating Trust Assets will be divided into two (2) Tiers of Proceeds, generally as follows:

> (1) Tier I Proceeds will be the Sale Transactions Proceeds; and

> (2) Tier II Proceeds will be the recoveries on Retained Causes of Action plus the up to 65%

Distribution that would have otherwise been paid by the Purchaser to a Sale Representative who elected to be an Opt-Out Sales Representative, but nevertheless did serve as a sales representative for or with the Purchaser within six (6) months of the Effective Date.

o) Allowed Claims in Class 5 will share in both the Tier I Proceeds and the Tier II Proceeds (to the extent such amounts are Net Distributable Assets) through their Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests; and with respect to Allowed Claims of Sales Representatives: (i) those that decide to serve as a sales representative for or with the Purchaser will receive a Pro Rata Share of the Tier II Proceeds (to the extent such amounts are Net Distributable Assets) through their Tier II Liquidating Trust Interests; and (ii) those that decide not to serve as a sales representative for or with the Purchaser will receive a Pro Rata Share of the Tier I Proceeds and the Tier II Proceeds (to the extent such amounts are Net Distributable Assets) through their Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests.

p) Equity owners in the Debtors will receive no Distributions under this Plan unless Allowed Claims in Classes 1-8 and 10 are paid or satisfied in full. Stated differently, Allowed Interests are entitled to residual Distribution from Liquidating Trust only after payment in full of Allowed Claims in Classes 1-8 and 10.

All Causes of Action not otherwise sold to Purchaser, compromised, settled, or released pursuant to this Plan are hereby preserved and transferred to the Liquidating Trust.

Creditors holding Allowed Claims shall receive the following treatment under the Plan – note that the following table is strictly a summary, and the Terms of the Plan, following shall control:

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 1. | ALLOWED PRIORITY NON-TAX CLAIMS | As full and final satisfaction, settlement, and release of, and in exchange for, Class 1 Claims, Holders of Allowed Class 1 Claims shall receive (i) Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim on the Effective Date or (ii) other treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code. (Est. Recovery: 100%) |
| 2. | SECURED CLAIM OF | Class 2 Claims consist of MCA's Secured Claim, and the |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| | **MONTGOMERY CAPITAL ADVISORS, LLC AS COLLATERAL AGENT ON BEHALF OF THE SECURED PARTIES** | Class 2 Claim(s) are disputed.<br><br>Holders of Class 2 Claims will receive no Distribution until their Class 2 Claims are Allowed by Final Order of the Bankruptcy Court.<br><br>On the later of (a) the Effective Date and (b) the date of the Final Order allowing a Class 2 Claim, as full and final satisfaction, settlement, and release of, and in exchange for such Class 2 Claims, Holders of Allowed Class 2 Claims will be paid as follows: at the Liquidating Trustee's sole and absolute discretion, (i) negotiation of the Purchaser Note, (ii) delivery of the Collateral securing such Allowed Class 2 Claims that is not an Acquired Asset, (iii) payment of such Allowed Secured Claim in full in Cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code from the Sales Transaction Proceeds (other than Cure Costs), (iv) the legal, equitable, and contractual rights of each Holder of an Allowed Class 2 Claim; *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based shall not be enforceable as to any breach that occurred on or before the Effective Date or any breach determined by reference back to a date preceding the Effective Date, or (v) receive deferred Cash payments totaling the amount of such Allowed Class 2 Claim of a value, as of the Effective Date, of at least the value of such Holder's interest in the estate's interest in such property. This Plan is an objection to each Class 2 Claim.<br><br>Until Class 2 Claims are Allowed by Order of the Bankruptcy Court, all payments to Holders of such Class 2 Claims will be paid into a segregated account owned by the Liquidating Trust and controlled by the Liquidating Trustee and subject to the jurisdiction and administration of the Bankruptcy Court. The amount, validity, extent, value, and priority of the Allowed Class 2 Claim under § 506(b) of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and MCA. Any Deficiency Claim or other General Unsecured Claim of a holder of a Class 2 Claim shall be treated in Class 5. MCA's Class 5 Claim is also disputed. If any part of MCA's alleged Class 2 Claim is allowed by the Bankruptcy Court, the Liquidating Trustee may, as full and final satisfaction, release, and discharge of such Allowed Class 2 Claim, (i) assign the Purchaser Note to MCA, (ii) continue to make payments to the Holders of Allowed Class 2 Claims, or (iii) issue a note to MCA for the amount of its Allowed Class 2 Claim with a security interest in the Purchaser Note. |

| CLASS | CLAIMANT | TREATMENT |
|-------|----------|-----------|
| | | (Est. Recovery: 100%) |
| 3. | **OTHER SECURED CLAIMS** | As full and final satisfaction, settlement, and release of, and in exchange for, Class 3 Claims, Holders of Allowed Class 3 Claims shall be designated as Class 3A, Class 3B *et seq.* and shall be paid, at the Debtors' or Liquidating Trustee's option, by (a) payment of such Allowed Secured Claim in full in Cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code from the Sale Transaction Proceeds (other than Cure Costs), (b) surrender of the Collateral securing such Allowed Secured Claim if the Collateral is not an Acquired Asset, or (c) issuance of a restructured note with a present value equal to the value of each holder's Class 3 Collateral with interest accruing at a rate of 3% per annum. Interest will be payable on the first Business Day of the first year after the Effective Date. The balance of the Class 3 Claim will be paid in full no later than the tenth (10th) year after the Effective Date. <br><br> The amount, validity, extent, value, and priority of the Allowed Secured Class 3 Claim under § 506 of the Bankruptcy Code, or otherwise, will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and holder of a Class 3 Claim. Any Deficiency Claim or other General Unsecured Claim of the holder of the Class 3 Claim shall be treated in Class 5. <br><br> (Est. Recovery: 100%) |
| 4. | **CONVENIENCE CLAIMS** | As full and final satisfaction, settlement, and release of, and in exchange for, an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive Cash in an amount equal to its Pro Rata Share of the Convenience Class Pool on the later of (a) the Effective Date, (b) thirty (30) days after the Convenience Claim becomes Allowed, and (c) when sufficient Liquidating Trust Proceeds exists to fund the Convenience Class Pool. <br><br> (Est. Recovery: 13%) |
| 5. | **GENERAL UNSECURED CLAIMS** | As full and final satisfaction, settlement, and release of, and in exchange for, Class 5 Claims, each Holder of Allowed Class 5 Claims shall receive beneficial interests in the Liquidating Trust in the form of Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests equal to the Pro Rata Share of each Holder's Allowed General Unsecured Claim, and the Liquidating Trustee will make Distributions to all Allowed General Unsecured Claims in Class 5 pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement from the Net Distributable Proceeds. The Liquidating Trust Agreement will be in the Plan Supplement. |

| CLASS | CLAIMANT | TREATMENT |
|-------|----------|-----------|
|  |  | (Est. Recovery: Unknown) |
| 6. | **SALES REPRESENTATIVES COMMISSION CLAIMS** | Sales Representatives Commission Claims are segregated into Non-Opt-Out Sales Representatives (Class 6(a)) and Opt-Out Sales Representatives (Class 6(b)). Each Allowed Claim on account of commissions held by a Non-Opt-Out Sales Representative shall be released, settled, and satisfied (a) pursuant to and in accordance with the Sales Representatives Commission Claims Payment Plan, the Future Compensation Plan and, the Purchaser Sales Representative Agreement, and (b) receive his/her/its Pro Rata Share of the Tier II Liquidating Trust Interests, as full and final satisfaction, settlement, and release of, and in exchange for, his/her/its Claim against the Estates.<br><br>(Est. Recovery of Class 6(a): up to 65% or more)<br><br>Each Claim held by an Opt-Out Sales Representative will receive its Pro Rata Share of the Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests.<br><br>(Est. Recovery of Class 6(b): Unknown) |
| 7. | **VIRTUAL CURRENCY CLAIMS** | On the Effective Date, as full and final satisfaction, settlement, and release of, and in exchange for Allowed Class 7 Claims, Holders of Allowed Class 7 Claims that are active travel club members in good standing will be satisfied pursuant to the Virtual Currency Use Schedule.<br><br>(Est. Recovery: 100%) |
| 8. | **ASSUMED DEFERRED REVENUE LIABILITY CLAIMS** | On the Effective Date, as full and final satisfaction, settlement, and release of, and in exchange for Allowed Class 8 Claims, Holders of Allowed Class 8 Claims will be satisfied or paid by the Purchaser in the ordinary course of its business; provided, however, the Purchaser's Assumed Deferred Revenue Liability shall not exceed $11,000,000 in Cash and services. If Allowed Claims for Deferred Revenue Liability exceed $11,000,000, all such Allowed Claims shall receive their Pro Rata Share of $11,000,000. For the avoidance of doubt, the satisfaction or payment of the Allowed Class 8 Claims will be the Purchaser's sole responsibility pursuant to this Plan.<br><br>(Est. Recovery: 100%) |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 9. | **INTERCOMPANY CLAIMS** | There will be no Distributions to Claims in Class 9.<br><br>(Est. Recovery: 0%) |
| 10. | **SUBORDINATED UNSECURED CLAIMS** | No holder of an Allowed Class 10 Claim shall receive a Distribution unless and until all Allowed Claims in Classes 1-8 are paid in full or otherwise satisfied.<br><br>(Est. Recovery: 0%) |
| 11. | **INTERESTS IN THE DEBTORS** | All Interests will be cancelled on the Effective Date, and no holder of an Interest in the Debtors shall receive a Distribution on account of such Interest unless and until all Allowed Claims in Classes 1-8 and 10 are paid in full or otherwise satisfied. Allowed Interests are entitled to residual Distribution from Liquidating Trust only after payment in full of Allowed Claims in Classes 1-8 and 10. |

# ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A. Defined Terms.

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1. "*Active Status*" means that a sales representative has (i) signed a Purchaser Sales Representative Agreement, (ii) is paying monthly dues, and (iii) is not delinquent in paying monthly dues for more than three cumulative months.

2. "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases pursuant to §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to §§ 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3. "*Acquired Assets*" means all Assets of the Debtors other than Excluded Assets. Except as provided in the Excluded Assets, the Acquired Assets include all of the Debtors' right, title and interest in the following: (a) Cash in the amount of $4,250,000 minus the balance of the Merchant Accounts at closing of the Sale Transaction on the Effective Date, (b) intellectual property (including, without limitation, all tradenames and trademarks, domain names, websites, and Uniform Resource Locators, patents and copyrights), (c) all accounts and accounts receivable, (c) all of Debtors' rights under licenses, permits and approvals of any governmental or regulatory authority, (d) deposits (other than the Retained Utility Deposit) whether received by the Debtors or Purchaser prior to, on, or after the Effective Date, (e) chargebacks or reserves

(whether credit card merchant reserves or otherwise), (f) tax refunds and credits, (g) inventory, (h) equipment, (i) investment property, (j) instruments, (k) chattel paper, (l) real estate, (m) furniture and fixtures, (n) general intangibles, (o) books and records (excluding attorney-client privileged documents), (p) all Acquired Claims, (q) all Assumed/Assigned Contracts and Leases and rights thereunder, (r) any other tangible or intangible property used in the operation of the Debtors' business, (s) Merchant Accounts, (t) all products and proceeds of all the foregoing; and (u) the Acquired Equity.

4.     "*Acquired Claims*" means Causes of Action (a) (i) for the collection, possession or recovery of any of the Acquired Assets, (ii) relating to the title to, or right to use or possess, any of the Acquired Assets, (iii) affecting the value of any of the Acquired Assets (or the right to use thereof), (iv) based on any warranty (whether a manufacturer's, service, or other warranty) relating to any of the Acquired Assets, (v) for damages to or loss of any of the Acquired Assets (excluding business-interruption insurance claims), (vi) to recover the proceeds of insurance, indemnity, or contribution relating to or deriving from any of the Acquired Assets, (vii) against any Acquired Entity, and (viii) relating to the Employee Retention Tax Credit (other than the Retained Employee Retention Tax Credit); (b) against unaffiliated, arms-length, third-parties that are parties to Assumed/Assigned Contracts and Leases; (c) against credit-card merchants that agree to waive as of the Effective Date, any and all Claims against the Debtors; and (d) against trade vendors that the Purchaser, Debtors, and Committee mutually agree upon and identify in the Plan Supplement as important to Purchaser's ability to operate effectively; provided, such trade vendors are not counterparties to executory contracts or unexpired leases  with any of the Debtors, and provided, if the Debtors, the Purchaser, and the Committee cannot mutually agree on a particular trade vendor, that vendor shall not be added to the list to be provided in the Plan Supplement.  Trade vendors identified on the Plan Supplement shall be deemed to have waived any and all Claims and Causes of Action against the Debtors and the Liquidating Trust, without further Order of the Bankruptcy Court, as of the Effective Date.  Notwithstanding anything above, Acquired Claims DO NOT include the following, which are Excluded Assets, (a) Causes of Action of the Non-Acquired Entities against the Debtors, either directly or through the acquisition of the Intercompany Interests or (b) Causes of Action, both owned by or against the Debtors and/or the Debtors' Affiliates, including Causes of Action (i) asserted in or related to the Seacret Litigation, including Causes of Action against any current or potential defendant in the Seacret Litigation, including without limitation, any Claims or Causes of Action for damaging the Debtors' corporate names, trademarks, tradenames, business representation or goodwill prior to the Effective Date; (ii) asserted in or related to the Head Litigation, including Causes of Action against any current or potential defendant in such adversary proceeding; (iii) against or related to Seacret or arising under or relating to any contract or agreement with Seacret (including the Limited Solicitation Agreement) regardless of whether such contracts are Assumed/Assigned Contracts and Leases; (iv) against or related to Tom Montgomery, MCA, the lenders represented by MCA, Montgomery Capital Partners, Montgomery Capital Partners, LLC, Montgomery Capital Partners II, LP, Montgomery Capital Partners III, LP, Montgomery Coscia Greilich LLP, Baker Tilly US, LLP, and any entity owned, controlled, or related to any of the aforementioned individuals and entities or their predecessors; (v) against any current or former directors, officers, members, managers, insiders (whether statutory or non-statutory insiders), affiliates, employees (other than the Employees), related person, or individual, agents, professionals, advisors, consultants, and Affiliates of the Debtors or the D&O Policies, including damage to goodwill or reputation; (vi) Avoidance Actions; and (vii) against any affiliated,

related, predecessor, or successor person or entity of any person or entity described in subparagraphs (i)-(vii).

5.      "*Acquired Entities*" means those Entities acquired by the Purchaser through its acquisition of the Acquired Equity.

6.      "*Acquired Equity*" means one hundred percent (100%) of the equity ownership interest in (i) Rovia Corp Services (a U.S. entity), (ii) WorldVentures Marketing Pty Ltd (an Australian entity); (iii) WorldVentures Canada, Inc. (a Canadian entity); (iv) WV Services Malaysia Sdn (a Malaysian entity); and (v) WorldVentures Events (Malaysia) Sdn. Bhd. 15 Company No. 1178688D (a Malaysian entity).

7.      "*Affiliate*" has the meaning set forth in § 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

8.      "*Allowed*" means, with respect to any Claim against any of the Debtors, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtors or ordered by the Bankruptcy Court) or a request for payment of an Administrative Claim Filed by the Initial Administrative Claims Bar Date or the Supplemental Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order; *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the Allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under §§ 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under §§ 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Initial Administrative Claims Bar Date or the Supplemental Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order Allowing such late-filed Claim.

9.      "*Allow*" and "*Allowing*" shall have correlative meanings.

10.      "*Assets*" shall mean all of the right, title, and interest of the Debtors in and to property of the Estates, whether tangible or intangible, wherever located.

11. "*Assumed/Assigned Contracts and Leases*" means those Executory Contracts and Unexpired Leases that, as set forth in the Plan Supplement, are assumed, sold and assigned by the Debtors to the Purchaser pursuant to the Plan and §§ 363 and 365 of the Bankruptcy Code.

12. "*Assumed/Assigned Contracts and Leases List*" means the list of the Assumed/Assigned Contracts and Leases filed by the Debtors, which shall be in form and substance acceptable to the Purchaser in its sole discretion, subject to amendment by the Debtors with the consent of the Purchaser from time to time.

13. "*Assumed Deferred Revenue Liability*" means the prepayment for services not yet delivered as of the Effective Date, whether arising prepetition or post-Petition, by the Debtors related to future travel, training, events, representative business-system fees, or membership-enrollment fees that is assumed by the Purchaser under this Plan as set forth in the Plan Supplement; *provided*, *however*, that the Assumed Deferred Revenue Liability shall not exceed $11,000,000 in Cash or services. If Allowed Claims for Deferred Revenue Liability exceed $11,000,000, all such Allowed Claims shall receive their Pro Rata Share of $11,000,000 in Cash or services, from the Purchaser. For the avoidance of doubt, the Assumed Deferred Revenue Liability shall be the sole responsibility of the Purchaser. The Assumed Deferred Revenue Liability is classified as Class 8 Claims.

14. "*Assumed Liabilities*" means the Assumed Deferred Revenue Liability and the Cure Costs.

15. "*Audit Right*" means the Liquidating Trustee's right to audit the Purchaser's records once per every calendar quarter at the Liquidating Trust's expense to verify whether Opt-Out Sales Representatives have provided services as a sales representative to the Purchaser within 6 months of the Effective Date.

16. "*Avoidance Actions*" means, other than Acquired Claims, all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors, their Estates or the Liquidating Trust or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under §§ 502, 510, 542, 544, 545, and 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

17. "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

18. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532 *et seq*.

19. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the Eastern District of Texas.

20.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under § 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

21.     "*Bar Date*" means the deadline for timely Filing proofs of claim and proofs of interest by all parties other than governmental units. The Bar Date is the last date on which proofs of claim or proofs of interest may be timely Filed against the Debtors.

22.     "*Binding Term Sheet*" means the term sheet that is attached as Exhibit 1 to the *Breakup Fee Order.*

23.     "*Breakup Fee Order*" means the Order Approving Expense Reimbursement and Breakup Fee for Term-Sheet Plan Sponsor/Purchaser [Docket No. 329].

24.     "*Business*" means the conduct of the Debtors and the Acquired Entities to sell and distribute membership and travel packages, including without limitation, vacation-club memberships under the trade names "WorldVentures" and "DreamTrips."

25.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

26.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

27.      "*Cash Collateral Budget*" means the budgets that are attached to and included in each cash collateral order Filed and entered by the Bankruptcy Court in these Chapter 11 Cases.

28.     "*Cash Collateral Order*" means either (a) the *Final Order (I) Authorizing the Debtors' Use of Cash Collateral and Granting Adequate Protection and Related*, or (b) the operative cash collateral order in effect [Docket No. ●] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

29.     "*Cash Component*" means the amount of Cash payable by Purchaser to the Debtors, at the closing of the Sale Transaction and upon the Effective Date, in the amount (if a positive number) of $2,600,000 minus each of (y) those utility deposits that are not the Retained Utility Deposits, and (z) the difference between (i) $4,250,000, and (ii) the balance of the Merchant Accounts.

30.     "*Causes of Action*" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a) Avoidance Actions; (b) those claims and causes of action involved in those civil actions listed in each Debtor's Statements of Financial Affairs; (c) other damages (general, exemplary, or both) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii)

violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) causes of action based on alter ego or other liability theories; or (vi) based on any other claim of the Debtors; (d) claims under any prepetition insurance policy of the Debtors (other than for damage or loss payable with respect to Acquired Assets); (e) any claims of the Debtors for equitable subordination under § 510(c) or under other applicable laws; (f) any claim of the Debtors to recharacterize one or more Claims as Interests; and (g) any unresolved objection to any disputed claim.

31.     "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court pursuant to the *Order Granting Joint Administration of Cases* [Docket No. 45] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

32.     "*Claim*" has the meaning set forth in § 101(5) of the Bankruptcy Code.

33.     "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 58] that was served by Stretto, the Debtors' claims and noticing agent, pursuant to the *Notice of Appointment of Stretto as Claims, Noticing, and Balloting Agent* [Docket No. 151]; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

34.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the Clerk of the Bankruptcy Court or Stretto.

35.     "*Class*" means a category of Holders of Claims or Interests under § 1122(a) of the Bankruptcy Code.

36.     "*Class A Liquidating Trust Interest*" means a Liquidating Trust Interest distributed to Holders of Allowed General Unsecured Claims.

37.     "*Class B Liquidating Trust Interest*" means a Liquidating Trust Interest distributed to Holders of Allowed Non-Opt-Out Sales Representatives Commission Claims.

38.     "*Closing Conditions*" means the conditions to the concurrent closing of the Sale Transaction and the occurrence of the Effective Date, which are: (a) the Debtors have, and are prepared to transfer at closing to the Purchaser, $4,250,000 less the balance in the Merchant Accounts; (b) the concurrent closing of the Sale Transaction and the Effective Date shall occur on or before October 22, 2021, unless otherwise extended in writing by the Debtors and the Purchaser; (c) all documentation relating to the Plan, including the Plan Supplement, shall be in form and substance satisfactory to the Purchaser (in its reasonable discretion, or, as otherwise provided herein, in its sole discretion); (d) all motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the Sale Transaction and the Plan shall be in form and substance satisfactory to the Purchaser (in its reasonable discretion, or, as otherwise provided herein, in its sole discretion); (e) all governmental, regulatory and third-party consents and approvals necessary in connection with the acquisition and the transactions contemplated thereby shall have been obtained and shall remain in effect, except as otherwise waived by the Purchaser; (f) the Sale Transaction shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily or permanently by any governmental authority; (g)

the Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to Purchaser in its sole discretion; (h) the Confirmation Order shall be a Final Order and not have been amended, supplemented, or otherwise modified without the prior written consent of the Purchaser (which may be granted or withheld in Purchaser's sole discretion); (i) the Confirmation Order shall authorize and approve the Sale Transaction, including, without limitation, (1) the sale of the Acquired Assets free and clear of all liens, claims, interests, and encumbrances (as provided more fully herein), including without limitation, the Seacret Trademark License and claims or interests related to the Seacret Litigation, pursuant to section 363(f) of the Bankruptcy Code, (2) the assumption and sale/assignment to the Purchaser pursuant to sections 363 and 365 of Assumed/Assigned Contracts and Leases, and (3) find that the Purchaser is a "good-faith" purchaser entitled to the protections afforded under section 363(m) of the Bankruptcy Code and granting such protection to the fullest extent under section 363(m) of the Bankruptcy Code, and (4) the Seacret Trademark License is (to the extent it has not already been) revoked as of the Effective Date and Seacret will have no right to use the corporate names, or the trademarks and tradenames, of the Debtors existing at any time prior to the Effective Date; and (j) the Acquired Equity shall be transferred to the Purchaser at the closing of the Sale Transaction, (k) Debtors shall have operated the Business in the ordinary course of business between the date on which the Breakup Fee Order was entered and the Effective Date; and (m) no Material Adverse Effect shall have occurred prior to such Effective Date.

39. "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance, disallowance, recharacterization, subordination, or otherwise, of any such Lien, charge, or other encumbrance under the Bankruptcy Code.

40. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to the *Second Amended Appointment of Official Unsecured Creditors' Committee* [Docket No. 205], as may be reconstituted from time to time.

41. "*Committee Parties*" means, solely in their capacities as such, (a) the Committee, (b) the members of the Committee, and (c) the Professionals of the Committee.

42. "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

43. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

44. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under § 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

45. "*Confirmation Objection Deadline*" means October 14, 2021 at 4:00 p.m. (prevailing Central Time) or that date that the Bankruptcy Court sets the objection deadline as to confirmation of the Plan.

46. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code, which shall include express approval of Annex A to the Plan in its entirety, either by reference or by adoption of such provisions in the Confirmation Order.

47. "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

48. "*Convenience Claim*" means a General Unsecured Claim or a Sales Representative Commission Claim that is either (a) an Allowed Claim in an amount that is equal to or less than $1,000.00, or (b) an Allowed Claim in an amount that is greater than $1,000.00, but for which the holder of such Claim made the Convenience Claim Election.

49. "*Convenience Claim Election*" means a General Unsecured Claim or Sales Representative Commission Claim that is for an amount that is greater than $1,000.00, but for which the holder of such Claim timely and irrevocably elected on the Ballot to have his/her/its Claim irrevocably reduced to a Claim of $1,000.00 and to be classified and treated as a Class 4 Convenience Claim.

50. "*Convenience Class Pool*" means $800,000.00 in the aggregate, payable from the Cash Component or, if the Cash Component is insufficient, the Liquidating Trust Assets as soon as practicable after the Effective Date.

51. "*Cure Costs*" means the amount necessary to cure all defaults (including monetary and non-monetary) under the Executory Contract or Unexpired Lease that are assumed by the Debtors and assigned to the Purchaser under the Plan pursuant to §§ 365(b) or 1123 of the Bankruptcy Code or as agreed between the Purchaser and the non-Debtor counterparty to the Assumed/Assigned Contract and Lease. All Cure Costs relating to the Executory Contracts and Unexpired Leases assumed and sold/assigned to the Purchaser shall be paid by the Purchaser.

52. "*Cure Notice*" means any notice that sets forth the proposed Cure Costs under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and sold/assigned by the Debtors under the Plan pursuant to §§ 363, 365 or 1123 of the Bankruptcy Code, as applicable, which notice shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) Cure Costs to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related dispute.

53. "*D&O Policies*" means all insurance policies (including without limitation any "tail policy," run-off endorsement) that have been issued at any time to any of the Debtors as a first-named insured providing directors', members', trustees', officers', or managers' liability coverage, or errors-and-omissions coverage.

54. "*Debtors*" means, collectively, Spherature Investments LLC; Rovia, LLC; WorldVentures Marketing Holdings, LLC; WorldVentures Marketplace, LLC; WorldVentures Marketing, LLC; and WorldVentures Services, LLC.

55. "*Deficiency Claim*" means any portion of a Claim (a) to the extent the value of the holder's interest in Assets securing such Claim is less than the amount of such Claim or (b) to the

extent the amount of a Claim is subject to setoff is less than the amount of the Claim, each as determined by § 506(a) of the Bankruptcy Code.

56. "*Disallowed*" means, with respect to a Claim, any portion thereof, that (a) has been disallowed by either a Final Order or pursuant to a settlement, or (b)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely Filed under applicable law. If all or any portion of a Claim shall become a Disallowed Claim, then the amount of Distribution attributable to such Disallowed Claim shall be distributed to Holders of Allowed Claims with equal priority under this Plan, first, and then to Holders of Allowed Claims or Interests with lower priority next, all in accordance with the Plan.

57. "*Disclosure Statement*" means the *Disclosure Statement to the Fourth Amended Joint Chapter 11 Plan for Spherature Investments LLC and Its Affiliated Debtors*, dated as of September 23, 2021 [Docket No. ●], (as amended, modified or supplemented from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law).

58. "*Disclosure Statement Order*" means the *Order Granting Debtors' Emergency Motion to Enter Solicitation Procedures Order, or in the Alternative, Set an Emergency Hearing* [Docket No. 448] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

59. "*Disputed*" means  the portion (including, when appropriate, the whole) of a Claim or an Interest that is not an Allowed Claim as to which: (a) a Proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the Claim Objection Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the Proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtors in their Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtors has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules; or (d) such Claim is otherwise objectionable.

60. "*Distributable Assets*" means Excluded Assets and Sale Transaction Proceeds (other than Cure Costs), including the Opt-Out Sales Representative Proceeds, to which all rights to and in all such Excluded Assets and Sale Transaction Proceeds (other than Cure Costs) will be transferred to, and title thereto shall vest in, the Liquidating Trust as of the Effective Date or as soon thereafter as is practicable and then liquidated so that the proceeds therefrom may be distributed by the Liquidating Trustee to the Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

61.    "*Distribution*" means any transfer or payment under or in accordance with the Plan or the Liquidating Trust Agreement.

62.    "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Confirmation Date, or such other date as designated in a Final Order.

63.    "*Effective Date*" means, with respect to the Plan, the first Business Day on which all conditions to the occurrence of the Effective Date, as set forth in this Plan, have been satisfied or duly waived.

64.    "*Employees*" means Eric Haynes, Simon Davies, Paul Jenkins, and Michael Poates.

65.    "*Employee Retention Tax Credit*" means that certain employee retention tax credit that the Debtors or the Liquidating Trust receive.

66.    "*Entity*" has the meaning set forth in § 101(15) of the Bankruptcy Code.

67.    "*Estate*" means the estate of any Debtor created under §§ 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Chapter 11 Case.

68.    "*Excluded Assets*" means (a) Sale Transaction Proceeds, (b) all privileged and legal documents, files, and attorney-work product (although copies of all such non-privileged documents shall be made available to the Purchaser), (c) Retained Utility Deposit, (d) any Assets not listed in this definition that the Purchaser identifies in the Plan Supplement or otherwise chooses not to purchase at the Effective Date; (e) defenses or counterclaims (other than defenses or counterclaims for (i) setoff or offset, or a right to payment of an Acquired Asset, whether or not arising under an assumed and sold/assigned contract or lease or (ii) contractual rights under Assumed/Assigned Contracts and Leases) to Claims against the Debtors, (f) Causes of Action of the non-Debtor Affiliates against the Debtors, either directly or through the acquisition of the Acquired Entities, (g) all insurance rights and proceeds, except property and casualty insurance rights and proceeds, (h) the Seacret Royalty and all contracts and agreements among any of the Debtors, Debtors' Affiliates, and Seacret, including the Limited Solicitation Agreement, (i) the equity ownership interests in any subsidiary, directly or indirectly,  of the Debtors and their Affiliates other than the Acquired Equity, (j) any Assets that the Purchaser identifies as an Excluded Asset in the Plan Supplement,  (k) Intercompany Claims (which are being cancelled), (l) Assets of Non-Acquired Entities, (m) the Retained Employee Retention Tax Credit; and (n) except for Acquired Claims, all Causes of Action, both owned by and/or  against any of the Debtors and/or Debtors' Affiliates, including, but not limited to, Causes of Action (1) asserted in or related to the Seacret Litigation, including Causes of Action against any current or potential defendant in the Seacret Litigation, including without limitation, any Claims or Causes of Action for damaging the Debtors' corporate names, trademarks, tradenames, business representation or goodwill prior to the Effective Date; (2) asserted in or related to the Head Litigation, including Causes of Action against any current or potential defendant in the Head Litigation; (3) against or related to Seacret or arising under or relating to any contract or agreement with Seacret

(including the Limited Solicitation Agreement); (4) against or related to Tom Montgomery, MCA, the lenders represented by MCA, Montgomery Capital Partners, Montgomery Capital Partners, LLC, Montgomery Capital Partners II, LP, Montgomery Capital Partners III, LP, Montgomery Coscia Greilich LLP, Baker Tilly US, LLP, and any entity owned, controlled, or related to any of the aforementioned individuals and entities or their predecessors; (5) against any current or former directors, officers, members, managers, insiders (whether statutory or non-statutory insiders), Affiliates, employees (other than the Employees), related person, or individual, agents professionals, advisors, consultants, and Affiliate of the Debtors or the D&O Policies and proceeds thereof; (6) that are Avoidance Actions, and (7) against any affiliated, related, predecessor, or successor person or entity of any person or entity described in subparagraphs (a)-(n). The Excluded Assets shall vest in the Liquidating Trustee on the Effective Date or as soon thereafter as is practicable.

69.   "*Excluded Liabilities*" means every liability other than the Assumed Liabilities. For the avoidance of doubt, and merely by way of illustration not exhaustion, all Secured Claims (including the Class 2 and Class 3  Secured Claims), the Virtual Currency, and the Sales Representatives Commissions, all obligations under Executory Contracts and Unexpired Leases not assumed and sold/assigned to the Purchaser, all pre-closing obligations, whether monetary (other than Cure Costs) or nonmonetary, under Assumed/Assigned Contracts and Leases, all Administrative Claims, all employee obligations, all tax liabilities, all governmental obligations and fines, all unsecured Claims (whether priority or nonpriority, fixed or contingent, mature or unmatured, based on contract, quasi-contract, tort, or other theory of liability, legal or equitable, known or unknown, liquidated or unliquidated), and all Intercompany Claims are Excluded Liabilities.

70.   "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Purchaser, (b) the Committee Parties, (c) the Professionals, (d) Erik Toth, as Chief Restructuring Officer, and Larx Advisors Inc., (e) with respect to each of the foregoing, such Entity and its respective employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such, and (f) with respect to each Debtor, the Employees, the Independent Directors, and the Debtors' Professionals, each in their capacity as such.

71.   "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and sale/assignment, or rejection under §§ 363, 365 or 1123 of the Bankruptcy Code.

72.   "*Federal Judgment Rate*" means, as calculated under 28 U.S.C. § 1961(a), the rate equal to the weekly 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. For purposes of post-Petition Date interest on an Allowed Claim, the "date of the judgment" is the Petition Date.

73.   "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

74. "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that: (a) is conclusive of all matters; (b) has not been reversed, stayed, or revoked; and (c) is effective. An order or judgment shall be deemed a Final Order, notwithstanding the possibility that a motion may be filed relating to such order or judgment pursuant to Bankruptcy Code §502(j), Bankruptcy Rule 3008, Bankruptcy Rules 9023 and 9024, Federal Rule of Civil Procedure 59 and 60, or any analogous statute or rule.

75. "*First Day Declaration*" means the *Declaration of Erik Toth in Support of Voluntary Petitions and First Day Motions* filed at Docket No. 20.

76. "*Future Compensation Plan*" means the compensation plan proposed by the Purchaser in the Purchaser Sales Representative Agreement to compensate Sales Representatives for future services provided to the Purchaser after the Effective Date.

77. "*General Unsecured Claim*" means every Claim against each Debtor that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim of MCA, an Other Secured Claim, a Convenience Claim, a Sales Representative Commission Claim (except to the extent that such aggregate Sales Representative Commission Claims total more than $34,230,769), a Non-Opt-Out Sales Representatives Commission Claim, a Claim for Virtual Currency, a Claim for Assumed Deferred Revenue Liability, an Intercompany Claim, a Subordinated Unsecured Claim, or an Interest in the Debtors.

78. "*Governmental Unit*" has the meaning set forth in § 101(27) of the Bankruptcy Code.

79. "*Gross Sales*" means the total amount of revenue calculated on an accrual basis under Generally Accepted Accounting Principles (U.S. GAAP) for a particular period; *provided*, *however*, that Gross Sales (a) shall only include ordinary course sales of Purchaser Products and Services and (b) shall not include Sponsored Travel Sales Revenue.

80. "*Head Litigation*" means the adversary proceeding *Spherature Investments LLC, et al. v. Kenneth E. Head,* Adversary No. 21-04058 in the United States Bankruptcy Court for the Eastern District of Texas Sherman Division.

81. "*Holder*" or "*holder*" means an Entity holding a Claim against or Interest in a Debtor, as applicable.

82. "*Hyperwallet Funds*" means those funds transferred to WorldVentures Marketing LLC by Hyperwallet Systems, Inc. on account of funds related to that certain master agreement dated April 15, 2015, under which Hyperwallet provided a global "closed loop" payment system for WorldVentures Marketing, LLC and its Sales Representatives.

83. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of § 1124 of the Bankruptcy Code.

84. "*Independent Directors*" means James Calandra and Russell Nelms, and any additional or replacement directors appointed prior to the Effective Date.

85. "*Initial Administrative Claims Bar Date*" means the Voting Deadline, October 8, 2021, at 4:00 pm (prevailing Central Time). The Initial Administrative Claims Bar Date is the deadline by when all requests for payment of Administrative Claims that arise on or prior to September 1, 2021 (other than Administrative Claims, if any, under the Breakup Fee Order and Professional Fee Claims) must be Filed and served on the Debtors.

86. "*Initial Distribution Date*" means the date on which the Liquidating Trustee makes initial distributions to Holders of Allowed Claims pursuant to the Plan.

87. "*Intercompany Claim*" means any Claim, Cause of Action, or remedy held by a Debtor or asserted against a Debtor by (a) another Debtor, (b) an Affiliate of a Debtor, (c) a non-Debtor subsidiary of a Debtor, or (d) Acquired Entities.

88. "*Intercompany Interest*" means any: (a) Interest in one Debtor held by another Debtor, (b) any Interest in an Affiliate of a Debtor, (c) an Interest in any Entity owned by a Debtor, or (d) an Interest in the Acquired Entities.

89. "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, including options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

90. "*Interim Compensation Order*" means the *Order Granting Motion for Administrative Order Under Bankruptcy Code Sections 105(A) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 152] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

91. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

92. "*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

93. "*Limited Solicitation Agreement*" means that certain Limited Solicitation Agreement dated November 11, 2020, executed by Seacret and the Debtors and all amendments and agreements related to the Limited Solicitation Agreement, including (to the extent not superseded) the Joint Co-Marketing Agreement dated July 22, 2020.

94. "*Liquidating Trust*" means the Liquidating Trust established as of the Effective Date pursuant to the terms of the Plan and the Liquidating Trust Agreement.

95. "*Liquidating Trust Agreement*" means the trust agreement pursuant to which the Liquidating Trust is established and that enumerates the duties and obligations of the Liquidating Trustee. The Liquidating Trust Agreement will be filed in the Plan Supplement.

96.    "*Liquidating Trust Assets*" means all assets held from time to time by the Liquidating Trust (including Causes of Action). Liquidating Trust Assets will be distributed pursuant to the Liquidating Trust Waterfall. The Liquidating Trust Assets shall initially consist of the Distributable Assets. For the avoidance of doubt, no Acquired Assets shall be Liquidating Trust Assets.

97.    "*Liquidating Trust Beneficiary(ies)*" means Holders of Allowed Claims entitled to receive a distribution from the Liquidating Trust pursuant to the Plan, in its capacity as such.

98.    "*Liquidating Trust Interest*" means a non-certificated beneficial interest in the Liquidating Trust that, subject to the terms of the Plan and the Liquidating Trust Agreement, may be granted to Holders of Allowed Non-Opt-Out Sales Representatives Commission Claims and Allowed General Unsecured Claims, which shall entitle such holder to a Pro Rata share in the Liquidating Trust Assets.

99.    "*Liquidating Trust Proceeds*" means all proceeds from the Liquidating Trust Assets.

100.    "*Liquidating Trustee*" means an individual that shall be the representative of the Debtors on and after the Effective Date and shall have the rights, powers, and duties set forth in this Plan and the Liquidating Trust Agreement. The identity and compensation of the Liquidating Trustee shall be set forth in the Plan Supplement. The Liquidating Trustee shall act as the representative of the Estates pursuant to § 1123(b)(3)(B) of the Bankruptcy Code for the purposes of pursuing the Causes of Action assigned to the Liquidating Trust and with respect to the other Liquidating Trust Assets in accordance with the terms specified in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be deemed to be a party in interest within the meaning of § 1109(b) of the Bankruptcy Code and the representative of the Estates for all purposes related to or in connection with Liquidating Trust Assets assigned to the Liquidating Trust. The Liquidating Trustee shall also be a party in interest with standing to object to any Proof of Claim or Interest as provided in this Plan. The Liquidating Trustee shall conduct the final liquidation of the Liquidating Trust Assets and make Distributions pursuant to the terms of this Plan and the Liquidating Trust Agreement.

101.    "*Liquidating Trust Waterfall*" means the Distribution of proceeds of Liquidating Trust Assets pursuant to the Liquidating Trust Agreement.

102.    "*Material Adverse Effect*" means a change in the (a) enterprise value of the Business or (b) fair market value of the Acquired Assets. The Debtors will operate the Business in the ordinary course between the entry of the Breakup Fee Order and the Effective Date (except anything within the actual knowledge of the Purchaser prior to the date of the filing of this Plan), recognizing that Cash may be used to pay Administrative Claims provided that such Administrative Claims are in accordance with the Cash Collateral Budgets and are approved by the Bankruptcy Court; *provided, however*, none of the following shall be taken into account when determining whether there is a Material Adverse Effect: (a) commencement or escalation of war or armed hostilities or the occurrence of acts of terrorism or sabotage; (b) changes in the securities markets generally; (c) changes in generally accepted accounting principles, or any interpretation thereof; (d) the COVID-19 pandemic or other pandemic or any act of God or other

force majeure event (including natural disasters); (e) seasonal changes in the result of operations provided that such seasonal changes are consistent with the historic experience of the business; and (f) a change in the Business. Purchaser must provide notice to the Debtors of a Material Adverse Effect, whereupon the Debtors shall have seven (7) days, if practicable, to cure such Material Adverse Effect, which cure period shall not extend the closing of the Sale Transaction or the occurrence of the Effective Date.

103.     "*Merchant Accounts*" means all reserve balances maintained by any third-party credit-card processors.

104.     "*MCA*" means Montgomery Capital Advisers, LLC.

105.     "*MCA Claim*" means the Secured Claim of the Secured Parties and the Deficiency Claim.

106.     "*Net Distributable Assets*" means the Distributable Assets of the Liquidating Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Administrative Claims, Priority Claims, Convenience Class Claims, and Trust Expenses, and/or reserves established for any of the foregoing.  For Distribution purposes, Net Distributable Assets will be divided into Tier I Proceeds and Tier II Proceeds.

107.      "*Net Income*" means Gross Sales minus Total Costs.

108.     "*New Employment Agreements*" means the agreement(s), by and between the Purchaser and each of the Employees, pursuant to which each such person shall provide services to the Purchaser as provided therein. The Purchaser shall compensate each person as set forth in the applicable agreement and pursuant to the terms and conditions thereof. The annual compensation to be paid to the Employees and the term of such agreement(s) will be disclosed in the Plan Supplement.

109.     "*Non-Acquired Entities*" means those affiliates and/or subsidiaries of the Debtors' that are not the Acquired Entities.

110.     "*Non-Opt-Out Sales Representatives*" means Sales Representatives who DO NOT affirmatively select the Sales Representative "opt-out" box on the Ballot pursuant to the Voting Procedures, regardless of the vote (if any) cast on the Ballot.

111.     "*Notice and Claims Agent*" means Stretto, which is the trade name of Bankruptcy Management Solutions, Inc. and its subsidiaries, as the notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases as approved by Docket No. 149.

112.     "*Opt-Out Sales Representatives*" means Sales Representatives who affirmatively select the Sales Representative "opt-out" box on the Ballot pursuant to the Voting Procedures.

113.     "*Opt-Out Sales Representative Proceeds*" means Purchaser's payment under the Sales Representatives Commission Claims Payment Plan to the Liquidating Trust of up to 65% of Purchaser Paid Sales Representatives Commissions for any Opt-Out Sales Representative who

(a) affirmatively selects the Sales Representative "opt-out" box on the Ballot pursuant to the Voting Procedures, (b) commences providing services as a sales representative for the Purchaser within 6 months of the Effective Date, and (c) but for the Sales Representative "opt-out," would have been entitled to receive payments pursuant to and in accordance with the Sales Representatives Commission Claims Payment Plan. The Liquidating Trustee shall have its Audit Right. For the avoidance of doubt, the Opt-Out Sales Representative Proceeds are included when calculating whether the Purchaser has paid the "up to $22,250,000" for the Purchaser Paid Sales Representatives Commissions.

114. "*Other Secured Claim*" means any Secured Claim against any of the Debtors other than the MCA Claim.

115. "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

116. "*Petition Date*" means December 21, 2020, the date on which the Chapter 11 Cases were commenced.

117. "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified or supplemented from time to time in accordance with the terms hereof).

118. "*Plan Consolidation*" means, except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Liquidating Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Debtors. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Debtors or the Liquidating Trustee, as applicable, to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles.

119. "*Plan Documents*" means documents relating to or arising under the Plan.

120. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, as amended, supplemented, or otherwise modified from time

to time in accordance with the terms hereof, each of which shall be in form and substance reasonably acceptable (except where the Plan provides for the Purchaser's sole discretion) to the Purchaser, draft forms of which shall be Filed at least 7 days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including: (a) the Assumed/Assigned Contracts and Leases List; (b) the identity of the Liquidating Trustee and the compensation of the Liquidating Trustee; (c) a schedule of the Assumed Deferred Revenue Liability, (d) the Purchaser Documentation; (e) a list of trade vendors (that are not parties to Assumed/Assigned Contracts and Leases) against which Causes of Action are Acquired Claims (in accordance with Article 1.3(d)); (f) the Liquidating Trust Agreement; (g) New Employment Agreements; (h) the Purchaser Note; (i) the Purchaser Note Security Agreement and (j) a non-exclusive list of Excluded Assets (which may be by category and need not specifically identity particular Assets), *provided* that, other than the list of trade vendors set forth in (e) herein, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified at any time prior to the Effective Date.

121. "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims.

122. "*Priority Non-Tax Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under § 507(a) of the Bankruptcy Code.

123. "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

124. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

125. "*Pro Rata Share*" means, at any time, the proportion that the Face Amount of the Allowed Claim or Allowed Interest in a particular Class bears to the aggregate Face Amount of all Allowed Claims or Interests in such Class. For purposes of the right to any recovery under the Sales Representatives Commission Claims Payment Plan and the Virtual Currency Use Plan, the Pro Rata Share and all rights of recovery shall be determined solely on each Holder's Sales Representatives Commission Claim or Claim for Virtual Currency, as applicable, only and shall not be determined on any other Claim of such Holder. In addition, to the extent that any Opt Out Sales Representatives Proceeds are payable to the Liquidating Trust, each Purchaser Sales Representative's Pro Rata Share and the Pro Rata Share of the Liquidating Trust shall be determined as if the Opt Out Sales Representative was a Purchaser Sales Representative at the time of payment.

126. "*Professional*" means an Entity: (a) employed, or proposed to be employed (to the extent of a Filed application thereof) prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with §§ 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to §§ 327, 328, 329, 330, and 331 of the Bankruptcy Code, and such Entity's officers, directors, managers, principals, members, partners, employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such, or (b) for which

compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code.

127. "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

128. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

129. "*Purchase Price*" means the sum of Cure Costs and (ii) up to $82,500,000 of other consideration, as provided in the Plan.

130. "*Purchaser*" means (a) Verona International Holdings, Inc. and/or one or more subsidiaries or affiliates, as designated by Verona International Holdings, Inc. in the Plan Supplement or (b) an entity that submits a higher and better offer for the Acquired Assets.

131. "*Purchaser Documentation*" means certain documentation, filings, forms, and other administrative or ministerial actions relating thereto, that are reasonably necessary or desirable to effectuate the Sale Transaction, which such Purchaser Documentation shall be in form and substance acceptable to the Debtors and Purchaser.

132. "*Purchaser Products and Services*" means any products sold or services offered on or after the Effective Date by (a) Purchaser or (b) any company that is majority owned (either directly or indirectly) by Purchaser, on or after the Effective Date to the extent that such entity derives sales from the Business and Acquired Assets, or the Purchaser Sales Representatives, (c) any company that is a controlled affiliate of Purchaser or its affiliates, and that receive the right to sell all or some of the Purchaser's products or services offered on or after the Effective Date. Notwithstanding the foregoing Purchaser Products and Services shall not include Sponsored Travel Sales Revenue.

133. "*Purchaser Sales Representatives*" means every Sales Representative who is not (a) a Holder of an Allowed Class 4 Claim or (b) an Opt-Out Sales Representative and who provides services to the Purchaser pursuant to the Future Compensation Payment Plan and a Purchaser Sales Representative Agreement. Notwithstanding the foregoing, a Purchaser Sales Representative does not include the Debtors', the Acquired Entities', or the Non-Acquired Entities', officers, directors (at any time), insiders, and affiliates, and the insiders and affiliates of each of the foregoing (other than the Employees), a list of which the Debtors shall provide to the Purchaser on or prior to the Effective Date.

134. "*Purchaser Sales Representatives Agreement*" means those certain agreements executed by the Purchaser and the Purchaser Sales Representatives as part of the Future Compensation Plan.

135.    "*Purchaser Honored Virtual Currency*" means Virtual Currency as set forth in the Plan Supplement to be honored or satisfied by the Purchaser and redeemed by the Holders of Allowed Virtual Currency Claims pursuant to and in accordance with the Virtual Currency Use Schedule; *provided*, *however*, the Purchaser Honored Virtual Currency shall not exceed the aggregate amount of $7,000,000 of Purchaser Honored Virtual Currency Claims. If Allowed Claims for Virtual Currency exceed $7,000,000, all such Allowed Claims shall be entitled to use their Pro Rata Share of the $7,000,000.  For the avoidance of doubt, all Purchaser Honored Virtual Currency Claims shall be the sole responsibility of the Purchaser.  Virtual Currency Claims are classified as Class 7 Claims.

136.    "*Purchaser Note*" means that certain promissory note issued under this Plan by the Purchaser to the Liquidating Trust in the principal amount of $5,500,000, plus interest at the rate of 6% simple interest per annum. The Purchaser Note will be fully amortized over thirty-six (36) months. Payments under the Purchaser Note will (a) begin on the last day of the first full calendar month after the Effective Date and (b) be paid into a segregated account controlled by the Liquidating Trustee and owned by the Liquidating Trust. No Distributions will be made from this segregated account without Order of the Bankruptcy Court. The Purchaser Note will be Collateral for the Allowed Class 2 Claim.  In the event that MCA's Claim is allowed by the Bankruptcy Court in part or in full, the Liquidating Trust may (i) assign the Purchaser Note to MCA, without representation or warranty, (ii) continue to make payments to the Holders of Allowed Class 2 Claims, or (iii) issue a note to MCA for the amount of their Allowed Claim with a security interest in the Purchaser Note.  The Purchaser Note will be included in the Plan Supplement.

137.    "*Purchaser Note Payments*" means the $5,500,000 to be paid by the Purchaser to the Liquidating Trust pursuant to the terms of the Purchaser Note.

138.    "*Purchaser Note Security Agreement*" means that certain security agreement executed by the Liquidating Trustee or the Debtors under which the Liquidating Trust or Debtors, as applicable, may grant Liens in the Purchaser Note, payments pursuant to the Purchaser Note, and the proceeds thereof, to MCA.  The Purchaser Note Security Agreement will be included in the Plan Supplement.

139.    "*Purchaser Paid/Satisfied Liabilities*" means the Assumed Deferred Revenue Liability, Purchaser Paid Sales Representatives Commissions, Purchaser Honored Virtual Currency, the Cure Costs, the Opt-Out Sales Representatives Proceeds, and the Purchaser Note Payments.

140.    "*Purchaser Paid Sales Representatives Commissions*" means up to 65% of the Allowed Sales Representatives Commission Claims paid by the Purchaser under the Plan in accordance with the Sales Representatives Commission Claims Payment Plan; *provided*, *however*, the aggregate amount of Purchaser Paid Sales Representatives Commissions (which, for the avoidance of doubt, includes the Opt Out Sales Representatives Proceeds) shall not exceed $22,250,000.

141. "*Reinstate,*" "*Reinstated,*" or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with § 1124 of the Bankruptcy Code.

142. "*Rejection Damages Claim*" or "*Rejection Claim*" means any Claim arising from the rejection of any executory contract or unexpired lease, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with § 502(b)(6) or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with § 502(b)(7). A Rejection Damages Claim shall constitute a General Unsecured Claim treated in Class 5, *provided, however,* that the unpaid balance of any Claim, held by a counter party to an Assumed/Assigned Contract and Lease, paid by the Purchaser as a Cure Cost with respect to an Executory Contract, or a Claim of an Employee, shall be deemed automatically waived and released, on the Effective Date, without further Order of the Bankruptcy Court by the counterparty or Employee, as applicable.

143. "*Released Parties*" means, collectively and individually, (a) the Independent Directors; (b) the Employees; (c) Erik Toth, as Chief Restructuring Officer, and Larx Advisors Inc.; (d) the Purchaser; (e) the Committee; (f) Committee Parties; and (g) the Professionals retained by the Debtors, Purchaser, and the Committee in the Chapter 11 Cases, and their respective employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such. For the avoidance of doubt, no Cause of Action of the Debtors is released against, (a) MCA, and the Secured Parties represented by MCA, (b) Seacret Direct, LLC and any officer, director, and agent of Seacret Direct, LLC, (c) Kenneth E. Head, and (d) the Debtors' pre-petition and post-petition Officers, and/or Directors (other than the Employees and the Independent Directors). In addition, no such foregoing Causes of Action is an Acquired Claim.

144. "*Releasing Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Purchaser; (b) all Holders of Claims and Interests that are presumed to accept the Plan *and* who do not affirmatively opt-out of the releases in the Plan on the Ballot; (c) all Holders of Claims and Interests who vote to accept the Plan; (d) all Holders of Claims or Interests that (i) abstain from voting on the Plan *and* who do not opt-out of the releases in the Plan on the Ballot, (ii) vote to reject the Plan *and* who do not opt-out of the releases in the Plan on the Ballot, or (iii) are deemed to reject the Plan *and* who do not opt-out of the releases in the Plan on the Ballot; (e) the Committee Parties; (f) the Debtors (except that the Debtors are NOT releasing any Claims or Causes of Action against any Party other than the Released Parties).

145. "*Retained Causes of Action*" means all Causes of Action that are not (a) released or waived or (b) Acquired Claims.

146. "*Retained Employee Retention Tax Credit*" means the Cash amount that the Debtors and/or the Liquidating Trust are eligible to receive on account of the Employee Retention Tax Credit up to $950,000; provided, however, that such Retained Employee Retention Tax Credit may be used solely to pay the costs and expenses necessary to Wind Down the Non-Acquired Entities.

147.    "*Retained Employee Retention Tax Credit Accounting*" means the Liquidating Trustee's obligation, once per calendar quarter, to provide an accounting, including detailed backup (and such other proof as Purchaser may reasonably request), to Purchaser regarding the actual costs incurred to wind down the Non-Acquired Entities.

148.    "*Retained Employee Retention Tax Credit Recoupment*" means Purchaser's right to recoup the Retained Employee Retention Tax Credit from the Royalty Earn Out Payments by reducing each Royalty Earn Out Payment otherwise due by 2.0% until such Retained Employee Retention Tax Credit has been recouped.

149.    "*Retained Utility Deposit*" means fifty percent (50%) of the deposits made or segregated by the Debtors in favor of utilities. The Retained Utility Deposit is an Excluded Asset and shall be paid, within five (5) calendar days after receipt thereof, by (a) the Purchaser (if the Purchaser receives the deposit from the holding party) to the Liquidating Trust or (b) the Liquidating Trust (if the Liquidating Trust receives the deposit from the holding party) to the Purchaser.

150.    "*Royalty Earn Out Payments*" means, subject to the Retained Employee Retention Tax Credit Recoupment, payments by the Purchaser of no more than $16,000,000. Subject to the Retained Employee Retention Tax Credit Recoupment, the Royalty Earn Out Payment shall be payable in monthly payments equal to a Tiered Percentage of monthly Gross Sales of Purchaser Products and Services. The Royalty Earn Out Payments will start on the first calendar month on or after 90th day after the Effective Date and continue every thirty (30) days thereafter until the $16,000,000 is paid to the Liquidating Trustee.

151.    "*Royalty Earn Out Payment Audit Right*" means the Liquidating Trustee's right to (a) request and conduct an audit  of the Purchaser's books and records to validate or verify the Royalty Earn Out Payments, or (at the Liquidating Trustee's sole and exclusive discretion) (b) receive a copy of the Purchaser's audited financial statements if such statements are prepared. The Liquidating Trustee's audit may be conducted only after (a) the end of the first 90-day period during which the Royalty Earn Out Payments apply (b) reasonable notice, (c) during normal business hours, and (d) in a manner so not to disrupt operations.  The Royalty Earn Out Payment Audit Right may not be exercised by the Liquidating Trustee more than one time every calendar quarter.  The costs and expenses of any audit(s) shall be the sole responsibility of the Liquidating Trust.

152.    "*Sale Transaction*" means the transfer of the Acquired Assets to the Purchaser free and clear of all Liens, Claims, charges, interests, and other encumbrances (other than the Assumed Liabilities) pursuant to § 1123 of the Bankruptcy Code on the terms and conditions set forth in this Plan, including payment of the Sale Transaction Proceeds by the Purchaser.

153.    "*Sale Transaction Documentation*" means, one or more documents necessary or appropriate to document, consummate, memorialize, or implement the Sale Transaction.  Such documents shall be mutually acceptable to the Debtors and the Purchaser to effectuate the Sale Transaction. Any Sale Transaction Documentation will be included in the Plan Supplement.

154.    "*Sale Transaction Proceeds*" means all consideration paid by the Purchaser to, or for the benefit of, the Debtors, the Estates, or the Liquidating Trustee as part of the Sale Transaction, including the (a) Cash Component, (b) Purchaser Note and the Purchaser Note Payments, (c) the Royalty Earn Out Payments, (d) Opt-Out Sales Representative Proceeds, and (e) the Cure Costs.

155.    "*Sales Representatives*" means those independent sales representatives who had a Sales Representative Agreement with the Debtors prior to the Effective Date.

156.    "*Sales Representative Agreement*" means those certain agreements by the Debtors and the Sales Representatives, regardless of being in writing and/or executed.

157.    "*Sales Representatives Commission Claims*" means the Allowed Claims of a Purchaser Sales Representative solely for and in the amount of the actual unpaid prepetition sales commissions earned in the ordinary course of the Business. If Allowed Claims for Sales Representatives Commissions exceed $34,230,769, the Allowed amount of such Claims in excess thereof shall be classified as a General Unsecured Claim.

158.    "*Sales Representatives Commission Claims Payment Plan*" means each Purchaser Sales Representative's Pro Rata Share of the Purchaser Paid Sales Representatives Commissions, payable by the Purchaser in twenty-four (24) monthly payments at the rate of five (5%) percent of the Purchaser's monthly Gross Sales, starting the 1st day of the month that is at least thirty (30) days after the Effective Date (the "First Payment Date") and continuing for the next twenty-three (23) months. The last monthly payment shall be up to the amount necessary to pay in full each Purchaser Sales Representative's Pro Rata Share of the Purchaser Paid Sales Representatives Commissions; *provided*, *however*, notwithstanding any other provision of the Plan, a Purchaser Sales Representative will receive payments on account of his/her/its Pro Rata Share of the Purchaser Paid Sales Representatives Commissions ONLY <u>IF</u> the Purchaser Sales Representative, as of the date on which a payment from Purchaser on account of the Sales Representatives Commissions is due and payable:

    (a) releases 65% of its/his/her Claims against the Estates and their respective affiliates, subsidiaries, and related parties;

    (b) retains a Claim, subject to allowance/disallowance/recharacterization/subordination, etc., for the remaining 35% against the Tier II Proceeds;

    (c) agrees to the Future Compensation Plan by not affirmatively "opting out" on the Ballot from being bound to a Purchaser Sales Representatives Agreement - i.e., a Purchaser Sales Representative must be a Non-Opt-Out Sales Representative;

    (d) is engaged as a Purchaser Sales Representative pursuant to an executed Purchaser Sales Representative Agreement producing revenue from third-party sales, and is not in violation of the Purchaser Sales Representatives Agreement; and

       (e) is and remains an active member in good standing with Active
          Status.

If a Purchaser Sales Representative fails to meet any these requirements as of the date on which a payment on account of the Sales Representatives Commissions is due and payable, (a) the Purchaser shall have no liability to the Purchaser Sales Representative with respect to such payment, and (b) the Liquidating Trust shall have no liability to the Purchaser Sales Representatives, save for its interest, if any in the Tier II Proceeds.

Within fourteen (14) calendar days prior to the First Payment Date, the Liquidating Trustee shall deliver to the Purchaser (in Excel format) a schedule setting forth (a) the Allowed amount of each Purchaser Sales Representative's Sales Representatives Commissions, (b) the Pro Rata Share of each Purchaser Sales Representative (and the Liquidating Trust with respect to any Opt Out Sales Representative Proceeds), (c) the proposed amount payable to each Purchaser Sales Representative (and, if applicable, the Liquidating Trust on account of the Opt Out Sales Representative Proceeds) on the date of the Purchaser's applicable scheduled payment, and (d) such other information as is reasonably requested by Purchaser. In making payments under the Sales Representatives Commission Claims Payment Plan, the Purchaser is entitled to rely on the amounts, information, and calculations provided by the Liquidating Trustee without independent investigation, analysis, or verification and shall not be liable to any Person or Entity (including, without limitation, the Sales Representatives or the Liquidating Trust) arising from such payments. If the Allowed amount changes because of the resolution of an objection or because of a Final Order, the Liquidating Trustee shall provide notice of such change to the Purchaser as soon as reasonably practicable.

If the Purchaser Sales Representative meets each requirement above at all relevant times, an example of how this *Sales Representatives Commission Claims Payment Plan* works is as follows: Assume that (a) the Purchaser Sales Representative asserts a $10,000.00 Sales Representatives Commission Claim against the Estates, (b) the Effective Date is September 1, 2021, and (c) Purchaser's monthly Gross Sales are $7,500,000.00. That Purchaser Sales Representative will withdraw/release that Claim; in exchange, the Purchaser will pay that Purchaser Sales Representative $6,500.00 on account of its Claim against the Estates. That $6,500.00 will be paid as follows: $250.00 on October 1, 2021, and $250.00 on the 1st day of each month thereafter for 22 months, totaling $5,750.00. The 23rd payment will be $750.00, for a total distribution of $6,500.00; *provided, however*, in no circumstance shall a Purchaser Sales Representative receive from the Purchaser more than 65% of his/her/its Allowed Sales Representatives Commission Claim, and no more than 35% of such Allowed Claim from the Liquidating Trust Tier II Proceeds; *provided further* that in no event will the aggregate amount of Purchaser Paid Sales Representatives Commissions exceed $22,250,000.

For the avoidance of doubt, the Purchaser's obligation to pay the Opt-Out Sales Representative Proceeds depends upon the Opt-Out Sales Representative's satisfaction of the terms and conditions of the Sales Representatives Commission Claims Payment Plan. In addition, the Opt-Out Sales Representatives Proceeds are included when determining the $22,250,000 cap on Purchaser Paid Sales Representatives Commissions.

In the Sales Representatives Commission Claims Payment Plan, the Purchaser shall not be required to make any payments on account of a Sales Representatives Commission Claim until such Claims are Allowed or the agreement of the Debtors (prior to or on the Effective Date) or the Liquidating Trustee (after the Effective Date), on the one hand, and the Holder of such Sales Representative Commission Claim, on the other hand. The Liquidating Trustee shall use his reasonable efforts to reconcile Sales Representative Commission Claims (including by filing any objections thereto) within 60 days after the Effective Date.

159. "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, pursuant to the Plan which will be attached to the Plan Supplement and as articulated in Exhibit C to the Disclosure Statement, which may be amended, modified, or supplemented from time to time.

160. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be Filed by the Debtors pursuant to § 521 of the Bankruptcy Code.

161. "*Seacret*" means Seacret Direct LLC or any affiliated, related, predecessor, or successor person or entity.

162. "*Seacret License*" means those licenses and related rights and interests, if any, allegedly held by Seacret under the Limited Solicitation Agreement.

163. "*Seacret Trademark License*" means the revocable, limited, non-assignable license to use the Debtors' corporate names, trademarks, or tradenames in the Limited Solicitation Agreement, and any other right, if any, of Seacret to use the Debtors' corporate names, trademarks, or tradenames.

164. "*Seacret Litigation*" means the adversary proceeding *Spherature Investments LLC, et al. v. Seacret Direct LLC*, Adversary No. 21-04059, in the United States Bankruptcy Court for the Eastern District of Texas Sherman Division.

165. "*Seacret Royalty*" means all amounts due to the Debtors under the Limited Solicitation Agreement.

166. "*Section 510(b) Claims*" means any Claim against any of the Debtors subject to subordination under § 510(b) of the Bankruptcy Code.

167. "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to § 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

168. "*Secured Loan*" means that certain loan pursuant to the MCA Security Agreement, as amended, that provided for multiple secured notes issued by the Secured Parties, as set forth in paragraphs 19 and 20 of the First Day Declaration.

169.    "*Secured Parties*" means (a) Montgomery Capital Partners II, LP, (b) Jae W. Chung, (c) Bowling Capital Partners, Ltd., (d) Montgomery Capital Partners, LLC, (e) Montgomery Capital Advisers, LLC, (f) B. Terrell Limited Partnership, (g) Thomas A. Montgomery IRA, (h) Stephen A. Hall Irrevocable Trust (u/a/d May 14, 2018), (i) Maribess Miller, (j) TWL Group LP, (k) Boog-Scott Family Limited Partnership, (l) Massoud Bayat Amended and Restated Sole and Separate Property Trust, an Irrevocable Trust (m) Reza Bayat and Khatereh Tabandeh Trust March 30, 2011, a revocable trust, (n) MA Ceres LLC, (o) Type A Management, LLC (p) Mulkey Holdings, LLC, (q) Mulkey Holdings, LLC, and (r) TBF Loose Holdings, LLC, and any and all successors, assigns, Insiders and/or Affiliates of the foregoing.

170.    "*Secured Tax Claim*" means any Secured Claim against any of the Debtors that, absent its secured status, would be entitled to priority in right of payment under § 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

171.    "*Securities Act*" means the U.S. Securities Act of 1933.

172.    "*Security*" has the meaning set forth in § 2(a)(1) of the Securities Act.

173.    "*Sponsored Travel Sales Revenue*"  means any consideration received by Purchaser from any travel-related product in which a commission or fee is paid to a Third-Party travel provider in exchange for preferential pricing, except to the extent Purchaser receives a Cash profit on a transaction on the resale of the travel-related product.

174.    "*Subordinated Unsecured Claim*" means any *Section 510(b) Claim* or other Claim subordinated by Order of the Bankruptcy Code pursuant to § 510(c) of the Bankruptcy Code or otherwise.

175.    "*Subsequent Distribution Date*" means a date following the Initial Distribution Date on which the Liquidating Trustee, in its respective reasonable discretion, elects to make distributions to Holders of certain Allowed Claims pursuant to the Plan.

176.    "*Substantial Consummation*" means as defined in § 1101(2).

177.    "*Supplemental Administrative Claims Bar Date*" means the date that is 30 days after the Effective Date, which is the deadline by which all requests for Administrative Claims that arise after the Initial Administrative Bar Date must be Filed and served on the Debtors and the Liquidating Trustee, as applicable.

178.    "*Third Party*" means a Person who is neither an Insider nor Affiliate of Purchaser or its Insiders or Affiliates.

179.    "*Tier I Liquidating Trust Interest*" means a Liquidating Trust Interest distributed to Holders of Allowed Class Class 5 Claims, and Allowed Class 6(b) Claims.

180.    "*Tier II Liquidating Trust Interest*" means a Liquidating Trust Interest distributed to Holders of Allowed Class 5 Claims, Allowed Class 6(a) Claims (to the extent of 35% of such Allowed Claim), and Allowed Class 6(b) Claims.

181.   "*Tier I Proceeds*" means proceeds from the Seacret Royalty and the Sale Transaction Proceeds minus Opt-Out Sales Representative Proceeds.

182.   "*Tier II Proceeds*" means proceeds from the Causes of Action (other than Acquired Claims) and Opt-Out-Sales Representative Proceeds.

183.   "*Tiered Percentage(s)*" means the following:

-   5% of Gross Sales equal to or in excess of $12,000,000.00; or
-   4% of Gross Sales equal to or in excess of $10,000,000.00 but are less than $12,000,000.00; or
-   3% of Gross Sales equal to or in excess of $9,000,000.00 but are less than $10,000,000.00; or
-   2% of Gross Sales equal to or in excess of $8,000,000.00 but are less than $9,000,000.00; or
-   1% of Gross Sales equal to or in excess of $5,999,999, but are less than $8,000,000.00.

*For example, (a) if the monthly Gross Sales of Purchaser Products and Services equals $15,000,000.00, then the Royalty/Earn Out Payment is $750,000.00 ($15,000,000.00 x 5%), (b) if the monthly Gross Sales of Purchaser Products and Services equals $10,500,000.00, then the Royalty/Earn out Payment is $420,000.00 ($10,500,000.00 x 4%).

**The above tiers are not cumulative for any particular month. Purchaser shall pay only the highest tiered royalty payment for any given month under the above percentages.

***If for any one-month period where the rolling three-month average of Gross Sales is less than $6,000,000.00 (the "*Three Month Rolling Gross Sales Average*"), and provided that Purchaser has not paid the Liquidating Trustee any amount under the tiers above for any one month (a "*Non-Payment Earn Out Month*") within the Three Month Rolling Gross Sales Average, then the Purchaser shall pay the Liquidating Trustee 1% of Gross Sales if the Purchaser's Net Income for such period exceeds 2% of Gross Sales in that Non-Payment Earn-Out Month for that one month.

184.   "*Topping Bid Procedures*" means those topping bid procedures approved by the Court in the Disclosure Statement Order.

185.   "*Total Costs*" means ordinary course of business cost of goods sold, selling, general and administrative (SG&A) expenses incurred in the ordinary course of business, depreciation, amortization, interest, and taxes for a particular period.

186.   "*Trust Expenses*" means the expenses incurred or payable by the Liquidating Trust from and after the Effective Date, including the reasonable fees and costs of attorneys and other Professionals, relating to implementation of the Plan.

187.    "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors, or the Liquidating Trustee (as applicable) of an intent to accept a particular distribution; (c) responded to the Debtors' or the Liquidating Trustee's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

188.    "*Undeliverable Distribution Reserve*" means a segregated account established by the Liquidating Trustee established in accordance with <u>Article VIII.J.</u>

189.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

190.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

191.    "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Texas.

192.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

193.    "*Virtual Currency*" means members' travel points / virtual currency categorized as "DreamTrips Points," "Rovia Bucks," and "Travel Dollars."

194.    "*Virtual Currency Use Schedule*" means as follows:

    a.    All Allowed Claims (of active travel club members who are in good standing) based on unexpired "Dream Trips Points" shall be honored or satisfied by the Purchaser on the Effective Date subject to the $7,000,000 cap identified in Purchaser Honored Virtual Currency (which cap applies to Dream Trip Points, "Rovia Bucks", as defined below), and "Travel Points" (as defined below), in the aggregate, not separately, and may be used by the Holders of such Claims on a $1:1 point basis (unless a lesser ratio is required because Virtual Currency Claims exceed $7,000,000) in the ordinary course of the Purchaser's business as points applied towards travel and pursuant to standard published booking policies and practices for a post-Effective Date travel-product purchase.

    b.    All Allowed Claims (of active travel club members who are in good standing) based on refunds issued for travel cancelled due to COVID-19 ("*Rovia Bucks*"), shall be honored or satisfied by the Purchaser on the Effective Date

subject to the $7,000,000 cap identified in Purchaser Honored Virtual Currency (which cap applies to Dream Trips Points, Rovia Bucks and Travel Points, in the aggregate, not separately), and may be used by the Holders of such Claims on a $1:1 point basis in the ordinary course of the Purchaser's business as points applied towards travel and pursuant to standard published booking policies and practices for a post-Effective Date travel-product purchase.

c.     All other Allowed Claims (of active travel club members who are in good standing) based on any points or travel dollars ("*Travel Dollars*") shall be honored or satisfied by the Purchaser on the Effective Date subject to the $7,000,000 cap identified in Purchaser Honored Virtual Currency (which cap applies to Dream Trips Points, Rovia Bucks and Travel Points, in the aggregate, not separately), and may be used by the Holders of such Claims on a $1:1 point basis (unless a lesser ratio is required because Virtual Currency Claims exceed $7,000,000) in the ordinary course of the Purchaser's business as points applied towards travel and pursuant to standard published booking policies and practices for a post-Effective Date travel-product purchase.

d.     After the Effective Date, the Purchaser will not issue (new) Rovia Bucks or Travel Dollars. Purchaser will only use a point system for discounted travel after the Effective Date.

e.     In sum: Purchaser will honor or satisfy up to $7,000,000.00 of Virtual Currency Claims of active travel club members who are in good standing. This means that the Purchaser will allow Holders of Virtual Currency Claims to use their Pro Rata Share of Purchaser Honored Virtual Currency Claims pursuant to the above subsections (a) – (d). For the avoidance of doubt, Purchaser will only honor Virtual Currency of active travel club members who are in good standing at the time such Virtual Currency is used.

195.    "*Voting Deadline*" means 4:00 p.m. (prevailing Central Time) on October 8, 2021.

196.    "*Voting Procedures*" means the voting procedures approved by the Bankruptcy Court in the Disclosure Statement Order [Docket No. 448].

197.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and results of voting under the Plan, prepared and filed by the Notice and Claims Agent.

198.    "*Wind Down*" means the wind down and dissolution of the Debtors, the Estates, and the Non-Acquired Entities, as set forth in Article VII.B.

199.    "*Wind Down Expense*" means all costs and expenses incurred to Wind Down all Debtors and Non-Acquired Entities.  For Non-Acquired Entities, such Wind Down Expenses should first look to Cash in the Non-Acquired Entity (existing, and identified as belonging to the Non-Acquired Entities, on or after the Effective Date) for costs and expenses incurred to Wind Down such businesses.

### B. Rules of Interpretation.

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (11) any immaterial effectuating provisions may be interpreted by the Debtors or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; *provided* that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party (including, without limitation, the Purchaser).

### C. Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### D. Governing Law.

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles; *provided, however,* that the terms of the Plan providing the terms and conditions of the Sale Transaction and the rights and obligations of the

Debtors and the Purchaser in connection with the Sale Transaction shall be governed by and interpreted and enforced in accordance with New York law, without regard to principles of conflicts of law.

### E.  Reference to Monetary Figures.

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

### F.  Controlling Document.

If an inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. If an inconsistency exists between the Plan, the Disclosure Statement, the Plan Supplement, and the Sale Transaction Documentation, the Plan shall control. If an inconsistency exists between the Plan, the Sale Transaction Documentation, and the Confirmation Order (other than through incorporation, reference, or approval of the Plan), the Confirmation Order shall control.

### G.  Deemed Consolidation.

Unless and to the extent previously approved by prior order of the Bankruptcy Court, at the Confirmation Hearing, the Court will consider approval under the Plan of the Plan Consolidation, and the Confirmation Order shall so provide. For the avoidance of doubt, nothing in this deemed consolidation shall affect the Debtors' rights of recovery or causes of action.

#### 1.  Effect of Consolidation.

Solely for the purposes specified in the Plan (including voting, Confirmation, and Distributions), and subject to **Art. I.G.2**, (i) all Assets and liabilities of the consolidated Debtors shall be consolidated and treated as though they were merged, (ii) all guarantees of any consolidated Debtor of the obligations of any other consolidated Debtor shall be eliminated so that any Claim against any consolidated Debtor, any guarantee thereof executed by any other consolidated Debtor and any joint or several liability of any of the consolidated Debtors shall be one obligation of the consolidated Debtors, and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any of the consolidated Debtors shall be deemed filed against the consolidated Debtors collectively and shall be one Claim against and, if and to the extent allowed, shall become one obligation of the consolidated Debtors.

#### 2.  Limitations of Consolidation.

The Plan Consolidation effected pursuant to this section shall not affect: (i) the legal or organizational structure of the consolidated Debtors, (ii) pre- or post-Petition Date Liens or security interests, or (iii) defenses to any Cause of Action.

### H.  Seacret Sale – Annex A.

The terms of the Plan are supplemented in their entirety by Annex A to the Plan (the "Seacret Sale") as if all provisions of Annex A were in the main body of the Plan. Annex A shall

be expressly approved by the Confirmation Order, either by reference to Annex A or by adoption of all provisions in Annex A into the Confirmation Order.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
## CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, have not been classified; thus, they are excluded from the Classes of Claims set forth in Article III of the Plan.

### A.      Administrative Claims.

Except with respect to Professional Fee Claims, or as otherwise set forth herein, subject to the provisions of §§ 327, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Liquidating Trustee, agree to less-favorable treatment or such holder has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Liquidating Trustee shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business; or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) when sufficient Liquidating Trust Proceeds exist to pay such Claims in full in Cash; *provided*, *however*, that any Allowed Administrative Claim that has been expressly assumed by the Purchaser in accordance with the Plan or the Sale Transaction Documentation shall not be an obligation of the Debtors, the Estates, or the Liquidating Trust.

Except as otherwise provided by Article II.A or by a Final Order entered by the Bankruptcy Court on or prior to the Initial Administrative Claims Bar Date or Supplemental Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and amounts under the Breakup Fee Order) must be Filed and served on the Debtors by the Initial Administrative Claims Bar Date and Supplemental Administrative Claims Bar Date, as applicable; *provided*, *however*, that with respect to any request for payment of Administrative Claims arising on or prior to September 1, 2021, submitted by Governmental Units, the deadline for all such requests shall be September 22, 2021, subject to any written requests for additional time for good cause shown. For the avoidance of doubt, after the Effective Date, the Purchaser shall be solely responsible for Cure Costs. With respect to Professional Fee Claims, the deadline for all requests for payment of such claims shall be thirty (30) days after the Effective Date.

Notwithstanding anything to the contrary provided in this Plan, the Debtors shall not be required to File any requests for payment of Administrative Claims.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Initial Administrative Claims Bar Date or the Supplemental Administrative Claims Bar Date, as

applicable, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Purchaser, or the Liquidating Trustee, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date, without further Order of the Court.

**B.      Professional Compensation.**

**1.      Final Fee Applications and Payment of Professional Fee Claims.**

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than thirty (30) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order. Once approved by the Bankruptcy Court, all such final requests shall be promptly paid from the Liquidating Trust Assets up to the full Allowed amount, because such Allowed Administrative Claim shall be satisfied in accordance with <u>Article II.A</u> of the Plan.

**2.      Estimation of Professional Fees and Expenses.**

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimates to the Debtors in writing by the earlier of (a) five Business Days after the Confirmation Date and (b) two Business Days prior to the Effective Date; *provided*, *however*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional, and such Professionals are not bound, to any extent, by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The Debtors shall escrow Cash from the Sale Transaction Proceeds (and not from the Acquired Assets), excluding the Cure Costs, or Excluded Assets, excluding the Cure Costs, in the amount of estimated unbilled fees and expenses of all Professionals in a segregated bank account.

**3.      Post-Confirmation Date Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors, Committee, or the Liquidating Trustee. Upon the Effective Date, any requirement that Professionals seeking retention or compensation for services rendered after the Effective Date comply with §§ 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order shall terminate, and the Debtors and the Liquidating Trustee may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Nothing in the Plan, the Liquidating Trust Agreement, nor the Confirmation Order shall bar the Liquidating Trustee from employing any Professional previously employed by the Debtors and/or the Committee.

**4.      Substantial Contribution.**

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to §§ 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel to the Debtors and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

### C.    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim and, as applicable, the Debtors or the Liquidating Trustee, agree to a less-favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, each holder of such Allowed Priority Tax Claim shall receive, at the sole and absolute option of the Debtors or the Liquidating Trustee, as applicable, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of (i) the Plan Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Claim, or (iii) when sufficient Liquidating Trust Proceeds exist to pay such Claims in full in Cash or (b) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date; *provided, however*, that any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Plan or the Sale Transaction Documentation shall not be an obligation of the Debtors, the Estates, or the Liquidating Trustee. If an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

### D.    U.S. Trustee.

Prior to the Confirmation, the Debtors shall timely pay all U.S. Trustee Fees for each quarter under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements made on the Debtors' behalf in the ordinary course of the Debtors' businesses. Following Confirmation, the Liquidating Trustee shall not File with the Bankruptcy Court quarterly operating reports nor pay U.S. Trustee Fees and none shall be owed by the Liquidating Trust.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Summary of Classification.

Except for the Claims addressed in <u>Article II</u> (or as otherwise set forth herein), all Claims against and Interests are placed in Classes on a consolidated basis pursuant to the Plan Consolidation. In accordance with § 1123(a)(1) of the Bankruptcy Code, the Debtors have not

classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Distribution pursuant to this Plan and pursuant to §§1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and such Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid, satisfied, disallowed, or otherwise settled prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Allowed Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Secured Claim of MCA as Collateral Agent on Behalf of the Secured Parties | Impaired | Entitled to Vote |
| Class 3 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Convenience Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6(a) and 6(b) | (a) Non-Opt-Out Sales Representatives Commission Claims and (b) Opt-Out Sales Representatives Commission Claims | Impaired | Entitled to Vote |
| Class 7 | Virtual Currency Claims | Impaired | Entitled to Vote |
| Class 8 | Assumed Deferred Revenue Liability | Impaired | Entitled to Vote |
| Class 9 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Subordinated Claims | Impaired | Entitled to Vote |
| Class 11 | Interests in the Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.      Treatment of Claims and Interests.**

Except to the extent that the Debtors and a holder of an Allowed Claim or Interest, as applicable, agrees to a less-favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Interest. Unless otherwise indicated, each holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with its terms in

the ordinary course) or as soon as reasonably practicable thereafter, the timing of which shall be subject to the reasonable discretion of the Debtors and the Liquidating Trustee, as applicable.

**1.     Class 1—Allowed Priority Non-Tax Claims.**

(a)     *Classification*: Class 1 consists of all Allowed Priority Claims that are not Priority Tax Claims.

(b)     *Treatment*: Each holder of a Class 1 Claim shall receive, at the election of the Debtors: (i) payment in full in Cash in an amount equal to the Allowed amount of such Class 1 Claim on the later of (a) the Effective Date and (b) when sufficient Liquidating Trust Proceeds exist to pay such Claims in full in Cash; or (ii) other treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*: Class 1 Claims are Unimpaired by the Plan. Each holder of a Class 1 Claim is conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. Therefore, each holder of a Class 1 Claim is not entitled to vote to accept or reject the Plan.

**2.     Class 2—MCA Claim.**

(a)     *Classification*: Class 2 consists of the Secured MCA Claim, which are disputed.

(b)     *Treatment*: Class 2 Claims are disputed. Holders of Class 2 Claims will receive no Distribution until their Class 2 Claims are Allowed by Final Order of the Bankruptcy Court.

On the later of (a) the Effective Date and (b) the date of the Final Order allowing a Class 2 Claim, as full and final satisfaction, settlement, and release of, and in exchange for such Class 2 Claims, Holders of Allowed Class 2 Claims will be paid as follows: at the Liquidating Trustee's sole and absolute discretion, (i) negotiation of the Purchaser Note, (ii) delivery of the Collateral securing such Allowed Class 2 Claims that is not an Acquired Asset, (iii) payment of such Allowed Secured Claim in full in Cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code from the Sales Transaction Proceeds (other than Cure Costs), (iv) the legal, equitable, and contractual rights of each Holder of an Allowed Class 2 Claim; ***provided***, ***however***, that any contractual right that

does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based shall not be enforceable as to any breach that occurred on or before the Effective Date or any breach determined by reference back to a date preceding the Effective Date, or (v) receive deferred Cash payments totaling the amount of such Allowed Class 2 Claim of a value, as of the Effective Date, of at least the value of such Holder's interest in the estate's interest in such property. This Plan is an objection to each Class 2 Claim.

Until Class 2 Claims are Allowed by Order of the Bankruptcy Court, all payments to Holders of such Class 2 Claims will be paid into a segregated account owned by the Liquidating Trust and controlled by the Liquidating Trustee and subject to the jurisdiction and administration of the Bankruptcy Court.

The amount, validity, extent, value, and priority of the Allowed Class 2 Claim under § 506(b) of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and MCA. Any Deficiency Claim or other General Unsecured Claim of a holder of a Class 2 Claim shall be treated in Class 5. MCA's Class 5 Claim is also disputed.

If any part of MCA's alleged Class 2 Claim is allowed by the Bankruptcy Court, the Liquidating Trustee may, as full and final satisfaction, release, and discharge of such Allowed Class 2 Claim, (i) assign the Purchaser Note to MCA, (ii) continue to make payments to the Holders of Allowed Class 2 Claims, or (iii) issue a note to MCA for the amount of its Allowed Class 2 Claim with a security interest in the Purchaser Note.

(c)     *Voting*: Class 2 Claims are Impaired by the Plan. Therefore, each holder of a Class 2 Claim is entitled to vote to accept or reject the Plan.

**3.      Class 3—Other Secured Claims.**

(a)     *Classification*: Class 3 consists of all Other Secured Claims. Holders of Allowed Class 3 Claims shall be designated as Class 3A, Class 3B, *et seq*.

(b) *Treatment*: As full and final satisfaction, settlement, and release of, and in exchange for, Class 3 Claims, Holders of Allowed Class 3 Claims shall be designated as Class 3A, Class 3B et seq. and shall be paid, at the Debtors' or Liquidating Trustee's option, by (a) payment of such Allowed Secured Claim in full in Cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code from the Sale Transaction Proceeds (other than Cure Costs), (b) surrender of the Collateral securing such Allowed Secured Claim if the Collateral is not an Acquired Asset, or (c) issuance of a restructured note with a present value equal to the value of each holder's Class 3 Collateral with interest accruing at a rate of 3% per annum. Interest will be payable on the first Business Day of the first year after the Effective Date, and annually thereafter. The balance of the Class 3 Claim will be paid in full no later than the tenth (10th) year after the Effective Date. The amount, validity, extent, value, and priority of the Allowed Secured Class 3 Claim under § 506 of the Bankruptcy Code, or otherwise, will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Liquidating Trustee and holder of a Class 3 Claim. Any Deficiency Claim or other General Unsecured Claim of the holder of the Class 3 Claim shall be treated in Class 5.

(c) *Voting*: Class 3 Claims are Impaired by the Plan. Therefore, each holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

**4.  Class 4—Convenience Claims.**

(a) *Classification*: Class 4 consists of all Convenience Claims.

(b) *Treatment*: As full and final satisfaction, settlement, and release of, and in exchange for, an Allowed Convenience Claim, each holder of an Allowed Convenience Claim shall receive Cash in an amount equal to its Pro Rata Share of the Convenience Class Pool on the later of (a) the Effective Date, (b) thirty (30) days after the Convenience Claim becomes Allowed, and (c) when sufficient Liquidating Trust Proceeds exist to fund the Convenience Class Pool.

(c) *Voting*: Class 4 Claims are Impaired by the Plan. Therefore, each Holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.    Class 5—General Unsecured Claims.**

(a)    *Classification*: Class 5 consists of all General Unsecured
Claims.

(b)    *Treatment*: Except to the extent that a Holder of an
Allowed General Unsecured Claim agrees to less favorable
treatment of its Allowed Claim, in full and final
satisfaction, settlement, release, and discharge of, and in
exchange for, each General Unsecured Claim, each such
Holder of an Allowed General Unsecured Claim in Class 5
shall receive its Pro Rata Share of Tier I Liquidating Trust
Interests and Tier II Liquidating Trust Interests.

(c)    *Voting*: Class 5 Claims are Impaired by the Plan. Therefore,
each holder of a Class 5 Claim is entitled to vote to accept
or reject the Plan.

**6.    Class 6(a)—Non-Opt-Out Sales Representatives Commission Claims.**

(a)    *Classification*: Class 6(a) consists of all Non-Opt-Out Sales
Representatives Commission Claims.

(b)    *Treatment*: In full and final satisfaction, settlement, release,
and discharge of, and in exchange for, each Claim on
account of commissions held by a Non-Opt-Out Sales
Representative (a "*Non-Opt-Out Sales Representative
Commission Claim*"), each such Holder of an Allowed
Non-Opt-Out Sales Representative Commission Claim in
Class 6(a) shall receive (a) treatment pursuant to the Sales
Representatives Commission Claims Payment Plan, the
Future Compensation Plan, and the Purchaser Sales
Representative Agreement, and (b) receive its Pro Rata
Share of the Tier II Liquidating Trust Interests.

(c)    *Voting*: Class 6(a) Claims are impaired by the Plan.
Therefore, each holder of a Class 6(a) Claim is entitled to
vote to accept or reject the Plan.

**7.    Class 6(b)—Opt-Out Sales Representatives Commission Claims.**

(a)    *Classification*: Class 6(b) consists of all Opt-Out Sales
Representatives Commission Claims.

*Treatment*: In full and final satisfaction, settlement, release,
and discharge of, and in exchange for, each Claim held by
an Opt-Out Sales Representative (a "*Opt-Out Sales
Representative Claim*"), each such Holder of an Allowed

Opt-Out Sales Representative Claim in Class 6(b) shall receive its Pro Rata Share of the Tier I Liquidating Trust Interests and Tier II Liquidating Trust Interests.

*Voting*: Class 6(b) Claims are impaired by the Plan. Therefore, each holder of a Class 6(b) Claim is entitled to vote to accept or reject the Plan and their vote will be tabulated in Class 5.

### 8. Class 7—Virtual Currency Claims

(a) *Classification*: Class 7 consists of all Virtual Currency Claims.

(b) *Treatment*: On the Effective Date, as full and final satisfaction, settlement, and release of, and in exchange for Class 7 Claims, Class 7 Claims will be satisfied pursuant to the Virtual Currency Use Schedule and shall be the sole responsibility of the Purchaser.

(c) *Voting*: Class 7 Claims are impaired by the Plan. Therefore, each holder of a Class 7 Claim is entitled to vote to accept or reject the Plan.

### 9. Class 8—Assumed Deferred Revenue Liability

(a) *Classification*: Class 8 consists of all Assumed Deferred Revenue Liability Claims.

(b) *Treatment*: On the Effective Date, as full and final satisfaction, settlement, and release of, and in exchange for Allowed Class 8 Claims, Holders of Allowed Class 8 Claims will be satisfied or paid by the Purchaser in the ordinary course of its business; provided, however, the Purchaser's Assumed Deferred Revenue Liability shall not exceed $11,000,000 in Cash and services. If Allowed Claims for Deferred Revenue Liability exceed $11,000,000, all such Allowed Claims shall receive their Pro Rata Share of $11,000,000 in Cash and services. For the avoidance of doubt, the satisfaction or payment of the Allowed Class 8 Claims will be the Purchaser's sole responsibility pursuant to this Plan.

(c) *Voting*: Class 8 Claims are impaired by the Plan. Therefore, each holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

### 10. Class 9—Intercompany Claims.

(a)    *Classification*: Class 9 consists of all Intercompany Claims.

(b)    *Treatment*: There will be no Distributions to Class 9 Claims.

(c)    *Voting*: Class 9 Claims are Impaired by the Plan, and they shall not receive any Distribution under the Plan. Therefore, each holder of a Class 9 Claim is deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**11.    Class 10—Subordinated Unsecured Claims.**

(a)    *Classification*: Class 10 consists of all Subordinated Unsecured Claims.

(b)    *Treatment*: No holder of an Allowed Class 10 Claim shall receive a Distribution unless and until all Allowed Claims in Classes 1-8 are paid in full or satisfied.

(c)    *Voting*: Class 10 Claims are Impaired by the Plan. Therefore, each holder of a Class 10 Claim is entitled to vote to accept or reject the Plan.

**12.    Class 11—Interests in the Debtors.**

(a)    *Classification*: Class 11 consists of all Interests in the Debtors.

(b)    *Treatment*: All Interests in the Debtors will be cancelled on the Effective Date. No Holder of an Interest in the Debtors shall receive a Distribution on account of such Interest unless and until all Allowed Claims in Classes 1-8 and 10 are paid in full or satisfied.

(c)    *Voting*: Class 11 Interests are Impaired by the Plan, and they shall not receive any Distribution under the Plan. Therefore, each holder of an Interest in the Debtors is deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**C.    Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Liquidating Trustee, as applicable, with respect to any

Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### D. Elimination of Vacant Classes.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

### E. Voting Classes; Presumed Acceptance by Non-Voting Classes.

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

### F. Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code.

Acceptance of the Plan by either Class 2, 3, 4, 5, 6, 7, or 8 will satisfy § 1129(a)(10) of the Bankruptcy Code. The Debtors shall seek Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XII to the extent, if any, that Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### G. Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to § 510 of the Bankruptcy Code, Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H. Treatment of Intercompany Claims.

Pursuant to the Confirmation Order and the Plan, the Bankruptcy Court will find that, for purposes of the Plan, all Intercompany Claims are characterized as equity for all purposes, regardless of whether such Intercompany Claims were recorded as liabilities in the Debtors' books and records. As a result, such Intercompany Claims shall not receive a Distribution under this Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      General Settlement of Claims.**

Except as otherwise expressly provided herein, pursuant to § 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action (other than Acquired Claims), and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion, proposed by the Debtors, to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under § 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

**B.      Sources of Plan Consideration.**

Cash, including the Hyperwallet Funds, (solely to the extent it is not an Acquired Asset), the Sale Transaction Proceeds, Excluded Assets, the Debtors' rights under the Sale Transaction Documentation, the debt issued (or assumed) by the Purchaser or any of its subsidiaries, payments made directly by the Purchaser on account of any Purchaser Paid/Satisfied Liabilities under the Sale Transaction Documentation, payments of Cure Costs made by the Purchaser pursuant to §§ 365 or 1123 of the Bankruptcy Code, and all Causes of Action (other than Acquired Claims) not previously settled, released, or exculpated under the Plan that are not otherwise Excluded Assets, shall be used to fund Distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein. Except as otherwise provided herein, Distributions required by this Plan on account of Allowed Claims that relate to Purchaser Paid/Satisfied Liabilities shall be the sole responsibility of the Purchaser.

**C.      Sale Transaction.**

The Plan shall constitute the purchase and sale agreement between the Debtors, as sellers, and the Purchaser, as buyer, regarding the terms and conditions of purchase and sale of the Acquired Assets.

**1.      Sale Transaction.**

**(a)      The Acquired Assets.**

Following the Confirmation Date, and subject to the occurrence of the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction to the Purchaser pursuant to the terms of the Sale Transaction Documentation, the Plan, and the Confirmation Order and, if an entity other than Verona International Holdings, Inc. is the successful purchaser, to pay the Bid

Protections (as defined in the Breakup Fee Order) to Verona International Holdings, Inc. pursuant to the Breakup Fee Order at the closing of such sale.

Subject to the terms of the Sale Transaction Documentation, the Debtors shall consummate the Sale Transaction on the Effective Date by, among other things, transferring the Acquired Assets to the Purchaser free and clear of all Liens, Claims (other than Assumed Liabilities), Interests, charges, and other encumbrances pursuant to §§ 363, 365, and/or 1123 of the Bankruptcy Code, this Plan, and the Confirmation Order.

Upon receipt of the Employee Retention Tax Credit, the Debtors or the Liquidating Trust, as applicable, will immediately (and not later than two business days after receipt) pay to Purchaser the amount of the Employee Retention Tax Credit received in excess of the Retained Employee Retention Tax Credit. The Liquidating Trust shall provide the Retained Employee Retention Tax Credit Accounting.

Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Sale Transaction Documentation and the Plan, and any documents in connection herewith and therewith, shall be deemed authorized and approved without any requirement of further act or action by the Debtors, the Debtors' shareholders or boards of directors, or any other Entity or Person. The Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by, the Sale Transaction Documentation and this Plan, as well as to execute, deliver, File, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.

(b)     **Good Faith of Purchaser**

The transactions contemplated by the Sale Transaction Documentation and this Plan are undertaken by the Debtors and the Purchaser without collusion and in good faith, as that term is defined in § 363(m) of the Bankruptcy Code; accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the Sale Transaction and other transactions contemplated thereunder and hereunder shall not affect the validity of such transactions (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease to the Purchaser). The Purchaser is a good-faith purchaser within the meaning of § 363(m) of the Bankruptcy Code and is entitled to the full protections of § 363(m) of the Bankruptcy Code.

(c)     **The Royalty Earn Out Payments**

The Purchaser shall make the Royalty Earn Out Payment in accordance with the terms of the Plan and Sale Transaction Documentation. The Purchaser shall not take any action (a) in bad faith related to the achievement of the Royalty Earn Out Payment, or (b) with the intent of avoiding the Royalty Earn Out Payment.

Any dispute regarding the Royalty Earn Out Payment shall be submitted to non-binding mediation, in the parties respective discretion before any dispute is presented to a court.

(d)     **The Purchaser Paid/Satisfied Liabilities and Other Payments from the Purchaser.**

As part of the Sale Transaction, the Purchaser (a) shall assume the obligations to honor the Assumed Deferred Revenue Liability, make payments pursuant to the Sales Representatives Commission Claims Payment Plan, honor the Purchaser Honored Virtual Currency, and pay the Cure Costs and (b) shall issue the Purchaser Note.

(e)     **The Excluded Liabilities; No Successor or Other Liability.**

Notwithstanding any other provision of the Plan, under no circumstances shall the Purchaser be liable for any Excluded Liabilities.  In addition, the Purchaser is not, and shall not be deemed to be, a successor, alter ego, or mere continuation of the Debtors and shall not be liable under any theory of successor or similar liability.

Purchaser will not be responsible to Wind Down the Non-Acquired Entities and will not be liable for any acts or omissions in the Wind Down of the Non-Acquired Entities (or any other Entities).

2.     **Effectuating the Sale Transaction.**

Upon the entry of the Confirmation Order, and subject to the concurrence of the closing of the Sale Transaction and the Effective Date, the Debtors, the Liquidating Trustee, and the Purchaser are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Sale Transaction under or in connection with the Plan and the Sale Transaction Documentation, including:  (1) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the transfer pursuant to a stock asset purchase agreement of the Acquired Equity; (5) the issuance of any debt issued or assumed by the Purchaser, as set forth in the Plan; and (6) subject to the occurrence of the Effective Date, the consummation of the transactions contemplated by the Sale Transaction Documentation.

The Confirmation Order shall, and shall be deemed to, pursuant to §§ 105, 363, 365 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Sale Transaction.

Without limiting the foregoing, prior to the closing of the Sale Transaction, the Debtors shall transfer, or cause to be transferred, the equity of the Acquired Entities so that each is owned directly by a Debtor as a first-tier subsidiary (which first-tier subsidiary itself will have no subsidiaries) as follows:  The Debtors shall transfer, or cause to be transferred, the equity ownership interest in (i) Rovia Corp Services to Rovia LLC, (ii) WorldVentures Marketing Pty

Ltd to WorldVentures Marketing Holdings, LLC; (iii) WorldVentures Canada, Inc. to WorldVentures Marketing Holdings, LLC; (iv) WorldVentures Services Malaysia Sdn to WorldVentures Marketing Holdings, LLC; and (v) WorldVentures Events (Malaysia) Sdn. Bhd. 15 Company No. 1178688D to WorldVentures Marketing Holdings, LLC.

To further implement the Sale Transaction, no later than twenty one (21) days prior to the Effective Date, the Debtors shall deliver to the Purchaser a list of (i) all registered and unregistered intellectual property, domain names, websites, and Uniform Resource Locators and (ii) all licenses relating to the operation of the Business in the United States and in the locations where the Acquired Entities engage in business operations.

On the Effective Date, the Debtors and/or the Liquidating Trustee, as applicable, shall assign and transfer to the Purchaser all of the Acquired Claims pursuant to the Sale Transaction Documentation, and may be identified in the Plan Supplement. All Retained Causes of Action that are included in the Excluded Assets shall vest in the Liquidating Trust on the Effective Date, and may be identified in the Plan Supplement.

The Liquidating Trustee and the Purchaser shall execute such additional post-Effective Date documents that are reasonable, necessary, or appropriate to consummate, evidence, or further and fully implement the Plan, the Sale Transaction, and the transfer of the Acquired Assets to the Purchaser.

### 3. Payment of Cure Costs.

On the Effective Date, or as soon as practical thereafter, the Purchaser shall pay all Cure Costs pursuant to and in accordance with §§ 365 or 1123 of the Bankruptcy Code for the Assumed/Assigned Contracts and Leases pursuant to the Sale Transaction Documentation and this Plan. The Purchaser shall pay any Cure Costs that are Disputed as soon as practicable after entry of a Final Order resolving such dispute; provided, however, that the Purchaser shall have the right instead to reject any related Executory Contract or Unexpired Lease if the Cure Dispute is resolved (in Purchaser's view) unfavorably to the Purchaser. The Debtors and Liquidating Trustee shall not have any obligation to make any payment or other distribution on account of any Cure Costs.

### 4. Amendment of Terms and Conditions of Sale Transaction; Obligations.

Notwithstanding anything to the contrary in this Plan, no terms or conditions of the Sale Transaction as described in various provisions throughout this Plan and no obligations imposed upon the Purchaser in connection with the Sale Transaction may be modified or amended without the Purchaser's written consent, which may be granted or withheld in its sole discretion.

### 5. Good-Faith Purchaser Status.

The Confirmation Order shall contain a finding that the Purchaser is a good-faith purchaser and is entitled to the protections and benefits set forth in § 363(m) of the Bankruptcy Code in relation to the Sale Transaction.

### 6. Sale Free and Clear.

The Confirmation Order shall provide that: (a) all Acquired Assets sold by the Debtors under the Sale Transaction Documentation are transferred, conveyed, and assigned to the Purchaser free and clear of all Liens, Claims, encumbrances, and interests (other than Assumed Liabilities) pursuant to §§ 363(f), 1123(a)(5), and 1141(c) of the Bankruptcy Code; (b) Notwithstanding any other provision of the Plan, under no circumstances shall the Purchaser be liable for any Excluded Liabilities; (c) the Purchaser is not, and shall not be deemed to be, a successor, alter ego, or mere continuation of the Debtors and shall not be liable under any theory of successor or similar liability.

### 7. Seacret Trademark License Revocation.

The Confirmation Order shall contain a finding that if the Seacret Trademark License has not been revoked, the Seacret Trademark License is revoked as of the Effective Date, and Seacret shall have no future right to use the corporate name, trademarks and tradenames of Debtors. Further, as of the Effective Date, all goodwill associated with the corporate name, trademarks, and tradenames of Debtors included in (i) the Excluded Assets inure to the benefit of Liquidating Trust and the Liquidating Trustee and (ii) the Acquired Assets inure to the benefit of Purchaser.

### 8. Effect of Revocation of Trademark License.

The Confirmation Order shall contain a finding that nothing in the Plan, including the revocation of the Seacret Trademark License, constitutes a termination of or assumption and assignment of the Limited Solicitation Agreement by the Debtors, and all rights of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the Limited Solicitation Agreement are hereby unaffected by the Plan and preserved for the benefit of the Liquidating Trust and the beneficiaries thereof.

**D.     Vesting of Assets.**

Except as otherwise provided in the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated herein or therein, on (a) the Effective Date: the Acquired Assets shall be preserved and shall vest in the Purchaser, free and clear of all Liens, Claims, charges, and other encumbrances or interests (other than Assumed Liabilities); and (b) on the Effective Date or as soon as practicable thereafter, the Excluded Assets shall vest in the Liquidating Trust, as applicable for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances or interests, on behalf of Liquidating Trust Beneficiaries. For the avoidance of doubt, (a) all Causes of Action included in the Acquired Assets shall vest in the Purchaser on the Effective Date, free and clear of all Liens, Claims (other than the Assumed Liabilities), charges, and other encumbrances or interests, and (b) all Causes of Action included in the Excluded Assets shall vest in the Liquidating Trust on the Effective Date.

**E.     Liquidating Trustee.**

**1.     General**

On and after the Effective Date, the Liquidating Trustee shall act in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) necessary to implement the Plan and Effectuate the Sale Transaction for all Liquidating Trust Beneficiaries. On the Effective Date, the authority, power, and incumbency of the persons acting as directors, managers and officers of the Debtors shall be deemed to have resigned, and a representative of the Liquidating Trustee (which may be the Liquidating Trustee) shall be appointed as the sole director, manager and officer of each of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtors as further described in Article VII. The Liquidating Trustee shall use commercially reasonable efforts to operate in a manner consistent with the Wind Down and the Liquidating Trust Agreement. The Liquidating Trustee shall have the authority to execute all documents and take all actions necessary or appropriate to effectuate the Sale Transactions.

**2.     Claims Reconciliation**

Following the Effective Date, in addition to the responsibilities set forth in Article VII.A, the Liquidating Trustee shall administer the Estates for the purpose of effectuating the Claims-reconciliation and settlement process of all Claims, and making Distributions to the Holders of Claims in accordance with the terms of the Liquidating Trust Agreement. For the avoidance of doubt, all Distributions made by the Liquidating Trustee are made for the benefit of the Liquidating Trust Beneficiaries and not the Debtors.

**F.     Cancellation of Notes, Instruments, Certificates, and Other Documents.**

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or

other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided*, *however*, that notwithstanding anything to the contrary contained herein, any indenture or agreement that governs the rights of MCA as collateral agent shall continue in effect to allow MCA, as applicable, to (A) enforce its rights, Claims, and interests (and those of any predecessor or successor thereto) vis-à-vis any parties other than the Debtors or the Purchaser, and (B) receive Distributions under the Plan.

Nothing in the Plan, including the revocation of the Seacret Trademark License, constitutes a termination of or assumption and assignment of the Limited Solicitation Agreement by the Debtors, and all rights of the Debtors to recover the Seacret Royalty and/or any claims against Seacret pursuant to the Limited Solicitation Agreement are hereby unaffected by the Plan and preserved for the benefit of the Liquidating Trust and the beneficiaries thereof.

### G. Corporate Action.

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan and the Sale Transaction Documentation (including any action to be undertaken by the Debtors or the Liquidating Trustee, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Liquidating Trustee, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, including the consummation of the Sale Transaction, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates, in the best interests of the Estates and in good faith.

The Liquidating Trustee, shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate to implement the provisions of this Article IV.G and the Sale Transaction.

The authorizations and approvals contemplated by this Article IV.G shall be effective on the Effective Date, notwithstanding any requirements under applicable nonbankruptcy law.

### H. Dissolution of the Boards of the Debtors.

As of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Nothing in the foregoing shall relieve any of the Debtors' officers, directors (other than the Independent Directors), managers, shareholders, or members, and any remaining officers of liability, if any, unless otherwise specifically provided for in the Plan.

As of the Effective Date, the Liquidating Trustee shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs to effectuate to the Sale Transaction, the transactions under this Plan, and to Wind Down. Subject in all respects to the terms of this Plan, the Liquidating Trustee shall have the power and authority to take any action necessary to complete the Wind Down, including to dissolve any Debtor, and shall: (a) File a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of the applicable state(s) of formation; and (b) complete and File all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to § 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or the Estates for any tax incurred during the administration of such a Chapter 11 Case, as determined under applicable tax laws.

The filing by the Liquidating Trustee of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their Affiliates.

**I.      Release of Liens.**

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors (including the Acquired Assets) shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall automatically be discharged and released.  For the avoidance of doubt, all Liens on and interests in the Acquired Assets shall be automatically released and terminated on the Effective Date.  Without limiting the foregoing, all Persons or Entities with a Lien on the Acquired Assets are directed to execute and deliver all documents necessary to evidence the release of such Liens on the Effective Date or as soon thereafter as is possible.   In addition, the Debtors and Liquidating Trustee, as applicable, and the Purchaser are hereby authorized to execute and file in the name of such Persons or Entities all documents necessary to evidence the release of such Liens as of the Effective Date or as soon thereafter as is possible.

**J.      Effectuating Documents; Further Transactions.**

The Debtors and the Liquidating Trustee are authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement,

and further evidence the terms and conditions of the Plan and the Sale Transaction Documentation, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

### K.      Exemption from Certain Taxes and Fees.

To the maximum extent provided by § 1146(a) of the Bankruptcy Code, any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, the Sale Transaction or the Sale Transaction Documentation or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall NOT be subject to any document-recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate-transfer tax, mortgage-recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. All appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### L.      Preservation of Retained Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof and the Acquired Claims, the Debtors and the Liquidating Trust, as applicable, shall retain and may enforce all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date, including, without limitation, specifically enumerated in the Schedule of Retained Causes of Action attached to the Disclosure Statement (as it may be amended, modified, or supplemented as part of the Plan Supplement), and the Debtors' and the Liquidating Trust's rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. This reservation does not apply to the Acquired Claims, which are transferred to the Purchaser pursuant to the Plan, or the Causes of Action expressly released in the Plan by Article IX (d). All other Causes of Action are hereby retained by the Debtors and the Liquidating Trust for the benefit of Creditors.

The Debtors and the Liquidating Trust, as applicable, may pursue the Retained Causes of Action in accordance with the best interests of the Debtors and the Liquidating Trust. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Liquidating Trust, as applicable, will not pursue any and all available Retained Causes of Action of the Debtors against any party. The Debtors and the Liquidating Trust expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan. Unless otherwise agreed in writing by the parties to the applicable Retained Cause of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before the Confirmation Date. Any**

such objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Debtor and/or the Liquidating Trust, without the need for any objection or responsive pleading by the Debtors, Liquidating Trust, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. The Debtors and/or the Liquidating Trust, as applicable, may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or Liquidating Trust, as applicable, and the objection party for thirty (30) days, such objection shall be resolved by the Bankruptcy Court. Unless any Retained Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtors and Liquidating Trust expressly reserve all Retained Causes of Action for later adjudication; therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Cause of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors and Liquidating Trust, as applicable, reserve and shall retain such Retained Causes of Action of the Debtors, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action preserved pursuant to this section that a Debtor may hold against an Entity shall vest in the Debtors or Liquidating Trust, as applicable, except as otherwise expressly provided in the Plan, including Article IX hereof. The applicable Debtors and Liquidating Trust, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Retained Causes of Action. The Debtors and Liquidating Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## M. The Liquidating Trust.

### 1. Creation and Governance of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be formed to implement the Wind Down, including the liquidation of the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries. The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Upon transfer of the Liquidating Trust Assets to the Liquidating Trust, as more fully set forth in the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets.

The Liquidating Trust will, in a reasonably expeditious but orderly manner, (a) liquidate and convert the Liquidating Trust Assets to Cash, and (b) make timely distributions to the Liquidating Trust Beneficiaries pursuant to the Plan and the Confirmation Order, and not unduly

prolong its duration. The Liquidating Trust will not be deemed a successor in interest to the Debtors.

The Liquidating Trustee shall be the trustee of the Liquidating Trust and shall continue to have all of the rights and powers granted to the Debtors and the Liquidating Trustee as set forth in this Plan and applicable non-bankruptcy law, and the Liquidating Trustee shall also have the rights, powers, and obligations set forth in the Liquidating Trust Agreement. On and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Debtors or the Liquidating Trust/Liquidating Trustee, as applicable, and all references to the Liquidating Trustee shall be deemed references to the Liquidating Trustee, both in his role as Liquidating Trustee and the Liquidating Trustee and officer in charge of the Wind Down, as applicable.

## 2. Tax Treatment

In furtherance of the Liquidating Trust, (a) the Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the applicable Holders of Claims, consistent with the terms of the Plan; (b) the sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of applicable Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (c) all parties (including, without limitation, the Debtors, applicable Holders of Allowed Claims receiving Liquidating Trust Interests, and the Liquidating Trustee) shall report consistently with such treatment; (d) all parties (including, without limitation, the Debtors, applicable Holders of Allowed Claims receiving Liquidating Trust Interests, and the Liquidating Trustee) shall report consistently with the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (e) the Liquidating Trustee shall be responsible for filing all applicable tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (f) the Liquidating Trustee shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Liquidating Trustee and Liquidating Trust Beneficiaries) will be required to treat the transfer of the Liquidating Trust Assets to the Liquidating Trust, for all purposes of the Internal Revenue Code, as (a) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Liquidating Trust Beneficiaries (other than to the extent any Liquidating Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests. For all U.S. federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which holders of Allowed Claims who become Liquidating Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating

Trustee), the Liquidating Trustee may timely elect to (a) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections), which "disputed ownership fund" will be taxable as a "qualified settlement fund" if such portion of the Liquidating Trust allocable to Disputed Claims consists of passive assets for tax purposes, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including, without limitation, the Debtors, applicable Holders of Allowed Claims receiving Liquidating Trust Interests, and the Liquidating Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

### 3.      Non-Transferability of Liquidating Trust Interests

Any and all Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law. In addition, any and all Liquidating Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such Liquidating Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance, and distribution under the Plan of the Liquidating Trust Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

### 4.      Dissolution of the Liquidating Trust

The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the Liquidating Trustee under the Plan have been made.

### 5.      Preservation of Privilege

The Debtors and the Liquidating Trust shall be deemed to be working in common interest whereby the Debtors will be able to share documents, information, or communications (whether written or oral) relating to Claims, subject to a common interest privilege. The Liquidating Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications. The Liquidating Trustee's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors and the Debtors retain the exclusive right to waive their own privileges.

### 6.      Source of Funding; Allocation of Net Distributable Assets

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof, including the Liquidating Trust Proceeds. Distributions to holders of Liquidating Trust Interests will be funded entirely from Liquidating Trust Assets consisting of Net Distributable Assets. Tier I Proceeds shall be allocated on a Pro Rata Basis to

holders of Tier I Liquidating Trust Interests.  Tier II Proceeds shall be allocated on a Pro Rata Basis to holders of Tier II Liquidating Trust Interests.

### N.      Closing the Chapter 11 Cases.

For the avoidance of doubt, upon the occurrence of the Effective Date, or thereafter, the Liquidating Trustee shall be permitted to close any or all of the Chapter 11 Cases of the Debtors. All contested matters, claims objections, adversary proceedings, motions existing prior to the Effective Date, and any such contested matters, claims objections, and motions relating to each of the Debtors, including (a) objections to Claims, may be administered in the discretion of the Liquidating Trustee, and heard in the Chapter 11 Case of Spherature Investments, LLC (Case No. 20-42492), irrespective of whether such Claim(s) were filed against a Debtor whose Chapter 11 Case was closed, and (b) for administrative purposes only.

When all Disputed Claims have become Allowed or Disallowed and all Liquidating Trust Assets have been distributed in accordance with the Plan and Confirmation Order, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE V
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, and as part of the Sale Transaction, the Debtors shall assume and sell/assign the Assumed/Assigned Contracts and Leases to the Purchaser pursuant to the Sale Transaction Documentation, the Plan, the Confirmation Order, and the Plan Supplement. Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease (other than any Executory Contract or Unexpired Lease previously rejected, assumed, or assumed and sold/assigned), any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations  or independent contractor obligations arise (including all Sales Representatives Agreements), shall be deemed automatically rejected on the Effective Date pursuant to §§ 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as an Assumed/Assigned Contract and Lease, or is specifically scheduled, prior to or on the Effective Date, to be assumed or assumed and sold/assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and sold/assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; or (6) is the Sale Transaction Documentation or the Purchaser Documentation. Purchaser shall assume no liability or obligation of any kind or nature in connection with any Executory Contract or Unexpired Lease that is rejected or not expressly assumed and sold/assigned to Purchaser other than as set forth in the Plan. Purchaser shall pay to the applicable non-debtor counterparties to the Assumed/Assigned Executory Contracts and Unexpired Leases all Cure Costs required for the assumption and assignment of

Assumed/Assigned Executory Contracts and Unexpired Leases to the Purchaser. Any objections to the proposed rejection, assumption, or assumption and sale/assignment of an Executory Contract or Unexpired Lease or to Cure Costs under this Plan must be (1) in writing, (2) Filed with the Bankruptcy Court, and (3) served by electronic mail on the Debtors, the Purchaser, the Committee, and the U.S. Trustee by the Confirmation Objection Deadline. Each such objection must specifically describe the grounds for the objection and, to the extent applicable, include the proposed Cure Costs and provide supporting documentation therefor, and include any other evidence that supports such objection. Any objections to a proposed rejection of an Executory Contract or Unexpired Lease as part of a motion – and not this Plan – must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, by the earlier of (1) the objection deadline described in the motion and (2) fourteen (14) days after service of the motion proposing the rejection of such Executory Contract or Unexpired Lease.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, sales/assignments, and rejections, including the assumption and sale/assignment of the Assumed/Assigned Executory Contracts or Unexpired Leases as provided in the Sale Transaction Documentation, the Plan, the Confirmation Order, and the Plan Supplement, pursuant to §§ 363, 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan or Sale Transaction Documentation are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File and serve a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable, specifically describing the grounds for the objection and including any evidence that supports such objection.

## B.    Rejection of Sales Representative Agreements

All Sales Representative Agreements will be rejected on the Effective Date.  All Sales Representatives that do not exercise the Sales Representative Opt-Out right, waive any and all Claims (save and except for such Sales Representatives' Sales Representative Commission Claim, if any, as the same may be reduced by other terms of the Plan, including, Objection by the Liquidating Trust to the Sales Representative Commission Claim), including Rejection Damage Claims against the Debtors, and the Liquidating Trust.

## C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of an Executory Contracts or Unexpired Leases pursuant to the Plan or

otherwise, must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than 30 days after the later of the Effective Date and the entry of a Final Order approving the rejection of the related Executory Contract or Unexpired Leases.

Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were required to be but were not timely Filed shall NOT (1) be treated as a creditor with or holder of such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Rejection Damages Claim, or (3) participate in any Distribution in the Chapter 11 Cases on account of such Claim. Rejection Damages Claims not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, or the property for any of the foregoing without the need for any objection by the Debtors, the Estates, or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Rejection Damages Claim shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Rejection Damages Claims shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court. For the avoidance of doubt, all Rejection Damages Claims shall be Excluded Liabilities.

In exchange for the consideration provided herein to the Employees, on the Effective Date, any and all Claims, including Rejection Damages Claims under Executory Contracts, if any, of the Employees shall, without further order of the Bankruptcy Court, be deemed forever waived and released, as against the Debtors, the Acquired Entities and the Non-Acquired Entities, and the Liquidating Trust.

**D.      Cure of Defaults for Assumed/Assigned Executory Contracts and Unexpired Leases.**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed by the Debtors, and assigned to the Purchaser, as set forth in the Plan or Plan Supplement, as reflected on the Cure Notice, shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by the Purchaser's payment of such Cure Costs in Cash on or about the Effective Date, subject to the limitations described below and set forth in the Sale Transaction Documentation and the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the Cure Costs, (2) the ability of the Purchaser or any designee, to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to the assumption or sale/assignment, then the payment of the Cure Costs shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption/ and sale/assignment; *provided*, *however*, that the Purchaser does not elect to remove the related Executory Contract or Unexpired Lease from the Assumed/Assigned Contracts and Leases List.

Unless otherwise provided by an order of the Bankruptcy Court or in the Sale Transaction Documentation, at least 14 days before the Confirmation Hearing, the Debtors shall cause Cure Notices of proposed assumption to be sent to applicable counterparties, and any objection by

such counterparty to the proposed Cure Costs or a proposed sale/assignment to the Purchaser of any Executory Contract or Unexpired Lease must be Filed, served, and actually received by the Debtors, the Committee, and the Purchaser, not later than the Confirmation Objection Deadline or as set forth in the Topping Bid Procedures; *provided*, *however*, that the Debtors and the Purchaser may File and serve a supplemental notice of proposed assumption prior to the Effective Date, and the applicable counterparty shall have 14 days following the date of service of such supplemental notice to File its objection. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely (including to service or notice) to the proposed assumption and sale/assignment or Cure Costs will be deemed to have assented to such assumption and sale/assignment and the proposed Cure Costs.

In any case, if the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or, with respect to the Assigned Contracts and Leases, the Purchaser will have the right to remove such Executory Contract or Unexpired Lease from the Assumed/Assigned Contracts and Leases List; in which case, such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption (or assumption and sale/assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and sold/assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtors assume (or assume and sell/assign) such Executory Contract or Unexpired Lease. All liabilities reflected in the Schedules and any Proof of Claim Filed related to an Executory Contract or Unexpired Lease that has been assumed (or assumed and sold/assigned) shall be deemed satisfied and expunged, without further notice to or action, Order, or approval of the Bankruptcy Court.

**E.     D&O Policies.**

The D&O Policies shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to §§ 365 and 1123 of the Bankruptcy Code and transferred to the Liquidating Trust or Liquidating Trustee, unless such D&O Policy was previously rejected by the Debtors or the Estates pursuant to an Order of the Bankruptcy Court or is the subject of a motion to reject pending on the Effective Date, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Policies, including the coverage for defense and indemnity under any of the D&O Policies, which shall remain available in accordance with the terms of any of the D&O Policies.

**F.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, schedules, restatements, thereto or thereof, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and schedules, or restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection with such modification, amendment, supplement, and restatement of the Executory Contract and Unexpired Lease, absent a Final Order of the Bankruptcy Court to the contrary.

**G.      Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed/Assigned Contracts and Leases List, nor anything contained in the Plan or Sale Transaction Documentation, shall constitute an admission by the Debtors, the Purchaser, or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor, the Purchaser, or other Entity, as applicable, has any liability under such Executory Contract or Unexpired Lease. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, or, with respect to Executory Contracts or Unexpired Leases on the Assumed/Assigned Contracts and Leases List, the Purchaser, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan or the Sale Transaction Documentation.

**H.      Nonoccurrence of Effective Date.**

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to § 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI
PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Liquidating Trust on behalf of the Debtors. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day; in which case, such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII.  Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

B.    **Rights and Powers of the Liquidating Trustee.**

1.    **Powers of the Debtors, the Liquidating Trustee.**

Except as otherwise set forth herein, all Distributions under the Plan shall be made on the Effective Date or as provided for in the Plan and/or the Liquidating Trust Agreement, or as soon as reasonably practicable thereafter by the Debtors or the Liquidating Trustee (or its designee(s)), the timing of which shall be subject to the reasonable discretion of the Debtors or the Liquidating Trustee, as applicable.

On and after the Effective Date, the Liquidating Trustee and its designee(s) or representative(s) shall have the sole right to object to, Allow, or otherwise resolve any classes of Claims/Interests, including the MCA Claim, General Unsecured Claim, Priority Claim, Convenience Claim, Virtual Currency Claim, or Other Secured Claim, subject to the terms hereof. The Purchaser also shall have the right to resolve or litigate the amount of any Cure Costs. The Purchaser may consult with the Liquidating Trustee as to Claims.

The Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Liquidating Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidating Trust Assets, as a cost of administration of the Liquidating Trust.

2.    **Fees of Liquidating Trustee and Expenses Incurred On or After the Effective Date.**

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trust and the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense-reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee in connection with such person's duties shall be paid without any further notice to or action, Order, or approval of the Bankruptcy Court in Cash by the Debtors if such amounts relate to any actions taken hereunder, and shall be costs of administration of the Liquidating Trust.

C.    **Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

1.    **Record Date for Distribution.**

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Liquidating Trustee, or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those Holders of record listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    **Delivery of Distributions in General.**

(a)    Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date or the date when such Distribution is to be made pursuant to the Plan and/or the Liquidating Trust Agreement, unless the Liquidating Trustee and the holder of such Claim agree otherwise.

        (b)       Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed by, the Debtors or the Liquidating Trustee, as applicable, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

        (c)       Distributions.

On and after the Effective Date or the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan. Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan or the Liquidating Trust Agreement, because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trust in reserve in accordance with the Plan or the Liquidating Trust Agreement, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim is Allowed. Notwithstanding anything in the Plan to the contrary, the Initial Distribution Date and any Subsequent Distribution Dates with respect to Allowed General Unsecured Claims shall be determined by the Liquidating Trustee in his/her/its sole discretion. Subject to Article VI.E, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

### 3.     Minimum; *De Minimis* Distributions.

No Cash payment of less than $250.00, in the Liquidating Trustee's reasonable discretion, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest, *provided*, *however*, that this provision shall not apply to Convenience Class Claims or Sales Representatives Commission Claims. With respect to Convenience Class and Sales Representatives Commissions Claims there shall be no Cash payments of less than $20.00.

### 4.     Undeliverable Distributions and Unclaimed Property.

If any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has been provided by such Holder's then-current address (the Liquidating Trustee shall have no duty or obligation to determine a Holders then current address); at which time, such Distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the Distribution was made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed

property laws to the contrary) to the Liquidating Trust, automatically and without need for a further Order by the Bankruptcy Court, and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### 5.  Manner of Payment Pursuant to the Plan.

Any payment in Cash to be made pursuant to the Plan shall be made at the Liquidating Trustee's election, in his/her/its sole and absolute discretion, by check or wire transfer.

### D.  Compliance with Tax Requirements/Allocations.

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall request distributees to provide appropriate documentation that may be required for an exemption from withholding or reporting, and shall comply with all tax-withholding and reporting requirements imposed by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements unless an exception applies. The failure to appropriately respond to a written request of the Liquidating Trustee, after the passage of 90 calendar days from such written request, will result in such Holders' Allowed Claim to be automatically and without need for a further Order by the Bankruptcy Court, released, settled, compromised, and forever barred. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms he/she/it believes is reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child-support, and other spousal awards, liens, and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. The Purchaser and Debtors, or the Liquidating Trustee, as applicable, shall have the right to allocate the Purchase Price among the Acquired Assets.

### E.  Allocation of Plan Distributions Between Principal and Interest.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income-tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

### F.  Setoffs and Recoupment.

Except as otherwise expressly provided herein, the Liquidating Trustee may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any

Claim under this Plan shall constitute a waiver or release by the Liquidating Trustee of any such Claim that it may have against the holder of such Claim.

### G. Claims Paid or Payable by Third Parties.

#### 1. Claims Paid by Third Parties.

The Liquidating Trustee shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trust on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Liquidating Trust to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such Distribution shall result in the holder owing the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

For Non-Opt-Out Sales Representatives 65% of all Scheduled and Filed Claims will automatically, on the Effective Date, be disallowed, without further Order of the Bankruptcy Court, reducing the Scheduled or Filed Claim to 35% of such amount, subject to further objections by the Liquidating Trustee.

#### 2. Claims Payable by Insurance, Third Parties.

No Distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, or collateral held by a third party, until the holder of such Claim has exhausted all remedies with respect to such insurance policy, surety agreement, or Collateral, as applicable. To the extent that one or more of the Debtors' insurers or sureties pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such Collateral or proceeds from such Collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

#### 3. Applicability of Insurance Policies.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtors' insurance policies on such policies (including the D&O Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish,

determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

**H. Indefeasible Distributions.**

Any and all Distributions made under the Plan (including Distributions made to the Purchaser) shall be indefeasible and not subject to clawback; *provided, however,* that Distributions of Acquired Assets are indefeasible only when made to the Purchaser.

## ARTICLE VII
## THE LIQUIDATING TRUSTEE

**A. The Liquidating Trustee.**

Except as set forth elsewhere in the Plan, the Liquidating Trustee's powers shall include all powers and authority to implement the Plan and the Liquidating Trust Agreement, and handle all matters of the Debtors, including the Wind Down, and to administer and distribute proceeds of the Liquidating Trust Assets, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the Liquidating Trust Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the Distributions to be made under the Plan and the Liquidating Trust Agreement; (3) making Distributions to Holders of Allowed Claims; (4) establishing and maintaining bank accounts in the name of the Debtors and/or the Liquidating Trust; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan and the Liquidating Trust to the extent necessary; (6) paying reasonable fees, expenses, debts, charges, and liabilities of the Debtors and the Liquidating Trust on and after the Effective Date; (7) administering and paying taxes of the Debtors and the Liquidating Trust on and after the Effective Date, including filing tax returns; (8) representing the interests of the Debtors, the Estates, or the Liquidating Trust before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, the Liquidating Trust, or the Confirmation Order, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan, the Liquidating Trust, and the Confirmation Order.

The Liquidating Trustee may resign at any time on thirty (30) days' written notice delivered to the Bankruptcy Court; *provided, however,* that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee in accordance with the Liquidating Trust Agreement. Upon his/her/its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor (as set forth in the Liquidating Trust Agreement) and all responsibilities of the predecessor Liquidating Trustee relating to the Debtors and the Liquidating Trust in the Liquidating Trust Agreement shall be terminated.

**1. Liquidating Trustee's Rights and Powers.**

The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his/her/its responsibilities under this Plan and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee over the Liquidating

Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to § 1123(b)(3)(B) of the Bankruptcy Code.

### 2. Retention of Professionals.

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the Liquidating Trustee's sole and absolute discretion, are necessary to assist the Liquidating Trustee in the performance of his/her/its duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business by the Liquidating Trust and shall not be subject to the approval of the Bankruptcy Court. The Liquidating Trustee may retain former professionals of the Debtors or the Committee, which retention shall not be a conflict.

### 3. Compensation of the Liquidating Trustee.

The Liquidating Trustee's post-Effective Date compensation will be set forth in the Plan Supplement and paid from the Liquidating Trust Assets.

### 4. Liquidating Trustee Expenses.

All Trust Expenses, including costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan, or in any manner connected, incidental, or related to the Plan, in effecting Distributions from the Liquidating Trust under the Plan and the Liquidating Trust Agreement (including the reimbursement of reasonable expenses) shall be paid by the Liquidating Trust as they are incurred without the need for Bankruptcy Court approval.

### B. Wind Down.

On and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan, the Sale Transaction, and any applicable Orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to effectuate the Wind Down.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) cause the Debtors to comply with, and abide by, the terms of the Sale Transaction Documentation and any other documents contemplated thereby; (2) take any actions necessary to Wind Down the Estates; *provided*, *however*, that the Debtors shall not be dissolved until the satisfaction of the conditions precedent to such dissolution in Article VII.E; and (3) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan, the Liquidating Trust Agreement, and the Sale Transaction Documentation. From and after the Effective Date, except as set forth herein or with respect to Acquired Assets, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state or country in which the Debtors were previously conducting, or are registered or licensed to conduct their business operations, and shall not be required to File any document, pay any sum, or take any other action to effectuate such withdrawal, (y) shall be deemed to have cancelled,

pursuant to this Plan, all Interests, and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly operating report for the month in which the Effective Date occurs shall be the Liquidating Trustee's responsibility.

The Liquidating Trustee shall have the Royalty Earn Out Payment Audit Right. In addition, to the extent permissible under applicable law and subject to the execution of a non-disclosure agreement in form and content acceptable to Purchaser, the Liquidating Trustee shall have the right to conduct a reasonable audit of the Purchaser's Sales Representative contract list as necessary to confirm whether any Opt-Out Sales Representatives provide sales representative services for the Purchaser.

## C. Exculpation; Indemnification; Insurance; Liability Limitation.

The Liquidating Trustee and all Professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Estates, Liquidating Trust Beneficiaries, and Holders of Claims against the Estates and the Liquidating Trust. The Liquidating Trustee may obtain, payable from the Liquidating Trust Assets, commercially-reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust. The Liquidating Trustee may rely on written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained in the Plan and Confirmation Order, the Liquidating Trustee, in his/her/its capacity as such, shall have no liability whatsoever to any party for the liabilities or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors, the Estates, or the Liquidating Trust, except to the extent caused by gross negligence, fraud or willful misconduct.

## D. Tax Returns.

After the Effective Date, the Liquidating Trustee shall complete and File all final or otherwise required federal, state, and local tax returns for each Debtor, and pursuant to § 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

## E. Dissolution of the Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Liquidating Trustee of the occurrence of the Effective Date, all Distributions having been made, completion of all his/her/its duties under the Plan, and entry of a final decree closing the last of the Chapter 11 Cases, the Debtors shall be deemed to be dissolved without any further action by the Debtors, the Liquidating Trustee, or the Bankruptcy Court, including the filing of any documents with the secretary of state for each state in which each Debtor is formed or any other jurisdiction. The Plan shall constitute a plan of distribution as contemplated in the Texas Business Organization

Code. However, the Liquidating Trustee shall have authority to take all necessary actions to dissolve the Debtors in and withdraw the Debtors from applicable state(s).

For the avoidance of doubt, notwithstanding the Debtors' dissolution on or after the Effective Date, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

To the extent the Liquidating Trust has Cash or other property remaining after the Chapter 11 Cases have been closed and all payments have been made under the Plan (including all payments on account of Allowed Claims and the Liquidating Trustee's compensation and reimbursement), such Cash or other property shall be allocated and distributed to the Holders of Interests.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

### A.     Allowance of Claims and Interests.

On and after the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date; provided, however, that with respect to the Acquired Assets and any Claims or Interests that constitute Purchaser Paid/Satisfied Liabilities, the Purchaser shall have and retain any and all rights, defenses, and other Causes of Action that are part of the Acquired Assets that the Debtors had immediately before the Effective Date. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

### B.     Claims and Interests Administration Responsibilities.

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, and for all Claims and Interests, the Liquidating Trustee shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, Order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

### C. Estimation of Claims and Interests.

As of the Effective Date, the Liquidating Trustee may (but is not required), at any time, request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable law, including pursuant to § 502(c) of the Bankruptcy Code or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either (i) is subject to appeal or (ii) has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. If the Bankruptcy Court estimates any Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions) and may be used as evidence in any supplemental proceedings, and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding § 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to § 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each objection, estimation, and resolution procedure is cumulative and not exclusive of the others. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D. Adjustment to Claims or Interests without Objection.

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. The Liquidating Trustee shall provide any holder of such a Claim or Interest with ten (10) calendar days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register because such Claim or Interest has been paid, satisfied, amended, or superseded.

### E. Time to File Objections to Claims.

Any objections to Claims shall be Filed on or before the later of (i) 270 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by the Bankruptcy Court upon a motion by the Liquidating Trustee. Such 270-day period may be extended upon expedited motion Filed by the Liquidating Trustee solely with notice to interested parties on the ECF system.

### F. Disallowance of Claims.

Other than for Claims Allowed under the Plan, no Claim of any Entity from which property is recoverable under §§ 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of

the Bankruptcy Code shall be deemed Allowed, unless and until such entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under §§ 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled with the Liquidating Trustee's consent or an Order of the Bankruptcy Court, and all sums due to the Debtors by that Entity have been paid to the Debtors or the Liquidating Trustee. All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

### G. Amendments to Claims.

On or after the Effective Date, except as provided in the Plan or the Confirmation Order (or with respect to Claims under the Breakup Fee Order), a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Liquidating Trustee, as applicable, and any such new or amended Claim or Interest Filed shall automatically be deemed Disallowed in full and expunged without any further action; *provided*, *however*, that a General Unsecured Claim may be Filed after the Effective Date if the Bankruptcy Court enters an Order permitting such late filing.

### H. No Distributions Pending Allowance.

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VIII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

### I. Distributions After Allowance.

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or an Allowed Interest, Distributions shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the Order of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trustee shall provide to the holder of such Claim or Interest the Distribution to which such holder is entitled under the Plan as of the Effective Date, less any previous Distribution that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in Article III.B of the Plan.

**J.      Undeliverable Distribution Reserve.**

**1.      Deposits.**

If a Distribution under the Plan to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed or is an Undeliverable Distribution, such Distribution shall be deposited by the Liquidating Trustee in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VI.C.4.

**2.      Disclaimer.**

The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (a) attempt to locate any holder of a Claim, or (b) obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim; *provided*, *however*, that in his or her sole discretion, the Liquidating Trustee may periodically publish notices of unclaimed distributions.

**3.      Distribution from Reserve.**

Within fifteen (15) Business Days after the holder of an Allowed Claim satisfies the requirements of this Plan, such that the Distribution attributable to that Claim is no longer an unclaimed or undeliverable Distribution (*provided* that satisfaction occurs within the time limits set forth in Article VI.C.4), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the unclaimed or undeliverable distribution attributable to such Claim,  to such holder.

For the avoidance of doubt, in accordance with Article VI.C.4 of the Plan, if any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Liquidating Trustee has determined  the then-current address of such holder; at which time, such Distribution shall be made to such holder without interest; *provided*, *however*, that such Distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of six months from the date the Distribution was made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust, automatically and without need for a further Order by the Bankruptcy Court and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

**K.      Single Satisfaction of Claims.**

Holders of Allowed Claims may assert such Claims against the Debtors obligated on such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based on the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent (100%) of the Allowed Claim.

# ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.      Settlement, Compromise, and Release of Claims and Interests.**

Pursuant to § 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have related to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, Order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against, and Interests in, the Debtors and the Estates and Causes of Action against other Entities.

**B.      Discharge of Claims and Termination of Interests.**

Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based on such debt or right is Filed or deemed Filed pursuant to § 501 of the Bankruptcy Code; (2) a Claim or Interest based on such debt, right, or Interest is allowed pursuant to § 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**C.      Release of Liens.**

ON THE EFFECTIVE DATE, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED, SETTLED, COMPROMISED, AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT EITHER (I) TO THE DEBTORS (WITH RESPECT TO EXCLUDED ASSETS) AND THEIR SUCCESSORS AND ASSIGNS, OR (II) THE PURCHASER (WITH RESPECT TO ACQUIRED ASSETS), IN EACH CASE, WITHOUT ANY FURTHER APPROVAL OR ORDER OF THE BANKRUPTCY COURT AND WITHOUT ANY ACTION OR FILING BEING REQUIRED TO BE MADE BY THE DEBTORS OR THE PURCHASER. IN ADDITION, THE HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL EXECUTE AND DELIVER ALL DOCUMENTS REASONABLY REQUESTED BY THE DEBTORS OR LIQUIDATING TRUSTEE (WITH RESPECT TO EXCLUDED ASSETS) OR THE PURCHASER (WITH RESPECT TO ACQUIRED ASSETS) TO EVIDENCE THE RELEASE OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, AND OTHER SECURITY INTERESTS AND SHALL AUTHORIZE THE DEBTORS OR THE PURCHASER, AS APPLICABLE, TO FILE UCC-3 TERMINATION STATEMENTS OR OTHER RELEASES WITH RESPECT TO SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS.

D.  **Releases by the Debtors.**

PURSUANT TO § 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT THE DEBTORS OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' CAPITAL STRUCTURE, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE BINDING TERM SHEET, THE DISCLOSURE STATEMENT, THE PLAN, THE SALE TRANSACTION, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE BINDING TERM SHEET, THE DISCLOSURE STATEMENT, OR THE PLAN, THE SALE TRANSACTION, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND THE IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR

UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, EXCEPT FOR ANY CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. NOTWITHSTANDING THE INCLUSION OF ANY RELEASED PARTIES AS A POTENTIAL PARTY TO ANY CAUSES OF ACTION, SUCH PARTIES SHALL REMAIN RELEASED PARTIES.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR ANY OTHER PROVISION OF THE PLAN, THE RELEASES CONTAINED IN THE PLAN DO NOT (1) RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE SALE TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR (2) AFFECT THE RIGHTS OF HOLDERS OF ALLOWED CLAIMS AND INTERESTS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, THE RELEASE, DISCHARGE, INJUNCTION, EXCULPATION, AND OTHER PROVISIONS WITH SIMILAR EFFECT IN THE PLAN SHALL **EXCLUDE** (AND NOTHING HEREIN SHALL RELEASE, WAIVE OR DISCHARGE): (A) ANY CLAIM, CAUSE OF ACTION, OR OBLIGATION UNDER THE PLAN, ANY DOCUMENT, AGREEMENT, OR TRANSACTION ENTERED INTO PURSUANT TO THE PLAN; (B) ANY CLAIM OR CAUSE OF ACTION OF THE DEBTORS AGAINST (1) MONTGOMERY CAPITAL ADVISERS, LLC, AND THE SECURED PARTIES REPRESENTED BY MONTGOMERY CAPITAL ADVISERS, LLC, (2) SEACRET DIRECT, LLC AND ANY OFFICER, DIRECTOR, AND AGENT OF SEACRET DIRECT, LLC, AND (3) KENNETH E. HEAD.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES HEREIN, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND SHALL FURTHER CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASES HEREIN ARE: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE RELEASES HEREIN; (3) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE CONSIDERATION AND REASONABLY-EQUIVALENT VALUE; (5) GIVEN AND MADE AFTER REASONABLE INVESTIGATION BY THE DEBTORS AND AFTER NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE ASSERTION OF ANY CLAIM RELEASED BY THE RELEASES HEREIN AGAINST ANY RELEASED PARTY.

E.      **Releases by Holders of Claims and Interests.**

AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN, EACH HOLDER OF A CLAIM AND HOLDER OF AN INTEREST IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH DEBTOR AND EACH RELEASED PARTY FROM

ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE BINDING TERM SHEET, THE DISCLOSURE STATEMENT, THE PLAN, PLAN SUPPLEMENT, THE SALE TRANSACTION, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE BINDING TERM SHEET, THE DISCLOSURE STATEMENT, OR THE PLAN, THE SALE TRANSACTION, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND THE IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, EXCEPT FOR ANY CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. THE BALLOT WILL CONTAIN AN OPT-OUT PROVISION, AND ANY HOLDER OF A CLAIM OR INTEREST THAT DESIGNATES ITSELF AS OPTING-OUT SHALL NOT BE A RELEASING PARTY.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR ANY OTHER PROVISION OF THE PLAN, THE RELEASES CONTAINED IN THE PLAN DO NOT (1) RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN OR (2) AFFECT THE RIGHTS OF HOLDERS OF ALLOWED CLAIMS AND INTERESTS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN. FURTHER, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, THE RELEASE, DISCHARGE, INJUNCTION, EXCULPATION, AND OTHER PROVISIONS WITH SIMILAR EFFECT IN THE PLAN SHALL EXCLUDE (AND NOTHING HEREIN SHALL RELEASE, WAIVE OR DISCHARGE): (A) ANY CLAIM, CAUSE OF ACTION AND/OR OBLIGATION OF THE DEBTORS ARISING UNDER THE BINDING TERM SHEET, OR (B) ANY DOCUMENT, AGREEMENT, OR TRANSACTION ENTERED INTO PURSUANT THERETO, INCLUDING THIS PLAN, THE SALE TRANSACTION, THE PURCHASE DOCUMENTATION, OR THE SALE TRANSACTION DOCUMENTATION.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES OF HOLDERS OF CLAIMS AND INTERESTS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED

HEREIN, AND SHALL FURTHER CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASES HEREIN ARE:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE HOLDERS OF CLAIMS AND INTERESTS; (3) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE CONSIDERATION AND REASONABLY-EQUIVALENT VALUE; (5) GIVEN AND MADE AFTER NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY HOLDER OF A CLAIM OR INTEREST FROM ASSERTING ANY CLAIM RELEASED BY THE RELEASE HEREIN AGAINST ANY OF THE RELEASED PARTIES.

## F. Exculpation.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE BINDING TERM SHEET AND RELATED PREPETITION TRANSACTIONS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE SALE TRANSACTION, OR ANY OTHER TRANSACTION IMPLEMENTED BY THE PLAN, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN, THE SALE TRANSACTION, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY ON THE ADVICE OF COUNSEL (AND PURCHASER MAY RELY UPON INFORMATION RECEIVED FROM THE DEBTORS OR THE LIQUIDATING TRUSTEE IN CONNECTION WITH THE SALES REPRESENTATIVES COMMISSION CLAIMS PAYMENT PLAN) WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN AND THE SALE TRANSACTION. THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN; THEREFORE, THEY ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THE FOREGOING "EXCULPATION" SHALL EXCULPATE ANY PERSON OR ENTITY FROM ANY LIABILITY RESULTING FROM ANY ACT OR OMISSION CONSTITUTING FRAUD, WILLFUL MISCONDUCT, GROSS NEGLIGENCE, AND CRIMINAL CONDUCT, AS DETERMINED BY A FINAL ORDER OR, WITH RESPECT TO THE SALE TRANSACTION, FROM BREACH OF CONTRACT.

## G. Injunction.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, SETTLED, SATISFIED,

OR DISCHARGED PURSUANT TO THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO THE PLAN WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

### H.    Recoupment.

In no event shall any holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### I. Subordination Rights.

Any Distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan and other than sought by the Debtors or the Liquidating Trustee.

### J. Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to § 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged, notwithstanding § 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim, and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE X**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**THE EFFECTIVE DATE**

### A. Conditions Precedent to Confirmation.

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan: (1) the Disclosure Statement Order and the Confirmation Order have each been entered, and (2) the Sale Transaction Documentation is, in all material respects, final in all material ways and has been approved by the Bankruptcy Court.

### B. Conditions Precedent to the Effective Date.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

1. The Confirmation Order is entered on or before October 22, 2021;

2. The Confirmation Order shall be a Final Order;

3. The Confirmation Order shall be acceptable (i) to the Purchaser in its sole discretion and, (ii) to Seacret in its sole discretion, but only if there is any modification to Annex A in either the Confirmation Order or in an amended Plan that is being confirmed by the Confirmation Order;

4. The Closing Conditions have been satisfied, and the closing of the Sale Transaction and the occurrence of the Effective Date shall be concurrent

and shall have occurred; *provided, however*, such closing or the occurrence of the Effective Date is not unreasonably delayed by the Debtors or the Purchaser; and

5.    As it relates to the Sale Transaction, all motions and other documents to be Filed with and submitted to the Bankruptcy Court in connection with the Sale Transaction shall be in form and substance satisfactory to the Purchaser, in its discretion (as provided herein).

6.    The Confirmation Order shall contain the findings required by Article IV.C 5, 6, 7, and 8.

On the Effective Date, the Plan shall be deemed substantially consummated under §§ 1101 and 1127(b) of the Bankruptcy Code.

### C.    Waiver of Conditions.

Other than the condition in Article X.B.3, the conditions to the Effective Date may be jointly waived, in writing, by the Debtors and the Purchaser, after consultation with the Committee and after the passage of two (2) business days after the filing of a notice of proposed waiver unless the Committee consents in writing to such waiver.

### D.    Substantial Consummation.

Substantial Consummation of the Plan shall be deemed to occur on the Effective Date.

### E.    Effect of Non-Occurrence of Conditions to the Effective Date.

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by, Claims against, or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Estates, any Holders, or any other Entity in any respect; *provided*, *however*, the Debtors will seek approval of the Sale Transaction at the Confirmation Hearing pursuant to § 363 of the Bankruptcy Code.

## ARTICLE XI
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    Modification and Amendments.

Subject to the limitations contained in the Plan and the Sale Transaction Documentation, the Debtors, with the Purchaser's and the Committee's consent (both not to be unreasonably withheld), reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, to not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the Sale Transaction Documentation, the Debtors, with the Purchaser's consent (not to be

unreasonably withheld) expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Liquidating Trust Agreement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII. Notwithstanding anything contained herein to the contrary, any modifications, amendments, or supplements to the Plan that affect the Sale Transaction or the Sale Transaction Documentation or any rights, remedies, obligations or terms therein, shall require the consent of each party to the Sale Transaction Documentation in the manner set forth therein.

### B.  Effect of Confirmation on Modifications.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.  Revocation or Withdrawal of the Plan.

Subject to the terms of the Sale Transaction Documentation, the Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity; *provided*, *however*, the Debtors reserves the right to seek approval of the Sale Transaction (including the assumption and sale/assignment of any Executory Contract and Unexpired Lease on the Assumed/Assigned Contracts and Leases List under §§ 363 and 365 of the Bankruptcy Code at the time of the Confirmation Hearing.

### ARTICLE XII
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and whether the Chapter 11 Cases are closed for administrative purposes or not, the Bankruptcy Court shall retain exclusive jurisdiction, on or after the Effective Date, over the

Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases, the Plan, and the Liquidating Trust Agreement, including jurisdiction to:

1.   Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims or Interests;

2.   Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for Allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, Bankruptcy Rules or the Plan;

3.   Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to § 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors and the Purchaser, as applicable, amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed/Assigned Contracts and Leases List or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.   Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.   Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.   Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to § 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to §§ 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Asset Purchase Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.    Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. Determine requests for the payment of Claims and Interests entitled to priority pursuant to § 507 of the Bankruptcy Code;

19. Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

20. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21. Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

22. Hear and determine matters concerning § 1145 of the Bankruptcy Code;

23. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment with the Debtors, or the termination of any employee by the Debtors, regardless of whether such termination occurred before or after the Effective Date;

24. Enforce all orders previously entered by the Bankruptcy Court;

25. To resolve any disputes arising under the Sale Transaction Documentation or other documents related to the Sale Transaction, with jurisdiction to resolve any such disputes being concurrent with New York courts;

26. Hear any other matter not inconsistent with the Bankruptcy Code; and

27. Enter an order concluding or closing the Chapter 11 Cases.

Notwithstanding the foregoing or any other provision of the Plan, any post-Effective Date breach-of-contract suit, action, or other legal proceeding arising out of the Sale Transaction Documentation may be brought only in the state or federal district courts situated in Borough of Manhattan in New York, New York or Dallas County or Collin County, Texas. The Debtors and the Purchaser consent to the jurisdiction of such courts in any suit, action, or proceeding and

waives any objection that it may have to venue of any such breach-of-contract suit, action, or proceeding in the applicable court.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect.

Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

### B.    Additional Documents.

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    Payment of Statutory Fees.

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors for each quarter (including any fraction thereof) until Confirmation.

### D.    Dissolution of Statutory Committees.

Following the Effective Date, the Committee shall remain in place with respect to the Debtors solely for the purpose of addressing (a) all final fee applications for all Professionals, and (b) the resolution of any appeals of the Confirmation Order. Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

The Liquidating Trustee shall constitute a successor-in-interest to the Committee and the Debtors in connection with any motions, objections, or requests for relief filed by the Committee or the Debtors that are pending as of the Effective Date, and the Liquidating Trustee shall be deemed substituted for the Committee or the Debtors, as applicable, in all such pending matters without any further action by the Committee, the Debtors, the Liquidating Trustee, or the Bankruptcy Court.

On the Effective Date, any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

### E. Reservation of Rights.

The Plan shall have no force or effect (other than to put parties in interest on notice that the Debtors may pursue the Sale Transaction, including the assumption and assignment of Executory Contracts and Unexpired Leases on the Assumed/Assigned Contracts and Leases List) unless the Bankruptcy Court enters the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor on the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor in favor of the Holders of Claims or Interests prior to the Effective Date.

### F. Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### G. Service of Documents.

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

### 1. The Debtors:

c/o Mr. Erik Toth, Chief Restructuring Officer
2600 Network Blvd, Suite 290
Frisco, Texas 75034
Email address: erik@larxadvisors.com

with copies to:

McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attention: Marcus Helt and Jack Haake
Email addresses: mhelt@mwe.com; jhaake@mwe.com

### 2. The Purchaser:

Verona International Holdings, LLC
2 Shelton Rd.
Swampscott, MA 01907

Email addresses: info@veronaholdings.com

with copies to:

Reed Smith LLP
1201 N. Wilmington Street
Suite 1500
Wilmington, Delaware 19801
Email address: kgwynne@reedsmith.com

        and

Reed Smith LLP
2850 N. Harwood Street
Suite 1500
Dallas, TX, 75201
Email address: kaurzada@reedsmith.com

**3.    The Secured Parties:**

Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Attention: Jason Rudd and Lauren Drawhorn
Email addresses: jason.rudd@wickphillips.com;
lauren.drawhorn@wickphillips.com

**4.    The Committee:**

Pachulski Stang Ziehl & Jones LLP
440 Louisiana Street, Suite 900
Houston, Texas 77002
Attention: Michael D. Warner
Email addresses: mwarner@pszjlaw.com

After the Effective Date, the Liquidating Trustee or the Debtors, as applicable, shall have authority to send a notice to Entities advising that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity (other than the Purchaser) must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors or the Liquidating Trustee, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests and the Purchaser.

**H.      Enforcement of Confirmation Order.**

On and after the Effective Date, the Debtors, the Liquidating Trustee, and the Purchaser, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement and the Sale Transaction Documentation).

**I.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to §§ 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the injunction set forth in <u>Article IX.G</u> shall remain in full force and effect in accordance with their terms.

**J.      Compensation and Benefits Programs.**

On the Effective Date or as soon as practicable thereafter, the Debtors shall pay all employee compensation and employee benefit obligations under any present compensation, benefit, or incentive programs, including any programs approved pursuant to the Wages Order. On and after the Effective Date, the Liquidating Trustee shall have the authority to direct disbursements of the awards and allocations of such disbursements subject to and in accordance with any present employee compensation, employee benefit, or employee incentive programs expressly approved pursuant to a prior Bankruptcy Court order, including the Wages Order (if any). On,  prior to, or as soon as reasonably practicable after, the Effective Date, the New Employment Agreements shall negotiated and, if agreed to, executed by the Purchaser and the other party to the New Employment Agreement.

**K.      Entire Agreement.**

Except as otherwise indicated, the Plan, the Confirmation Order, the Sale Transaction Documentation, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.      Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.cases.stretto.com/spherature or the Bankruptcy Court's website at www.txeb.uscourts.gov.

### M. Nonseverability of Plan Provisions.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided*, *however*, that at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent. Notwithstanding the foregoing or any other provision of this Plan, no provision of the Plan relating to the Sale Transaction or the Sale Transaction Documentation that is deemed to be invalid, void, or unenforceable shall be altered or interpreted in accordance with the foregoing, absent the written approval of the Purchaser in its sole discretion.

### N. Votes Solicited in Good Faith.

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

### O. Waiver.

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully Submitted,

Dated: September 23, 2021

/s/ Marcus A. Helt
Marcus A. Helt (Texas Bar #24052187)
Jack G. Haake (Admitted *Pro Hac Vice*)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821
Fax:    (972) 528-5765
Email: mhelt@mwe.com
Email: jhaake@mwe.com

***COUNSEL TO THE DEBTORS***

_AND DEBTORS-IN-POSSESSION_

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | Case No.: 20-42492 |
| *et al.* | § | |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

---

## ~~FOURTH~~ FIFTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES

---

Marcus A. Helt (Texas Bar #24052187)
Jack G. Haake (Admitted *Pro Hac Vice*)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821
Fax:    (972) 528-5765
Email:  mhelt@mwe.com
Email:  jhaake@mwe.com

***COUNSEL TO THE DEBTORS
AND DEBTORS-IN-POSSESSION***

---

[1]  The "Debtors" in the above-captioned jointly-administered chapter 11 bankruptcy cases ("Cases") are: Spherature Investments LLC EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220.

# INTRODUCTION

The Debtors[2] in the above-referenced, jointly-administered Chapter 11 bankruptcy cases (collectively, "Spherature" or the "Debtors") hereby propose this ~~*Fourth*~~*Fifth* *Amended Joint Chapter 11 Plan for Spherature Investments LLC and Its Affiliated Debtors* (the "Plan") pursuant to §1121(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, the Sale Transaction, and certain related matters. Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.

## SUMMARY OF THE PLAN

1. **Summary Only.** The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2. **General Description of the Business.** The Debtors provide access to unique travel and lifestyle experiences through a membership-based direct sales business and later acquired a wholly-owned travel-product and fulfilment company. The Debtors provide their travel products and services to individual and group-leisure and corporate travellers in the United States and abroad. The Debtors wholly own ninety-four (94) legal entities operating as branches, offices, and subsidiaries across the world, and these separate entities are collectively managed as "WorldVentures." The Debtors market their products and services through a network of independent Sales Representatives that market and sell travel memberships and associated-travel packages across multiple subscription levels.

3. **Plan and Treatment of Claims.** The Plan will effectuate the sale of substantially all of the Debtors' Assets under chapter 11 of the Bankruptcy Code as a "going concern" and appoint a Liquidating Trustee to administer the Liquidating Trust pursuant to the Liquidating Trust Agreement. Pursuant to the terms of the Plan:

   a) The Plan will effectuate the sale of the Acquired Assets to the

---

[2]   The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases ("Cases") are: Spherature Investments LLC EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220. The above-captioned Debtors' mailing address is 5100 Tennyson Parkway, Plano, TX 75024.

46.   "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code, which shall include express approval of Annex A to the Plan in its entirety, either by reference or by adoption of such provisions in the Confirmation Order.

47.   "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

48.   "*Convenience Claim*" means a General Unsecured Claim or a Sales Representative Commission Claim that is either (a) an Allowed Claim in an amount that is equal to or less than $1,000.00, or (b) an Allowed Claim in an amount that is greater than $1,000.00, but for which the holder of such Claim made the Convenience Claim Election.

49.   "*Convenience Claim Election*" means a General Unsecured Claim or Sales Representative Commission Claim that is for an amount that is greater than $1,000.00, but for which the holder of such Claim timely and irrevocably elected on the Ballot to have his/her/its Claim irrevocably reduced to a Claim of $1,000.00 and to be classified and treated as a Class 4 Convenience Claim.

50.   "*Convenience Class Pool*" means $800,000.00 in the aggregate, payable from the Cash Component or, if the Cash Component is insufficient, the Liquidating Trust Assets as soon as practicable after the Effective Date.

51.   "*Cure Costs*" means the amount necessary to cure all defaults (including monetary and non-monetary) under the Executory Contract or Unexpired Lease that are assumed by the Debtors and assigned to the Purchaser under the Plan pursuant to §§ 365(b) or 1123 of the Bankruptcy Code or as agreed between the Purchaser and the non-Debtor counterparty to the Assumed/Assigned Contract and Lease.  All Cure Costs relating to the Executory Contracts and Unexpired Leases assumed and sold/assigned to the Purchaser shall be paid by the Purchaser.

52.   "*Cure Notice*" means any notice that sets forth the proposed Cure Costs under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and sold/assigned by the Debtors under the Plan pursuant to §§ 363, 365 or 1123 of the Bankruptcy Code, as applicable, which notice shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) Cure Costs to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related dispute.

53.   "*D&O Policies*" means all insurance policies (including without limitation any "tail policy," run-off endorsement) that have been issued at any time to any of the Debtors as a first-named insured providing directors', members', trustees', officers', or managers' liability coverage, or errors-and-omissions coverage.

54.   "*Debtors*" means, collectively, Spherature Investments LLC; Rovia, LLC; WorldVentures Marketing Holdings, LLC; WorldVentures Marketplace, LLC; WorldVentures Marketing, LLC; and WorldVentures Services, LLC.

55.   "*Deficiency Claim*" means any portion of a Claim (a) to the extent the value of the holder's interest in Assets securing such Claim is less than the amount of such Claim or (b) to the

21

## 2. Limitations of Consolidation.

The Plan Consolidation effected pursuant to this section shall not affect: (i) the legal or organizational structure of the consolidated Debtors, (ii) pre- or post-Petition Date Liens or security interests, or (iii) defenses to any Cause of Action.

### H. Seacret Sale – Annex A.

The terms of the Plan are supplemented in their entirety by Annex A to the Plan (the "Seacret Sale") as if all provisions of Annex A were in the main body of the Plan. Annex A shall be expressly approved by the Confirmation Order, either by reference to Annex A or by adoption of all provisions in Annex A into the Confirmation Order.

# ARTICLE II
# ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
# CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, have not been classified; thus, they are excluded from the Classes of Claims set forth in Article III of the Plan.

## A. Administrative Claims.

Except with respect to Professional Fee Claims, or as otherwise set forth herein, subject to the provisions of §§ 327, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Liquidating Trustee, agree to less-favorable treatment or such holder has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Liquidating Trustee shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business; or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) when sufficient Liquidating Trust Proceeds exist to pay such Claims in full in Cash; *provided*, *however*, that any Allowed Administrative Claim that has been expressly assumed by the Purchaser in accordance with the Plan or the Sale Transaction Documentation shall not be an obligation of the Debtors, the Estates, or the Liquidating Trust.

Except as otherwise provided by Article II.A or by a Final Order entered by the Bankruptcy Court on or prior to the Initial Administrative Claims Bar Date or Supplemental Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and amounts under the Breakup Fee Order) must be Filed and served on the Debtors by the Initial Administrative Claims Bar Date and Supplemental Administrative Claims Bar Date, as applicable; *provided*, *however*, that with respect to any request for payment of Administrative Claims arising on or prior to September 1, 2021, submitted by Governmental Units, the deadline for all such requests shall be September 22, 2021, subject to any written requests for additional time for good cause shown. For the avoidance of doubt, after the Effective Date, the Purchaser shall be solely responsible for Cure

44

Seacret Direct, LLC-Exhibit W
Page 111 of 123

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to § 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged, notwithstanding § 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim, and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE X
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**A.    Conditions Precedent to Confirmation.**

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan: (1) the Disclosure Statement Order and the Confirmation Order have each been entered, and (2) the Sale Transaction Documentation is, in all material respects, final in all material ways and has been approved by the Bankruptcy Court.

**B.    Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

1.    The Confirmation Order is entered on or before October 22, 2021;

2.    The Confirmation Order shall be a Final Order;

3.    The Confirmation Order shall be acceptable (i) to the Purchaser in its sole discretion and, (ii) to Seacret in its sole discretion, but only if there is any modification to Annex A in either the Confirmation Order or in an amended Plan that is being confirmed by the Confirmation Order;

4.    The Closing Conditions have been satisfied, and the closing of the Sale Transaction and the occurrence of the Effective Date shall be concurrent and shall have occurred; *provided, however*, such closing or the occurrence of the Effective Date is not unreasonably delayed by the Debtors or the Purchaser; and

5.    As it relates to the Sale Transaction, all motions and other documents to be Filed with and submitted to the Bankruptcy Court in connection with the Sale Transaction shall be in form and substance satisfactory to the Purchaser, in its discretion (as provided herein).

6.    The Confirmation Order shall contain the findings required by Article IV.C 5, 6, 7, and 8.

89

On the Effective Date, the Plan shall be deemed substantially consummated under §§ 1101 and 1127(b) of the Bankruptcy Code.

**C.     Waiver of Conditions.**

~~The conditions to Consummation of the Plan set forth~~<u>Other than the condition</u> in Article ~~XI~~<u>X.B.3, the conditions to the Effective Date</u> may be jointly waived, in writing, by the Debtors and the Purchaser, after consultation with the Committee and after the passage of two (2) business days after the filing of a notice of proposed waiver unless the Committee consents in writing to such waiver.

**D.     Substantial Consummation.**

Substantial Consummation of the Plan shall be deemed to occur on the Effective Date.

**E.     Effect of Non-Occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by, Claims against, or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Estates, any Holders, or any other Entity in any respect; *provided*, *however*, the Debtors will seek approval of the Sale Transaction at the Confirmation Hearing pursuant to § 363 of the Bankruptcy Code.

**ARTICLE XI
MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.     Modification and Amendments.**

Subject to the limitations contained in the Plan and the Sale Transaction Documentation, the Debtors, with the Purchaser's and the Committee's consent (both not to be unreasonably withheld), reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, to not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the Sale Transaction Documentation, the Debtors, with the Purchaser's consent (not to be unreasonably withheld) expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Liquidating Trust Agreement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with <u>Article XII</u>. Notwithstanding anything contained herein to the contrary, any modifications, amendments, or supplements to the Plan that affect the Sale Transaction or the Sale Transaction Documentation or any rights,

90

Settlement Offer Subject to Rule 408 and Other Privileges

## ANNEX A TO FIFTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES

**1.     Definitions**

The provisions of Article I. A. of the FIFTH AMENDED JOINT CHAPTER 11 PLAN FOR SPHERATURE INVESTMENTS LLC AND ITS DEBTOR AFFILIATES (the "Plan") apply in this Annex A.  The following additional or modified Defined Terms apply to this Annex A only.

"Controlled Affiliate" means, with respect to Seacret, any other Person that, directly or indirectly through one or more intermediaries, is controlled by Seacret, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Debt Pool" is defined in Section 2.(c) of this Annex A.

"Debt Pool Agents" is defined in Section 2.(c) of this Annex A.

"Debt Pool Payments" is defined in Section 2.(c) of this Annex A.  Any Debt Pool Payments paid to the Debtors pursuant to Section 2.(e) of this Annex A shall be considered proceeds of Causes of Action and treated as Tier II Proceeds.

"Gross Revenues" means all revenue generated from sales of Seacret Products and Services by WVH Transition Sales Representatives, minus sales tax, credit card processing fees, and shipping and handling costs, all accounted for using Seacret's ordinary and customary accounting practices for such amounts.

"Representative Agreements" means the Sales Representative Agreements between the Debtors and WVH Sales Representatives.

"Royalty Payments" is defined in Section 2.(b) of this Annex A.  The Royalty Payments shall be considered proceeds of Causes of Action and treated as Tier II Proceeds.

"Sales Rep Release" is defined in Section 2.(d) of this Annex A.

"Seacret" means Seacret Direct LLC, and its successors and assigns.

"Seacret Assumed Liabilities" mean the amounts owed by the Debtors (after giving effect to the Plan and taking into account any waivers, releases or other reductions of each agent's Claim pursuant to the Plan, including by opting out or not opting out of the Sales Representatives Commissions Claims Payment Plan) to the WVH Transition Sales Representatives that provide Sales Rep Releases as described in Section 2.(d) of this Annex A.

"Seacret Products and Services" means any products sold or services offered to consumers on or after the Effective Date by (i) Seacret, (ii) any companies that are majority owned (either directly or indirectly) by Seacret on or after the Effective Date, or (iii) any companies that are

**Annex A - Page 1**

Controlled Affiliates of Seacret or Seacret's insiders or their Affiliates and that receive the right to sell all or some of Seacret's products or services offered to consumers on or after the Effective Date.

"Seacret Purchased Assets" mean (i) the Head Litigation, which is released as provided herein; (ii) the Seacret Litigation, which is released as provided herein; and (iii) the Limited Solicitation Agreement, which is terminated as provided herein.

"Seacret Purchase Price" is defined in Section 2.(a) of this Annex A.

"Seacret Related Parties" means Seacret, its Affiliates and/or its Controlled Affiliates, if any.

"WVH Sales Representatives" means those Persons who, as independent contractors, are or have been parties to Representative Agreements and: (i) market and/or sell Seacret Products and Services pursuant to the Limited Solicitation Agreement at the Effective Date; or (ii) marketed and/or sold the Debtors' products and services on or after November 11, 2020.

"WVH Transition Sales Representative" means (i) those WVH Sales Representatives who, as independent contractors, entered into agreements with the Seacret Related Parties to sell Seacret Products and Services prior to Effective Date, (ii) those WVH Sales Representatives who, as independent contractors, enter into agreements with the Seacret Related Parties to sell Seacret Products and Services on or after the Effective Date, and (iii) those persons who are subsequently recruited by, or otherwise are added to the downline of, WVH Sales Representatives to sell Seacret Products and Services for the Seacret Related Parties.

As used in this Annex A, references to the Debtors shall include the Liquidating Trustee, as applicable.


2.      **Seacret Sale and Consideration**

(a)     The Debtors shall receive as consideration for the sale, transfer, release and/or termination of the Seacret Purchased Assets (the "Seacret Purchase Price"), as provided herein, an amount up to $47 million calculated as (i) the amount of the Seacret Assumed Liabilities *plus* (ii) the Royalty Payments *plus* (iii) the Sales Rep Releases and/or Debt Pool Payments *plus* (iv) termination of the Limited Solicitation Agreement (as provided in Section 2.(i) of this Annex A) *plus* (v) the releases (as provided in Section 3.(b) of this Annex A).

(b)     The "Royalty Payments" shall be Eleven Million and No/100 Dollars ($11,000,000.00) composed of the following payments, subject to the terms and conditions of this Plan:

(i)     Five percent (5.00%) of the Gross Revenues derived from all sales by WVH Transition Sales Representatives of Seacret Products and Services after the Effective Date until such time as the total amount of Royalty Payments paid to Debtors equals Five Million and No/100 Dollars ($5,000,000.00).

**Settlement Offer Subject to Rule 408 and Other Privileges**

(ii)     After Seacret pays the Debtors the Royalty Payments described in (i) above, then Seacret shall make Royalty Payments to Debtors equal to four percent (4.00%) of the Gross Revenues derived from all sales by WVH Transition Sales Representatives of Seacret Products and Services thereafter until such time as the additional amount of Royalty Payments paid to Debtors equals One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00).

(iii)     After Seacret pays the Debtors the Royalty Payments described in (i) and (ii) above, then Seacret shall make Royalty Payments to Debtors equal to three percent (3.00%) of the Gross Revenues derived from all sales by WVH Transition Sales Representatives of Seacret Products and Services thereafter until such time as the additional amount of Royalty Payments paid to Debtors equals One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00).

(iv)     After Seacret pays the Debtors the Royalty Payments described in (i), (ii) and (iii) above, then Seacret shall make Royalty Payments to Debtors equal to two and one-half percent (2.50%) of the Gross Revenues derived from all sales by WVH Transition Sales Representatives of Seacret Products and Services thereafter until such time as the additional amount of Royalty Payments paid to Debtors equals Three Million and No/100 Dollars ($3,000,000.00).

Solely to the extent that one or more Affiliates or Controlled Affiliates of Seacret utilizes WVH Transition Sales Representatives to market and/or sell Seacret Products and Services and the Gross Revenues for such sales are paid to that Affiliate or Controlled Affiliate and not Seacret, then such Affiliate or Controlled Affiliate receiving the Gross Revenues shall be liable for all Royalty Payments arising therefrom.  For the sake of clarity, Seacret shall also remain liable for such Royalty Payments, unless otherwise agreed by the Debtors.

The Royalty Payments shall be paid after the Effective Date as set forth above on or before the 15th day of each month until paid in full, and commencing on the 15th day of the first full month after the Effective Date.

(c)     Seacret shall pay to WVH Transition Sales Representatives, as settlement of their remaining claims against the Debtors relating to the Representative Agreements (including without limitation any past due commissions), or to the Debtors (as provided in Section 2.(e) below) as follows:

(i)     After the Royalty Payments as described in Sections 2.(b)(i) and (ii) above are fully paid, Seacret shall make payments to any qualified Person that became a WVH Transition Sales Representative either before the Effective Date or within six months after the Effective Date (the "Debt Pool Agents") in an aggregate amount of two percent (2.00%) of the Gross Revenues derived from all sales by the WVH Transition Sales Representatives of Seacret Products and Services (the aggregate amount being the "Debt Pool") until such time as the amounts owed to the respective Debt Pool Agents by the Debtors (after giving effect to the Plan and taking into account any waivers, releases or other reductions of each agent's Claim pursuant to the Plan, including by opting out or not opting out of the Sales

Annex A - Page 3

Settlement Offer Subject to Rule 408 and Other Privileges

Representatives Commissions Claims Payment Plan) have been paid in full; provided, however, that the total amount of the Debt Pool Payments shall not exceed $36,000,000.

(ii)    Payments from the Debt Pool ("Debt Pool Payments") shall be made each month to eligible Debt Pool Agents or to the Debtors (as provided in Section 2.(e) below), calculated as follows:  (A) the amount of the Debt Pool for that month divided by (B) the total amount of commissions of all WVH Transition Sales Representatives for that month multiplied by (C) the amount of commissions payable to each respective Debt Pool Agent for that month. By way of example, assuming $10,000,000 of sales by the WVH Transition Sales Representatives of Seacret Products and Services in a month, the Debt Pool for that month will be $200,000 ($10,000,000 x 2%); further assuming the total amount of commissions paid to all WVH Transition Sales Representatives for that month are $1,000,000, the total Debt Pool Payment to a qualifying Debt Pool Agent that received $100,000 in commissions that month would be $20,000 ($200,000/$1,000,000 x $100,000).

(iii)    The Debt Pool Payments will be in addition to the commissions that the Seacret Related Parties will pay WVH Transition Sales Representatives pursuant to the Seacret Related Parties' standard commission schedule(s).

(iv)    As to each Debt Pool Agent or payments made to the Debtors on account on an ineligible Debt Pool Agent (as provided in Section 2.(e) below), the Debt Pool Payments will not exceed the amount that such agent is owed by the Debtors after giving effect to the Plan and taking into account any waivers, releases or other reductions of such agent's Claim pursuant to the Plan, including by opting out or not opting out of the Sales Representatives Commissions Claims Payment Plan.  Notwithstanding any other provision of the Plan, Seacret shall have standing to liquidate the amounts owed to the Debt Pool Agents by the Debtors and the required Debt Pool Payments; provided that such liquidated amounts shall not be binding on the Debtors or their estates unless such amount is either agreed to by the Debtors or ordered by the Bankruptcy Court.  Disputes regarding the amounts owed to the Debt Pool Agents by the Debtors and the required Debt Pool Payments may be presented to the Bankruptcy Court or any other court or forum with jurisdiction over such matter.

(d)    With respect to each WVH Transition Sales Representative that becomes a sales representative for the Seacret Related Parties, the Seacret Related Parties shall use commercially reasonable best efforts to obtain a release and waiver of all claims against Debtors and their Estates, including claims relating to the Representative Agreements and any past due commissions thereunder ("Sales Rep Release") from such WVH Transition Sales Representative, and a Sales Rep Release must be obtained as a condition of such WVH Transition Sales Representative being eligible for Debt Pool Payments.  With respect to each WVH Sales Representative that has not yet become a sales representative for the Seacret Related Parties before the date that this Annex A is filed with the Bankruptcy Court but becomes a sales representative the Seacret Related Parties as a WVH Transition Sales Representative thereafter and the Seacret Released Parties have knowledge that such Person was a WVH Sales Representative, in the event

Annex A - Page 4

Settlement Offer Subject to Rule 408 and Other Privileges

such WVH Sales Representative does not agree to the Sale Rep Release, such WVH Sales Representative will not have access to the database or other data related to any downline structure and will not be eligible for any Debt Pool Payments.

(e)     For any Debt Pool Agent that would otherwise be eligible for a Debt Pool Payment as provided in Section 2.(c) above but fails to qualify because such Debt Pool Agent has refused to deliver a Sale Rep Release as required by Section 2.(d) above, any Debt Pool Payments that such agent would be entitled to receive will be paid to the Debtors instead as if the Debtors were such Debt Pool Agent in Section 2.(c) above; provided that nothing in this paragraph prohibits such Debt Pool Agent from delivering a Sales Rep Release later and then thereafter receiving its applicable Debt Pool Payments, and in such case, the Debtors shall not be entitled to any Debt Pool Payments with respect to such qualified Debt Pool Agent following the delivery of the Sales Rep Release.

(f)     Seacret and the Debtors will reasonably cooperate in providing information necessary to identify the Debt Pool Agents, the amounts owed to the Debt Pool Agents (after giving effect to the Plan and taking into account any waivers, releases or other reductions of each agent's Claim pursuant to the Plan, including by opting out or not opting out of the Sales Representatives Commissions Claims Payment Plan) and any other information necessary for the operation of the paragraphs above.

(g)     For each WVH Transition Sales Representative that provides a Sales Rep Release, the Debtors shall release, or cause to be released, such WVH Transition Sales Representative from all claims the Debtors may have against such WVH Transition Sale Representative; provided that the Persons listed on Schedule 2(g) are excluded from obtaining a release pursuant to this section.  In the absence of any further documentation, the Confirmation Order shall be evidence of such releases.

(h)     The Seacret Related Parties shall have the right to approve (i) the form of Sales Rep Release used; and (ii) how each WVH Transition Sales Representative is presented and executes such Sales Rep Release, including making the effectiveness of such releases conditioned on the Debtors' acceptance of this Annex A as a supplement to the Plan, entry of the Confirmation Order and the occurrence of the Effective Date.  The Seacret Related Parties shall not be required to attempt to obtain a Sales Rep Release to the extent that a WVH Sales Representatives or WVH Transition Sales Representative does not become a sales representative for the Seacret Related Parties, has left the Seacret Related Parties by the Effective Date or does not have any claims against Debtors.

(i)     Seacret and the Debtors acknowledge that they entered into the Limited Solicitation Agreement prior to the date hereof whereby, *inter alia*, Seacret agreed to pay certain royalties to the Debtors. At the Effective Date, Seacret and the Debtors shall terminate the Limited Solicitation Agreement and cease making payments thereunder (other than any amounts due and unpaid through the month prior to the Effective Date per the terms of the Limited Solicitation Agreement, which amount shall be paid on or before 30 days after the Effective Date, and provided that in no event will total payments under the Limited Solicitation Agreement exceed $2,000,000.00) and terminate all other rights under the Limited Solicitation Agreement including, without limitation, the Seacret Trademark License and any other intellectual property licensing

**Annex A - Page 5**

rights. The Closing Conditions related to the Limited Solicitation Agreement, and any other conditions or findings required by the Plan related to the Limited Solicitation Agreement, shall be conclusively satisfied by such termination of the Limited Solicitation Agreement.

(j)     Seacret shall make a cash good faith deposit of twenty five thousand and no/100 dollars ($25,000) pursuant to the terms of the Topping Bid Procedures.

(k)     In its sole and absolute discretion, the Seacret Related Parties may pre-pay any amounts that would otherwise be paid over time under this Section 2.

## 3.      Deliveries at the Effective Date.

(a)     At the Effective Date and notwithstanding any other provision of the Plan that attempts to preserve, retain or otherwise address the Causes of Action released below, the Debtors shall deliver to Seacret the following documents and other items, duly executed by the Debtors or such other parties, as applicable:

(i)      written notice of termination of the Limited Solicitation Agreement;

(ii)     a full and complete release of all Causes of Action (including Causes of Action arising under the Limited Solicitation Agreement) against Seacret and its Affiliates, Controlled Affiliates, owners, managers, employees and consultants as of the Effective Date; provided that the Persons listed on Schedule 2(g) are excluded from obtaining a release pursuant to this section; further provided that WVH Transition Sales Representatives may only obtain a release via Section 2.(g) of this Annex A; and

(iii)    stipulations of dismissal for the Head Litigation and the Seacret Litigation with prejudice.

(b)     At the Effective Date and notwithstanding any other provision of the Plan that attempts to preserve, retain or otherwise address the Causes of Action released below, Seacret shall deliver to Debtors the following documents and other items, duly executed by Seacret, as applicable:

(i)      written notice of termination of the Limited Solicitation Agreement; and

(ii)     a full and complete release of all Causes of Action (including Causes of Action arising under the Limited Solicitation Agreement) against the Debtors their Affiliates, owners, directors, managers, employees and consultants as of the Effective Date.

Annex A - Page 6

**Settlement Offer Subject to Rule 408 and Other Privileges**

## 4.        Miscellaneous.

            (a)        _Good Faith Purchaser_   The Confirmation Order shall contain a finding that Seacret is a good-faith purchaser and is entitled to the protections and benefits set forth in § 363(m) of the Bankruptcy Code in relation to the Seacret Purchased Assets.

            (b)        _Sale Free and Clear_   The Confirmation Order shall provide that: (i) all Seacret Purchased Assets sold by the Debtors are transferred, conveyed, and assigned to Seacret free and clear of all Liens, Claims, encumbrances, and interests (other than Seacret Assumed Liabilities) pursuant to §§ 363(f), 1123(a)(5), and 1141(c) of the Bankruptcy Code; (ii) notwithstanding any other provision of the Plan, under no circumstances shall the Seacret Related Parties be liable for any Excluded Liabilities other than the Seacret Assumed Liabilities; (iii) the Seacret Related Parties are not, and shall not be deemed to be, a successor, alter ego, or mere continuation of the Debtors and shall not be liable under any theory of successor or similar liability.

            (c)        _Audit Rights_   The Secret Related Parties shall for a period of four (4) years after their creation keep, maintain and preserve complete and accurate records and accounts, including all invoices, correspondence, ledgers, financial and other records pertaining to the sales of Seacret Products and Services by WVH Transition Sales Representatives and to the payment of any Royalty Payments.  Such records and accounts shall be available for inspection and audit at a location designated by the Seacret Related Parties, at any time during which Royalty Payments are being made or within ninety (90) days thereafter, but at no time more than once per year, during reasonable business hours, by the Debtors.

**Annex A - Page 7**

**Settlement Offer Subject to Rule 408 and Other Privileges**

**SCHEDULE 2(g)**

**EXCLUDED RELEASE PARTY LIST**

**Annex A - Page 8**


4820-9227-9036v.8 65392-1 9/27/2021

## Payment Details - 219RF26536070L98

Domestic High Value (Wire)
Payment Category:   Urgent/Wire
Status:   Confirmed By Bank
Transaction ID:   219RF26536070L98

Template Name:   Spherature Investments LLC
Template Code:   Spherature Investments LLC

### Debit Account Information

Debit Bank:
Debit Account:
Debit Account Name:   SEACRET DIRECT LLC
Debit Currency:   USD

### Beneficiary Details

Beneficiary Name:   Spherature Investments LLC Utilitie

Beneficiary Account:   6720

Beneficiary Address:   s Account 8105 Rasor Blvd STE 109

Beneficiary Bank ID:

Beneficiary City:   Plano

PROSPERITY BANK
1301 N MECHANIC
EL CAMPO
US

Beneficiary Postal Code:   75024

Beneficiary Country:   US - United States of America

Beneficiary Email:

Beneficiary Mobile
Number:

Note  For text messages, standard messages and data rates rea

### Payment Details

Credit Currency:   USD

Value Date:   09/27/2021

Credit Amount:   25,000.00

### Optional Information

Sender's Reference
Number:   92721 pmt

Beneficiary Information:

### Additional Routing

Intermediary Bank ID:

Receiver Information:

### Control Information

This transaction is subject to bank rules and regulations governing such electronic transactions as described in our services agreement. Please keep these numbers handy in case you have any questions regarding this transaction. If any portion
questions, please contact customer service. Thank you.