# ARTICLE I.A.108 – FORM OF "NEW EMPLOYMENT AGREEMENTS"

The following document constitutes the anticipated terms of the Employment Agreements to be entered into between Verona International Holdings, Inc. and each of the following "Employees" (as defined in the Plan): Eric Haynes, Simon Davies, Paul Jenkins, and Michael Poates.

****

Verona International Holdings, Inc. ("Verona") is pleased to extend this Conditional Employment Agreement (this "Employment Agreement") for your continued commitment to the ongoing operations of Spherature Investments LLC d/b/a WorldVentures ("WorldVentures"). Should Verona close on the purchase of substantially all of the assets of WorldVentures and its debtor-affiliates, the following is an outline of what we believe will be the material terms of your employment with Verona.

This Employment Agreement is made effective as of October \_\_\_\_, 2021 ("Effective Date"), by and between Verona of 2 Shelton Rd, Swamscott, Massachusetts, 01907 and [_____] ("Employee"),

**A.** Verona is engaged in the business of Travel Sales. [Employee] will primarily perform the job duties in North America.

**B.** Verona desires to retain the services of [Employee].

**C.** [Employee] will be an at will employee of Verona. Either party is able to terminate the Employment Agreement at any time, with or without cause, as provided herein.

**Therefore, the parties conditionally agree as follows:**

**1. EMPLOYMENT.** Verona International Holdings shall employ [Employee] as in his/her/their current role. [Employee] shall provide to Verona duties as reasonably requested or needed. [Employee] accepts and agrees to such employment, and agrees to be subject to the general supervision, advice and direction of Verona and Verona's supervisory personnel.

**2. BEST EFFORTS OF EMPLOYEE.** [Employee] agrees to perform faithfully, industriously, and to the best of [Employee]'s ability, experience, and talents, all of the duties that may be reasonably requested or required by the express and implicit terms of the Employment Agreement, to the reasonable satisfaction of Verona. Such duties shall be provided at such place(s) as the needs, business, or opportunities of Verona may reasonably require from time to time.

**3. COMPENSATION OF EMPLOYEE.** As compensation for the services provided by [Employee] under the Employment Agreement, Verona will pay [Employee] an annual salary comparable to [Employee]'s existing compensation of ($$$) and in accordance with Verona's usual payroll procedures and subject to applicable federal, state, and local withholding. Upon termination of the Employment Agreement, payments under this paragraph shall cease; provided, however, that [Employee] shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which [Employee] has not yet been paid, and for any commission earned in accordance with Verona's customary procedures, if applicable. Accrued vacation will be paid in accordance with applicable state law and Verona's customary procedures. This section of the Employment Agreement will be included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment.

1

5. [BLANK].

**5. EXPENSE REIMBURSEMENT.** Verona will reimburse [Employee] for reasonable and necessary "out-of-pocket" business expenses incurred by [Employee] in accordance with Verona's policies in effect from time to time.

**6. RECOMMENDATIONS FOR IMPROVING OPERATIONS.** [Employee] shall provide Verona with all information, suggestions, and recommendations regarding Verona's business, of which [Employee] has knowledge, that will be of benefit to Verona.

**7. CONFIDENTIALITY.** [Employee] recognizes that Verona has and will have information regarding the following:

- processes

- technical matters

- trade secrets

- business affairs

and other non-public information (collectively, "Information") which are valuable, special and unique assets of Verona. [Employee] agrees that [Employee] will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of Verona. [Employee] will protect the Information from disclosure to any third parties and treat such information as strictly confidential. A violation by [Employee] of this paragraph shall be a material violation of the Employment Agreement and will justify legal and/or equitable relief (for which the parties agree that no bond or security shall be required). The Employment Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed under seal in a lawsuit.

**8. CONFIDENTIALITY AFTER TERMINATION OF EMPLOYMENT.** The confidentiality provisions of the Employment Agreement shall remain in full force and effect for a period of 24 months after the voluntary or involuntary termination of [Employee]'s employment. During such period, neither party shall make or permit the making of any public announcement or statement of any kind that [Employee] was formerly employed by or connected with Verona.

**9. BENEFITS.** [Employee] shall be entitled to employment benefits, as provided by Verona's policies in effect during the term of employment. These benefits include:

- Paid Time Off – 4 weeks

- Holidays

- Health Insurance

**10. TERM/TERMINATION.** [Employee]'s employment under this Employment Agreement shall be for an unspecified term on an "at will" basis. This Employment Agreement may be terminated (without cause) by Verona upon six weeks' notice or by [Employee] upon thirty days' notice.

2

Verona may terminate this Employment Agreement "for cause" if [Employee]: (a) commits fraud, embezzlement, or theft; (b) intentionally violates any applicable law or regulation; (c) commits a felony or misdemeanor involving moral turpitude, or (d) repeatedly fails to perform such Employee's duties or otherwise follow instructions, rules, or regulations after at least two written warning. If the termination is "for cause", Verona may terminate this Employment Agreement without notice and with compensation to [Employee] only to and including the date of such termination and accrued vacation time. The compensation paid under this Employment Agreement shall be [Employee]'s exclusive remedy if [Employee] is terminated "for cause".

**11. COMPLIANCE WITH EMPLOYER'S RULES.** [Employee] agrees to comply with all the applicable rules and regulations of Verona.

**12. RETURN OF PROPERTY.** Upon termination of this Employment Agreement, to [Employee] shall deliver to Verona all property which is Verona's property or related to Verona's business (including keys, records, notes, data, memoranda, models, communications, information, and equipment) that is in such [Employee]' possession or under such [Employee]' control. Such obligation may be further described or set forth in a separate confidentiality or proprietary rights agreement signed by to [Employee].

**13. NOTICES.** All notices required or permitted under this Employment Agreement shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

> If to Employee: At such Employee's last known address as reflected in Verona's records:

> If to Verona: At Verona; Attn: Emmett McNulty and Sam Hathi; 2 Shelton Road; Swamscott, Massachusetts, 01907, or such other address as Verona shall provide in writing to Employee.

**14. INDEMNIFICATION AGREEMENT AS OFFICER:** As used in this section, "Indemnitee" means [Employee] and "Company" means Verona.

1. *Agreement to Serve.* Indemnitee agrees to serve as an officer of the Company for so long as he is duly elected or appointed or until such time as he renders his resignation in writing or the effective date upon which his employment is terminated in accordance with this Employment Agreement.

2. *Definitions.* As used in this Employment Agreement:

(a) The term "Corporate Status" shall mean the status of a person who is or was an officer of the Company or who, while an officer of the Company, is or was serving at the request of the Company, as an officer, partner, trustee, employee or agent of another company, partnership, joint venture, trust, employee benefit plan, or other entity, owned or controlled by Verona. An officer is considered to be serving an employee benefit plan at the Company's request if his duties to the Company also impose duties on, or otherwise involves services by, him to the plan or to participants in or beneficiaries of the plan.

(b) The term "Disinterested Person" shall mean an officer and/or director of the Company who, at the time of a vote referred to in Paragraph 8 of this Employment Agreement, is not (a) a party to the Proceeding, or (b) an individual having a familial, financial, professional, or employment relationship with the Indemnitee, which relationship would, in the circumstances, reasonably be expected to exert an influence on the officer's judgment when voting on the decision being made.

3

(c) The term "Expenses" shall include, without limitation, reasonable and documented attorneys' fees, retainers, court costs, transcript costs, fees of experts, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees and other disbursements or expenses of the types customarily incurred in connection with a Proceeding.

(d) The term "Liability" shall mean the obligation to pay a judgment, settlement, penalty, fine including an excise tax assessed with respect to an employee benefit plan, or reasonable expenses incurred with respect to a Proceeding.

(e) The term "Proceeding" shall mean any threatened, pending or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative or investigative, and whether formal or informal.

3. Indemnification

(a) The Company shall indemnify the Indemnitee if he was, is or is threatened to be made a defendant or respondent in a Proceeding because of his Corporate Status against Liability incurred in the Proceeding if (1) (i) he conducted himself in good faith and did not engage in willful misconduct or fraud, and (ii) he reasonably believed that his conduct was in the best interests of the Company or that his conduct was at least not opposed to the best interests of the Company, and (iii) in the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful, or (2) he engaged in conduct for which he shall not be liable under the Articles of Organization, By-Law or Charter of the Company.

(b) The Indemnitee's conduct with respect to an employee benefit plan for a purpose he reasonably believed to be in the interests of the participants in, and the beneficiaries of, the plan is conduct that satisfies the requirement that his conduct was at least not opposed to the best interests of the Company.

(c) The termination of a proceeding by judgment, order, settlement, or conviction, or upon a plea of nolo contendere or its equivalent, is not, of itself, determinative that the Indemnitee did not meet the relevant standard of conduct described in this Paragraph 3.

4. *Exceptions to Right of Indemnification.* Notwithstanding anything to the contrary in this Employment Agreement, the Company shall not indemnify the Indemnitee in connection with a Proceeding (or part thereof) initiated by the Indemnitee unless the initiation thereof was approved by the Board of Directors of the Company. Notwithstanding anything to the contrary in this Employment Agreement, the Company shall not indemnify the Indemnitee to the extent Indemnitee is reimbursed from the proceeds of insurance, and in the event the Company makes any indemnification payments to the Indemnitee and the Indemnitee is subsequently reimbursed from the proceeds of insurance, the Indemnitee shall promptly refund such indemnification payments to the Company to the extent of such insurance reimbursements.

5. *Indemnification of Expenses of Successful Party.* Notwithstanding any other provision of this Employment Agreement, to the extent that Indemnitee has been successful, on the merits or otherwise, in the defense of any Proceeding to which he was a party because of his Corporate Status, the Indemnitee shall be indemnified against all reasonable Expenses incurred by him on behalf in connection therewith. Without limiting the foregoing, if any Proceeding is disposed of, on the merits or otherwise (including a dis position without prejudice), without (i) the disposition being adverse to the Indemnitee, (ii) an adjudication that the Indemnitee was liable to the Company (iii) a plea of guilty or nolo contendere by the Indemnitee, (iv) an adjudication that the Indemnitee did not act in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and (v) with respect to any criminal proceeding, an adjudication that the Indemnitee had no reasonable cause to believe his conduct was unlawful, the Indemnitee shall be considered for the purposes hereof to have been wholly successful with respect thereto;

4

provided that such Employee did not engage in any fraud or willful misconduct.

6. *Notification and Defense of Claim.* As a condition precedent to his right to be indemnified, the Indemnitee must notify the Company in writing as soon as practicable of any Proceeding for which indemnity will or could be sought by him and provide the Company with a copy of any summons, citation, subpoena, complaint, indictment, information or other document relating to such Proceeding with which he is served. With respect to any Proceeding of which the Company is so notified, the Company will be entitled to participate therein at its own expense and/or to assume the defense thereof at its own expense, with legal counsel reasonably acceptable to the Indemnitee. After notice from the Company to the Indemnitee of its election so to assume such defense, the Company shall not be liable to the Indemnitee for any legal or other expenses subsequently incurred by the Indemnitee in connection with such claim, other than as provided below in this Paragraph 6. The Indemnitee shall have the right to employ his own counsel in connection with such claim, but the fees and expenses of such counsel incurred after notice from the Company of its assumption of the defense thereof shall be at the expense of the Indemnitee unless (i) the continued employment of counsel by the Indemnitee has been authorized by the Company after the Company's assumption of the defense, (ii) counsel to the Indemnitee shall have reasonably concluded that there may be a conflict of interest or position on any significant issue between the Company and the Indemnitee in the conduct of the defense on such action or (iii) the Company shall not in fact have employed counsel to assume the defense of such action, in each of which cases the reasonable fees and expenses of counsel for the Indemnitee shall be at the expense of the Company, except as otherwise expressly provided by this Employment Agreement. The Company shall not be entitled, without the consent of the Indemnitee, to assume the defense of any claim brought by the Company or as to which counsel for the Indemnitee shall have reasonably made the conclusion provided for in clause (ii) above. The Company shall not be required to indemnify the Indemnitee under this Employment Agreement for any amounts paid in settlement of any Proceeding effected without its written consent or which does not provide for a full release of all claims and causes of action against the Company. The Company shall not settle any Proceeding in any manner which would impose any penalty or limitation on Indemnitee without Indemnitee's written consent. Neither the Company nor the Indemnitee will unreasonably withhold its or his consent to any proposed settlement.

7. *Advancement of Expenses.* Any expenses incurred by the Indemnitee in connection with any Proceeding to which the Indemnitee was or is a party or is threatened to be a party by reason of his Corporate Status or by reason of any action alleged to have been taken or omitted in connection therewith shall be paid by the Company in advance of the final disposition of such matter; *provided, however*, that the payment of such Expenses incurred by the Indemnitee in advance of the final disposition of such matter shall be made only upon receipt of (i) a written affirmation of the Indemnitee's good faith belief that he has met the standard of conduct desired in Paragraph 3 of this Employment Agreement or that the Proceeding involves conduct for which liability has been eliminated under the Article of Organization, Charter or By-Laws duly adopted by the Company and (ii) an unlimited undertaking by the Indemnitee to repay all amounts so advanced in the event that it shall ultimately be determined that the Indemnitee is not entitled to be indemnified by the Company as authorized in this Employment Agreement. Such reasonable and documented expenses shall be paid promptly upon the written request of the Indemnitee to the Company. The undertaking referred to in clause (ii) above shall be an unlimited general obligation of the Indemnitee but shall not be secured and shall be accepted without reference to the Indemnitee's financial ability to make repayment.

8. *Procedure for Indemnification.* In order to obtain the indemnification pursuant to Paragraphs 3 or 5 of this Employment Agreement, the Indemnitee shall submit to the Company a written request, including in such request such documentation and information as is reasonably available to the Indemnitee and is reasonably necessary to determine whether and to what extent the Indemnitee is entitled to indemnification or advancement of Expenses. Any such indemnification shall be made promptly, and in any event within 60 days after receipt by the Company of the written request of the Indemnitee and the supporting expense documentation, unless with respect to requests under Paragraph 3 the Company determines within such 60-

5

day period that the Indemnitee did not meet the applicable standard of conduct set forth in Paragraph 3. Such determination, and any determination pursuant to Section 7 that advanced Expenses must be repaid to the Company, shall be made in each instance (a) if there are two or more Disinterested Directors, by the Board of Directors by a majority vote of all the Disinterested Directors, or by a majority of the members of a committee of two or more Disinterested Directors appointed by vote; (b) by special legal counsel (i) selected in the manner prescribed in clause (a), or (ii) if there are fewer than two Disinterested Directors, selected by those members of the Board of Directors who qualify as Disinterested Directors; or (c) by the shareholders of the Company.

9. *Subrogation.* In the event of any payment under this Employment Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Indemnitee, who shall execute all papers required and take all action necessary to secure such rights, including execution of such documents as are necessary to enable the Company to bring suit to enforce such rights.

10. *Term of Indemnity.* The Company's obligation to indemnify an Indemnitee continues until and terminate upon the later of (a) two years after the date that the Indemnitee shall have ceased to serve as an officer of the Company or, at the request of the Company, as an officer, officer, employee or agent of another company, partnership, joint venture, trust or other enterprise, owned or controlled by Verona. or (b) the final termination of all Proceedings pending on the date set forth in clause (a) in respect of which Indemnitee is granted rights of indemnification or advancement of Expenses hereunder.

11. *No Special Rights.* Nothing herein shall confer upon the Indemnitee any right to continue to serve as an officer of the Company for any period of time or at any particular rate of compensation.

12. *Modification and Waiver.* This Employment Agreement shall be amended to the extent provided in section 15 below. In addition, this Employment Agreement may be further amended from time to time to reflect changes in law or for other reasons, provided, however, that no such further amendment, supplement, or modification of this Employment Agreement shall be binding unless executed in writing by both of the parties hereto. No waiver of any of the provisions of this Employment Agreement shall be deemed or shall constitute a waiver of any other provision hereof nor shall any such waiver constitute a continuing waiver.

**15. CONDITIONAL AGREEMENT.**

As you are aware, the sale of substantially of WorldVentures' and its debtor-affiliates' assets has not closed and this Employment Agreement is conditional upon Verona International Holdings, Inc. closing on its purchase of substantially all of the assets of WorldVentures and its debtor-affiliates, your current role remaining the same, and the current membership number remaining consistent and will be subject to change if any of these (or other, unforeseen) scenarios arise.

**16. ENTIRE AGREEMENT.** This Employment Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Employment Agreement supersedes any prior written or oral agreements between the parties.

**17. SEVERABILITY.** If any provisions of this Employment Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Employment Agreement is invalid or unenforceable, but that by limiting or altering such provision to the extent necessary to render it valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited or altered.

6

**18. APPLICABLE LAW.** This Employment Agreement shall be governed by the laws of the State of Texas.

**20. TAXES.** [Employee] is solely responsible for all taxes on all payments made or benefits earned by him from Verona, and he acknowledges Verona's right to withhold or deduct any taxes or other required or authorized amounts from compensation. All payments hereunder are intended to be exempt from Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A") to the maximum extent feasible, and otherwise to comply with Section 409A, and will be construed and interpreted accordingly. Notwithstanding the foregoing, under no circumstances will Verona be responsible for any taxes or tax liabilities of [Employee], whether under Section 409A or otherwise.

**21. EFFECTIVE DATE.** The effective date of this Employment Agreement (as may be amended or modified as set forth herein) shall be effective upon the Effective Date, provided that Verona closes on its purchase of substantially all of the assets of WorldVentures and its debtor-affiliates.

Conditionally approved by:

**VERONA INTERNATIONAL HOLDINGS, INC.:**

_____

Name: R Emmett McNulty

Title:

**EMPLOYEE:**

_____

Print name:

7