IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN re: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | Case No.: 20-42492 |
| *et al.*, | § | |
| | § | |
| Debtors.¹ | § | Jointly Administered |

**TENTH INTERIM ORDER AUTHORIZING DEBTORS' USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION
AND RELATED RELIEF**

THIS MATTER came to be heard on the *Emergency Motion for Interim and Final Orders Granting Use of Cash Collateral and Scheduling Final Hearing* (the "**Motion**")² filed by Spherature Investments LLC ("**Spherature**"), together with its affiliates identified herein, as debtors and debtors-in-possession (collectively, the "**Debtors**"); the Court having determined that: proper notice under the circumstances and as required by Rule 4001(b) of the Federal Rules of Bankruptcy Procedure was provided; the Debtors' use of Cash Collateral (defined below) to cover their expenditures through November 2, 2021 (the "**Budget Period**"), set forth in the Budget attached as **Exhibit "A"** to this Order ("**Budget**") is necessary to avoid immediate and irreparable harm to Debtors' Estates pending a final hearing on the Motion; and all objections, if any, to the interim relief requested in the Motion having been resolved herein, preserved hereby, or overruled by the Court; and that the adequate protection proposed by the Debtors to be provided to the Lender is necessary to cover any projected diminution in value during the Budget Period; and the Court having considered the representations and acknowledgements of the Debtors, as set forth below,

---

¹ The "**Debtors**" in the above-captioned jointly administered chapter 11 bankruptcy cases ("**Cases**") are: Spherature Investments LLC ("**Spherature**") EIN#5471; Rovia, LLC ("**Rovia**") EIN#7705; WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846; WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264; WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255; WorldVentures Services, LLC ("**WV Services**") EIN#2220. The Debtors' corporate headquarters and service address in this district is 5100 Tennyson Parkway, Plano, TX 75024.

² All defined terms and phrases used herein bear the meanings assigned in the Motion.

Page 1

along with the pleadings, arguments of counsel, and evidence;

**THE COURT HEREBY FINDS THE FOLLOWING:**

A.   On December 21, 2020 (the "**Petition Date**"), the Debtors filed their voluntary petition under chapter 11 of the United States Bankruptcy Code.

B.   The Debtors are in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

C.   On January 22, 2021, the United States Trustee for the Eastern District of Texas (the "U.S. Trustee") appointed the official committee of unsecured creditors and on February 3, 2021, the U.S. Trustee filed an Amended Appointment of Official Unsecured Creditors' Committee (the "**Creditors' Committee**") in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code. On or about February 2, 2021, the Creditors' Committee retained Pachulski Stang Ziehl & Jones LLP as its counsel (**"Creditors' Committee Counsel"**).

D.   This Court has jurisdiction over these Cases pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this bankruptcy case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.   Due and adequate notice of the Motion and the hearing was served on all parties-in-interest requiring notice under these circumstances in accordance with Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

F.   The proposed adequate protection to the Lender is proposed in good faith to cover any projected diminution in value to the Lender's pre-Petition Date collateral (the "**Collateral**"), during the Budget Period.

G.   The operating expenses proposed to be paid by the Debtors, as represented in the Budget, are reasonable and necessary to prevent irreparable injury, loss, or damage to Debtors' bankruptcy estates ("**Estates**"). This Court concludes that entry of this Interim Order is in the best interests of the Estates at this time because its implementation will, among other things, allow for

the continued operation of the Debtors' existing businesses and preservation of value for all constituents.

H. At the present time, Debtors have a need of cash in order to fund working capital, operating expenses, fixed charges, payroll, administrative expenses of the Debtors' Chapter 11 cases, and other general corporate purposes arising in the Debtors' ordinary course of business, each as necessary for the orderly maintenance and operation of the Debtors' businesses as a going concern.

I. The Lender asserts a claim in an aggregate principal amount not less than $5,500,101.00 and that any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Collateral (as defined herein) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**") of the Lender. For the avoidance of doubt, the Lender asserts the Cash Collateral includes any rights to receive funds withheld from the Debtors (collectively, the "**Merchant Reserves**") in reserve accounts (the "**Merchant Reserve Accounts**") established and maintained pursuant to merchant services agreements the Debtors have with various credit card processing service providers (collectively, the "**Merchant Agreements**"). Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtors are not able to use Cash Collateral without the Lender's consent or this Court's authorization after notice and a hearing. The Lender is willing to consent to the Debtors' use of the Cash Collateral, expressly limited to, and conditioned on, the terms and conditions specified in this Interim Order.

J. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights and defenses of the Debtors, their estates, the Lender, and the Creditors' Committee, such rights and defenses being hereby expressly reserved, to challenges, claims, and causes of action including, but not limited to: (i) lien priority and whether any alleged liens or security interests on

any property of the Debtors' estates, including the Lender's asserted security interest in the Collateral, are valid, binding, enforceable, non-avoidable and properly perfected; (ii) whether any loan and any obligations under loan documents constitute legal, valid, binding, non-avoidable obligations of the Debtors; (iii) whether any portion, or all, of any loan or loan documents, including all obligations thereunder, are subject to avoidance, re-characterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law; (iv) tort claims including commercial tort claims under applicable law or equity against any party, person, or entity, including the Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon, or related to any loan; (v) avoidance claims, under chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, against any party, person, or entity, including the Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon, or related to any loan; (vi) any party's right to seek relief pursuant to sections 105 or 506(c) of the Bankruptcy Code with respect to any collateral; and (vii) any party's right to seek relief pursuant to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any collateral.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. **Use of Cash Collateral**. The Debtors are authorized to use the Lender's Cash Collateral in accordance with the Budget attached hereto as **Exhibit A** ("**Budget**"); *provided, however,* that the Budget is only approved through the earlier of the Budget Period and the Interim Termination Date (as defined herein) and the variance under the Budget may not exceed 10% on a total-disbursements cumulative basis and 10% per line-item basis (the "**Budget Variance**"). The Debtors are authorized to use the Lender's Cash Collateral to fund working capital, operating expenses, fixed charges, payroll, administrative expenses of the Debtors' Chapter 11 cases, and all other general corporate purposes arising in the Debtors' ordinary course of business as shown on and limited to the Budget. Nothing in this Order prevents the Lender from consenting to the use

Page 4

of Cash Collateral for the payment of ordinary-course post- petition expenses of the Estates outside the scope of the Budget, subject to Lender's and Creditors' Committee express prior written consent to such out-of-Budget expenditures in the ordinary course of the Debtors' business operations.

2.  **Adequate Protection**. The Adequate Protection provided to the Lender in this Order is only to the extent that the Lender's asserted liens and security interests in the Debtors' pre-Petition Date property are perfected, valid, not avoidable, and not subject to re-characterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law as of the Petition Date. Subject to the Court so finding, the following adequate protection ("**Adequate Protection**") is provided to the Lender as adequate protection of the Lender's asserted pre-Petition Date security interests in the Debtors' pre-Petition Date collateral.

(a)  During the Budget Period the Debtors shall pay to the Lender by no later than the first business day of each month monthly payments of accrued interest at the non-default rate of sixteen percent (16%) as identified in the Budget as "Adequate Protection for Pre-Petition Lender" in the amount of $73,334.68 (together with payments of the Lender's reasonable fees and expenses, the "**Adequate Protection Payments**"). The Lender reserves the right to assert interest at the default rate, payment of reasonable fees and expenses and such further amounts as Adequate Protection Payments subject to further order of the Court. Any Adequate Protection Payments paid to Lender under this Interim Order are subject to claw back and repayment to the Estates upon the Court's entry of a final order, which is not subject to appeal, directing the Lender to return such Adequate Protection Payments to the Estates.

(b)  The Debtors shall pay all fees and expenses payable to the Lender under the Loan Documents, including, without limitation, the reasonable attorney fees and expenses and any other professional fees and expenses incurred on or after the Petition

Page 5

Date. The invoices for such fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary describing services provided and the expenses incurred by the applicable professional; provided, however, that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (provided, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional). Debtors shall pay all such reasonable fees and expenses within ten (10) business days of delivery of a summary statement or invoice for such fees and expenses (it being understood that such counsel or other professional shall not be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the US Trustee and the Committee, unless, within such ten (10) business day period, the Debtors, the US Trustee or the Committee serves a written objection on the Lender's counsel, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid. Any and all amounts paid by the Debtors pursuant to this Paragraph 2(b) are deemed additional permitted uses of Cash Collateral and not subject to the Budget. No attorney or advisor to the Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court; provided, however, if an objection is asserted, it shall be the obligation of the Lender to set for hearing on the Court's docket, the request for reimbursement of such fees and expenses, and the party objecting shall timely file any such objection. The Debtors payment of the Lender's fees and expenses pursuant to this Paragraph 2(b) shall cease upon the Debtors or the Creditors' Committee filing an adversary proceeding or claim objection challenging the Lender's liens and claims

as to the Lender's fees and expenses incurred after the date of such adversary proceeding or claim objection filing.

(c) In addition to the Adequate Protection Payments, subject to the Carve-Out (as defined below), Lender is hereby granted, from and after the Petition Date, replacement liens and security interests ("**Replacement Liens**") in any and all assets acquired by the Debtors after the Petition Date of the same kind, category and character that Lender held a perfected lien against as of the Petition Date, specifically including all cash proceeds arising from such property acquired by the Debtors after the Petition Date, in the same nature, extent, priority, and validity that such liens, if any, existed on the Petition Date, subject to and strictly limited only to the extent of the amount equal to the aggregate diminution in value of the Collateral; provided, however, and for the avoidance of doubt, the Replacement Liens shall not attach to (i) claims and causes of action or the proceeds of claims and causes of action, including tort claims; or (ii) avoidance claims, and proceeds thereof, under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law. Other than as set forth herein and subject to the Carve-Out, the Replacement Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, a "**Successor Case**"); provided, however, and for the avoidance of doubt, the Adequate Protection Liens shall not prime any validly perfected lien on any Collateral having priority over the Lender's liens as of the Petition Date. Other than as set forth herein and subject to the Carve-Out, the Replacement Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case or Successor Case or upon the dismissal of any Case or Successor Case.

(d)     In addition to the Adequate Protection Payments and Replacement Liens, subject to the Carve-Out, Lender shall be entitled to an allowed superpriority administrative expense claim ("**Adequate Protection Superpriority Claim**") under Sections 503 and 507 of the Bankruptcy Code to the extent that the adequate protection provided herein proves inadequate to cover any diminution in value of the Collateral; provided, however, the Adequate Protection Superpriority Claim shall not have recourse to (i) claims and causes of action or the proceeds of claims and causes of action, including tort claims; or (ii) avoidance claims, or the proceeds thereof, under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law. The Adequate Protection Superpriority Claim shall be junior only to the Carve-Out (as defined herein). Except for the Carve Out, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b), 507(b), 546, 1113 and 1114 of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(e)     Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subordinate to the following (collectively, the "**Carve-Out**"): (i) fees pursuant to 28 U.S.C. § 1930(a)(6), if any; (ii) fees payable to the clerk of the Bankruptcy Court and any agent thereof; and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all allowed, unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons"). Nothing in this paragraph shall alter the requirements for Court approval and allowance of fees and expenses incurred by

Professional Persons or the rights of the Debtors, the Lender or any other party-in-interest to object to the award of such requested fees and expenses.

(f)     The Debtors shall deliver to the Lender, with a copy to Creditors' Committee Counsel, on or before the close of business on Thursday of each week (and if such day is not a business day, then the next succeeding business day) the following: (a) comparison for the prior week of actual results of all items contained in the Budget to the amounts originally contained in the Budget and (b) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally contained in the Budget, in each case along with such supporting information and additional reporting as the Lender and Creditors' Committee Counsel may request.

(g)     The Debtors and their professionals, consultants, and other advisors shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the Lender and/or its professionals, and Committee Professionals, to discuss the status of the Case, the results of operations and other matters pertaining to the Debtors, including any sale or restructuring efforts.

(h)     At all times, the Debtors shall maintain insurance coverage in compliance with the terms of the Lender's pre-Petition Date loan documents ("**Loan Documents**") and on substantially the same basis as maintained prior to the Petition Date. The Debtors shall provide the Lender and Creditors' Committee Counsel with proof of insurance coverage within five (5) business days of written request for the same.

(i)     At all times, the Debtors shall comply with any and all reporting obligations to Lender (if any) in compliance with the terms of the Lender's Loan Documents and on substantially the same basis as maintained prior to the Petition Date; provided that any such reporting provided to the Lender shall simultaneously be provided to the Creditors' Committee Counsel.

(j) Lender reserves the right to seek other or additional adequate protection beyond the adequate protection provided in this Interim Order, and nothing in this Interim Order or otherwise shall be deemed or construed to limit, impair or otherwise prejudice the Lender's right to seek or obtain such other or additional adequate protection or any other relief. All parties reserve the right to oppose any such requested relief.

(k) The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Budget shall not be deemed to be a consent by the Lender to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget for each such type of disbursement or otherwise approved herein, subject to the Budget Variance.

3. **No Waiver for Failure to Seek Relief.** The failure or delay of the Lender to seek relief from the automatic stay or otherwise exercise any of its rights and remedies under this Interim Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Lender.

4. **Section 507(b) Reservation.** Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code if the adequate protection provided to the Lender hereunder is insufficient to compensate for any Diminution in Value during the Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender that the adequate protection granted herein does in fact adequately protect the Lender, as applicable, against any diminution in value of their interests in the Prepetition Collateral (including the Cash Collateral).

5. **Term**. Unless otherwise ordered by the Court or extended by written agreement between the Debtors and the Lender, the Debtors' right to use Cash Collateral shall

commence on the Petition Date and expire at 11:59 p.m. (CST) on November 2, 2021 (the "**Interim Termination Date**"). Unless otherwise ordered by the Court or extended by written agreement between the Debtors and the Lender, upon the Interim Termination Date, the Debtors shall cease use of the Cash Collateral and shall be prohibited from issuing any further payments from Cash Collateral regardless of whether such payment is or was ever listed in the Budget.

6. **Notice and Hearing; Reservation of Rights to Object**. A hearing ("**Hearing**") to consider further relief on the Motion and the terms of a proposed order is set on **October 29, 2021 at 9:45 a.m. (CT)** before the Honorable Brenda T. Rhoades, United States Bankruptcy Judge for the Eastern District of Texas, Sherman Division. Any objections to the Motion shall be filed and served on counsel to the Debtors, the Creditors' Committee Counsel and counsel to the Lender not later than 5:00 p.m. (CT) seven (7) calendar days prior to the Hearing. This Interim Order shall be binding on, and inure to the benefit of the Lender, the Debtors, the Creditors' Committee, or any officer that may be appointed and their respective successors and assigns including, without limitation, any trustee appointed in this chapter 11 case or any superseding chapter 7 case.

7. **Rights Preserved**. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Lender's right to seek any other relief in respect of the Debtors (including the right to seek additional adequate protection); (b) the Lender's right to seek the payment by the Debtors of additional post-petition interest, including at the default rate, pursuant to section 506(b) of the Bankruptcy Code and payment of Lender's fees and expenses; or (c) any rights of the Lender under the Bankruptcy Code or under non-bankruptcy law. Notwithstanding anything herein to the contrary, the entry of this Interim Order or any previous Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the respective rights and defenses of the Debtors, their estates, the Lender, and the Creditors' Committee to challenges, claims, and causes of action including, but not limited to: (i) lien priority and whether any alleged liens or security

interests on any property of the Debtors' estates, including the Lender's asserted security interest in the Collateral, are valid, binding, enforceable, non-avoidable and properly perfected; (ii) whether any loan and any obligations under loan documents constitute legal, valid, binding, non-avoidable obligations of the Debtors; (iii) whether any portion, or all, of any loan or loan documents, including all obligations thereunder, are subject to avoidance, re-characterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law; (iv) tort claims including commercial tort claims under applicable law or equity against any party, person, or entity, including the Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon, or related to any loan; and (v) avoidance claims, under chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, against any party, person, or entity, including the Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon, or related to any loan; (vi) any party's right to seek relief pursuant to sections 105 or 506(c) of the Bankruptcy Code with respect to any collateral; and (vii) any party's right to seek relief pursuant to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any collateral.

8.  Notwithstanding any other provisions included in this Interim Order or any other prior orders authorizing use of cash collateral in these Cases, or any agreements approved hereby, any statutory liens (the "**Tax Liens**") of Plano Independent School District shall not be primed by any liens granted pursuant to the Cash Collateral Orders to the extent the Tax Liens are valid, senior, perfected, enforceable, and unavoidable. All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Plano Independent School District are fully preserved.

9.  The findings of fact and conclusions of law of this Court pursuant to this Interim Order shall be deemed effective upon the entry of this Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

10. This Order shall control the use of Cash Collateral and the grant of Adequate Protection beginning on the date of entry of this Order and does not nullify prior interim orders regarding the use of Cash Collateral and Adequate Protection entered in the Debtors' Chapter 11 cases. The Court has and will retain jurisdiction to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

11. This Interim Order is immediately valid and fully effective upon its entry by the Court.

Signed on 10/22/2021

*Brenda T. Rhoades*  YM
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted and Prepared by:

Marcus A. Helt, Esq. (Texas Bar #24052187)
Jack Haake, Esq. *(Admitted Pro Hac Vice)*
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:    (214) 210-2821 / Fax: (972) 528-5765
Email: mhelt@mwe.com
Email: jhaake@mwe.com

***COUNSEL TO THE DEBTORS
AND DEBTORS-IN-POSSESSION***

**Exhibit A**

DM_US 182932087-1.114823.0011

Spherature Investments LLC f/k/a WorldVentures Holdings, LLC

Report B: Weekly Budget

Report Date: October 21, 2021

| Type: Downside Case | | Week Begining | 10/11/2021 | 10/18/2021 | 10/25/2021 | 11/1/2021 |
|---|---|---|---|---|---|---|
| 65% Signups per Paid Reps per Month | | Week Ending | 10/17/2021 | 10/24/2021 | 10/31/2021 | 11/2/2021 |
| 5.2 Avg. Months of Retention | | Week No. | 43 | 44 | 45 | 46 |
| $600,000 Minimum Cash Balance | | | Projected | Projected | Projected | Projected |
| **Operating Cash Receipts** | | | | | | |
| Travel Revenue | | | $ 35,000 | $ 40,000 | $ 40,000 | $ 11,429 |
| Membership Revenue and Other Revenue | | | 399,630 | 410,250 | 410,250 | 117,214 |
| Release of Merchant Reserves | | | - | - | - | - |
| Proceeds from the Sale of Debtor & Affiliates | | | | - | - | 287,000 |
| *Subtotal - Operating Cash Receipts* | | | $ 434,630 | $ 450,250 | $ 450,250 | $ 415,643 |
| **Operating Cash Disbursements** | | | | | | |
| Payroll, Bonus, & Payroll Taxes | | | $ (2,331) | $ (420,210) | $ - | $ (175,000) |
| Benefits - Health Insurance | | | (3,000) | (3,000) | (70,000) | (1,000) |
| Potential Severance Payments | | | - | - | - | - |
| Weekly Commissions | | | (10,000) | (5,000) | (5,000) | (1,429) |
| Monthly Commissions | | | (298,831) | - | - | - |
| Product Costs (i.e. COGS) | | | (93,089) | (62,009) | (62,009) | (25,310) |
| Insurance | | | (15,052) | - | - | - |
| Administrative Expenses | | | (500) | (500) | (500) | (143) |
| Employee Travel Expenses | | | (300) | (300) | (300) | (86) |
| Rent | **$1,000** | | - | - | (880) | (251) |
| Repairs & Maintenance | | | (500) | (500) | - | - |
| Marketing Services | | | (10,250) | (5,600) | (5,000) | (1,429) |
| Utilities / Computers | | | (107,500) | (63,735) | (128,850) | (36,814) |
| Account Analysis / Banking Fees | | | (5,500) | (11,500) | (5,500) | (1,571) |
| Other Operating Expenses | | | (2,500) | (2,600) | (3,235) | (924) |
| International Market Rent Payments | **$60,000** | | (3,750) | - | - | - |
| International Tax Obligations | **0** | | - | - | - | - |
| Taxes (sales & use, VAT, Income, property, etc.) | | | (30,000) | (126,998) | (30,000) | (30,000) |
| Ordinary Course Professionals | | | (8,100) | (71,220) | (35,625) | (10,179) |
| *Subtotal - Operating Cash Disbursements* | | | (591,203) | (773,172) | (346,899) | (284,135) |
| *Net Cash from Operations Before Cap Ex / Debt Service* | | | $ (156,573) | $ (322,922) | $ 103,351 | $ 131,507 |
| **Restructuring / Financial Reporting Disbursements** | | | | | | |
| Estate Professionals | | | - | - | - | - |
| Independent Board Advisor | **$7,500** | | - | - | - | - |
| Adequate Protection - Secured Lender | **$75,000** | | - | - | - | - |
| Adequate Assurance - Utility Deposit | **$300,000** | | - | - | - | - |
| U.S. Trustee Fee | **$250,000** | | - | - | - | (100,000) |
| Ch. 11 Filing Fee | **$12,000** | | - | - | - | - |
| Post-Petition Rent - 503(b)1 Admin Claim | | | - | - | - | - |
| DIP Loan Origination Fees | | | - | - | - | - |
| *Subtotal - Restructuring / Financial Reporting* | | | - | - | - | (100,000) |
| *Net Cash from Operations After Cap Ex / Debt Service / Restructuring* | | | $ (156,573) | $ (322,922) | $ 103,351 | $ 31,507 |

**Spherature Investments LLC f/k/a WorldVentures Holdings, LLC**

Report B: Weekly Budget

Report Date: October 21, 2021

| Type: Downside Case | Week Begining | 10/11/2021 | 10/18/2021 | 10/25/2021 | 11/1/2021 |
|---|---|---|---|---|---|
| 65% Signups per Paid Reps per Month | Week Ending | 10/17/2021 | 10/24/2021 | 10/31/2021 | 11/2/2021 |
| 5.2 Avg. Months of Retention | Week No. | 43 | 44 | 45 | 46 |
| $600,000 Minimum Cash Balance | | *Projected* | *Projected* | *Projected* | *Projected* |

| | | | | | |
|---|---|---|---|---|---|
| **Cash Flow Reconciliation** | | | | | |
| **Beginning Cash Balance - Operating** | | $3,367,060 | $3,317,014 | $2,994,092 | $3,097,443 |
| Net Cash from Operations Before Cap Ex / Debt Service | | (156,573) | (322,922) | 103,351 | 131,507 |
| Subtotal - Capital Expenditures | | - | - | - | - |
| Subtotal - Debt Service | | - | - | - | - |
| Subtotal - Restructuring / Financial Reporting | | - | - | - | (100,000) |
| Net Cash from DIP Loan | | - | - | - | - |
| Reclassify Cash to Restricted Cash - Merchant Reserves | | - | - | - | - |
| Reclassify Cash to Restricted Cash - Utility Deposit | | - | - | - | - |
| **Ending Cash Balance - Available for Operations** | | **$3,210,487** | **$2,994,092** | **$3,097,443** | **$3,128,951** |
| Restricted Cash Held on Account - Utility Deposit | | $324,993 | $324,993 | $324,993 | $324,993 |
| Restricted Cash Held on Account - Merchant Reserves | | $2,558,352 | 2,558,352 | 2,558,352 | 2,558,352 |
| **Ending Cash Balance - Total Cash** | | **$6,093,831** | **$5,877,436** | **$5,980,788** | **$6,012,295** |
| | | | | | |
| *Total Disbursements* | | (591,203) | (773,172) | (346,899) | (384,135) |
| | | | | | |
| ***Merchant Reserve Balance Roll Forward*** | | | | | |
| Beginning Balance | | $3,267,576 | $3,267,576 | $3,267,576 | $3,267,576 |
| (Releases)/Additions | | - | - | - | - |
| Ending Balance | | $3,267,576 | $3,267,576 | $3,267,576 | $3,267,576 |