Ryan E. Manns (SBT 24041391)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
ryan.manns@nortonrosefulbright.com

Bob Bruner (SBT 24062637)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone: (717) 6515151
Facsimile: (717) 651-5246
bob.bruner@nortonrosefulbright.com

Counsel for Wayne Nugent, KGS Services, LLC
and Nugent Holdings, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC, *et al.*,[1] | § | Case No. 20-42492 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## WAYNE NUGENT'S SUPPLEMENTAL APPLICATION FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM PURSUANT TO SECTION 503(B)(1)(A) OF THE BANKRUPTCY CODE

TO THE HONORABLE BRENDA T. RHOADES, CHIEF U.S. BANKRUPTCY JUDGE:

Wayne Nugent, founder and Chief Executive Officer of the Debtors, hereby files this

*Supplemental Application for Allowance of an Administrative Claim Pursuant to Section*

*503(B)(1)(A) of the Bankruptcy Code* (the "Supplemental Administrative Expense Claim

---

[1] The "Debtors" in the above-captioned jointly administered chapter 11 bankruptcy cases are: Spherature Investments LLC; Rovia, LLC; WorldVentures Marketing Holdings, LLC; WorldVentures Marketplace, LLC; WorldVentures Marketing, LLC; WorldVentures Services, LLC.

Application") and respectfully states the following:

## PRELIMINARY STATEMENT

The Debtors have been generating substantial income (tens of millions) and operating profitably both in 2020 and 2021, as reflected in the recently disclosed consolidated Tax Return and as was further recently disclosed through the deposition of the Debtors' Chief Restructuring Officer, Mr. Toth.   The Debtors have paid no income taxes on account of this income.   The Debtors have also paid no distributions to its members, including tax distributions under the Debtors' LLC Agreement (as hereinafter defined).   Instead, the Debtors have retained 100% of the income with the Debtors and estates, utilizing the untaxed income to fund these cases, in direct breach of the Debtors' obligations under their LLC Agreement.

As set forth in Mr. Nugent's initial administrative expense claim application, Mr. Nugent is entitled to an administrative expense claim in the amount of no less than $10,174,394.00 (the "Initial Administrative Expense Claim") for Mr. Nugent's postpetition actual and necessary costs of preserving the bankruptcy estate. *See* Docket No. 546.[2] Mr. Nugent hereby files this supplemental administrative expense claim in the amount of no less than $2.5 million (the "Supplemental Administrative Expense Claim") for any and all tax liability associated with the Debtors' 2021 reported income through September 30, 2021.[3]

As addressed in the Initial Administrative Expense Claim Application, the Debtors are obligated to make a tax distribution to Mr. Nugent in accordance with the WorldVentures Holdings LLC Operating Agreement (as amended and restated) (the "LLC Agreement") in order to satisfy the tax liability in the amount of over $2.5 million accrued to date for the year 2021, as

---

[2]   Capitalized terms not otherwise defined herein maintain the meanings ascribed to them in the Initial Administrative Claim Application as hereinafter defined.

[3] Mr. Nugent seeks to set the Initial Administrative Expense Application and the Supplemental Administrative Expense Application for hearing on an emergency basis to go forward simultaneously at the Confirmation hearing, as may be continued, as the administrative claim is a gateway issue for Confirmation, among many others.

reported by the Debtors' September 30, 2021 consolidated income statement, reflecting year to date gross profits of over $26 million and net income of over $7 million through September 30, 2021.

The Plan contemplates the extinguishment of the equity interests of the Debtors' members.  The Debtors cannot, in accordance with the Bankruptcy Code, or in good conscious, impose tens of millions of tax liabilities on the same members based on income the Debtors and the Debtors' estates have retained, used in these cases, and unquestionably benefitted from.

As of the date of this filing, administrative expense obligations owed to Mr. Nugent continue to accrue and Mr. Nugent reserves all rights with respect to the same, including without limitation the right to amend this application and file any subsequent applications.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

2.       Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## BACKGROUND

3.       The Debtors filed the *Fourth Amended Joint Chapter 11 Plan for Spherature Investments LLC and its Debtor Affiliates* on September 23, 2021 [Dkt. No. 459] (the "Plan").

4.       Pursuant to the Plan, the Debtors have proposed a retroactive deadline for filing applications for administrative claims that arise on or prior to September 1, 2021 (the "Initial Administrative Claims Bar Date").[4]  This retroactive deadline was not approved or set forth in the table of Plan confirmation related dates set forth in this Court's order conditionally approving

---

[4]Pursuant to the LLC Agreement, the Debtors are required to make tax distributions "at such times as to permit the Members to timely satisfy estimated tax or other tax payment requirements."  Mr. Nugent intends to file an additional administrative expense claim for claims arising after the Initial Administrative Claims Bar Date and reserves all rights with respect to the same.

the Debtors' disclosure statement.   Indeed, Article VI(F) of the third amended disclosure statement approved by the Court - the administrative expense claim section - contained no disclosures regarding any administrative claim deadlines.  Dkt. No. 528-1.  Accordingly, Mr. Nugent submits that the proposed Initial Administrative Expense Deadline is inapplicable and should not be retroactively approved by this Court.

5.      Nevertheless, out of an abundance of caution, on October 7, 2021, counsel for the Debtors agreed via confirmation email to extend any applicable filing deadline for the Initial Administrative Claim Bar Date for Mr. Nugent to October 15, 2021.

6.      On October 15, 2021, Mr. Nugent filed *Wayne Nugent's Initial Application for Allowance of an Administrative Claim Pursuant to Section 503(B)(1)(A) of the Bankruptcy Code* ("Initial Administrative Expense Claim Application") [Dkt. No. 546].[5]

## RELIEF REQUESTED

7.      Section 503(b)(1) of the Bankruptcy Code allows for the payment of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  Section 507(a) of the Bankruptcy Code grants administrative expense claims the second highest priority in distribution.  11 U.S.C. § 507(a).  The Fifth Circuit has stated that "[t]he principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than to simply compensate the creditor."  *Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1419 (5th Cir. 1992) (quotation and citation omitted).

8.      An entity is entitled to an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code for, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A); *Matter of TransAmerican Nat.*

---

[5] The Initial Administrative Expense Claim Application is incorporated herein by reference.

*Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992). Claims against a debtor arising after a bankruptcy filing are generally "administrative claims" under the Bankruptcy Code.  11 U.S.C. § 503(b); *Reading Co. v. Brown*, 391 U.S. 471 (1968) (postpetition tort claims are administrative claims); *In re MD Promenade, Inc.*, 2009 WL 80203, at *6 (Bankr. N.D. Tex. Jan. 8, 2009) (postpetition claims for conversion and breach of contract damages were administrative claims).

**In accordance with the LLC Agreement, the Debtors are obligated to make a tax distribution to Mr. Nugent to satisfy his estimated tax payments through September 30, 2021**

9.      The Debtors have represented that their reported 2021 income through September of 2021 is $7,020,580.00.[6]  They have not paid any federal taxes for 2020.  Furthermore, the Debtors have confirmed that they have not made any tax distributions to account for their 2021 taxes.

10.     In his October 18, 2021 deposition, Chief Restructuring Officer, Mr. Eric Toth testified as follows:

> Q: The debtors are required to pay its members tax distributions on account of income generated by the debtors, is that correct?
>
> A: That's my understanding of the company.

*See* October 20, 2021, Toth deposition transcript,  32;22-25.[7]

> Q: Are you familiar with the debtors' 2020 consolidated tax return, generally?
>
> A: I'm familiar that it exists. I did not assist in the preparation of it nor am I the professional that provided it.
>
> Q: Are you aware that the return reported over $20 million in income for the consolidated debtors?
>
> A: I am
>
> Q: Mr. Nugent didn't receive any distributions of that income, did he?

---

[6] A true and correct copy of the Debtors' consolidated income statement through September 30, 2021 is attached hereto as **Exhibit A**.  A true and correct copy of the March, 2021 and June, 2021 consolidated income statements are attached as **Exhibit B** and **Exhibit C**.

[7] A true and correct copy of the October 18, 2021 deposition transcript is attached as **Exhibit D**

A: In what period?

Q: Let's start during the post-petition period, did Mr. Nugent receive any distributions of income from the company?

A: No, other than payroll, no.

*Id*. at 32; 8-17

Q: The debtors have not paid any income taxes on the income reported on the 2020 return, correct?

A: Correct.

And the debtors also have not paid any income on taxes that's been generated for 2021, correct?

A: Correct.

Q: So the debtors have retained the benefit of having tax free income for 2020 and 2021, is that correct?

A: That's correct.

*Id*. at. 103, 14-20.

11.    The tax liability associated with the 2021 return is estimated to exceed $2.5 million.[8]  As Mr. Toth has correctly observed and testified, the Debtors have retained the benefit of financing their operations without paying taxes for the last two years.  Perversely, the Debtors have financed their bankruptcy cases by refraining from paying their 2020-2021 taxes.

12.    Under the LLC Agreement,[9] the Debtors are required to pay a Tax Distribution to Mr. Nugent to satisfy the LLC taxes.  Specifically, section 5.5 of the LLC Agreement provides:

the Company ***shall*** distribute to each Member on a quarterly basis by the 10th (or next succeeding business day) of each of March, June, September, and January of each year (or such other dates as may be appropriate in light of tax payment requirements (each a "*Tax Distribution Date*"), an amount (each a "*Tax Distribution*") in cash equal to (x) the excess, if any, of (A) such Member's Cumulative Tax Liability (as defined in clause (ii) below) over (B) the amounts previously distributed pursuant to this Section 5.5(a)(i). ***For the avoidance of doubt, such distributions shall be***

---

[8] In addition, interest and penalties continue to accrue based on the Debtors' untimely provision of the 2020 Return and apparent flaws with the same.  Given the Debtors' untimely provision for the 2020 Return and the potential accrual of penalties and interest, the amount of any such penalties and interest cannot be fully ascertained.   Mr. Nugent asserts all rights with respect to the same and will amend this application or include claims related to the penalties and interest in a subsequent application, as appropriate.

[9] A true and correct copy of the LLC Agreement is attached as **Exhibit E**.

>*made at such times as to permit the Members to timely satisfy*
>*estimated tax or other tax payment requirements*.

13.     The tax distribution is an actual and necessary expense of the Debtors' estate.

14.     The LLC Agreement is not executory and the Debtors have continued to operate pursuant to and benefit from the LLC Agreement post-petition.  *See In re THC Financial Corporation*, 446 F. Supp. 1329, 1331 (D. Haw. 1977); *see also In re Van Dyk Research Corp*., 13 B.R. 487, 506 (D.N.J. 1981) (finding that indemnity provision in a purchase agreement "is not an 'executory contract' under the Bankruptcy Act").

15.     The Debtors have breached their obligations under the LLC Agreement post-petition.

16.     Further, the Debtors could not operate or generate the income absent the LLC Agreement and the organization of the Debtors under the same and accordingly benefit from the LLC Agreement and the obligations thereunder.  Moreover, the Debtors have and continue to benefit from the pass-through structure of the Debtors through the retention of income that otherwise would be disbursed to the LLC members and/or the IRS.  To be clear, neither Mr. Nugent nor (upon information and belief) any of the Debtors' members received *any* distributions of the over $26 million in gross profits and $7 million of income reported through September 30, 2021 or throughout the pendency of these bankruptcy cases.

17.     It would be unconscionable and inconsistent with the Bankruptcy Code and public policy to consider a scenario where a debtor, having accepted and retained income generated by a company based on a commitment to make tax distributions sufficient to satisfy associated tax liabilities of its members, could simply dispose of those obligations through bankruptcy. Indeed, as courts have recognized, an estate would receive an inequitable windfall if Debtors were not required to comply with their tax obligations, receiving the benefit of income without any of the

burdens. *See Jalbert v. McClelland et. al. (In re F-Squared Inv.)*, 2021 WL 3533377, at *7 (Bankr. D. Del. Aug. 10, 2021) (ignoring tax distribution obligations would grant creditors "a windfall at the expense of the shareholders who agreed to take on [the company's] tax liability only if the Tax Distributions were made."); *In re Kenrob Inf. Tech. Solutions, Inc.*, 474 B.R. 799, 802-03 (Bankr. E.D. Va. 2012) ("it is clear that there is a benefit derived by the corporation" from a pass-through structure and the obligations to pay tax distributions on account of the same in that "[i]n addition to the reduction in taxes, the corporation also receive[s] the benefit of not distributing its income to the shareholders even though that income was passed through for tax purposes" and therefore such funds are retained by the company "as operating capital."); *In re Northlake Foods, Inc.*, 483 B.R. 247, 252 (M.D. Fla. 2012) (pass-through election of corporation was reasonable equivalent value for tax distribution paid to shareholder) .

## PRAYER

18.    For the reasons set forth herein, Mr. Nugent respectfully requests allowance of an initial administrative expense claim in the amount of no less than $2.5 million, as well as any further relief Mr. Nugent may be entitled, whether at law or in equity.

Dated: October 26, 2021

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP
By: */s/ Ryan E. Manns*
Ryan E. Manns (SBT 24041391)
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
ryan.manns@nortonrosefulbright.com

Bob Bruner (SBT 24062637)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone: (717) 6515151
Facsinile: (717) 651-5246
bob.bruner@nortonrosefulbright.com

Counsel for Wayne Nugent, KGS Services,
LLC and Nugent Holdings, LLC

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon the counsel and parties of record, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service, on the 26th day of October, 2021.

*/s/ Ryan E. Manns*
Ryan E. Manns